IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

**CLAIM BY NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY PURSUANT TO SUPPLEMENTAL FEDERAL RULE F(5) IN RELATION TO MAIN LINE RAILROAD BRIDGE ALLISION**

Claimant/Respondent Norfolk and Portsmouth Belt Line Railroad Company (the "Belt Line"), by counsel, states as follows for its claim pursuant to Rule F(5) of the Supplemental Rules for Admiralty against Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Petitioner") as owner and operator of M/T MACKENZIE ROSE, her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc.:

**NATURE OF THE CLAIM**

1. This claim arises out of an allision on June 15, 2024, in which the M/T MACKENZIE ROSE (or "Tug"), owned and operated by Petitioner, struck the Belt Line's Main Line Railroad Bridge that spans the Southern Branch of the Elizabeth River between Norfolk and Portsmouth, Virginia (the "Bridge"). The Tug, pushing a 200-foot loaded barge, hit the Bridge far outside the navigable channel—well behind the fender system—with such force that it heavily damaged the steel superstructure and shoved it nearly seven (7) feet to the north. Incredibly, the

superstructure did not collapse but ended up suspended in midair, resting precariously on 3 of its 4 legs. The force of the allision also severely warped the steel rail and bridge superstructure, rendering the Bridge completely unusable. After catastrophically damaging the Bridge, the operators of the Tug backed up, navigated the Tug and barge flotilla back to the channel, and departed for New York without a word to the Belt Line, the U.S. Coast Guard, or any other authority. To date, repairs, which have not been completed, are expected to cost more than $12 million, not including economic losses associated with months of having to divert rail traffic that would have otherwise been handled by the Belt Line using the Bridge. Against this backdrop, Petitioner's Complaint seeks to limit its liability to $2.5 million.

## FACTS

2. The Belt Line is the owner of the Bridge. The Bridge is a railroad vertical lift bridge and remains in the open position such that vessel traffic may pass underneath it, except when lowered to allow trains to pass. *See* 33 C.F.R. § 117.997.

3. On or about June 15, 2024, the M/T MACKENZIE ROSE was transiting north on the Southern Branch of the Elizabeth River in the vicinity of the Bridge upon the navigable waters of the United States. The M/T MACKENZIE ROSE was pushing ahead a 200-foot deck barge owned by Weeks Marine named WEEKS 281. A view of the approach is shown below.



View of approach from South to North

*The Allision*

4. While approaching the Bridge, the M/T MACKENZIE ROSE, pushing the WEEKS 281, negligently and recklessly deviated outside the fenders that are underneath the raised portion of the Bridge, far beyond the western edge of the 300-foot wide navigational channel, and allided with the western section of the Bridge (the "Allision").

5. At the time of the Allision, the Bridge was in the open position and did not block or otherwise restrict access to the navigational channel.

6. Upon information and belief, at the time of the Allision, the M/T MACKENZIE ROSE was navigating the winding and heavily-trafficked ship channel on autopilot without a proper lookout.

7. Upon information and belief, the autopilot system on the M/T MACKENZIE ROSE had malfunctioned multiple times during previous voyages, and the owners and crew of the Tug were aware of the malfunctions.

8. At the time of the Allision, the autopilot system on the M/T MACKENZIE ROSE locked in place heading outside the channel and no one in the crew, including the operator, noticed the malfunction until impact was inevitable.

9. Upon information and belief, the M/T MACKENZIE ROSE struck the Bridge at a steady speed, without reversing its thrusters until after the impact.

10. Following the Allision, the operator of M/T MACKENZIE ROSE shifted the engines into reverse to get the barge off the Bridge, then maneuvered the Tug and barge flotilla to the navigable channel, passed under the Bridge, and departed Norfolk Harbor for New York.

11. The crew of the M/T MACKENZIE ROSE did not notify the Belt Line of the Allision or any damage to the Bridge, despite experiencing the Allision and at least one crew

member taking the below photograph of the damaged Bridge as the Tug passed through the navigable channel.



*View from M/T MACKENZIE ROSE*

12. The crew of the M/T MACKENZIE ROSE also did not notify the United States Coast Guard or any other authority of the Allision or any damage to the Bridge.

13. As a direct result of the Allision, the Bridge was heavily damaged, dislodged from its structural supports, and completely unusable. The view below of the damaged Bridge is from Portsmouth (west) side of the Southern Branch of the Elizabeth River looking east.



View of misaligned track after allision

*The Allision was a Direct Result of Petitioner's Negligence and/or Recklessness*

14. Under general maritime law, when a moving vessel allides with a stationary object, there is a heavy presumption that the vessel was at fault for the allision. This presumption is known as the "Oregon" Rule. *See The Oregon*, 158 U.S. 186 (1895); *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir.1977); *United States v. Norfolk-Berkley Bridge Corp.*, 29 F.2d 115, 125 (E.D Va. 1928).

15. The Oregon Rule applies here because the M/T MACKENZIE ROSE was a moving vessel that, while underway made up in pushing gear to the barge WEEKS 281, caused the barge to strike the Bridge, a stationary object.

16. At the time of the Allision, as a result of Petitioner's negligence, the M/T MACKENZIE ROSE failed to remain in the navigable channel and clear of the Bridge.

17. At the time of the Allision, the M/T/ MACKENZIE ROSE was under the control of Petitioner by and through its agents and/or employees.

18. At all times relevant hereto, the M/T/ MACKENZIE ROSE and/or those in charge of her, including Petitioner, owed the Belt Line a legal duty under general maritime law to maintain the vessel in a seaworthy condition and in good working order to safely operate upon the navigable waters of the United States, including the Southern Branch of the Elizabeth River.

19. At all times relevant hereto, the M/T/ MACKENZIE ROSE and/or those in charge of her, including Petitioner, owed the Belt Line a legal duty under the general maritime law to observe the standards of good and prudent seamanship, to exercise reasonable care when operating and navigating the Tug, and to avoid an allision with the Bridge.

20. At all times relevant hereto, the M/T/ MACKENZIE ROSE and/or those in charge of it, including Petitioner, owed the Belt Line a legal duty under the general maritime law to adequately and competently train and supervise the crew of the Tug and otherwise have and enforce policies and practices for the safe operation of the Tug.

21. The M/T MACKENZIE ROSE and those in charge of it, including Petitioner, breached their legal duties to the Belt Line described above by, among other things:

    a. Failing to navigate and operate the M/T MACKENZIE ROSE with due regard for prevailing circumstances;

    b. Failing to use all available means appropriate under prevailing circumstances to determine if risk of allision existed;

    c. Failing to properly direct the movements of the M/T MACKENZIE ROSE so as to prevent the Allision;

    d. Failing to make proper use of equipment on the M/T MACKENZIE ROSE

so as to prevent the Allision;

e.  Failing to have in place or enforce a policy prohibiting navigation in a winding and heavily-trafficked ship channel using autopilot and/or without a proper lookout;

f.  Failing to maintain a proper lookout so as to prevent the Allision;

g.  Employing an autopilot system known to be defective;

h.  Failing to provide a competent crew and safe equipment;

i.  Failing to properly train the crew of the M/T MACKENZIE ROSE so as to prevent the Allision;

j.  Failing to follow safe work and operational procedures so as to prevent the Allision;

k.  Failing to properly maintain the M/T MACKENZIE ROSE and its appurtenances;

l.  Misjudging the distance between the M/T MACKENZIE ROSE and the Bridge during approach;

m.  Navigating too closely to the Bridge outside the channel;

n.  Failing to keep the M/T MACKENZIE ROSE under control so as to be able to stop the M/T MACKENZIE ROSE from striking the Bridge; and

o.  Failing to alert or notify the local Coast Guard and/or the Belt Line of the Allision before departing as required by 46 C.F.R. § 4.05-1.

22. As a result of the foregoing breaches, the M/T MACKENZIE ROSE and those in charge of her, including Petitioner, were negligent and/or reckless, causing damage to the Bridge.

23. As a result of the foregoing breaches, the M/T MACKENZIE ROSE was

unseaworthy at the time of the Allision, causing damage to the Bridge.

24. Upon information and belief, the owners of the M/T MACKENZIE ROSE, including Petitioner, knew or should have known of the negligent and/or reckless conditions described above and that the M/T MACKENZIE ROSE was unseaworthy at the time of the Allision.

25. The Allision was caused by and occurred as a result of the acts, omissions, negligence, faults, recklessness, lack of due care, and breaches of duties and law by the M/T MACKENZIE ROSE and Petitioner and/or their principals, agents, and employees.

26. Petitioner, as owner and operator of the M/T MACKENZIE ROSE, is vicariously liable for the damage caused by the M/T MACKENZIE ROSE as a result of the Allision.

27. As a result of the foregoing, Petitioner and the M/T MACKENZIE ROSE are not entitled to exoneration or limitation of liability under the Limitation Act, the general maritime law, and/or Rule F of the Supplemental Rules for Admiralty.

28. The Allision was not caused by any fault or neglect on the part of the Belt Line, its agents, servants, or employees, and was not caused by any fault or defect in the Bridge.

*The Allision Severely Damaged the Bridge*

29. As a result of the Allision caused by Petitioner and the M/T MACKENZIE ROSE, the Bridge was severely damaged to the point that trains could not pass over it. The Belt Line has incurred substantial expenses and will incur additional expenses in making necessary repairs to the Bridge, as well as economic and business losses arising from the inability to use the Bridge.

30. The damage to the Bridge has harmed the Belt Line in an amount far in excess of $75,000, and likely in excess of $12 million for repair costs alone, not including economic losses associated with months of diverted rail traffic, as near as can now be determined.

31. The Belt Line reserves the right to supplement this Claim, including the basis for the Claim, amount of the Claim, and grounds for contesting Petitioner's right to exoneration or limitation of liability as additional facts become available.

32. The Belt Line specifically reserves and incorporates all rights and defenses asserted in its accompanying Answer and Affirmative Defenses to Petitioner's Complaint.

## REQUEST FOR RELIEF

WHEREFORE, Claimant Norfolk and Portsmouth Belt Line Railroad Company, by counsel, prays for judgment in its favor against Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing, as owner and operator of the M/T MACKENZIE ROSE, *in personam*, and the M/T MACKENZIE ROSE, her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, as follows:

(1) Declaring that Petitioner and the M/T MACKENZIE ROSE are not entitled to exoneration from or limitation of liability under the Limitation Act, general maritime law, and/or Rule F of the Supplemental Rules for Admiralty;

(2) For the full amount of the Belt Line's damages resulting from the Allision, including repair, replacement, and economic damages;

(3) For pre-judgment and post-judgment interest as allowed by law;

(4) For all costs and expense allowed by law;

(5) For punitive damages to the maximum extent allowed by law; and

(6) For all other just and necessary relief.

Dated: December 5, 2024

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By: /James L. Chapman, IV
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December 2024, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

/James L. Chapman, IV
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

## **VERIFICATION**

COMMONWEALTH OF VIRGINIA
CITY OF CHESAPEAKE:

This day personally appeared before me, a Notary Public in and for the Commonwealth and City aforesaid, Cannon Moss, President, who, after being duly sworn, stated that, to the best of his knowledge and belief, the foregoing Claim by Norfolk and Portsmouth Belt Line Railroad Company pursuant to Supplemental Federal Rule F(5) is true and correct.

_____
Cannon Moss

SUBSCRIBED AND SWORN TO
Before me this 5 day of December, 2024.

_Rachael A. Weiss-Se___
Notary Public

My Commission Expires: May 31, 2025
Notary Registration Number: 7257605



RACHAEL AILEEN WEISS SEARS
Notary Public
Commonwealth of Virginia
My Commission Expires May 31, 2025
Commission ID# 7257605

11