IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

### NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL

Claimant/Respondent Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Fed. R. Civ. P. 37 and Local Rule 37, submits this Brief in Support of its Motion to Compel Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") to provide full and complete answers and responses to discovery requests.

### Background

*Carver Hits a Bridge*

This is a bridge allision case. On June 15, 2024, the tug M/T MACKENZIE ROSE, owned and operated by Carver from New York, struck the Belt Line's Main Line Railroad Bridge that spans the Southern Branch of the Elizabeth River between Chesapeake and Portsmouth, Virginia. The tug, pushing a 200-foot loaded barge, hit the Portsmouth side of the bridge—far outside the navigable channel and well behind the fender system—with such force that it shoved the steel superstructure nearly 7 feet. Incredibly, the superstructure did not collapse but ended up suspended in midair, resting precariously on 3 of its 4 legs. The impact so severely damaged the super-structure and warped the steel rail that it rendered the bridge unusable until repaired.



*View of approach from South to North*

After catastrophically damaging the bridge, the operators of the tug backed up, navigated the tug and barge into the channel, and departed for New York without a word to the Belt Line, the U.S. Coast Guard, or any other authority. To date, total repair costs are expected to exceed $12 million, not including economic losses associated with months of diverted rail traffic.




*View from Portsmouth side*      *View from M/T MACKENZIE ROSE after departing*

Under the "Oregon Rule" of general maritime law, when a moving vessel allides with a stationary object like a bridge, the vessel is presumed at fault. *See The Oregon*, 158 U.S. 186

(1895); *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 795 (5th Cir. 1977); *United States v. Norfolk-Berkley Bridge Corp.*, 29 F.2d 115, 125 (E.D. Va. 1928). The Oregon Rule unquestionably applies here.

Nevertheless, through this action, having ignored one federal law that requires immediate reporting of allisions for public safety, Carver seeks to reap the benefit of another federal law to limit its liability to the value of the offending tug, allegedly $2.5 million. *See* 46 C.F.R. § 4.05-1 (reporting requirement) and 46 U.S.C. § 30523 (claims subject to limitation).

The Belt Line is entitled to present evidence to defeat the limitation, something Carver has attempted to stymie by objecting to or simply not responding to discovery requests. In fact, aside from reproducing to the Belt Line what Carver already produced to the U.S. Coast Guard, Carver has sent the Belt Line only *one* new document (a 19-page tug survey) and a lengthy pdf of miscellaneous insurance forms (many of which pertain to other vessels). This is despite two sets of detailed Requests for Production and one set of Interrogatories from the Belt Line directly related to this case.

*Limitation of Liability Law*

The ability of an injured claimant to obtain evidence to defeat a limitation is well settled. Under 46 U.S.C. § 30523, to limit liability, a shipowner must prove that it lacked "privity or knowledge" of the negligence or fault that caused the damage. *See* 46 U.S.C. § 30523(b); *see also Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 730 F.2d 159, 166 (4th Cir. 1984) ("a shipowner seeking limitation of liability bears the burden of proving that he was without privity or knowledge of the condition or negligence responsible for the collision."). This requirement makes discovery of the shipowner's privity or knowledge of "the condition or negligence responsible" for the allision directly relevant to a limitation action. *Id*.

3

Importantly here, evidence of a shipowner's privity or knowledge is not limited to the date of an incident, either, since knowledge of unseaworthiness may exist well before then. As the Fifth Circuit explained: "To obtain the benefit of the Act the owners must establish a right to it. That involves the always difficult—and oftentimes impossible—burden of establishing that the casualty occurred without the owner's privity and fault, *including pre-voyage unseaworthiness*. The books are filled with hundreds of cases denying limitation of liability." *Crown Zellerbach v. Ingram Indus.*, 783 F.2d 1296, 1303 (5th Cir. 1986) (emphasis added). Among other things, "[a] vessel can be rendered unseaworthy by having either insufficient equipment or an insufficiently competent and trained crew. Thus, the privity or knowledge standard obliges the owner to select a competent master. It also requires the owner to properly train the master and crew." *SCF Waxler Marine, LLC v. Aris T M/V*, 24 F.4th 458, 472 (5th Cir. 2022) (citations omitted).

This kind of privity or knowledge is precisely what the Belt Line has raised in its pleadings and discovery requests, with pointed inquiries over reasonable time frames, and precisely what Carver seeks to hide from discovery with improper objections and non-responses.

## **Legal Authority**

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer … if … a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). It further provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Likewise, under Local Rule 37(A), a party may file a motion to compel "after a discovery request is objected to, or not complied with, within time, and if not otherwise resolved." The parties have met and conferred on these issues by virtual (Zoom) meetings and written correspondence.

## The Belt Line's Discovery Requests

The Belt Line served three sets of discovery requests: (1) a First Set of Requests for Production on January 10, 2025 ("1st RFPs" attached as **Exhibit A**); (2) a Second Set of Requests for Production on February 20, 2025 ("2nd RFPs" attached as **Exhibit B**); and (3) a First Set of Interrogatories on February 20, 2025 ("1st ROGs" attached as **Exhibit C**).

Between the first and second requests, on January 24, 2025, Carver served its Rule 26(a)(1) Initial Disclosures and produced a set of documents that it had already given the U.S. Coast Guard. These documents (see footnote), while enlightening in parts, were limited primarily to the 4-5 days surrounding the incident itself.[1] Save for a handful of select "near miss" reports and a single steering maintenance report, they do not contain the type of information sought by the Belt Line here—for example, information about the vessel for an expanded period before and after the incident; Carver's history of training and procedures related to navigation protocols, placement of lookouts, use of autopilot, reporting requirements, etc.; personnel records of the crew, including trainings, licenses, prior incidents, disciplinary actions, etc.; the tug's history of problems with navigation, steering, autopilot, etc.; and repairs made both before and after the allision that might indicate problems with the tug and Carver's knowledge of them.

Under Local Rule 26(C), Carver had 15 days after service, or until January 27, 2025, to object to the Belt Line's 1st RFPs. Carver did not do so until 40 days after service, or February 19,

---

[1] The documents include Master's Daily Vessel Reports from June 12-15, 2024 (4 days); 5 photos of the barge and the bridge; the crew matrix showing the crew members on June 15, 2024; limited information for the crew on credentials, pre-employment drug tests, and witness statements; Deck Logs from June 12-16, 2024 (5 days); illegible timesheets from the tug operator for June 2-15, 2024; Rough Deck and Engine Logs from June 12-16, 2024 (5 days); Daily Maintenance and Vessel Logs from June 12-16, 2024 (5 days); certain procedures; Daily Towlines from June 12-16, 2024 (5 days); forms submitted to the U.S. Coast Guard; Work Rest Hour Reports; Daily Logs for Near Miss Reports from February 28, 2024, April 1, 2024, May 3, 2024 and December 1, 2018; and a single steering maintenance report from February 20, 2024.

5

2025. *See* Carver's Objections to 1st RFPs (**Exhibit D**). The Belt Line notified Carver of its waiver in emails and in a meet and confer on February 14, 2025. *See* Counsel Emails (**Exhibit E**).

In the meet and confer, the Belt Line agreed to extend Carver's deadline for production, but not its objection date, to March 4, 2025. *See* **Exhibit E**. The Belt Line also contested Carver's specific objections by letter dated February 28, 2025. *See* Belt Line Letter (**Exhibit F**).

On March 4, 2025, Carver provided its responses to the 1st RFPs, with insurance records and previously missing electronic data as new documents. *See* Carver's Responses to 1st RFPs (**Exhibit G**). Its responses almost exclusively pointed the Belt Line only to the documents Carver already produced to the U.S. Coast Guard. The insurance records did not include a policy.

Carver provided objections to the Belt Line's 2nd RFPs and 1st ROGs on March 7, 2025. *See* Carver's Objections to 2nd RFPs and 1st ROGs (**Exhibit H**). The objections include impermissible general objections and numerous improper specific objections, like objections that topics would be better explored in deposition or that post-allision activities are not discoverable because they might be considered inadmissible remedial measures. On March 14, 2025, the Belt Line sent a letter contesting the objections. *See* Belt Line Letter (**Exhibit I**).

The parties participated in another meet and confer on March 17, 2024. With minimal exceptions, Carver did not withdraw its objections, instead contending that it would give the Belt Line additional documents only if and when required by the U.S. Coast Guard to do so.

On March 25 and 26, 2025, Carver served its responses to the 2nd RFPs and 1st ROGs, pointing again only to the documents it already produced to the U.S. Coast Guard and adding only one new document, a 19-page survey of the tug. *See* Carver's Responses to 2nd RFPs and Answers to 1st ROGs (**Exhibit J**).

To date, the Belt Line has virtually no insight into Carver's knowledge or records before or after the 4-5 day window surrounding the allision, save for a single set of "near miss" reports from 2024 and 2018.[2]  By agreement, the Belt Line has noticed depositions of Carver's crew and management for April 28-30, 2025, with Carver confirming availability.

## Argument

I.   **Carver's objections and responses to the 1st RFPs.**

   a.   **Carver waived all its objections by failing to comply with Local Rule 26**.

Under Local Rule 26 and Paragraph 3 of the Rule 26(f) Pretrial Order in this case, any objection to discovery must be served within 15 days of service of the discovery.  Carver failed to do so and all its objections should be overruled as waived.

   b.   **Carver improperly includes boilerplate general objections.**

In the event Carver's objections are allowed, its "General Objections" A through M should still be overruled because Local Rule 26 prohibits boilerplate objections. *See Acosta v. Med. Staffing of Am., LLC*, 2019 U.S. Dist. LEXIS at *13 (E.D. Va. Mar. 15, 2019).  All of Carver's "General Objections" are generic and not specifically tailored to any discovery requests.

   c.   **Carver's specific objections and responses are improper and incomplete.**

Even if Carver's objections are not waived, its specific objections are improper and should be overruled.  For ease of reference, the chart below identifies the challenged objections.  They are explained in detail after the chart and in the Belt Line's letter attached as **Exhibit F**.

---

[2]   Evidently, these "near miss" reports indicate known problems with the navigation or steering of the tug, but how they were located and whether other exist is unknown. Three date from 2024 and one from 2018.

7

| Request No. | Time Frame | Information Sought | Objection | Notes |
|---|---|---|---|---|
| 4 | June 10-20, 2025 | Course, position, and speed of the M/T MACKENZIE ROSE. | Post-allision information is remedial. | Electronic files produced in inaccessible format, apparently only for June 15, 2024.[3] |
| 16 | January 1, 2024 through September 15, 2024 | Log books of the M/T MACKENZIE ROSE. | Overbroad and burdensome and post-allision information is irrelevant and remedial. | Only June 12-16, 2024 produced (5 days). Request narrowly tailored to 2024, which included 3 near miss reports and a steering issue. |
| 17 | June 10-20, 2025 | Reports of displacement, drafts, trim, or list of M/T MACKENZIE ROSE. | Post-allision information is remedial. | Not produced. |
| 20 | June 10-20, 2025 | M/T MACKENZIE ROSE radar logs. | Post-allision information is remedial. | Only June 12-16, 2024 produced (5 days). |
| 21 | June 10-20, 2025 | M/T MACKENZIE ROSE radio logs. | Post-allision information is remedial. | Not produced. |
| 22 | June 10-20, 2025 | M/T MACKENZIE ROSE telex and fax logs. | Post-allision information is remedial. | Not produced. |
| 33 | January 1, 2019 through December 31, 2024 | Surveys, appraisals, and valuations of the M/T MACKENZIE ROSE. | Overbroad and burdensome and post-allision information is irrelevant and remedial. | Only most recent survey (post-allision) produced with 2nd RFPs. |
| 34 | On or after June 15, 2025 | Communications post-allision between the crew members and any government entity. | Post-allision information is remedial. | Only Carver counsel's correspondence starting July 1, 2024 produced. |

Carver objects to a majority of the 1st RFPs on the basis that post-allision documents are remedial in nature. However, Carver is conflating admissibility with discoverability. Fed. R. Civ. P. 26(b)(1) states that "the information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." The Fourth Circuit Court of Appeals has held that "it is not ground for objection that the information sought

---

[3] Carver produced Rose Point data in a format which the Belt Line has been unable to access despite establishing a Rose Point account.

will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Ralston Purina Co. v. McFarland*, 550 F.2d 967, 973 (4th Cir. 1977); *see also Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014) (finding "it is relevance not admissibility that drives the inquiry as to whether the information is discoverable.").

All the requested documents and communications relating to the allision are highly relevant to the limitation action and likely to lead to discovery of other admissible information, regardless of whether they relate to remedial actions or repairs. In fact, even remedial measures can lead to other discoverable information like evidence of knowledge or notice.

Carver's limited time frame for its responses is also unwarranted, since the Belt Line is entitled to explore Carver's "privity or knowledge" beyond the immediate time frame of the incident, "including pre-voyage unseaworthiness." *Crown Zellerbach*, 783 F.2d at 1303. The Belt Line asks that the Court compel Carver to provide full and complete responses to the 1st RFPs.

**II.     Carver's objections to the 2nd RFPs are improper.**

Carver also raised improper objections to the 2nd RFPs. Most of these objections mirror those in the 1st RFPs pertaining to the time frames for information requested. The objections are summarized in the chart below and in the Belt Line's letter attached as **Exhibit I**.

| Request No. | Time Frame | Information Sought | Objection | Notes |
|---|---|---|---|---|
| 1 | N/A | Documents including or relating to Carver's Safety Management Plan. | Vague and undefined. | This is required by law. *See* 33 C.F.R. § 96. |
| 2 | Since 2020 | Documents relating to safety and training programs | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 3 | Since 2020 | Documents relating to James Morrissey's training from Carver. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |

| 4 | N/A | Documents relating to the disciplinary history of James Morrissey. | Post-incident remedial action. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
|---|---|---|---|---|
| 5 | Since 2020 | Documents including "near miss" reports relating to the steering, navigation, and autopilot system on the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Only 4 produced. Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 6 | Past 10 years | Documents relating to prior accidents of the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Highly relevant. Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 7 | Past 10 years | Documents relating to prior accidents involving James Morrissey. | Overbroad and unduly burdensome. | Not produced. |
| 9 | Since 2020 | Documents evidencing repairs to the steering, navigation, and autopilot system on the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 10 | Past 10 years | Documents evidencing malfunctions of the steering, navigation, and autopilot system on the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 11 | Since 2020 | Documents evidencing training relating to the steering, navigation, and autopilot system on the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 12 | Since 2020 | Documents evidencing company protocols for lookouts on vessels in effect. | Overbroad and unduly burdensome. | Not produced. Highly relevant since there were apparently no lookouts during allision. |
| 13 | Since 2020 | Documents evidencing company protocols for the steering, navigation, and autopilot system on the M/T MACKENZIE ROSE. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 14 | Since 2020 | Documents evidencing company protocols for reporting allisions. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |

Carver objects to Request No. 4 on grounds that documents pertaining to James Morrissey's disciplinary history relate to post incident remedial action. As noted, post incident remedial action is an issue (potentially) of admissibility, not discovery. Carver's knowledge and actions taken regarding James Morrissey (operator of the tug) are directly related to the Belt Line's

claim and defense that Carver had knowledge of the circumstances that led to the allision. Request No. 4 is therefore relevant and the objection is improper.

Carver also objects to Request No. 10 vague because the term Safety Management System is undefined. However, this term is defined by regulation and Carver is required to have one. *See* 33 C.F.R. § 96 (defining safety management system as "a structured and documented system enabling Company and vessel personnel to effectively implement the responsible person's safety and environmental protection policies."). The Belt Line is entitled to this document.

Carver's objections to the time frame of the information sought are likewise improper. Carver's objections to Requests Nos. 2, 3, 5, 6, 7, 9, 10, 11, 12, 13, and 14 assert that the requests are unduly burdensome and overbroad as they seek information from before 2024. To the contrary, the requests are all relevant to the Belt Line's claims and defenses, particularly that the M/T MACKENZIE ROSE was known to be unseaworthy, and the 5-year and 10-year time frames are narrowly tailored to that purpose. Indeed, the one report available from before 2024 shows a "near miss" issue in 2018. Notably, Carver itself sought documents from the Belt Line from the initial construction of the current bridge, more than half a century ago. In a letter positing that the bridge might have been built as an "eggshell," Carver argued that, "documents showing the maintenance and condition of the bridge since its construction 66 years ago are highly relevant to determining the value of the bridge at the time it contacted Carver's vessel." Carver Letter (**Exhibit K**). [4]

Carver failed to produce any documents with its March 26, 2025 responses to the 2nd RFPs, referring only to non-responsive documents from its production to the U.S. Coast Guard. These responses, or lack thereof, are improper and incomplete. Given the amount at stake and upcoming

---

[4] Despite the length of time, the Belt Line produced drawings it was able to locate from 1958, and ownership documents back to 1892.

depositions in April, the Belt Line requests that this Court overrule Carver's objections and compel full and complete responses.

### III. Carver's objections to the 1st ROGs lack merit.

Carver's objections to the Belt Line's 1st ROGs are similarly baseless. The objections are encompassed in the chart below.

| ROG No. | Time Frame | Information Sought | Objection | Notes |
|---|---|---|---|---|
| 4 | N/A | Information relating to the operator of the vessel and previous suspensions or accidents. | Overbroad and not limited in time or scope. | Highly relevant. Not answered. |
| 7 | Post-allision | Information regarding actions taken by crewmembers to report the allision. | More properly subject to deposition testimony. | Highly relevant. Not answered. |
| 10 | Post-allision | Information related to when Carver notified the Belt line of the allision. | Belt Line already has this information. | Only USCG forms identified, not notice to the Belt Line. |
| 11 | Post-allision | Information related to the investigations conducted as a result of the allision. | More properly subject to deposition testimony. | Answer is non-responsive. |
| 17 | N/A | Information related to any act by the Belt Line that Carver contends contributed to the Belt Line's damages. | Seek information pertaining to the ultimate issue. | Not answered. |
| 18 | N/A | Information related to any act by another party or person outside Carver's control that Carver may contend contributed to the damages. | Seek information pertaining to the ultimate issue. | Not answered. |
| 19 | Past 10 years | Identification of any time the M/T MACKENZIE ROSE had issues with steering or navigation. | Overbroad and unduly burdensome. | Documents to date show "near miss" issues with the vessel dating back to 2018. |
| 20 | June 15, 2025 | Information relating to Carver's inspection or testing of the steering, navigation, and autopilot systems on the date of the allision | More properly subject to deposition testimony. | Highly relevant. Not answered. |
| 21 | N/A | Basis of Carver's affirmative defenses as stated in the pleadings | Overbroad and unduly burdensome. | Not answered. Affirmative defenses are boilerplate. |

12

Carver objects to Interrogatory No. 4 on the ground that it is overbroad and not limited in time or scope. However, the interrogatory seeks information directly related to the claims and defenses in this matter and any prior accident or suspension is relevant. No time limit is required and the objection should be stricken.

Carver objects to Interrogatory No. 10 on grounds that the Belt Line already has the information. This is not a valid objection. Carver should be required to state under oath what it did or did not do to notify the Belt Line.

Carver objects to Interrogatory Nos. 7, 11, and 20 on grounds that they are more properly subject to deposition testimony. This is not a valid objection. These interrogatories all pertain to the claims and defenses in this case and therefore require answers. There is no reason why the information is not discoverable in interrogatory form, and the Belt Line is entitled to full and complete answers to Interrogatory Nos. 7, 11, and 20.

Carver also objects to the Belt Line's Interrogatory Nos. 17 and 18 because they seek information "pertaining to the ultimate issue" in this matter. However, Carver fails to provide any explanation as to why this would prevent it from answering. Both are directly related to the damages sought in this case and defenses asserted by Carver and therefore require answers.

Carver also improperly objects to Interrogatory Nos. 19 and 21 because it claims the requests are overbroad and unduly burdensome. It does not explain either point. These interrogatories seek information relevant to the Belt Line's claims and defenses, particularly Carver's knowledge that the M/T MACKENZIE ROSE was unseaworthy. The tug's prior issues with steering and navigation reflect on that claim directly, and the 10-year time period is reasonably designed to explore Carver's knowledge of those issues with the vessel.

Carver fails to provide answers to any of the above interrogatories, instead relying on its objections. For the reasons stated, all of Carver's objections to the 1st ROGs are without merit and the Belt Line asks this Court to require Carver to fully answer all of them.

### IV.     Carver failed to produce a privilege log.

Carver also failed to produce a privilege log though it objected to multiple requests based on privilege. Specifically, Carver objects to Requests Nos. 4, 16, 17, 20, 21, 22, 30, and 33 from the 1st RFPs and Interrogatories 1, 2, 11, 15, 17, 18, and 21 from the 1st ROGs based on privilege.

Federal Rule of Civil Procedure 26(a)(5)(A) requires that when information is withheld based on a claim of privilege, the party must "describe the nature of the documents" it claims to be privileged. Carver failed to do so and the objections should be waived.

### V.     Carver failed to produce a copy of its insurance policies under Rule 26.

Carver has also failed to comply with the Federal Rules of Civil Procedure by providing policy cover sheets for its vessels instead of the policies themselves. Pursuant to Fed. R. Civ. P. 26(a)(1), a party must produce "***any insurance agreement*** under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. P. 26(a) (emphasis added). Carver did not do so, and the Belt Line asks this Court to compel Carver to produce the relevant policies.

### Conclusion

WHEREFORE, the Belt Line respectfully requests that this Court enter an Order: (1) striking all of Carver's objections to the 1st RFPs as waived under EDVA Local Rule 26; (2) striking all of Carver's "General Objections" as improper under EDVA Local Rule 26; (3) overruling Carver's objections to 1st RFPs 4, 16, 17, 20, 21, 22, 33, and 34; 2nd RFPs 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, and 14; and 1st ROGs 4, 7, 10, 11, 17, 18, 19, 20, and 21; (4) ordering Carver

to immediately provide full and complete answers and responses to the Belt Line's 1st RFPs, 2nd RFPs, and 1st ROGs; (5) overruling Carver's privilege objections for lack of a privilege log; (6) compelling Carver to produce its complete insurance policies under Rule 26(a)(1); (7) awarding the Belt Line its costs and fees associated with this Motion; and (8) granting the Belt Line all other just and necessary relief.

Dated: March 31, 2025

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By: /s/ W. Ryan Snow
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

15

## **CERTIFICATE OF SERVICE**

   I certify that on this 31st day of March 2025, I served the foregoing by electronic mail on the following:

James H. Rodgers, Esq.
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel No.: (212) 702-6771
Fax No.: (212) 710-3950
*James.Rodgers@clydeco.us*

Harold L. Cohen. Esq.
CLYDE & CO US LLP
1221 Brickell Ave #1600
Miami, FL 33131
Tel No.: (202) 747-5108
Fax No.: (202) 747-5150
*Harry.Cohen@clydeco.us*

Michael Roman, Esq.
CLYDE & CO US LLP
30 S. Wacker Drive, Ste 2600
Chicago, IL 60606
Tel No.: (312) 635-6971
Fax No.: (312)635-6950
*Michael.Roman@clydeco.us*
*Attorneys for Coeymans Marine Towing, LLC, d/b/a Carver Marine Towing*

Mark C Nanavati, Esq. (VSB #38709)
G. Chris Jones, Jr., Esq. (VSB #82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company, s/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ CRAIG LLP
11525 N. Community House Rd, Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company s/s/o Norfolk and Portsmouth Belt Line Railroad Company*

                */s/ W. Ryan Snow*