# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division
## In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of MiT Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

## WRITTEN OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

Pursuant to Fed. R. Civ. Pro. 26 and 34 and Eastern District of Virginia Local Rule 26, Petitioners Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver Marine") by counsel, responds to Claimant/Respondent Norfolk and Portsmouth Line Railroad Company's (the "Belt Line") Request for Production of Documents and Things as follows:

### INTRODUCTION

Each of Carver Marine's responses is made subject to the general objections set forth below. These limitations and objections form a part of the response to each and every Request and are set forth here to avoid duplication and repetition. Although these general objections may be referenced specifically in a response, failure to mention a specific general objection should not be construed as a waiver of any such objection. Moreover, the assertion of the same, similar or additional objections in response to a specific Request does not waive any of Carver Marine's other objections, as set forth



below. Carver Marine reserves the right to supplement, amend or correct any and/or all of its objections and answers, as appropriate.

## **GENERAL OBJECTIONS**

A. Carver Marine objects to each Request to the extent that it seeks to impose any obligations on Carver Marine that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Eastern District of Virginia, and any other applicable law.

B. Carver Marine objects to each Request to the extent that it seeks information and/or documents that are not discoverable under federal or maritime law.

C. Carver Marine objects to each Request to the extent that the information/documents sought are not related to establishing jurisdiction over Carver Marine and are beyond the scope of permissible discovery.

D. Carver Marine objects to each Request to the extent that the information/documents sought relate to facts that are not actually in dispute.

E. Carver Marine objects to each Request to the extent that it is overbroad and unduly burdensome, oppressive, vague or ambiguous, seeks information and/or documents that are unrelated to any party's claim or defense and not proportional to the needs of the case.

F. Carver Marine objects to each Request to the extent that the information or documents sought are unreasonably cumulative or duplicative or are obtainable from some other source that is more convenient, less burdensome or less expensive.

G. Carver Marine objects to each Request to the extent that it is not limited in time or scope and is not limited to a reasonable period of time or scope.

H. Carver Marine objects to each Request to the extent that it seeks the production of information and/or documents not within Carver Marine's possession, custody or control and to the extent it requires Carver Marine o respond on behalf of persons or entities other than Carver Marine.

I. Carver Marine objects to each Request to the extent that it seeks the production of information and/or documents that are already in the possession of claimant.

J.      Carver Marine objects to each Request to the extent that it seeks the production of information and/or documents protected from disclosure by the attorney client privilege, the attorney work product doctrine, or any other privileges, doctrines, rules, protections or immunities under any and all applicable law.  Any inadvertent disclosure of privileged information will not be deemed a waiver of any protection or privilege that might apply to such information.

K.      Carver Marine objects to each Request to the extent that it seeks the production of information and/or documents that constitute trade secrets and confidential or proprietary business or other information, or information subject to confidentiality agreements, protective orders, or statutory or common law confidentiality requirements.

L.      Carver Marine objects to each Request to the extent that it is unduly burdensome and not limited to information that can be provided with reasonable effort and at a reasonable expense.

M.      Carver Marine objects to each Request to the extent it seeks information generated subsequent to the commencement of this litigation.

In addition to the objections listed above, Carver Marine reserves the right to make further objections and assertions of privilege as may be applicable.

## RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

1.      Produce any and all **documents** listing the officers or crew members assigned to the **Vessel** on or before June 15, 2024.

**RESPONSE: Carver Marine objects to this request as vague and overbroad as it seeks information before the date of the incident. Notwithstanding the foregoing objections, Carver Marine will produce documents relating to crew assignments on the date of the incident, June 15, 2024.**

2.      Produce the personnel file of each and every officer and crew member assigned to or present aboard the **Vessel** or **Barge** on June 15, 2024, including, as to each, his or her last known address and his or her last W-2 form.

**RESPONSE: Carver Marine objects to that portion of Request No. 2 seeking crew members' home addresses and W-2 forms. All requests to crew members will be served on counsel for Carver Marine. Crew members' W-2s are not discoverable nor relevant to this proceeding, and such request is an attempt to harass Carver's witnesses.**

3. Produce each and every **document** that indicates or contains the last known address of James Morrissey.

**RESPONSE:**

4. Produce each and every **document** that portrays, describes, or purports to portray or describe, the course, position, and speed of the **Vessel** at any time from June 10 through June 20, 2024.

**RESPONSE: Carver Marine objects to that part of Request No. 4 seeking post–June 15, 2024 data and communications, as the Request seeks information that is post-incident, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 4 for the period June 10, 2024 through June 15, 2024, the date of the Incident.**

5. Produce the towing plan, if any, in effect for the **Vessel** at the time of the **Incident**.

**RESPONSE:**

6. Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all voice recorders whether in electronic, paper, or other form.

**RESPONSE:**

7. Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all chart-plotters, whether in electronic, paper, or other form.

**RESPONSE:**

8. Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all voyage data recorders, whether in electronic, paper, or other form.

**RESPONSE:**

9. Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all video recorders, whether in electronic paper, or other form.

**RESPONSE:**

10.	Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all radars, whether in electronic, paper, or other form.

**RESPONSE:**

11.	Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all Automatic Identification Systems ("AIS"), whether in electronic, paper, or other form.

**RESPONSE:**

12.	Produce any and all data records or transcripts from the **Vessel** on June 15, 2024, for any and all Automatic Radar Plotting Aid ("ARPA") devices, whether in electronic, paper, or other form.

**RESPONSE:**

13.	Produce each and every **document** containing any video or data depicting or reflecting the display of any radar, AIS, or ARPA aboard the **Vessel** during its transit of the Elizabeth River on the day of the **Incident**.

**RESPONSE:**

14.	Produce each and every document containing any photograph, video, or audio recording of any communications or activities on the **Barge** on June 15, 2024, including any video or photograph showing the Barge making contact with, or in the vicinity of, the Belt Line's Railroad Bridge.

**RESPONSE:**

15.	Produce each and every document containing any photograph, video, or audio recording of any communications **or** activities on the bridge (or wheelhouse), decks, or line handling stations of **the Vessel** on June 15, 2024, including any video or photograph showing the **Vessel** making contact with, or in the vicinity of, the **Belt Line's Railroad Bridge.**

**RESPONSE:**

16. Produce each and every (rough, smooth, official, or unofficial): deck log, wheel house bell book, bearing book, gyrocompass log, engine room log, engine bell log, and depth recorder trace for the **Vessel** during the period of January 1, 2024 through September 15, 2024.

**RESPONSE: Carver Marine objects to Request No. 16 on the grounds that the Request is overbroad and burdensome, seeks post-incident data and information which is irrelevant, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 16 for the period June 10, 2024 through June 15, 2024, the date of the Incident.**

17. Produce any and all reports, log entries, or other records memorializing the displacement, drafts, trim, or list of the Vessel or the **Barge** for the period of June 10 through June 20, 2024.

**RESPONSE: Carver Marine objects to that part of Request No. 17 seeking post–June 15, 2024 data and communications, as the Request seeks information that is post-incident, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 17 for the period June 10, 2024 through June 15, 2024, the date of the Incident.**

18. Produce any and all **documents** that describe or indicate how the **Barge** was made up to the **Vessel** at the time of the Incident.

**RESPONSE:**

19. Produce the **Vessel's** power graphs pertaining or relating to engine speed and operation applicable on the day of the **Incident**.

**RESPONSE:**

20. Produce the **Vessel's** radar logs for the period of June 10-20, 2024.

**RESPONSE: Carver Marine objects to that part of Request No. 20 seeking post–June 15, 2024 data and communications, as the Request seeks information that is post-incident, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 20 for the period June 10, 2024 through June 15, 2024, the date of the Incident.**

21. Produce the **Vessel's** VHF log and any other radio logs for the period of June 10 – 20, 2024.

**RESPONSE: Carver Marine objects to that part of Request No. 21 seeking post–June 15, 2024 data and communications, as the Request seeks information that is post-incident, remedial in nature, and**

privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 21 for the period June 10, 2024 through June 15, 2024, the date of the Incident.

22. Produce the **Vessel's** telex and facsimile logs for the period of June 10-20, 2024.

**RESPONSE: Carver Marine objects to that part of Request No. 22 seeking post–June 15, 2024 data and communications, as the Request seeks information that is post-incident, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 22 for the period June 10, 2024 through June 15, 2024, the date of the Incident.**

23. Produce any and all records from the Vessel's INMARSAT and any other satellite communications system for the period 0001 hours to 2400 hours on the day of the Incident.

**RESPONSE:**

24. Produce any and all **documents**, including, but not limited to, contracts, invoices, and indemnity agreements, pertaining to the provision of pilotage, including federal, state, and docking or tug pilots, to the **Vessel** on June 15, 2024.

**RESPONSE:**

25. Produce any and all documents pertaining or relating to or referencing the relevant tides or currents during the course of the Vessel's transit of the Southern Branch of the Elizabeth River on June 15, 2024.

**RESPONSE:**

26. To the extent not produced in response to previous requests, produce any and all voyage records for the **Vessel** or **Barge** pertaining to June 15, 2024, including without limitation, all official logs, rough and smooth deck and engine room logs, bell books, navigation charts, navigation work books, compass deviation cards, gyro records, stowage plans, records of draft, aids to mariners, night order books, radiograms sent and received, radio logs, crew and passenger lists, and articles of shipment. This request specifically relates to information and records required to be retained on behalf of the vessel pursuant to the requirements of 46 C.F.R. § 4.05-15.

**RESPONSE: Carver Marine objects to Request No. 26 to the extent it requires an interpretation of statutory law. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to the request contained in Request No. 26.**

27. Produce any and all photos or videos relating or pertaining to the Incident, or the aftermath thereof, taken at any time by anyone, including, but not limited to, photographs and videos of damage to the **Vessel,** the **Barge,** or the **Belt Line's Railroad Bridge**.

**RESPONSE:**

28. Produce any and all photos or videos relating or pertaining to the **Belt Line's Railroad Bridge** or its fendering system taken at any time by anyone.

**RESPONSE:**

29. Produce any and all **documents** obtained from any government entity, including but not limited **to** the United **States** Coast Guard, pertaining to the **Incident,** whether pursuant to any request under the Freedom of Information Act or otherwise.

**RESPONSE:**

30. Produce any and all **documents** and records memorializing or evidencing steps taken by anyone to report the **Incident** under 46 CFR 4.05-1.

**RESPONSE: Carver Marine objects to Request No. 30 to the extent it requires an interpretation of statutory law, is vague and overbroad, and requests information deemed privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents and records relating to the "reporting" of the Incident.**

31. Produce any and all **documents you** have provided to any government entity, including but not limited to the United States Coast Guard, pertaining to the **Incident.**

**RESPONSE:**

32. Produce any and all **documents** pertaining to management and operation of the **Vessel** or **Barge**, including, but not limited to, charters, subcharters, and management and/or operating agreements pertaining to any period inclusive of June 15, 2024.

**RESPONSE: Carver Marine objects to Request No. 32 on the grounds that the request is overbroad. Notwithstanding the foregoing objections, Carver Marine will endeavor to locate and produce documents relating to the June 15, 2024, voyage.**

33. Produce any and all documents relating to surveys, appraisals, valuations, or refinancing of the M/T MACKENZIE ROSE during the period from January 1, 2019 through December 31, 2024.

**RESPONSE: Carver Marine objects to Request No. 33 on the grounds that the request is overbroad and burdensome, seeks post-incident data and information which is irrelevant, remedial in nature, and privileged. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 33 reflecting the most recent survey, appraisal, valuation, or refinancing taken or conducted prior to the date of the Incident.**

34. Produce any and all documents and records not already produced, reflecting or memorializing communications pertaining to the Incident to or from **you**, the **Vessel's** officers or crewmembers, or any government entity, including but not limited to the United States Coast Guard, on or after June 15, 2024.

**RESPONSE: Carver Marine objects to Request No. 34 to the extent this request is requesting documents remedial in nature. Notwithstanding objections, Carver Marine will endeavor to locate and produce documents responsive to Request No. 34.**

Dated:    February 19, 2025

Respectfully submitted,

CLYDE & CO US LLP

By:*/s/ Harry L. Cohen* _____
Harold L. Cohen, Esq.
VSB No.: 98148
1221 Brickell Avenue, Ste. 1600
Miami, Florida 33131

James H. Rodgers, Esq.

Pro Hac Vice
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel No.: (212) 702-6771
Fax No.: (212) 710-3950
Email: james.rodgers@clydeco.us

Michael H. Roman, Esq.
Pro Hac Vice
30 S. Wacker Drive, Ste. 2600
Chicago, IL 60606
Dawn L. Johnson, Esq.
Pro Hac Vice Forthcoming
Tel: (312) 635-6971
Fax: (312) 635-6950
Email: Michael.roman@clydeco.us;
Dawn.johnson@clydeco.us
*Attorneys For Coeymans Marine Towing, LLC D/B/A Carver Marine Towing*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of February 2025, I served the foregoing by electronic mail on the following:

| | |
|---|---|
| James H. Rodgers, Esq.<br>CLYDE & CO US LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 1O 174 | 13811 Village Mill Drive<br>Midlothian, Virginia 23114<br>(804) 893-3866 (Nanavati)<br>(804) 893-3862 (Jones)<br>(804) 378-2610 (Facsimile) |
| Tel No.: (212) 702-6771 | mnanavati@snllaw.com |
| Fax No.: (212) 710-3950 | cjones@snllaw.com |
| Email:james.rodgers@clydeco.us | *Counsel for Evanston Insurance Company, s/s/o Norfolk and Portsmouth Belt Line* |
| Joseph Macy, Esq.<br>CLYDE & CO US LLP<br>1775 Pennsylvania Avenue NW Suite 400<br>Washington, DC 20006 | *Railroad Company* |
| | Zachary M. Jett, Esq. (VSB #93285)<br>BUTLER WEIHMULLER KATZ CRAIG LLP |
| Tel No.: (202) 747-5108 | |
| Fax No.: (202) 747-5150 | 11525 North Community House Road, Suite 300 |
| Email: *joseph.macy@clydeco.us* | |
| *Attorneys for Coeymans Marine Towing, LLC, d/b/a Carver Marine Towing* | Charlotte, North Carolina 28277<br>(704) 543-2321 (Telephone) |
| | (704) 543-2324 (Facsimile)<br>zjett@butler.legal |
| Mark C Nanavati, Esq. (BSB #38709) | *Counsel for Evanston Insurance Company,* |
| G. Christophen Jones, Jr., Esq. (VSB | *s/s/o Norfolk and Portsmouth Belt Line* |

| | |
|---|---|
| #82260)<br>SINNOT, NUCKOLS & LOGAN, P.C. | *Railroad Company* |
| | |
| | |

Dated:   February 19, 2025

/s/ Rachel L. Werner<br>_____