# CLYDE&CO

Clyde & Co US LLP
30 S Wacker Drive
Suite 2600
Chicago, Il 60606
United States of America
Telephone: +1 312 635 7000
Facsimile: +1 312 635 6950
www.clydeco.com

Michael J. Roman
michael.roman@clydeco.us
(312) 635-6971

March 11, 2025

**VIA E-MAIL ONLY**

Mackenzie R. Pensyl, Esq.
CRENSHAW, WARE & MARTIN, P.L.C.
mpensyl@cwm-law.com

> Re:   *Coeyman's Marine Towing, LLC d/b/a Carver Marine Towing*, No. 2:24-cv-00490 (E.D. Va)
> Objections to Carver's First Set of Requests for Production

Dear Counsel:

Thank you for serving the Railroad's Objections to Carver's First Set of Requests for Production on February 27, 2025. We have had the opportunity to review and request pursuant to Federal Rule of Civil Procedure 37 and Local Rule 37(E) that the Railroad withdraw its unnecessary, deficient, and boilerplate objections for the reasons stated here and others.

Preliminarily, we note and appreciate the Railroad has no objections to RFP Nos. 1, 6, and 7. Carver looks forward to receiving those responsive documents immediately. As for the objections stated to RFP Nos. 2, 3, 4, and 5, please consider the following:

**RFP No. 2: All documents for the construction of the Railroad's bridge.**

Carver understands the Railroad contends it would be unduly burdensome and disproportionate to the needs of the case to produce these documents because the bridge was built in 1958. Carver disagrees. The fact the Railroad's bridge was old has no bearing on the scope of relevant and permissible discovery. Carver is entitled to

40106445

Clyde & Co US LLP is a Delaware limited liability partnership with offices in
Atlanta, Boston, Chicago, Dallas, Denver, Las Vegas, Los Angeles, Miami, New Jersey, New York, Orange County, Phoenix,
San Francisco and Washington D.C.
Clyde & Co US LLP is affiliated with Clyde & Co LLP, a limited liability partnership registered in England and Wales.

EXHIBIT

**K**

Mackenzie R. Pensyl, Esq.
March 11, 2025
Page 2



understand how it was initially designed, who designed it, who built it, how it was constructed, the materials used, how much it cost in 1958, who financed it, who paid for it, how it was paid for, and things like whether the Railroad (or whoever built it) selected the cheapest bid or cut corners during construction. All of this information is relevant to determining the values of the bridge in 1958 and when it made contact with Carver's vessel, unless the Railroad wishes to withdraw its prayer to recover for damages the bridge allegedly suffered.

Carver notes the Railroad does not explain how or why producing original construction documents for its old bridge are unduly burdensome or disproportional. The objections simply note the request is "overly broad and unduly burdensome" and seeks "irrelevant" documents. "The party claiming that a discovery request is unduly burdensome must allege specific facts that indicate the nature and extent of the burden." *Sziber v. Dominion Energy*, No. 3:20-cv-117, 2021 U.S. Dist. LEXIS 250163, *8 (E.D. Va. Sept. 14, 2021) (overruling objections that simply stated locating records could take "many hours, maybe weeks, of compiling documents"). The Railroad does not, for example, say it cannot access to the old construction documents or that they are in possession of another party. Nor has the Railroad provided any evidence showing how heavy of a lift it would be to locate and produce these documents. It appears the Railroad simply believes the old age of the bridge alleviates it from its discovery obligations under the Federal Rules, which is not the case.

For the avoidance of confusion, this request encompasses more than the "plans and construction drawings." It includes the as-built drawings, bids, proposals, agreements and contracts for design and construction, contractor reports during construction, financing documents, invoices, payments for materials and contractors, communications related to the design and build, and any other documents related to the construction of the bridge.

Please withdraw these deficient objections and produce the documents within seven (7) days.

**RFP Nos. 3 & 4:      Documents showing whether the Railroad maintained its bridge over the last 66 years.**

Preliminarily, the Railroad is correct that RFP No. 4 pertains to the bridge at issue in this case. With that confirmation, Carver presumes the vagueness objection will be withdrawn with haste.

As for the Railroad's unduly burdensome and proportionality objections to RFPs 3 and 4, Carve incorporates and restates its response to RFP No. 2 stated above as if fully set forth here. Once again, the Railroad does not state how or why

Mackenzie R. Pensyl, Esq.
March 11, 2025
Page 3



producing documents showing whether and how the Railroad maintained and repaired the bridge over the last 66 years is burdensome or beyond the issues at hand here. These objections are deficient and should be withdrawn.

Documents showing the maintenance and condition of the bridge since its construction 66 years ago are highly relevant to determining the value of the bridge at the time it contacted Carver's vessel and its structural integrity. If the Railroad did not repair or maintain the bridge, and no documents exist, then the Railroad can state as much. This clearly would not impose any real burden on the Railroad.

If, as is more likely the case, the Railroad performed repairs and maintenance on the bridge since it was built in 1958, Carver is entitled to receive these documents and information to assess its historical condition and value on the date of the incident. It is also entitled to know whether, for example, the Railroad failed to implement necessary repairs and maintenance that engineers or contractors recommended. These documents and information might show whether the bridge was structurally sound when it contacted the vessel, or whether it was in a state of disrepair and thus incurred more damage than might have been foreseeable.

Carver also notes it has no information from the Railroad, currently, about the materials used to construct and/or maintain the bridge. As best it can tell from visual observation, the bridge is made of some combination of metal, steel and concrete. Those materials are known to corrode or deteriorate over time, particularly if subjected to rain, sleet and the climate conditions of Norfolk, Virginia. Carver is entitled to understand whether and how the Railroad's maintenance of the bridge, or lack thereof, may have contributed to the structural integrity of the bridge and its ability to withstand impacts and/or mitigate the effects of the same. All of this information is relevant to potential liability and the damages sought by the Railroad and will be required reading for the parties' anticipated engineering experts to opine on whether the bridge was structurally sound or an eggshell on the date in question.

Again, the Railroad has simply said the old age of the bridge makes it unduly burdensome to search its own records and provide Carver with information about the condition of the bridge during its 66-year life. The Railroad has not actually identified any evidence showing how or why locating and producing these records are unduly burdensome or disproportional. These boilerplate objections are insufficient under the Federal Rules of Civil Procedure.

Please withdraw the objections and produce the responsive documents within seven (7) days.

40106445



**RFP No. 5:    The Railroad's confidential repair information.**

Carver understands the Railroad refuses to provide information on how it repaired the bridge until the parties agree to a protective order because said documents contain "propriety or confidential information." Carver provided comments on the draft and has not yet heard from the Railroad on the proposed changes. Carver did not propose any real substantive changes, though, and agrees that "proprietary data," to the extent contained in repair documents, should be considered confidential.  Since the parties agree on that framework, there is no real concern or reason for the Railroad to withhold documents Carver is entitled to discover. The proposed Protective Order, as drafted by the Railroad, also allows for the parties to designate documents as "Confidential" that were previously produced without designation. Carver agrees to that provision as well. There doesn't seem to be a genuine dispute over handling of the Railroad's confidential documents showing how it repaired the 66-year-old bridge.

Please withdraw the objections and produce them within seven (7) days.

**Conclusion.**

If the Railroad would like to confer on these issues, we can be available for a telephone or videoconference on March 13, 2025 or March 14, 2025 any time.

We look forward to hearing from you and continuing our cooperative undertaking among counsel to exchange all necessary discovery to bring this litigation to an efficient resolution. Thank you.

Very truly yours,

Clyde & Co US LLP

Michael J. Roman

MJR
CC:    James L. Chapman, Esq.
       W. Ryan Snow, Esq.
       Zachary M. Jett, Esq.
       Mark C. Nanavati, Esq.
       James H. Rodgers, Esq.
       Harold L. Cohen, Esq.

40106445

Mackenzie R. Pensyl, Esq.
March 11, 2025
Page 5



Dawn L. Johnson, Esq.
Rachel L. Werner, Esq.

40106445