**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge occurring June 15, 2024 in and about the Elizabeth River, Virginia. | **Civil Action No: 2:24-cv-00490** |

**CARVER MARINE TOWING'S BRIEF IN RESPONSE
TO NORFOLK'S MOTION TO COMPEL AND MOTION
FOR PROTECTIVE ORDER AND MOTION FOR EXTENSION OF TIME**

Petitioner Coeymans Marine Towing, LLC dba Carver Marine Towing ("Petitioner" or "Carver"), for its Response in Opposition to Norfolk and Portsmouth Belt Line Railroad's ("Norfolk") Motion to Compel (ECF 42-23), Cross-Motion for Protective Order under Federal Rule of Civil Procedure 26(a), and, alternatively, Motion for Extension of Time to Assert Objections, states as follows:

**<u>INTRODUCTION</u>**

Although the parties conducted a meet and confer on March 17, 2025, whereas Carver agreed to compromise in responding to Norfolk's overreaching and burdensome demands, Norfolk clearly has no interest in resolving the issues. Norfolk's position is: we demand, you produce. If you don't, we will file a motion to compel — in fact, from the beginning counsel has <u>threatened</u> Carver with this motion. Norfolk's motion states the parties conferred on these issues, but it notably lacks the requisite representation that Norfolk actually made good faith efforts to resolve or narrow

the dispute. ECF 43 at 4; see also L.R. 37(E).  In particular, Norfolk made no attempt whatsoever to confer on Carver's 2nd RFPs and Answers to Interrogatories. Both were served on March 25, 2025. Norfolk filed this motion six days later without ever discussing the document production or Answers.

As outlined below, Carver's document production is complete with the exception of several narrow scope objections.  See *Jenkins v. Wal-Mart Stores, Inc.*, 2021 U.S. Dist. LEXIS 66128, *9 (E.D. Va. April 5, 2021) ("Counsel's letter clearly did not comply with Local Rule 37(E)," which "instructs the Court not to consider any motion to compel absent a good faith effort to resolve the dispute without court intervention").  Counsel's threats from the outset to file this motion and silence about actually conferring in good faith speak volumes.

**The Incident**

Petitioner's Complaint sets forth in detail the facts of the incident.  Counsel's inclusion of photographs and editorial comment is nothing more than an attempt to poison the Court with regards to the instant motion.  It is true, the bridge was stationary.  It is also true that the bridge was originally built in 1898 and reconstructed in 1958 after the federal government deemed it an unreasonable obstruction to maritime traffic.  As discovery is ongoing, it has yet to be established what condition the bridge was in — or even if it was operational — at the time of the incident. Norfolk claims its repair damages total $13M, but that has yet to be proven.  It also claims to have suffered "economic losses," but to date has failed to produce any proof — documents or otherwise — setting forth its lost income claim.  Presumably, ten (10) months after the collision, Norfolk should have documented losses to date.  Especially so since tax filings are due in a matter of days. If Norfolk suffered any losses, then they would have already calculated them by now.  But to date — nothing.

## <u>The Law of Limitation</u>

Carver filed its Petition for Exoneration and/or Limitation in a timely and correct manner. This Court accepted Carver's Certified Letter of Undertaking, as well as Certified Letters of Undertaking from all three of its insurers. Carver published the required Notice in the Virginia Pilot. Issue has been joined. The Claims are subject to limitation pursuant to 46 U.S.C. §30523. <u>et</u> <u>seq</u>. This Court has jurisdiction over this matter.

Counsel's derisive tone regarding Carver's statutory right to seek the protections afforded under the Limitation Act is indecorous and not worthy of the Admiralty Bar. Accusing Carver of "reaping the benefit" that Congress has so afforded it under the law manifests a disrespect for the law ─ a law that Norfolk is sure to rely on in its attempt to break Carver's right to exoneration and/or limitation. Carver objects to counsel's machinations.

Counsel's sole argument as to why Norfolk should be permitted its burdensome discovery (some of its demands request 10 years of records) is that Carver has the burden to prove that it was without privity or knowledge of the negligence and/or unseaworthiness. While this is correct, an owner's burden is limited to establishing that it had privity or knowledge of the negligence or unseaworthiness that <u>caused</u> the incident. *Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 730 F. 2d 159, 166 (4th Cir. 1984). Indeed, Counsel concurs with *Hellenic's* holding that petitioner has the burden "of proving that he was without privity or knowledge of the condition or negligence <u>responsible for the collision</u>". *Id*. (emphasis added.) Thus, in determining the scope of discovery the Court is tasked with applying both relevancy as well as equity in resolving discovery disputes.

Counsel cites Fifth Circuit case law in asserting that unseaworthiness can include having insufficient equipment or an insufficiently competent and trained crew. See *Crown Zellerbach v. Ingram Indus.,* 783 F. 2d 1296, 1303 (5th Cir. 1986), *SCF Waxler Marine, LLC v. Aris T M/V*, 24

3

F. 4th 458, 472 (5th Cir. 2022).  Without adopting or rejecting the Fifth Circuit's rule of law, and such analysis of the controlling law being premature and one of the substantive issues to be determined at trial, Carver objects to the scope and breadth of Norfolk's requests.  Counsel attempts to broaden the scope of the condition or seaworthiness to include the life of the tug. That is, by Counsel's own admission, not the rule of law.

### Production to Date

In the summer of 2024, the U.S. Coast Guard and the NTSB conducted a thorough investigation of this incident.  There, Carver produced extensive and relevant documents as set forth *infra*.  The Coast Guard and the NTSB conducted hearings/interviews of all relevant witnesses, including the crew as well as selected management at Carver.  Counsel for all interested parties were present, including counsel for Norfolk.

Although Counsel mocks Carver's production of the documents produced by Carver to the Coast Guard/NTSB, the reality is that a government investigation generally is far more invasive and thorough than a civil action.  Admittedly, the FRCP and FRE are mutually exclusive of those standards attached to an investigation, and parties are bound to, and restricted by, both the FRCP and FRE.  Carver has and continues to conduct its discovery consistent with both.  Notwithstanding that, the documents produced to the Coast Guard and NTSB are voluminous, highly relevant, and address the very issues tantamount to this case.  Indeed, counsel's Footnote 1 to his Brief lists the documents produced, including Deck, Vessel and Engine Logs, photographs, crew matrix, drug tests, crew credentials, witness statements, timesheets, maintenance records, towline reports, Work/Rest Hour Reports, "Near Miss" Reports, and single steering maintenance reports.  Carver agreed to produce documents beyond the scope of the Coast Guard/NTSB Investigation, and which could go to the issue of any pre-voyage seaworthiness.  However, counsel rejected Carver's good

4

faith efforts to come to a reasonable and equitable accommodation.  Below we address each disputed request and/or interrogatory, Carver's objections to same, and Carver's stated reasons and basis for each item.

Preliminarily, we refute counsel's incorrect and frivolous argument that Carver waived all its objections to the 1st RFP.  This is <u>patently untrue</u>.  Norfolk failed to serve its 1st RFP to the attorneys of record.  This office informed counsel of this and requested that Norfolk withdraw this allegation.  Counsel refused, and worse, now repeats the false allegation in this motion.  Respectfully, counsel should be admonished for this conduct.

<u>**LEGAL STANDARDS**</u>

"All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1)" in two fundamental ways: (1) requests must be "relevant to any party's claim or defense;" and (2) "proportional to the needs of the case." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) (citing Fed. R. Civ. P. 26(b)(1)).  The proportionality prong, particularly, "relieves parties from the burden of taking unreasonable steps to ferret out every relevant document" that may marginally bear on the issues in the case.  *Id.*  Rule 26(c), in turn, provides the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense" limiting discovery, including by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1); see also *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("district courts enjoy nearly unfettered discretion to control the timing and scope of discovery …"); Fed. R. Civ. P. 37(a)(5)(B) (if a motion to compel under Rule 37 is "denied, the court may issue any protective order authorized under Rule 26(c) …"); Fed. R. Civ. P. 37(a)(5)(C) (same but if a motion is "granted in part and denied in part").

## ARGUMENT

**A.  Carver did not waive any objections.**

Norfolk's claim that Carver waived objections under Local Rule 37 is without merit.  On December 20, 2024, this Court entered an Order providing that "no party will be required to respond to a deposition notice or other form of discovery sooner than February 4, 2025, unless specifically ordered." ECF 29.  That same order reads objections to discovery "should be served within fifteen (15) days after service of such discovery requests," but it does not specifically order any party to provide objections before February 4, 2025.  Norfolk served its 1st RFPs on January 10, 2024, making the 15-day objection deadline before February 4, 2025.  This directly conflicts with the Court's Order of December 20, 2024.  On February 11, 2025, Carver informed Norfolk of its interpretation that the 15-day objection clock commenced on February 4, 2025 (the earliest it had to respond) and that Carver would, accordingly, lodge its objections, if any, on or before February 19, 2025.  Additionally, Carver informed Norfolk that it had not properly served its 1st RFPs, as it only sent them to one of its counsel and did not include Carver's sponsoring local counsel. **Exhibit A** (Correspondence). This defective service is apparent from the face of Norfolk's 1st RFPs and its Certificate of Service.

Norfolk took no issue with Carver's position until after it received its objections on February 19, 2025.  The claim of waiver is clearly a tactic to attempt to handicap Carver in discovery and should be rejected.

**B.  Alternatively, the deadline to object to the 1st RFPs should be extended.**

To the extent the Court finds Carver's objections were due before they were served, Carver respectfully requests an extension of time *nunc pro tunc* to February 19, 2025 to lodge its objections.  Rule 6(b)(1)(B) provide that the Court may, on motion, extend discovery deadlines for

good cause shown "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "'Excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant.'" *Hinterberger v. Am. Nurses Assn.*, 643 Fed. Appx. 310, 313 (4th Cir. 2016).  The Fourth Circuit has extended it to circumstances of "inadvertent delays" and considers four factors for evaluating whether delay was excusable: (1) "the danger of prejudice to the other party"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (4) "whether the movant acted in good faith." *Id.* (citing *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993)).

There is no prejudice to Norfolk here.  Carver's objections are minimal, and it has already produced voluminous responsive documents to the 1st RFPs.  The issue for the Court to decide in these motions is the permissible scope of discovery, namely whether documents generated post-incident are relevant and proportional to the claims at issue. Norfolk clearly is attempting to discover and use documents generated after-the-fact to show Carver's privity or knowledge of claimed unseaworthiness from *before* the allision.  Its own cited authority confirms that relevancy in Limitation Act cases is anchored to pre-incident conduct.  See Pl. Brief at 3-4 (citing *Hellenic Lines, Ltd.*, 730 F. 2d at 166 for the proposition that Carver has the burden of proving "*pre-voyage seaworthiness*" to sustain its limitation claim) (emphasis Norfolk's).  Norfolk speculates it might overcome Carver's Limitation Act protections because the operator, Morrisey, was incompetent or improperly trained; the vessel's steering, navigational equipment, or autopilot system was defective, or the vessel was improperly repaired before the incident.  See ECF 43 at 5.  None of Carver's post-incident or remedial measures bear any relevancy on its privity or knowledge of these purported issues from *before* the allision.  There is simply no prejudice in Carver raising

objections to producing information that is not discoverable to begin with.  The first prong of the excusable neglect prong is satisfied.

Second, the claimed delay (a couple weeks) is immaterial to moving this case to the finish line.  *Hinterberger*, 643 Fed. Appx. at 313 (finding "100 days in the context of 3.5 year litigation" was "not lengthy").  Discovery has just begun, the parties have already set half a dozen depositions, and Carver's and Norfolk's attorneys have already participated in the U.S. Coast Guard's interviews of the relevant witnesses in this case.  Norfolk's claim that it is prejudiced by a 14-day delay and needs the information for depositions is disingenuous—it already knows the pertinent testimony of these witnesses and will be free to cross Carver's witnesses using its capable counsel's notes and observations from the USCG investigation.

Further, Carver had good reason to interpret the Court's order of December 20, 2024 as meaning it had no obligation to respond to discovery before February 4, 2025.  Also, as explained by Carver's counsel in correspondence, Norfolk failed to serve all counsel of record and instead sent it to one attorney who was out on vacation at the time of the defective service and one attorney who had withdrawn his appearance and no longer works at Clyde.  Norfolk recognized its failure to serve all attorneys who had appearances on file since August 2024 and did include them when it claimed waiver as a discovery tactic.  Norfolk's failure to serve counsel is a circumstance outside Carver's control and further evidence of good cause to extend the deadline, if needed, to lodge objections.

Finally, there is no question Carver asserted its objections in good faith and has complied with discovery obligations.  Importantly, Carver has produced a voluminous set of documents— which satisfied the U.S. Coast Guard—in response to Norfolk's discovery requests.  The fact that Norfolk has not found evidence of unseaworthiness in the documents is not cause to argue waiver

of objections.  All criterion of Rule 6(b) have been met, thus the deadline should be extended if the Court find that Carver did not timely assert the objections on February 19, 2025.

### C.  Norfolk should be limited to discovery of information from before the allision (1st RFPs Nos. 16, 17, 20, 21, and 34).

Norfolk correctly interprets that the majority of Carver's objections are to the scope of the requests, particularly Norfolk's request for post-incident remedial measures.  Norfolk, however, misunderstands that Carver simply objects because post-remedial measure will be inadmissible at trial.  Carver's actual objections are that documents and information showing post-incident conduct and remedial measures are neither relevant nor proportional to the needs of the case and thus are beyond the scope of permissible discovery. Fed. R. Civ. P. 26.

Norfolk's own authority confirms that "pre-voyage seaworthiness" is at issue by Carver's petition under the Limitation Act.  ECF 43 at 4 (citing *Crown Zellerbach*, 783 F.2d at 1303).  Post-incident seaworthiness is not at issue.  Carver does not currently have any claim for damages against Norfolk or its subrogee.  Whether and how the vessel was repaired or whether any remedial action was taken with respect to the crew on board are irrelevant to establishing pre-voyage seaworthiness.  Norfolk cannot use Carver's knowledge after-the-fact to establish what Carver may or may not have known about the seaworthiness of the vessel from before the allision.  Nor does any remedial measures taken with respect to the crew onboard the vessel on the date of the incident have any relevancy to whether they were competent prior to the allision. Post-incident information is thus irrelevant and disproportional to the needs of the case and not discoverable.

Carver's objections to Norfolk's 1st RFPs Nos. **16** (log books), **17** (displacement reports), **20** (radar logs), **21** (fax logs), and **34** (post-incident communications) should be upheld and Norfolk's motion to compel should be denied.

**D. Norfolk misunderstands the "Near Miss" documents that it says warrant further responses to the 2nd RFPs.**

Norfolk supports its claim that Carver has withheld responsive documents to its 2nd RFPs by noting "Documents to date show 'near miss' issues with the vessel dating back to 2018." See ECF pp. 8-10.  This is incorrect.  Carver uses a fillable "Near Miss Report" form that went into effect on December 1, 2018.  The effective date of the form is noted on its face:



**Exhibit B** (CARVER00037 – CARVER00042). The "filled" date – in the example above, February 28, 2024 – is a better one to use for an indicator of when the "near miss" incident occurred. Carver's production does not show "near miss" issues "dating back to 2018." It simply indicates Carver has used the same form since 2018 to document near misses.  Norfolk's misunderstanding does not provide grounds to expand their expedition to find nonexistent information about the vessel's claimed pre-voyage unseaworthiness. See ECF 43 at 11.

**E. Documents relating to the autopilot, navigation, and steering systems from before November 2023 are irrelevant and beyond the scope of discovery (2nd RFPs Nos. 5, 9, 10, 11).**

Norfolk's 2nd RFPs Nos. 9, 10, and 11 request information on the vessel's steering, navigation, or autopilot systems dating back to 2020 or for a 10-year time period.  The 2nd RFP No. 5 similarly seeks information on "near miss" reports relating to the steering, navigation, or autopilot systems going back to 2020.  Norfolk's proposed time periods are disproportional to the

needs of the case.  Carver has already produced the information relating to the near miss reports and to the repairs to this system.  See Exhibit B, *supra*; *see also* **CARVER 000249-000252, attached as Exhibit C.** Carver's objection to the 5-year and 10-year time periods should be upheld and Norfolk's motion should be denied.

### F.  Norfolk misrepresents Carver's production in response to the 2nd RFPs.

Norfolk claims Carver failed to produce any documents with its March 26, 2025 responses and simply provides "non-responsive" documents that it produced to the Coast Guard.  This is again inaccurate. The bulk of Norfolk's 2nd RFPs request policies, procedures, and reports relating to its operation of the vessel and prior "near miss" incidents.  Carver only has so many policies, procedures, and reports to give.  Subject to its objections on the scope of the requests, as outlined above, Carver produced the relevant policies, procedures and reports. Contrary to Norfolk's claim that it did not produce "any documents," Carver produced the following to the 2nd RFPs:

| 2nd RFP No. | Time Frame | Information Sought | Objection | Carver's Responses |
|---|---|---|---|---|
| 1 | Since 2020 | Documents including or relating to Carver's Safety Management Plan | Vague and undefined. | Subject to and without waiving its written objections served on March 7, 2025, see Safety Management Forms:<br><br>• CARVER 000148-149, 5.1 Master's Responsibility And Authority,<br>• CARVER 000150-151 6.12 Deckhand,<br>• CARVER 000152-154, 6.13 Mate/Captain/Relief Captain,<br>• CARVER 000155 7.16 Look Out,<br>• CARVER 000194 – 199 Safety Management Form,<br>• CARVER 000150 - 1517.9 K Navigation Watch Assessment, Norfolk, VA Data, CARVER 000162 8.8 M Steering Failure,<br>• CARVER 000163-169 9.5 Accident/Incident Reporting, |

| | | | | • CARVER 000201 – 226 Safety Management Form, 7.9 K Navigation Watch Assessment, Norfolk, VA-NC/SC State Line Data - Voyage Planning Information previously produced. **Carver will endeavor to locate and produce documents** responsive to Request No. 1 to the extent they exist. |
|---|---|---|---|---|
| 2 | Since 2020 | Documents relating to safety and training programs | Overbroad and unduly burdensome. | **Carver stands on its written objection** to Request No. 2 served in its Responses on March 7, 2025. *Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 3 | Since 2020 | Documents relating to James Morrissey's training from Carver | Overbroad and unduly burdensome. | **Carver stands on its written objection** to Request No. 3 served in its Responses on March 7, 2025. *Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 4 | N/A | Documents relating to the disciplinary history of James Morrissey | Post-incident remedial action. | **Carver stands on its written objection** to Request No. 4 served in its Responses on March 7, 2025. *Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 5 | Since 2020 | Documents including "near miss" reports relating to the steering, navigation, | Overbroad and unduly burdensome. | Subject to and without waiving its written objections served on March 7, 2025, see CARVER 000037 - 042 9.2 Near Miss Report previously produced. |

| | | and autopilot system | | *Norfolk's claim: Only 4 produced. Documents to date show "near miss" issues with the vessel dating back to 2018.* |
|---|---|---|---|---|
| 6 | Past 10 years | Documents relating to prior accidents | Overbroad and unduly burdensome. | **Carver stands on its written objection** to Request No. 6 served in its Responses on March 7, 2025.<br><br>*Norfolk's claim: Highly relevant.*<br><br>*Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 7 | Past 10 years | Documents relating to prior accidents involving James Morrissey | Overbroad and unduly burdensome. | **Carver stands on its written objection** to Request No. 7 served in its Responses on March 7, 2025.<br><br>*Norfolk's Claim: Not produced.* |
| 9 | Since 2020 | Documents evidencing repairs to the steering, navigation, and autopilot system | Overbroad and unduly burdensome. | **Carver's Response:** Subject to and without waiving its written objections served on March 7, 2025, see:<br><br>• CARVER 000033 – 36, 10. 1 DAILY ENGINE ROOM LOG – MAINT PROCED REP-MACKENZIE ROSE,<br>• CARVER 000249 Mackenzie Rose_ 6-15-2024 - AYERS1 Vendor Tech report 3533,<br>• CARVER 000250 - Mackenzie Rose_ 6-15-2024 - Vendor Tech report 35706, CARVER 000251 - 11-20-2023 GMT Report Auto Pilot,<br>• CARVER 000252 - 3-2-2024 GMT Report Auto Pilot previously produced.<br><br>See also Carver's Response to Norfolk's First Requests for Production No. 16.<br><br>**Carver will endeavor to locate and produce additional documents responsive** to Request No. 9 for the past |

| | | | | five years or until the last Vessel overhaul to the extent they exist. |
|---|---|---|---|---|
| | | | | *Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 10 | Past 10 years | Documents evidencing malfunctions of the steering, navigation, and autopilot system | Overbroad and unduly burdensome. | Subject to and without waiving its written objections served on March 7, 2025, see: <br>• CARVER 000033 – 36 10. 1 DAILY ENGINE ROOM LOG – MAINT PROCED REP-MACKENZIE ROSE, <br>• CARVER 000234 – 243 Tug Mackenzie Rose - Emergency Steering Procedure – Rough Engine Logs, <br>• CARVER 000251 - 1-20-2023 GMT Report Auto Pilot, <br>• CARVER 000252- 3-2-2023 GMT Report Auto Pilot previously produced. <br>**Carver will endeavor to locate and produce documents** responsive to Request No. 10 <br><br>*Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 11 | Since 2020 | Documents evidencing training relating to the steering, navigation, and autopilot system | Overbroad and unduly burdensome. | **Carver stands on its written objection** to Request No. 11 served in its Responses on March 7, 2025. <br><br>*Norfolk's claim: Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 12 | Since 2020 | Documents evidencing company protocols for lookouts on vessels in effect | Overbroad and unduly burdensome. | Subject to and without waiving its written objections served on March 7, 2025, see CARVER 000155 7.16 Look Out previously produced. <br><br>*Norfolk's claim: Not produced. Highly relevant since there were apparently no lookouts during allision.* |

| | | | | |
|---|---|---|---|---|
| 13 | Since 2020 | Documents evidencing company protocols for the steering, navigation, and autopilot system | Overbroad and unduly burdensome. | Subject to and without waiving its written objections served on March 7, 2025, see: <br><br> • CARVER 000162 8.8 M STEERING FAILURE, <br> • CARVER 000194 –199 Safety Management Form 7.9 K Navigation Watch Assessment, Norfolk, VA Data, <br> • CARVER 000201 – 226 Safety Management Form, 7.9 K Navigation Watch Assessment, Norfolk, VA-NC/SC State Line Data - Voyage Planning Information, and <br> • CARVER 000233 Tug Mackenzie Rose - Emergency Steering Procedure previously produced. <br><br> ***Norfolk's claim:*** *Documents to date show "near miss" issues with the vessel dating back to 2018.* |
| 14 | Since 2020 | Documents evidencing company protocols for reporting allisions | Overbroad and unduly burdensome. | Subject to and without waiving its written objections served on March 7, 2025, see: <br><br> • Safety Management Forms, CARVER 000163-169 9.5 Accident/Incident Reporting. <br><br> ***Norfolk's claim:*** *Documents to date show "near miss" issues with the vessel dating back to 2018.* |

Norfolk assumes, without support, that more documents exist and argues that its misunderstanding about the 2018 "near miss" form creates grounds for more discovery on these policies, procedures, and reports. These arguments should be rejected. Carver has produced its relevant policies and procedures, and certain reports subject to its objections on scope. The fact these documents were also responsive to the Coast Guard's investigation does not make them

"non-responsive" in this civil litigation.  Norfolk should be held to identify actual grounds for its claim that Carver's responses are incomplete.

### G.  Carver's Objections to Interrogatories Should be Upheld.

Carver asserted similar scope and relevancy objections to Norfolk's Interrogatories Nos. 7, 10, 11 and 19, all of which request information relating to Carver's post-allision conduct and how it reported the incident.  Carver reasserts its arguments outlined above that any information regarding post-incident conduct have no relevancy to the issues of liability under the Limitation Act and are disproportional to the needs to this case.  Carver's objections to Interrogatories 7, 10, 11 and 19 should be upheld and the Norfolk's motion should be denied.

Norfolk also takes issue with Carver's objections to Interrogatories Nos. 7, 11, and 20, which call for narrative and detailed responses to how the steering, navigational systems, and autopilot systems were repaired in the 10 years leading up to the incident, how they were inspected before the voyage, and how the crew reported in the incident.  Carver objects that such information is better suited for deposition testimony, which Norfolk claims is "not a valid objection." ECF 43 at 13.  Federal Rule of Civil Procedure 33 provides that the Court "may order that the interrogatory need not be answered until designated discovery is complete, or until … some other time." Fed. R. Civ. P. 33(a)(2).   Carver's objection is simple: it requests the Court order it need not answer and provide a lengthy, detailed narrative of this information until deposition testimony, when Norfolk will be free to examine Carver's crew as it sees fit. As stated before, Norfolk has already sat in on the Coast Guard's interviews of these same witnesses and has a fairly good idea of what types of inspections were made before the allision.  Requiring Carver's counsel to put pen to paper and summarize multiple witnesses' responses into one coherent Answer on behalf of the company is unnecessary and will only unduly burden Carver in providing duplicative information that is

16

known to Norfolk already.  Carver's objections to Interrogatories Nos. 7, 11 and 20 should be upheld.

Norfolk also fails to identify Carver's actual objections to Interrogatories Nos. 17, 18, and 21, which are contention interrogatories seeking information about Carver's affirmative defenses. Carver's actual objections are that such Interrogatories seek the work product of its counsel.  For example, Interrogatory 21 seeks "the basis" underlying "each affirmative defense." Norfolk's interrogatory notably does not seek just facts, but, instead, seeks that entire "basis" for Carver's legal defenses alleged in its Answer.  Requiring Carver to answer these interrogatories would impermissibly force Carver to disclose its counsel's mental impressions and strategy about defending the claims.  Thus, the Interrogatory does not seek information about "nonprivileged matters." See Fed. R. Civ. P. 26(b)(1) (allowing discovery only about "any nonprivileged matter"). Carver's objections to Interrogatories 17, 18 and 21 should be upheld and Norfolk's motion denied.

**H.  Carver has not waived any privilege.**

Norfolk incorrectly claims that Carver has waived privilege because it has failed to produce a privilege log.  To start, Carver cannot reasonably create a privilege log for its objections to Interrogatories 17, 18, and 21.  As stated in its objection, identifying the documents it believes forms the "basis" of its Affirmative Defenses would, in and of itself, disclose the mental impressions and strategies of its counsel.  Forcing Carver to produce a privilege log would, in turn, violate the work product privilege. See Fed. R. Civ. P. 34 (requiring a privilege log if it can be done "without revealing information itself privileged or protected…").    Other than this information, Carver has not withheld any documents on a claim of privilege so there can be no waiver. See *id.*  Norfolk's claim of waiver is yet another assumption, without support, that Carver

is sitting on a trove of documents that help its cause while refusing to comply with the discovery rules. This is simply not the case.

To the extent that additional production of documents results in a claim of privilege, Carver requests that the Court specifically order that it may produce the privilege log at the time of production. See *Sectek Inc. v. Diamond*, No. 1:15-cv-1631, 2016 U.S. Dist. LEXIS 140098, *8 (E.D. Va. October 6, 2016) ("When a party provides an inadequate or untimely privilege log, the Court may choose between four remedies: (1) give the party another chance to submit a more detailed log; (2) deem the inadequate log a waiver of the privilege; (3) inspect *in camera* all of the withheld documents; and (4) inspect *in camera* a sample of the withheld documents.") Such an order may assist the parties in avoiding motion practice, as Norfolk here apparently misunderstands that asserting a privilege objection before responses are due, out of an abundance of caution, results in waiver simply because a log was not tendered at time of the production. See *Anderson v. Fluor Intercontinental, Inc*., 2020 U.S. Dist. LEXIS 272738, *10 (E.D. Va. 2020) (curing an untimely privilege log demonstrates good faith rather than grounds for waiver).

## I. Norfolk has not shown fees or costs are warranted.

Norfolk includes a single sentence in their prayer requesting fees and costs associated with this motion. Their unsupported request should be denied. To start, Norfolk never had an opportunity to confer and resolve this dispute as it pertains to the 2nd RFPs and Interrogatories. It should no be penalized for Norfolk's refusal to confer in good faith to resolve disputes without Court intervention. *Lismont v. Alexander Binzel Corp.*, 47 F. Supp. 3d 443, 454-55 (E.D. Va. 2014) (Rule 37 only permits recovery of expenses "whenever incurred, that would not have been sustained had the opponent conducted itself properly").

As for the dispute on the 1st RFPs, Norfolk has not even attempted to argue that Carver's objections were made in bad faith. To the contrary, the parties dispute whether post-incident information and documents have any relevancy to the issue of liability under the Limitation Act and the proposed scope of timing given repair work previously done on the vessel. Carver was substantially justified in making these objections. Norfolk is not entitled to fees under Rule 37. See Fed. R. Civ. P. 37(a)(5)(A)(ii).

## CONCLUSION AND PRAYER FOR RELIEF

Norfolk's motion to compel should be denied with prejudice. As set forth above, Discovery from Carver should be limited to information relevant to the incident and this lawsuit. Carver's other objections as to its work product and providing long, detailed and narrative responses to interrogatories seeking information known to Norfolk should also be rejected.

WHEREFORE, Petitioner Carver respectfully requests the Court uphold its objections asserted to the 1st Requests for Production, 2nd Requests for Production, 1st Interrogatories; enter protective orders limiting discovery as requested herein; deny Norfolk and Portsmouth Belt Line Railroad's Motion to Compel with Prejudice; award Petitioner Carver its fees and costs associated with responding to the Motion to Compel and moving for protective orders; and for any and all further relief as the Court deems just and proper.

Dated: April 14, 2025                    Respectfully submitted,

CLYDE & CO US LLP
By: /s/Harold Cohen
Harold L. Cohen. Esq. (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

/s/ Michael J. Roman
Michael J. Roman*
Dawn L. Johnson*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
       dawn.johnson@clydeco.us

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Rachel Werner*
One North Central Avenue, Suite 1030
Pheonix, Arizona 85004
Phone: 480-746-4556
Email: rachel.werner@clydeco.us
*pro hac vice

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
 mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

 /s/*Harold Cohen*