**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

In the Matter of COEYMANS MARINE
TOWING, LLC D/B/A CARVER MARINE
TOWING as Owner and Operator of M/T
Mackenzie Rose, (IMO No. 8968765), *et al*.

**Civil Action No. 2:24-cv-00490-MSD-LRL**

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S**
**REPLY TO PETITIONER'S BRIEF IN OPPOSITION TO MOTION TO COMPEL**

Claimant/Respondent Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"),

by counsel, pursuant to Fed. R. Civ. P. 37 and Local Rule 37, submits this Reply to the Brief in

Opposition of Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver")

to the Belt Line's Motion to Compel and requests that the Court order Carver to provide full and

complete answers and responses to the Belt Lines' written discovery requests.

**Summary**

The Belt Line propounded three sets of written discovery requests to Carver:  (1) First Set

of Requests for Production served on January 10, 2025 ("1st RFPs" attached to the Motion as

Exhibit A); (2) Second Set of Requests for Production served on February 20, 2025 ("2nd RFPs"

attached to the Motion as Exhibit B); and (3) First Set of Interrogatories on February 20, 2025 ("1st

ROGs" attached to the Motion as Exhibit C).

The parties met and conferred on multiple occasions to try and resolve discovery issues

without the Court's involvement. First, the parties met on February 14, 2025 to discuss objections

and responses to the Belt Line's 1st RFPs under Local Rule 26(C). The parties participated in

another meet and confer on March 17, 2024, during which the parties discussed Carver's objections and responses to the Belt Line's 1st RFPs, Carver's objections to the 1st ROGs, Carver's objections to the 2nd RFPs, and the Belt Line's own responses and objections to Carver's First Requests for Production. Because the parties were unable to resolve the discovery issues, the Belt Line filed its Motion to Compel on March 31, 2025 (the "Motion").[1]

### Argument

### I.       The Parties have unsuccessfully conferred in compliance with Rule 37.

As a threshold issue, the Belt Line and Carver have conferred multiple times regarding the discovery in this matter and have been unable to resolve the issues set forth in the Motion.  Carver's contentions that the Belt Line failed to confer in good faith are simply untrue. Specifically, on March 17, 2025 the parties spent hours on a virtual call discussing each discovery request by either party.[2] Contrary to Carver's contention that the Belt Line failed to confer on Carver's responses to the 2nd RFPs and 1st ROGs, in the March 17th meeting, all of Carver's objections to the 2nd RFPs and 1st ROGs were addressed and Carver refused to withdraw any of them, which was confirmed when Carver served its answers and response standing on the objections it previously asserted. Thus, the conditions precedent to filing a motion to compel under Rule 37 have been met.

---

[1]  Carver supplemented its production on the date the Belt Line filed this Reply. Based on a cursory review, Carver has not withdrawn its objections, nor has it provided complete responses to the Belt Line's discovery requests.
[2]  The meet and confer meetings were memorialized in an email from counsel for the Belt Line on February 19, 2025 and a letter from counsel for the Belt Line on March 21, 2025. They are attached hereto as Exhibit A and B.

## II.    Carver misconstrues the Pre-Trial Order and violated Local Rule 26.

Carver's assertion that it had no obligation to respond to discovery before February 4, 2025 does not change the fact that Carver failed to comply with Local Rule 26 and this Court's 26(f) Pretrial Order entered on December 20, 2024. ECF 29.

The Pretrial Order requires that "the parties *may initiate any form of discovery at any time subsequent to the date of this order*, provided that *no party will be required to respond to a deposition notice or other form of discovery sooner than February 4, 2025*, unless specifically ordered by the court. All objections to interrogatories and requests for production and admission *should be served within fifteen (15) days after service of such discovery requests*." *Id*. at ¶ 3 (emphasis added).

Here, the Belt Line propounded its 1st ROGs on January 10, 2025, subsequent to the date of the Pretrial Order. Accordingly, Carver was not obligated to respond until February 10, 2025, after the February 4, 2025 date set by this Court. The Order states that objections should be served 15 days after service of discovery requests, making objections due by January 27, 2025 (January 25 was a Saturday). Carver failed to serve timely objections.

Even if Carver's argument that it was under no obligation to object until February 4, 2025 was correct, which it is not, Carver still failed to serve objections by that date. Carver did not serve its objections to the 1st RFPs until February 19, 2025.  No creative interpretation of the Order or the applicable Rules of Civil Procedure permits such belated objections.

Carver's failure to follow the requirements of the Pretrial Order and Local Rule 26 constitutes waiver of any objections to the Belt Line's 1st RFPs.

III.    **Carver failed to provide full and complete responses to the Belt Line's 1st and 2nd RFPs.**

   a.  **Post-allision information may lead to the discovery of admissible evidence regarding Carver's knowledge of the unseaworthiness of the vessel.**

Carver's assertion that post-allision information bears only on post-allision seaworthiness of the vessel is therefore irrelevant is patently incorrect. In limitation actions, whether the owner had privity or knowledge of an unseaworthy condition or operational act of negligence turns on whether it could have reasonably known before the casualty occurred:

> Over the years, however, the courts have broadened privity or knowledge to include constructive knowledge--what the vessel owner could have discovered through reasonable inquiry. *See, e.g., In re Oil Spill by the AMOCO CADIZ,* 954 F.2d 1279, 1303 (7th Cir.1992) ("The recent judicial trend has been to enlarge the scope of activities within the 'privity or knowledge' of the shipowner, including … requiring shipowners to exercise an ever-increasing degree of supervision and inspection."); *Hercules Carriers, Inc. v. Claimant State of Florida,* 768 F.2d 1558, 1564, 1576 (11th Cir.1985) ("Privity or knowledge is established where the means of obtaining knowledge exist, or where reasonable inspection would have led to the requisite knowledge."); *McNeil v. Lehigh Valley R.R.,* 387 F.2d 623, 624 (2d Cir.1967) ("Negligent failure to discover constitutes privity and knowledge within the meaning of the statute."), *cert. denied sub nom. Lehigh Valley R. Co. v. Wm. Spencer & Son Corp.,* 390 U.S. 1040, 88 S. Ct. 1638, 20 L. Ed. 2d 302 (1968).

*Suzuki of Orange Park, Inc. v. Shubert,* 86 F.3d 1060 (11th Cir., 1996); *See also Caulk v. Balt. & O. R.R.,* 306 F. Supp. 1171 (D. Md. 1969) (permitting discovery of post-accident repairs reasoning that such information could lead to admissible evidence); *see also English v. Wash. Metro. Area Transit Auth.,* 323 F.R.D. 1 (D.D.C. 2017) (rejecting the assertion that all information regarding post-accident remedial measures is irrelevant and outside the scope of discovery).  Because post-allision information may lead to the discovery of admissible evidence bearing on Carver's privity and knowledge, the objections should be overruled.

Carver's management and the crew of the M/T MACKENZIE ROSE perpetrated a hit and run of the Belt Line's bridge on the afternoon of June 15, 2024 (a Saturday) causing in excess of $10 million in damages. No one on behalf of Carver notified either the U.S. Coast Guard or the

Belt Line at the time it occurred. The Belt Line discovered the damage on the following Monday morning when the first train of the day needed to cross the river. It wasn't until the Belt Line determined that the MACKENZIE ROSE allided with the bridge and contacted the Coast Guard that Carver acknowledged that its tug was responsible, and thereafter sought to limit its liability.

Carver's actions, or inaction, following the allision may bear on its privity or knowledge of any reoccurring issues or the performance of the M/T MACKENZIE ROSE and its crew pre-allision. Perhaps Carver wanted to avoid the mandatory drug and alcohol testing required by 46 C.F.R 4.06-3 following a marine casualty. Perhaps there was a problem with the autopilot system or the circumstances of its use while pushing a barge in proximity to a bridge which was a marked obstruction on the navigational charts. At present, these are admittedly speculation, but Carver's discovery tactics have stymied the ability of the Belt Line to evaluate the evidence. The Belt Line should be able to inspect post-allision documents and determine for itself whether they contain or will lead to the discovery of admissible evidence on the central issue of the limitation action: whether Carver was without privity or knowledge of the acts or omissions giving rise to the allision.

Further, the majority of the 1st RFPs request information from a mere 10-day period of time, from June 10, 2024 to June 20, 2024. Such a request is not overbroad and unduly burdensome when only Request Nos. 16 and 33 seek over 10 days of information. Accordingly, the Belt Line asks this Court to compel Carver to provide full and complete responses to the 1st and 2nd RFPs.[3]

---

[3] The Brief in Opposition does not address Carver's objections to 1st RFP Request Nos. 4, 22, or 33.

**b.  The Belt Line reasonably limited the time frames for its requests.**

Carver further argues that several of the Belt Line's 2nd RFPs are disproportionate to the needs of the case because they request up to ten years of information. However, the Belt Line's 2nd RFPs are narrowly tailored to information that goes to the heart of Carver's claim that it is entitled to limit its liability to $2.5 million, the claimed value of the tug, in the face of more than $10 million in damages caused by the allision.

The Belt Line's requests are proportional to the needs of this case based upon the asserted claims and defenses, particularly that the M/T MACKENZIE ROSE was unseaworthy at the time of the allision and that the tug was operated in a reckless manner. Carver takes issue with the requests that ask for information from before 2024.  In its own requests, Carver requested documents dating back to nearly 70 years ago when the bridge was constructed, which the Belt Line produced.  Arguing that the Belt Line's requests for information dating back to 10 years ago belies Carver's disproportionality claim given the magnitude of damage caused by the allision.

**c.  Documents produced to the Coast Guard are not fully responsive to the Belt Line's requests.[4]**

Curiously, Carver emphasizes that its production to the Coast Guard was "far more invasive and thorough than a civil proceeding." ECF #47, at 4. Even if that were true, it does not obviate the obligation to produce documents requested in the civil proceeding. The Coast Guard is not charged with determining liability or damages; that is for this Court and especially so since Carver seeks to limit its liability. Carver states, "the fact these documents were also responsive to the

---

[4]  The table in Section F of the Brief in Opposition identifies only those documents previously produced in Carver's 26(a)(1) initial disclosures. ECF #47, at 11. No new documents were produced in Carver's March 26, 2025 response to the 2nd RFPs.

Coast Guard's investigation does not make them 'non-responsive' in civil litigation." ECF #47, at

15-16. Carver missed the point with this statement.

The Belt Line does not contend that the documents produced to the Coast Guard are non-

responsive to the requests here. Instead, the Belt Line contends that the documents produced do

not fully and completely respond to the requests propounded by the Belt Line. And how could

they? They were prepared in response to a different investigation.[5]

The Belt Line is entitled to complete responses to its requests in accordance with Fed. R.

Civ. P. 34 and Local Rule 26 and therefore requests that the Court compel Carver to provide full

and complete responses to both the 1st and 2nd RFPs.

### IV.   Carver failed to provide full and complete answers to the 1st ROGs.

Carver's assertion that it is not obligated to provide an answer to interrogatories it deems

to be too lengthy and detailed is evasive and does not constitute a proper objection. The Belt Line

is entitled to full and complete answers to its interrogatories.

In support of Carver's objections to certain interrogatories that it feels are better suited to

deposition testimony, Carver cites Fed. R. Civ. P. 33. However, the language quoted in the Brief in

Opposition pertains to contention interrogatories and states as follows:

> An interrogatory is not objectionable merely because it asks for an opinion or
> contention that relates to fact or the application of law to fact, but the court may
> order that the interrogatory need not be answered until designated discovery is
> complete, or until a pretrial conference or some other time.

---

[5] Carver insinuates that attending the Coast Guard's interviews of witnesses (via Zoom) is
somehow a substitute for discovery in this action. ECF #47, at 4, 8, 16. Leaving aside that the
purpose of the Coast Guard's investigation is wholly different from the purpose of this proceeding,
the Coast Guard has not made the transcripts (or any other evidence it has gathered) available to
the parties, nor will it until it has completed its investigation.

Fed. R. Civ. P. 33(a)(2). Carver did not object on ground that the interrogatories were contention interrogatories. This language does not support its contention that it should not have to "put pen to paper" to answer the Belt Line's interrogatories. ECF #47, at 16.

What is more, Carver implies that the Belt Line's participation in the Coast Guard investigation renders an answer to the interrogatories unnecessary. Again, Carver conflates the Coast Guard investigation with the instant litigation. The Belt Line's presence and participation in the Coast Guard investigation in no way hinders its ability to obtain discovery in a separate legal proceeding.

Carver also seemingly implies that its objections based on information "pertaining to the ultimate issues" are not Carver's "actual objections" to Interrogatory Nos. 17 and 18. Instead, Carver now asserts that its actual objections to these interrogatories are based on attorney work product. If this is the case, the Belt Line requests the Court overrule Carver's objections and because it failed to properly assert privilege or provide a privilege log as required by Fed R Civ. P. 26(b)(5). *See Sectek Inc. v. Diamond*, 2016 U.S. Dist. LEXIS 140098, at *7 (E.D. Va. 2016) (holding that the plaintiff failed to produce a privilege log when it responded to defendant's documents requests and any privilege objection was therefore waived). [6]

For these reasons, the Belt Line requests this Court compel Carver to fully and completely answer the 1st ROGs.

---

[6] Alternatively, the court should compel Carver to produce a privilege log "describe[ing] the nature of the documents, communications, or tangible things not produced or disclosed—and do[ing] so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." *Id*.

**Conclusion**

For the foregoing reasons and those set forth in its Memorandum in Support of Motion to Compel (ECF #43), the Belt Line respectfully requests that this Court enter an Order: (1) striking all of Carver's objections to the 1st RFPs as waived under EDVA Local Rule 26; (2) striking all of Carver's "General Objections" as improper under EDVA Local Rule 26; (3) overruling Carver's objections to 1st RFPs 4, 16, 17, 20, 21, 22, 33, and 34; to 2nd RFPs 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, and 14; and to 1st ROGs 4, 7, 10, 11, 17, 18, 19, 20, and 21; (4) ordering Carver to immediately provide full and complete answers and responses to the Belt Line's 1st RFPs, 2nd RFPs, and 1st ROGs; (5) overruling Carver's privilege objections for lack of a privilege log; (6) compelling Carver to produce its complete insurance policies under Rule 26(a)(1); (7) awarding the Belt Line its costs and fees associated with this Motion; and (8) granting the Belt Line all other just and necessary relief.

Dated:  April 16, 2025

NORFOLK AND PORTSMOUTH BELT
LINE RAILROAD COMPANY


By:  /s/James L. Chapman, IV
     James L. Chapman, IV, VSB No. 21983
     W. Ryan Snow, VSB No. 47423
     Mackenzie R. Pensyl, VSB No. 100012
     CRENSHAW, WARE & MARTIN, P.L.C.
     150 W. Main Street, Suite 1923
     Norfolk, Virginia 23510
     Telephone: (757) 623-3000
     Facsimile: (757) 623-5735
     jchapman@cwm-law.com
     wrsnow@cwm-law.com
     mpensyl@cmw-law.com
     *Attorneys for Norfolk and Portsmouth Belt*
     *Line Railroad Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 16th day of April 2025, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*
