IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY AND EVANSTON INSURANCE COMPANY'S BRIEF IN SUPPORT OF THEIR JOINT MOTION TO COMPEL INSPECTION OF THE M/T MACKENZIE ROSE AND FOR SANCTIONS UNDER RULES 34 AND 37**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Evanston Insurance Company ("Evanston"), by counsel, pursuant to Fed. R. Civ. P. 34 and 37(d) and Local Rules 7 and 37, submits this Brief in Support of their Motion to Compel Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") to provide full and complete inspection of the M/T Mackenzie Rose. In the alternative, Belt Line and Evanston request sanctions under Fed. R. Civ. P. 37(d)(3), including limitation of any rebuttal liability expert opinion.

**Background**

*Carver Hits a Stationary Bridge*

This is a hit and run bridge allision case. On June 15, 2024, the tug M/T MACKENZIE ROSE ("Tug"), owned and operated by Carver from New York, struck the Belt Line's Main Line Railroad Bridge that spans the Southern Branch of the Elizabeth River between Chesapeake and Portsmouth, Virginia. The Tug, pushing a 200-foot loaded barge, hit the Portsmouth side of the bridge—far outside the navigable channel and well behind the fender system—with such force that it shoved the steel superstructure nearly 7 feet. Incredibly, the superstructure did not collapse

but ended up suspended in midair, resting precariously on 3 of its 4 legs. The impact so severely damaged the superstructure and warped the steel rail that it rendered the bridge unusable until repaired.



*Above: View of approach from South to North*

After catastrophically damaging the bridge, the operators of the Tug backed up, navigated the tug and barge into the channel, and departed for New York without a word to the Belt Line, the U.S. Coast Guard, or any other authority. To date, total repair costs exceed $15.5 million.



*Above: Moment of Impact Captured on Surveillance Video*

Under the "Oregon Rule" of general maritime law, when a moving vessel allides with a stationary object like a bridge, the vessel is presumed at fault. *See The Oregon,* 158 U.S. 186 (1895); *Bunge Corp. v. M/V Furness Bridge,* 558 F.2d 790, 795 (5th Cir. 1977); *United States v. Norfolk-Berkley Bridge Corp.,* 29 F.2d 115, 125 (E.D. Va. 1928). The Oregon Rule unquestionably applies here.

Nevertheless, through this action, having ignored one federal law that requires immediate reporting of allisions for public safety, Carver seeks to reap the benefit of another federal law to limit its liability to the value of the offending Tug, allegedly $2.5 million. *See* 46 C.F.R. § 4.05-1 (reporting requirement) and 46 U.S.C. § 30523 (claims subject to limitation).

*The Request to Inspect the Tug*

The Belt Line and Evanston are entitled to present evidence to defeat the limitation, something Carver has attempted to stymie by objecting to or simply not responding to discovery requests, and now by refusing to make the Tug available for inspection despite previously agreeing to do so. Notably, non-expert discovery closes on July 29, 2025.

At the outset of discovery, Belt Line and Evanston requested the opportunity to inspect the Tug pursuant to Fed. R. Civ. P. 34. Requests continued through March 31, 2025, wherein Carver indicated they would "revert on Charleston dates" for the Tug inspection. (Ex. 1) The Belt Line served a Request for Inspection on April 30, 2025 requesting inspection on or before May 16, 2025. (Ex. 2) On April 30, 2025, Carver's counsel advised the parties should "plan on May 9" but would need to confirm once the Tug was underway to the Charleston Port. After repeated follow up correspondence to confirm the date and time, Carver's counsel emailed on May 8, 2025 at 10:45am that the Tug would be available for inspection on May 9, 2025 at 8:00 am, *allowing less than 24 hours' notice.* (Ex. 3) The marine towing expert jointly retained by Belt Line and Evanston

3

was then able to book an afternoon flight from Florida to Charleston, SC. Unfortunately, due to severe weather, the expert's flight was delayed for hours until it was ultimately cancelled. There was no flight available that would allow the expert to arrive in time for an 8:00 am inspection (or even before noon). Counsel for Carver, Belt Line, and Evanston all boarded the Tug on May 9, 2025. Photographs were taken and distributed among the parties[1]. Counsel for all parties discussed re-scheduling the inspection for all experts to board the Tug either in Carver's Charleston port, or home port in upstate New York. Michael Roman, Carver's counsel present at the May 9th inspection, agreed the flight cancellation was unfortunate, but that a second inspection would not be an issue as Carver needed time to allow their expert to inspect the Tug as well.

Evanston's counsel followed up via email to Carver's counsel on May 21, 2025 requesting an inspection of the Tug. Carver's counsel responded on May 22, 2025 advising the Tug would be made available for inspection in New York, and would work on providing dates. (Ex. 4) No dates were provided. On June 10, 2025, the parties conducted a "meet and confer" on several topics, including "outstanding inspection request for the tug." (Ex. 5). Again, Belt Line and Evanston were assured the vessel would be made available for inspection.

It is worth noting that Carver requested two separate bridge inspections to allow their experts to inspect it. Belt Line made the bridge available to Carver's experts on two separate occasions, once in 2024 while repairs following the hit and run allision were ongoing, and more recently on May 5, 2025. On both occasions the requests were handled cooperatively and informally.

---

[1] Carver indicates the marine tug expert inspected the vessel via Zoom (Ex. 6) on May, 9, 2025. This statement is inaccurate.

Given the difficulties scheduling an inspection of the Tug, on June 23, 2025, Evanston served another request to inspect the Tug before July 15, 2025 pursuant to Fed. R. Civ. P. Rule 34. (Ex. 6) Carver offered no response, objection or otherwise. On July 10, 2025, the Belt Line wrote to Carver, again requesting an opportunity to inspect the Tug. On July 11, 2025, Carver's counsel James Rodgers confirmed in writing Carver will not make the Tug available for inspection. (Ex. 7) This matter began with a hit and run allision, and now Carver refuses to produce the very vessel involved in the allision.

*Limitation of Liability Law*

The ability of an injured claimant to obtain evidence to defeat a limitation is well settled. Under 46 U.S.C. § 30523, to limit liability, a shipowner must prove that it lacked "privity or knowledge" of the negligence or fault that caused the damage. *See* 46 U.S.C. § 30523(b); *see also Hellenic Lines, Ltd. v. Prudential Lines, Inc.,* 730 F.2d 159, 166 (4th Cir. 1984) ("a shipowner seeking limitation of liability bears the burden of proving that he was without privity or knowledge of the condition or negligence responsible for the collision."). This requirement makes discovery of the shipowner's privity or knowledge of "the condition or negligence responsible" for the allision directly relevant to a limitation action. *Id.*

Importantly here, evidence of a shipowner's privity or knowledge is not limited to the date of an incident, either, since knowledge of unseaworthiness may exist well before then. As the Fifth Circuit explained: "To obtain the benefit of the Act the owners must establish a right to it. That involves the always difficult—and oftentimes impossible—burden of establishing that the casualty occurred without the owner's privity and fault, *including pre-voyage unseaworthiness.* The books are filled with hundreds of cases denying limitation of liability." *Crown Zellerbach v. Ingram Indus.,* 783 F.2d 1296, 1303 (5th Cir. 1986) (emphasis added). Among other things, "[a] vessel

can be rendered unseaworthy by having either insufficient equipment or an insufficiently competent and trained crew. Thus, the privity or knowledge standard obliges the owner to select a competent master. It also requires the owner to properly train the master and crew." *SCF Waxler Marine, LLC v. Aris T M/V,* 24 F.4th 458, 472 (5th Cir. 2022) (citations omitted).

This kind of privity or knowledge is precisely what the Belt Line and Evanston raised in their pleadings and discovery requests. Now, Carver seeks to hide from discovery by first repeatedly assuring the parties would have an opportunity to inspect the Tug, then at the close of discovery, denying they ever consented to the inspection. This ongoing delay and obstruction is prejudicial to Belt Line and Evanston. Belt Line and Evanston seek immediate relief in the form of an Order requiring an inspection of the Tug within 10 days. As explained below, the only effective remedy is to (1) *Order* an inspection of the Tug within 10 days; or in the alternative (2) *prohibit* Carver from offering any rebuttal expert liability testimony.

### Legal Authority

Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer … if … a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). It further provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Likewise, under Local Rule 37(A), a party may file a motion to compel "after a discovery request is objected to, or not complied with, within time, and if not otherwise resolved." Finally, Fed. R. Civ. P. 37(d)(3) provides the type of sanctions available for a Party's Failure to Respond to A Request for Inspection. One such sanction includes: "prohibiting the disobedient party from supporting

6

designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2) (A)(ii).

Generally, "[d]istrict courts are allowed broad discretion in resolving discovery disputes." *Humanscale Corp. v. CompX Int'l, Inc.*, 2009 U.S. Dist. LEXIS 120197, at *5-6 (E.D. Va. 2009). The parties have met and conferred on these issues by virtual (Zoom) meetings and written correspondence.

## Certification

Pursuant to Local Rule 37(E), counsel for Belt Line and Evanston state that a good faith effort has been made between counsel to resolve the discovery matters at issue in this motion.

## Argument

After months of assuring the parties that the Tug would be made available for inspection at Carver's New York port, Carver now refuses to produce the Tug at all. This "bait and switch" tactic is consistent with Carver's discovery strategy, which required a previous Order from this Court compelling discovery from Carver (DE 50). Now that the deadline to disclose experts passed, Carver simply refuses to make the Tug available at any port, at any time. Astonishingly, Carver also faults Belt Line and Evanston for failing to have their expert attend the initial inspection in May. As noted, the May inspection was confirmed less than 24 hours before it began. Counsel for the Belt Line and Evanston arrived, but Belt Line and Evanston's marine towing expert's flight was cancelled due to weather.

Carver assured Belt Line and Evanston the Tug would be made available for their expert to inspect over the course of 2.5 months. Then, abruptly, Carver simply changed their mind. This conduct has fundamentally stymied the Belt Line's and Evanston's investigation of Carver's privity and knowledge at every turn. Presumably Carver's own experts conducted an investigation

7

of the Tug, and now possesses information being withheld from Belt Line and Evanston. Belt Line and Evanston are left to speculate the correlation between Carver's experts' inspection, and Carver new refusal to permit inspection by an opposing expert. A reasonable conclusion is Carver's expert observed a detail damaging to the presentation of the limitation action, and Carver does not wish to afford an opportunity for an opposing expert to discover the same. Such evidence should be made available to Belt Line and Evanston, as Carver assured it would be for over 2.5 months.

Belt Line and Evanston served their expert reports on July 2, 2025 in accord with this Court's scheduling order. (DE 56) Carver waited until after the expert disclosures were due to then confirm it did not consent to allow an opportunity to inspect the Tug. One of the main issues in this case is the seaworthiness of the Tug at the time of the incident and Carver's privity and knowledge of it. Despite Carver's incomplete production (which was the subject of a prior Motion to Compel), its documents provide glimpses into pervasive issues with the autopilot and steering systems on the tug, including two rudder failures in May 2024—*after* Carver claims it replaced its autopilot system—both turning the tug "hard over" the way it turned to port before the allision on June 15, 2024. These are precisely the kinds of issues that the Belt Line is entitled to explore fully, but that Carver has blocked at every turn.

Carver now seeks to hide the very vessel involved in the hit and run allision and thereby preventing the Belt Line and Evanston to inform themselves of critical facts and expert theories after the Belt Line and Evanston already disclosed their expert's report(s). This obstructionist discovery strategy should not be permitted. Carver prejudiced the Belt Line and Evanston by consistently and thoroughly impeding its ability to develop facts to defeat Carver's limitation effort. The refusal to permit Belt Line and Evanston's marine towing expert to inspect the Tug is yet another example of impermissible discovery tactics.

8

**Conclusion**

WHEREFORE, the Belt Line and Evanston respectfully request that this Court enter an Order *allowing* the inspection of the Tug within 10 days; *in the alternative,* prohibit Carver's rebuttal expert liability witness from offering any opinion, and *granting* the Belt Line and Evanston all other just relief, including attorneys' fees.

This 15th day of July 2025.

        *s/ Zachary M. Jett*
        Zachary M. Jett, Esq. (VSB # 93285)
        BUTLER WEIHMULLER KATZ CRAIG LLP
        11525 N. Community House Road, Suite 300
        Charlotte, North Carolina  28277
        Telephone: (704) 543-2321
        Facsimile:   (704) 543-2324
        Email: zjett@butler.legal

        Mark C. Nanavati, Esq. (VSB # 38709)
        G. Christopher Jones, Jr., Esq. (VSB # 82260)
        SINNOTT, NUCKOLS & LOGAN, P.C.
        13811 Village Mill Drive
        Midlothian, Virginia  23114
        Telephone: (804) 893-3866 (Nanavati)
        Telephone: (804) 893-3864 (Jones)
        Facsimile: (804) 378-2610
        mnanavati@snllaw.com
        cjones@snllaw.com

        *Attorneys for Intervening Plaintiff / Claimant*
        *Evanston Insurance Company*

        *s/ James L. Chapman, IV*
        James L. Chapman, IV, VSB No. 21983
        W. Ryan Snow, VSB No. 47423
        Mackenzie R. Pensyl, VSB No. 100012
        CRENSHAW, WARE & MARTIN, P.L.C.
        150 W. Main Street, Suite 1923
        Norfolk, Virginia 23510
        Telephone: (757) 623-3000
        Facsimile: (757) 623-5735

jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 15th day of July 2025 a true and correct copy of the forgoing *Norfolk and Portsmouth Belt Line Railroad Company Evanston Insurance Company's Brief in Support of Their Motion to Compel Inspection of the M/T Mackenzie Rose and for Sanctions Under Rule 34 and 37* has been filed through the Court's CM/ECF electronic filing system, which will automatically delivery electronic notification of the same to the following counsel of record:

Harold L. Cohen, Esq.
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida  33131
Harry.Cohen@Clydeco.us

Michael J. Roman, Esq.
Dawn L. Johnson, Esq.
Siobhan Murphy, Esq.
Clyde & Co US LLP
30 S. Wacker Drive, Suite 2600
Chicago, Illinois  60606
Michael.Roman@clydeco.us
Dawn.Johnson@clydeco.us
Siobhan.murphy@clydeco.us

James H. Rodgers, Esq.
Clyde & Co US LLP
405 Lexington Avenue
New York, New York  10174
James.Rodgers@clydeco.us

Rachel Werner, Esq.
One North Central Avenue, Suite 1030
Phoenix, Arizona  85004
Rachel.Werner@clydeco.us

*Attorneys for Coeymans Marine Towing, LLC d/b/a Carver Marine Towing*

*Attorneys for Coeymans Marine Towing, LLC d/b/a Carver Marine Towing*

  I further certify that on this 15th day of July 2025 a true and correct copy of the forgoing *Norfolk and Portsmouth Belt Line Railroad Company Evanston Insurance Company's Brief in Support of Their Motion to Compel Inspection of the M/T Mackenzie Rose and for Sanctions Under Rule 34 and 37* has been served upon the following by electronic mail and by placing a copy in the United Stated Mail, postage pre-paid, to:

James Morrissey
4723 Baywood Drive
Lynn Haven, Florida  32444
jdmorrissey15@gmail.com
*Pro Se* Defendant

                *s/ Zachary M. Jett*
                Zachary M. Jett, Esq.