# Harley Marine NY, Inc. v. Moore

United States District Court for the Northern District of New York

May 8, 2025, Decided; May 8, 2025, Filed

1:23-CV-00163 (AMN/PJE)

**Reporter**
2025 U.S. Dist. LEXIS 87774 *; 2025 LX 81992; 2025 WL 1345632

HARLEY MARINE NY, INC., Plaintiff, v. BRIAN MOORE, CARVER COMPANIES PAYROLL, LLC, COEYMANS MARINE TOWING, LLC d/b/a CARVER TOWING, Defendants.

**Prior History:** *Harley Marine NY, Inc. v. Moore, 2023 U.S. Dist. LEXIS 92265 (Mar. 24, 2023)*

**Counsel:** [*1] For plaintiff: JEFFREY KIMMEL, ESQ., OF COUNSEL, AKERMAN LLP, New York, New York.

For Moore, defendant: BENJAMIN W. HILL, ESQ., OF COUNSEL, CAPEZZA HILL, LLP, Albany, New York; ABBY MCCORMICK-FOLEY, ESQ., OF COUNSEL, MCCORMICK-FOLEY LAW OFFICE, Glenmont, New York.

For Carver Companies Payroll, LLC; Coeymans Marine Towing, LLC, defendants: GLENN P. DOHERTY, ESQ., OF COUNSEL, Hodgson, Russ Law Firm, Albany, New York.

**Judges:** PAUL J. EVANGELISTA, United States Magistrate Judge.

**Opinion by:** PAUL J. EVANGELISTA

## Opinion

**PAUL J. EVANGELISTA**

**United States Magistrate Judge**

**MEMORANDUM-DECISION & ORDER**

Presently pending before the court is plaintiff Harley Marine NY, Inc.'s ("HMNY") motion for sanctions based on spoliation of evidence against defendant Brian Moore pursuant to *Federal Rule of Civil Procedure 37(e)(1)* ("Fed. R. Civ. P."). *See* Dkt. No. 73. Plaintiff seeks an order from the Court granting several sanctions against defendant Moore. *See id.* Although the Court finds that there has been a negligent loss of evidence at the hands of defendant Moore, based on the limited evidence before the Court and the recently-filed motion to compel a forensic review, the decision on plaintiff's Spoliation Motion is denied with leave to renew, for the reasons to be detailed below.

**I. Background** [*2]

Familiarity with the facts and issues underlying this case is presumed; thus, the Court will repeat the relevant facts herein only as necessary to review the instant motion. Defendant Moore was employed with HMNY in its Bayonne, New Jersey office as the Company's Director of U.S. East Coast Operations. *See* Dkt. No. 27 at ¶ 3. As part of his employment with HMNY, defendant Moore signed a confidentiality agreement dated February 6, 2018 (the "Agreement"). *See* Dkt. No. 27 at ¶ 4. The Agreement is chiefly concerned with protecting HMNY's trade secrets and confidential information, including by limiting employee conduct regarding such information. *See id.* at ¶ 20. The Agreement specifies that an employee's "obligations under this Agreement with regard to any particular



Confidential Information . . . shall continue during and after his or her employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf." *Id.* at ¶21.

On or about November 18, 2022, Moore resigned from HMNY. *See* Dkt. No. 27 at ¶23. On or **[*3]** about December 1, 2022, HMNY mailed Moore a termination package, reminding Moore that the terms of the confidentiality agreement still apply. *See id.* at 26. Moore began his employment with Carver on or about December 5, 2022. *See* Dkt. No. 16-2 at ¶4. On or about January 19, 2023, HMNY checked the activity log of HMNY's Dropbox account and discovered that defendant Moore, using his HMNY log-in information, had signed in to HMNY's Dropbox account after he began working for Carver and downloaded various proprietary files. *See* Dkt. No. 27 at ¶¶ 36-40. On January 20, 2023, legal counsel for HMNY sent cease-and-desist letters to both defendant Moore and Carver. *See D*kt. No. 73-4. In the letter, plaintiff's counsel explicitly provided notice to preserve all potential and actual evidence, including electronic evidence, related to plaintiff's allegations. *See id.* Plaintiff commenced this action by filing of a complaint on February 7, 2023. *See* Dkt. No. 1. Plaintiff filed an amended complaint on March 24, 2024. *See* Dkt. No. 27.

In approximately August 2023, "Moore's personal iPhone, which he owned while employed by HMNY, was having functional issues and was traded in to a Verizon store for a **[*4]** new iPhone." Dkt. No. 75-1 at ¶ 3. As sworn to in his response to plaintiff's motion for a preliminary injunction, Dkt. No. 16-2 at ¶27, defendant Moore claims he was unaware of any other HMNY documents in his possession or remaining on his previous phone. *See* Dkt. No. 75-1 at ¶ 6.

I. **Arguments**

A. **Plaintiff's Arguments**

Preliminarily, plaintiff argues that defendant Moore admittedly cannot produce his cell phone for forensic review; thus, there is no adequate substitute to retrieve the results that a forensic review of the phone would have produced. *See* Dkt. No. 73-1 at 12.[1] Next, they argue that based on the explicit language in a January 20, 2023, letter to defendant Moore from plaintiff's attorneys, Dkt. No. 73-4, and the complaint filed in this action on February 7, 2023, Dkt. No. 5, defendant Moore was aware of his obligation to preserve electronic records of his activities, including e-mail, text messages, files, or information, related to the dispute that may have been on his cell phone. *See* Dkt. No. 73-1 at 9. Plaintiff accuses defendant Moore of having a culpable state of mind when failed to take reasonable steps to preserve his cell phone and the electronic discovery information **[*5]** ("EDI") presumably contained on that phone. *See id.* at 13. Finally, plaintiff argues that defendant Moore's cell phone contained relevant information that would help plaintiff establish its claims that defendant Moore violated the Confidentiality Agreement, the *Defend Trade Secrets Act*, and the *New Jersey Trade Secrets Act*. *See id.* at 14-15. Additionally, plaintiff asserts that any evidence of defendant Moore's "transfer of such information to defendant Carver's devices and systems (or any other device controlled by defendant Moore) would also have been destroyed because of defendant Moore's disposal of his cell phone." *Id.*

Plaintiff is seeking numerous sanctions based on defendant Moore's failure to preserve his cell phone and the EDI presumably on that phone. Specifically, plaintiff is seeking adverse inferences against defendant Moore and reimbursement of the reasonable attorneys' fees it incurred as a result of defendant Moore's alleged spoliation. *See* Dkt. No. 73-1 at 15.

More specifically, plaintiff seeks an order from the Court granting an adverse inference against defendant Moore, amounting to an admission that he used his cell phone to download HMNY's confidential information **[*6]** as follows:

---

[1] The Court's citations are to the pagination located at the header of each page, generated by the Court's case management and electronic filing system.

(1) an inference that Mr. Moore, while a management-level employee of Carver on December 18, 2022, December 30, 2022, and January 5, 2023, on approximately thirty (30) occasions, accessed and downloaded various files regarding the HMNY's business operations including,
> i. Stability Letters regarding each tugboat's seaworthiness;
> ii. "Blue Cards" from the Company's insurance carrier in London, U.K;
> iii. Bridge Letters showing the various corporate entities who own each vessel; (iv) equipment list for each vessel; and
> iv. "spec sheets" showing operating and mechanical data for each tug boat such as: fuel capacity, fluid density, flow rate, and operating pressure and temperature.

(2) Further, there should be an inference that Mr. Moore downloaded a file called Master Voyage, which is a pricing and bidding sheet with information based on internal knowledge that HMNY has accumulated over the last two decades, including but not limited to:
> i. specific and actual performance of each HMNY vessel (i.e. how much fuel was burned, speed, distance);
> ii. voyage runs and distances traveled;
> iii. specific routes that can be operated safely; and
> iv. expenses for consumables.

(3) There should also be **[*7]** an inference that Mr. Moore transferred the foregoing documents and information to Carver's devices or systems.

*Id.* at 15.

B. **Defendant Moore's Arguments**

Defendant Moore argues that plaintiff's motion stems from the purported loss of two types of information, evidence that he: (1) downloaded HMNY's confidential documents after his resignation, and (2) transferred that information to Carver. *See* Dkt. No. 75 at 8. As to the first category, defendant Moore claims that plaintiff is already in possession of the evidence it seeks through Dropbox and has failed to demonstrate it is not available through additional discovery. *See id.* As to the second category, defendant Moore alleges that plaintiff's arguments fail for the same reasons as the first category and that plaintiff has failed to demonstrate that evidence of transfer of the confidential documents to Carver exists or that it cannot be restored or replaced through additional discovery. *See id.* at 10. Defendant Moore further contends that plaintiff's request is premature because discovery has not been complete and the "universe of ESI" available from other sources has not yet been determined. *Id.* at 9.

Alternatively, defendant Moore contends **[*8]** that, if the Court were to grant plaintiff's motion for sanctions, the remedies plaintiff proposes — adverse inferences and monetary sanctions — are overly severe. As for the adverse inference request, defendant Moore argues that plaintiff has failed to demonstrate prejudice, and the proposed adverse inferences go beyond factual issues and address ultimate conclusions of law that are in the province of the Court. *See* Dkt. No. 75 at 11.

C. **Plaintiff's Reply**

In its reply, plaintiff disagrees that it possesses evidence confirming that defendant Moore downloaded HMNY's Confidential Information when he was a Carver employee. *See* Dkt. No. 78. Plaintiff argues that defendant Moore's challenge to the accuracy of evidence that does exist pertaining to the downloading of documents — the Dropbox activity log — renders his argument that other evidence exists in response to its motion for sanctions disingenuous. *See id.* at 5-6. Plaintiff further contends that the impact of not having the phone to conduct a forensic review highlights the inability to challenge the accuracy of other evidence, specifically the activity log. *See id.* at 6. Defendant Moore and Carver's denial of transfer of the Confidential **[*9]** Information in question, plaintiff contends, is "actually the reason HMNY was asking for production of the cell phone." *Id.* Plaintiff reiterates its request for an adverse inference sanction and attorneys' fees.

II. **Legal Standards**

A. Rule 37(e)[2]

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). For spoliation "sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence actually existed and was destroyed." In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,[3] 341 F.R.D. 474, 493 (S.D.N.Y. Apr. 11, 2022) (quoting Farella v. City of New York, Nos. 05 Civ. 5711 & 05 Civ. 8264 (NRB), 2007 U.S. Dist. LEXIS 7420, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007), citing La Belle v. Barclays Cap. Inc., 340 F.R.D. 74, 82 (S.D.N.Y. 2022)).

Under Rule 37(e), the Court must conduct a three-part analysis:

> "The first is to decide if the rule applies at all — that is, if a party failed to take 'reasonable steps' to preserve [ESI] 'that should have been preserved in the anticipation or conduct of litigation.' Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been 'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.' Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider — regardless of prejudice to any other party — is whether the destroying party **[*10]** 'acted with the intent to deprive another party of the information's use in the litigation,' in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment."

In re Keurig, 341 F.R.D. at 494 (quoting Doubleline Cap. LP v. Odebrecht Fin., Ltd., No. 17-CV-4576, 2021 U.S. Dist. LEXIS 60959, 2021 WL 1191527, at *4) (S.D.N.Y. Mar. 30, 2021) (additional citation omitted)).

1. **Duty to Preserve and Reasonable Steps**

"As to the first step, '[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.'" In re Keurig, 341 F.R.D. at 494 (quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) (additional internal quotation marks omitted)).
> "While a litigant is under no duty to keep or retain every document in its possession[,] . . . it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."

Id. (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991)). "Thus, the duty to preserve arises 'when a party should have known that the evidence may be relevant to future litigation.'" Id. **[*11]** (quoting Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). Relevance, for purposes of Rule 37(e), "is 'an extremely broad concept.'" Id. at 495 (quoting Orbit One Commc'ns, Inc. v. Numerex Corp., 271 F.R.D. 429, 436 (S.D.N.Y. 2010) (additional citation omitted)). "Once the duty to preserve attaches, a party and its counsel must 'take reasonable steps to preserve' relevant evidence." Id. (quoting Moody v. CSX Transp., Inc., 271 F. Supp. 3d 410, 426 (W.D.N.Y. 2017)). Parties and their

---

[2] Fed. R. Civ. P. 37(e) states, "If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information as unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

[3] Hereafter, "*In re Keurig*[.]"

counsel likewise "have a duty to make sure that discoverable information is not lost." *Id. at 495* (quoting *Moody, 271 F. Supp. 3d at 426*).

2. **Prejudice**

As noted above, the second step of the analysis is to decide if there has been "'prejudice to another party from loss of the information,' in which case the Court 'may order measures no greater than necessary to cure the prejudice.'" *In re Keurig, 341 F.R.D. at 494* (quoting *Doubleline Cap., 2021 U.S. Dist. LEXIS 60959, 2021 WL 1191527, at \*4-5*).

"Neither party has 'a burden of proving or disproving prejudice,' and *Rule 37(e)* "leaves judges with discretion to determine how best to assess prejudice in particular cases." *In re Keurig, 341 F.R.D. at 495* (quoting *Fed. R. Civ. P. 37(e)(1)* adv. comm. n. to 2015 amend.). Generally, to establish prejudice, "the moving party must come forward with 'plausible, concrete suggestions as to what [the destroyed] evidence might have been.'" *Id.* (quoting *Moody v. CSX Transp., Inc., 271 F. Supp. 3d 410, 432 (W.D.N.Y. 2017)*).

> "Where the discovery violation involves spoliation or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the other parties were able to **[\*12]** obtain the same evidence from another source, or that during discovery they never asked for the evidence later shown to have been spoliated."

*Id.* (quoting *R.F.M.A.S., Inc. v. So, 271 F.R.D. 13, 25 (S.D.N.Y. 2010)*, citing *Fed. R. Civ. P. 37(e)* (permitting sanctions for spoliation of ESI only if "it cannot be restored or replaced through additional discovery")); *see also GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., 282 F.R.D. 346, 359 (S.D.N.Y. 2012)* (determining that spoliation sanctions are unwarranted where "the information was preserved in other locations").

3. **Intent to Deprive Another Party**

Pursuant to *Rule 37(e)*, a plaintiff must show that a defendant "acted with the intent to deprive another party of the information's use in the litigation" before the sanctions listed in *subsection (2) of Rule 37(e)* — i.e., adverse inference, dismissal, or default judgment — are available. *Fed. R. Civ. P. 37(e)(2)*. "Absent a showing of 'intent to deprive,' a plaintiff's relief is limited to sanctions under *subsection (1) of Rule 37(e)*." *Rothman v. City of New York, No. 19-CV-225 (CM) (OTW), 2019 U.S. Dist. LEXIS 202593, 2019 WL 6210815, at \*3 (S.D.N.Y. Nov. 21, 2019)* (citing *Fed. R. Civ. P. 37(e)(2)*).

4. **Types of Sanctions**

"'The most severe of the sanctions permitted by *Rule 37* for a disobedient party are dismissal and entry of default, and such sanctions should be ordered 'only when the district judge has considered lesser alternatives.'" *Vancza v. Marist Coll., No. 1:21-CV-01262 (GTS/CFH), 2024 U.S. Dist. LEXIS 106712, 2024 WL 3026683, at \*3 (N.D.N.Y. June 17, 2024)* (quoting *Shibata v. Swingle, No. 3:16-CV-1349 (BKS/DEP), 2018 U.S. Dist. LEXIS 79119, 2018 WL 4522053, at \*2 (N.D.N.Y. May 9, 2018)*, *report and recommendation adopted*, *2018 U.S. Dist. LEXIS 173392, 2018 WL 4895847 (N.D.N.Y. Oct. 9, 2018)* (quoting *S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010)* (additional citation omitted).

> "When considering the severest of sanctions, the Court is required to consider: **[\*13]** (1) the non-disclosing party's explanation for the failure to comply with the Federal Rules, (2) the importance of the evidence, (3) the prejudice suffered by the opposing party of having to prepare to meet the new evidence, and (4) the possibility of a continuance. See *Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006)*. Although a finding of the non-disclosing party's bad faith is not required to impose sanctions under *Rule 37*, it is a factor that may be considered as part of the non-disclosing party's explanation for its failure to comply. See *Design Strategy, Inc., 469 F.3d at 296*. *Robinson v. Purcell Constr. Corp., No. 7:09-CV-1209 (GTS/TWD), 2012 U.S. Dist. LEXIS 206180, 2012 WL 13172941, at \*2 (N.D.N.Y. Nov. 13, 2012)*.

*Vancza, 2024 U.S. Dist. LEXIS 106712, 2024 WL 3026683, at \*3*.

A party's "conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)."' *Ungar v. City of N.Y.*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018). Thus, "[w]hether the spoliator *affirmatively* destroys the data, or *passively* allows it to be lost, is irrelevant; it is the spoliator's state of mind that logically supports the adverse inference." *Id.* (citing *Moody*, 271 F. Supp. 3d at 431) ("While knowing they had a duty to preserve the event recorder data, defendants allowed the original data on the event recorder to be overwritten . . . . On this record, the Court finds that defendants acted with the intent to deprive [plaintiff] of the use of the event **[*14]** recorder data").

> [Iff [ESI] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court" may, on a finding of prejudice, "order measures no greater than necessary to cure the prejudice[.]"

*In re Keurig*, 341 F.R.D. at 494 (quoting Fed. R. Civ. P. 37(e)(1)).

III. **Analysis**

A. **Duty to Preserve**

Based on all that has occurred to date, the following conclusions can be made about defendant Moore's obligation to preserve both categories of the disputed evidence: the cell phone, the potential evidence contained on the cell phone, the files, and the potential transfer of those files to defendant Carver. As part of his employment with HMNY, Moore signed a confidentiality agreement dated February 6, 2018. The agreement specified that defendant Moore's obligations under the agreement continued during and after his employment with HMNY. On December 1, 2022, HMNY mailed defendant Moore a termination package reminding Moore that the terms of the confidentiality agreement still apply. On January 20, 2023, legal counsel for HMNY sent both Moore and Carver a cease-and-desist letter. In that letter, **[*15]** plaintiff's counsel explicitly provided notice to preserve all potential and actual evidence including electronic evidence related to the plaintiff's allegations. *See* Dkt. No. 73-4. Plaintiff commenced this action by filing a complaint on February 7, 2023. *See* Dkt. No. 1.

The cell phone that potentially contained electronically-stored information was turned into the Verizon store on or about August 2023, at least six months after the January 20, 2023, notice to preserve all potential and actual evidence was sent to defendant Moore and at least five months after this action was commenced. Plaintiff has established that defendant Moore had notice that the cell phone and its contents were relevant to the litigation and that he had a duty to preserve it. *See Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.) (internal citations omitted).

B. **Prejudice**

At this stage in the litigation, plaintiff has not established prejudice resulted from defendant Moore's turning in of his personal cell phone. "Where the discovery violation involves spoliation **[*16]** or withholding of evidence, the absence of prejudice can be shown by demonstrating, for example, that the other parties were able to obtain the same evidence from another source, or that during discovery they never asked for the evidence later shown to have been spoliated." *R.F.M.A.S., Inc.*, 271 F.R.D. at 25; *see* Fed. R. Civ. P. 37(e) (permitting sanctions for spoliation of ESI only when "it cannot be restored or replaced through additional discovery"). At this stage in discovery, the Court cannot determine if plaintiff has been prejudiced by defendant Moore's turning in of his cell phone.

It is not disputed that defendant Moore downloaded the documents plaintiff identifies. *See* Dkt. No. 75 at 10. However, plaintiff's transfer of those documents to Carver through his cell phone is, at this point in the litigation, speculative, and, if it does exists, it would appear likely to be available on Carver's devices and systems. Considering that there is a yet-to-be decided motion to compel said review,[4] Dkt. No. 91, the Court will be in a

---

[4] HMNY's motion to compel forensic review of Carver's devices and systems was filed on April 8, 2025. *See* Dkt. No. 91.

better position to make a full determination of prejudice and to fashion an appropriate sanction if warranted once that motion is decided and, if such review is compelled, the result of that review.

C. **Intent [*17] to Deprive**

Defendant Moore disposed of his cell phone following ample notice that its contents needed to be preserved. Before turning in the cell phone to Verizon, rendering inaccessible to plaintiff, neither defendant Moore nor his counsel appear to have attempted to preserve its contents.[5] Based on the evidence currently before the Court, defendant Moore's conduct appears negligent. The Court is not currently convinced, based on the evidence proffered, that defendant Moore's negligent conduct was an intentional effort to frustrate plaintiff's litigation. Although plaintiff "need prove only simple negligence" and "need not demonstrate willfulness for this Court to implement sanctions[,]" *Vancza, 2024 U.S. Dist. LEXIS 106712, 2024 WL 3026683, at *7*, the Court requires more information on defendant Moore's state of mind at the time he turned in the cell phone; defendant Moore's understanding of forensic evidence created by cell phone use, including whether such evidence would have been preserved in some format, such as on the "cloud"; and the outcome of any forensic review of Carver's devices and systems, if so ordered.[6] There is no question that defendant Moore was aware that plaintiff already possessed the documents he admits to downloading at **[*18]** the time he turned in his cell phone and that plaintiff was aware he downloaded the documents.[7] *See* Dkt. No. 1 at ¶35-41. Defendant Moore also claims, at the time he turned in the cell phone, he deleted all the documents plaintiff lists in its complaint. *See* Dkt. No. 16-2 at ¶17.

In sum, at this stage in the litigation and based on the evidence provided, the Court cannot determine if defendant Moore's conduct justifies the adverse inference charges or attorney's fees sought. It will be in a better position to make both the required prejudice and intent to deprive analyses following the close of discovery. Ultimately, it may be the District Judge who is in the best position to determine if, or which, sanctions to impose. If, for example, forensic analysis of Carver's system and devices proceeds and such analysis reveals that the alleged documents were sent by defendant Moore's phone to Carver, plaintiff will have obtained substantially the same evidence from another source and may potentially be unable to show prejudice. If, on the other hand, no information concerning a transfer is garnered from another source and defendant Moore's conduct can be reasonably established as intentionally **[*19]** committed for the purpose of frustrating plaintiff's litigation, perhaps the deciding judge may deem an adverse instruction appropriate. In either situation, the Court declines to decide what, if any, sanction is appropriate at this time.

IV. **Conclusion**

**WHEREFORE**, for the reasons set forth above, it is hereby **ORDERED**, that plaintiff's motion for sanctions due to spoliation of evidence, Dkt. No. 73, is **DENIED** with leave to renew.

**IT IS SO ORDERED**.

Dated: May 8, 2025

Albany, New York

/s/ Paul J. Evangelista

Paul J. Evangelista

U.S. Magistrate Judge

---

[5] The Court notes that it does not appear that counsel was aware defendant Moore disposed of his cell phone until after the act was completed. *See* Dkt. No. 75-1 at ¶4.

[6] As noted above, a motion compelling that review has been very recently filed and is pending before the Court.

[7] Moore does not admit to "intentionally" downloading documents. *See* Dkt. No. 16-2 at ¶14.

2025 U.S. Dist. LEXIS 87774, *19

**End of Document**