**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of MiT Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | **Civil Action No: 2:24-cv-00490** |

**PETITIONER'S BRIEF IN SUPPORT OF ITS MOTION**
**FOR PROTECTIVE ORDER**

Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), as Owner and Operator of M/T Mackenzie Rose (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* moves under Federal Rule of Civil Procedure 26(c)(1) and L.R. Civ. 37(G) and (H) for a protective order to (1) prevent Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Intervening Claimant, Evanston Insurance Company from engaging in abusive and unnecessary discovery and discovery motions and to require that they engage in good faith efforts to resolve discovery discussions, rather than refusing to engage while demanding that Carver concede its case or waive its rights; (2) to prevent Claimants from conducting discovery depositions designed to invade Carver's attorney-client relationship, attorney-client privilege and work product based on an unfounded *ad hominem* attack on Carver, its attorneys, and its Chief General Counsel, Josef Malik, Esq.; (3) and, in light of the abusive practices of Claimants in this matter, Carver asks this Court supervise the remaining discovery to facilitate bringing this matter to a resolution on the merits without violating Carver's rights and privileges. (4) & (5) While Carver will separately brief its oppositions to Claimants' motion seeking dispositive sanctions [ECF Nos.

1

& 70], it respectfully submits that both of those motions should be denied or stayed pending completion of supervised discovery. In addition, Carver requests an award of its fees and costs in bringing this motion. In support of this motion, Carver states as follows:

## INTRODUCTION

Petitioner Carver brings this motion to address abusive discovery practices by Respondent/Claimant Belt Line and Intervening/Subrogation Claimant Evanston Insurance Company. These abuses include bringing discovery motions without meeting the requirements of L.R. Civ. 37, demanding that Carver waive its attorney-client and work product privileges, and accusing Carver's counsel and in-house general counsel of imagined dishonesty or destruction of evidence when the record in this matter demonstrates Carver's extensive efforts to produce all fact witnesses in its control, and to disclose information and documents, through paying vendors to assist. Carver respectfully submits that this Court should intervene, enter an order requiring Claimants to meet and confer in good faith, denying Claimants' efforts to invade Carver's privileges, and damage the attorney-client relationship, and supervise ongoing discovery in this case.

Rule 26(b)(1) of the Federal Rule of Civil Procedure mandates that discovery be directed to "nonprivileged matter" and that it be:

> … proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 26(c) provides the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, undue burden or expense" limiting discovery, including by "forbidding inquiry into certain matters, or limiting the scope of

2

disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1); see also *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("district courts enjoy nearly unfettered discretion to control the timing and scope of discovery …"); Fed. R. Civ. P. 37(a)(5)(B) (if a motion to compel under Rule 37 is "denied, the court may issue any protective order authorized under Rule 26(c) …"); Fed. R. Civ. P. 37(a)(5)(C) (same but if a motion is "granted in part and denied in part").

It is in this spirit that the Local Rules of this Court mandate that parties work collaboratively and in good faith to minimize and resolve discovery disputes. More specifically, Eastern District of Virginia Local Civil Rule 37(E) provides:

> Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy.

L.R. Civ. 37(E). Local Civil Rule 37(G), in turn, provides:

> Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy.

L.R. Civ. 37(G); see also *Jenkins v. Wal-Mart Stores, Inc.*, 2021 U.S. Dist. LEXIS 66128, 2021 WL 1256907, at *3 (E.D. Va. Apr. 5, 2021) ("Unnecessary discovery disputes requiring court intervention waste attorney time, cost their clients extra fees, and waste judicial resources"). They also redirect the efforts of counsel to attempts to prevail in a war of formalities, rather than to prevail on the basis of the facts of a given case.

For this reason, "[r]ushing to the Court with a discovery dispute before the other party" has had an opportunity to cure the dispute or before its responses are due are quintessential violations of the requirements of Local Rule 37. *Flame S.A. v. Indus. Carriers*, No. 2:13-cv-658, 2014 U.S.


Dist. LEXIS 136422, at *15 (E.D. Va. Sep. 25, 2014). The same is true where counsel request that the parties meet and confer with the purpose of justifying the filing of a motion without meaningfully attempting to resolve the dispute. *Myers v. Mercedes-Benz USA, LLC*, No. 3:23cv755 (DJN), 2024 U.S. Dist. LEXIS 144055, at *18-19 (E.D. Va. May 15, 2024) ("threatening Defendant's counsel with a last-minute filing rather than engaging in good-faith negotiations, strikes the Court as far outside the bounds of a reasonable attempt to meet and confer prior to filing the Motion to Compel"). Applying the above standards to the facts of discovery in this matter, amply demonstrates the need for this Court's intervention.

## STATEMENT OF FACTS

1. This matter is before the Court on a limitations action by Petitioner/Defendant consolidated with claims for property damage by Respondent/Claimant Belt Line and Intervening/Subrogation Claimant Evanston Insurance Company.

2. The various claims all result from an allision between a barge that was being pushed by the M/V MACKENZIE ROSE and a bridge owned by Respondent/Claimant, Belt Line. Subrogation Claimant and Intervenor, Evanston, insured the bridge and paid its limits toward the repair and modification of the bridge following the allision.

3. The parties have been engaged in extensive discovery, with daily substantive disclosures, depositions, and discussions occurring essentially since discovery opened. **Exhibit A** affidavit of James H. Rodgers. Throughout this process, Carver has sought to produce and has produced an extensive record, including producing the available crew members of the Mackenzie Rose, has paid vendors to search for documents requested by Claimants, and has openly raised concerns about the discovery sought by Claimants. Claimants have repeatedly elected to proceed

with depositions, knowing Carver's timely objections, and have asked this Court to allow them to avoid litigation over this matter on the merits.

4. Recently, Claimant Belt Line and Intervening Claimant Evanston have demanded that Josef Malik, Esq. be produced for deposition. **Ex. A-23.** They have also demanded the deposition of Jason Galioto. **Ex. A-24.**

5. Of course, Claimants are well aware that Attorney Malik is general counsel to Carver, that he accepted that position only after the allision, and that his involvement in this matter is as a part of the control group for Carver. He obviously has no personal knowledge of events leading to the allision. Attorney Malik has become a target of the Belt Line because he provided a declaration outlining the extensive efforts Carver has taken to identify and locate responsive documents and ESI to the Belt Line's discovery requests. **Ex. A-9.** That declaration was provided voluntarily, in a good faith effort to confer about the status of discovery and transparently inform the Belt Line as to the information Carver believed existed and would soon be produced. Claimants are also well aware that Mr. Galioto has no personal knowledge pertaining to this case. **Ex. A-31**. His involvement has been due to his assignment to assist defense counsel. *Id.*

6. Regardless, in an effort to ensure reasonable discovery, Carver advised Claimants it would produce Attorney Malik for a factual deposition related to his declaration as to discovery produced in this case, only; Carver proposed that the deposition take place in Chicago or by Zoom, subject to objections as to both attorney-client and work product privileges. **Ex. A-27.**

7. In response, Claimants accused Attorney Malik of dishonesty and insisted that Carver be deprived of the attorney-client and work product privileges, by its own agreement. **Ex. A-30.** In a telephonic conference conducted on July 21, 2025, Carver asked that Claimants withdraw that position, and indicated that it would work with Attorney Malik to see if he could be

5

deposed on Claimants' preferred date. Claimants refused to withdraw their accusations and continue to demand a waiver of Carver's litigation privileges.

    8.    This positioning is similar to the positions Claimants have taken as to other objections raised by Carver, and should be viewed in the same light. Specifically, Claimants have:

- Admittedly moved to compel Answers to certain Interrogatories *before* Carver's Answers were even due. [ECF No. 52]. This tactic presaged the ongoing abuse of discovery currently before the court, and has been pursued by Claimants since inception of the case. It has been clear that no amount of discovery from Carver will suffice for the Belt Line and it is attempting to prevail on a discovery sanction or other technicality, rather than the merits.

- Filed their motion to compel a second inspection of the M/V MACKENZIE ROSE on July 15, 2025, [ECF Nos. 67 & 68] based on a supposed telephonic conference on June 10, 2025 [ECF No. 68, at p. 4], and a supposed flat refusal to allow a second inspection on July 11, 2025, [ECF No. 68, at p. 5], when Carver's actual July 11, 2025 e-mail states that Carver will discuss the request for a further inspection [ECF No. 68-7]. Under L.R. 37, the parties must engage in good faith efforts to resolve disputes and must not file unnecessary discovery motion.

- Agreed to proceed with the deposition of Carver, by its person most knowledgeable, having been served with direct clear objections to the same, **Ex. A-10,** and having been informed that Carver would stand on those objections and would necessarily adopt the testimony of the direct fact witnesses who had been deposed.

- Took multiple depositions of Carver employees including General Manager Brian Moore, **Ex. A-1**, and Port Captain Lenny Baldasarre, **Ex. A-2**, where the objections they now claim were egregious were posed, without requesting any conference to 'meet and confer' or reschedule those depositions to further address objectionable questions.

- Elected not to set a 'meet and confer' to discuss obtaining additional testimony after the 30(b)(6) deposition. Rather, Claimants proceeded immediately to demand that Carver dismiss its case or they would seek judgment as a sanction. **Ex. A-22**.

- The motion for judgment as a sanction, [ECF Nos. 69 & 70] was grounded on a telephonic conference in which counsel for Claimants indicated that their only purpose in discussing the case was to demand that Carver voluntarily dismiss its limitation action. **Ex. A**, at ¶¶ 46-47. In that call, and by letter two days later, Carver urged Claimants that the purpose of the rule requiring the parties to meet and confer is to resolve discovery disputes so that the parties and the court can address the merits of a dispute. Both in that call, and since that call, Claimants have

6

      refused to respond to Carver's points or to address what evidence Claimants believe was lacking or how Claimants were prejudiced.

- Accused Attorney Malik of dishonesty in his declaration regarding discovery, A-30, with no evidence in support of that accusation, and demanded that Carver withdraw its objections to privileged discovery being sought. This is despite the fact that Attorney Malik's declaration, A-9, *inter alia*, explained: Carver worked with its third-party vendor, TBS HelmConnect to produce various incident reports, "near-miss reports," and repair records directly from HelmConnect's system; identified email communications and other ESI using search parameters; and informed that Carver was in process of collecting various ESI from Carver employee's phones, and that such production would follow upon completion of the collection. *Id.*

- Continue to demand a deposition of Jason Galioto – despite having an affidavit from Mr. Galioto confirming that he has no personal knowledge of the facts of the allision, the condition of the M/V MACKENZIE ROSE or of the hiring, training, or competence of the crew. A-31. That same affidavit clearly explains that Mr. Galioto's involvement in this case was to assist Carver's defense counsel, such that his testimony will be subject to attorney-client and work product privileges.

9. Instead of genuinely conferring on the above issues, on July 3, 2025, Belt Line informed Carver by letter that:

> Such conduct is improper under Rule 30 of the Federal Rules of Civil Procedure and obstructed the Belt Line's ability to properly depose the witnesses regarding information relating to the limitation action. Given the obstructionist tactics used throughout depositions in this matter, re-deposition of the witnesses would be an insufficient remedy. **The only feasible remedy for this obstruction is the dismissal of the limitation portion of this case. Accordingly, we request that you voluntarily dismiss Carver's Limitation Complaint to avoid the necessity of seeking Court intervention.**

Exhibit A-22. (emphasis added). In the ensuing conferences dubbed "meet and confers," Carver invited Belt Line to identify deposition topics were not answered and any prejudice to Claimants, but they refused to engage any meaningful dialogue to resolve the dispute. Claimants simply demanded that Carver's Limitation petition be dismissed. Carver followed up these meet and confers with a detailed 8-page letter outlining the responsiveness of Carver's corporate

7

representative and clarification of several answers, yet Claimants ignored this letter and instead filed their motion for sanctions and dismissal.

10. Belt Line clearly had no intent to genuinely confer under L.R. 37. Carver therefore requests the Court deny Claimants' sanctions motions pending [ECF Nos. 67 & 68].

11. Given this history, Carver anticipates that the Malik and Galioto depositions will include continued demands for Carver to waive its rights and privileges, and will not be the limited scope depositions that might be reasonable. Carver further anticipates that Claimants will then use the fact that objections were raised in support of yet another motion for sanctions against Carver.

12. For these reasons, Carver asks this Court to supervise the remaining discovery to prevent Belt Line from baselessly accusing Carver of discovery noncompliance. Claimant's current complaint, for example. is that Carver has continued to respond to Claimants shifting requests for documents and has supplemented its production with the promised cell phone ESI. Carver has also produced a report regarding a May 2024 issue with its autopilot system, which Carver recently identified it while searching for other documents responsive to the Belt Line's discovery requests. This particular record had not been captured through the HelmConnect data gathering because it had not been finalized internally at Carver. It therefore was never transmitted to the HelmConnect system. So, when HelmConnect pulled all records, this particular record was not captured. Nonetheless, Carver located it on its own system while searching for other documents and produced the record as soon as it was located.

13. This is one of the "apparent discrepancies" between the declaration and Carver's production that Belt Line seeks to interrogate Attorney Malik about. The other identified discrepancies include:

- Attorney Malik's stated in his declaration that Carver had produced all available information in HelmConnect, but Carver recently produced the May 2024 record (which Carver found outside of HelmConnect);

- Carver recently produced ESI cell phone data (as Mr. Malik stated Carver would in his declaration), but Carver did not provide an "affirmation of completeness" with the production; and

- Carver has failed to explain the basis for the selected search terms or custodians used to locate the email ESI.

**Ex. A-30.** None of these assertions support a demand to invade Carver's attorney-client relationship or to engage in *ad hominem* attacks on Attorney Malik. Claimants' accusations warrant supervision over the remaining discovery.

14. The parties first met and conferred regarding the ESI production on or about June 11, 2025. **Ex. A, ¶ 33**. During that conference, Carver invited the Belt Line to provide any search terms and custodians that they felt may generate additional, relevant, and responsive ESI that had yet to be produced. The Belt Line *declined* the overture, stating that the parties' Scheduling Order did not necessarily contemplate that Belt Line had any obligation to assist Carver with identifying terms and conditions. *Id.* This was the last time Carver heard anything about a purported dispute over the ESI production until receiving a request for Attorney Malik's deposition.

15. As for Belt Line's claim that Carver failed to provide an "affirmation of completeness," no such obligation exists under the Federal Rules of Civil Procedure. See *Shulin v. Werner Enters.*, No. 1:15-cv-0095, 2017 U.S. Dist. LEXIS 232239, *11-12 (N.D. W. Va. Aug. 11, 2017) (Counsel's signature on a response to discovery request is sufficient to certify that the production is complete and correct as of the time it was made and thus a corporate designee "need not provide a verification" as to completeness). The Belt Line is simply attempting to paint Carver as noncompliant in discovery where no such obligation exists.

16.     This is not the first time the Belt Line has misrepresented Carver's discovery production. By example, on May 23, 2025, Carver produced various ESI in native format that contained documents and other information as attachments to the underlying emails (e.g., incident reports, drafts of the same, and photographs of the tug). **Ex. A, ¶ 19**. Carver explained on multiple occasions that the "native" versions of these photographs, documents, etc. were contained in the native ESI email correspondences. *Id.*, Yet et Belt Line accsed Carver of failing to produce the photographs. In another example, Belt Line's counsel began accusing Carver's Rule 30(b)(6) representative of failing to produce a 2025 survey of the vessel, only to have Carver's counsel intervene and inform that Carver had, in fact, produced the documents but apparently the Belt Line had failed to sufficiently review the production. See **Ex. A-14**, 30(b)(6) (Laraway Tr. at 53-58). The Belt Line has taken this "shoot first, aim later" approach at accusing Carver of discovery violations in an effort to paper a record of Carver's supposed noncompliance with discovery. At every turn, Carver has made good faith efforts to narrow or resolve the dispute, only to have the Belt Line turnaround and accuse Carver of more malfeasance.

17.     The Claimants' request to depose Attorney Malik on his declaration is simply more of the same. Claimants admit Attorney Malik has no personal knowledge of any information relevant to the merits of the claims but purports to "need" Attorney Malik's to drum up a nonexistent spoliation claim. A summary of the voluminous discovery the Belt Line has produced is included in the Declaration of James H. Rodgers attached as **Ex A**. A detailed discussion of the evidence was provided to Claimants in **Ex. A-25**. Belt Line concedes that its only purpose in deposing Carver's in-house counsel "would be to obtain factual information relating to the declaration" and interrogate him about "apparent discrepancies" between the declaration and Carver's production. These issues bear no relevancy to the merits of the claims, nor has Belt Line

attempted to obtain such information by less intrusive methods. For the reasons that follow, Carver respectfully requests entry of a protective order precluding Attorney Malik's deposition and supervising the remaining discovery in this case.

## ARGUMENT

While Carver will separately brief both Claimants' motion to compel another inspection of the Mackenzie Rose, both motions fail in good measure because Claimants have failed to engage in good faith consultations under L.R. Civ. 37. Their transparent focus on seeking an ultimate sanction while bypassing good faith efforts to meet and confer is clearly demonstrated on the above record. Their current effort to invade the attorney-client relationship is improper. Further, the Court should take control over discovery in this matter to shepherd this case through to the close of discovery.

### A. Claimants Are Not Acting in Good Faith

Claimants' effort to prevail by sanctions, rather than on the merits is exemplified by their decision, on July 3, 2025, at close of business before the Independence Day Holiday, to send a curt letter asserting that Carver had improperly raised objections in depositions *dating back to April 28, 2025*. **Ex. A-22 (Referencing depositions that had occurred months before the letter).** This letter was the first time Belt Line informed Carver of any "dispute" it had regarding the discovery depositions. Far from any attempt to confer in good faith to resolve the issue, the Belt Line transparently informed Carver of true purpose, writing:

> Such conduct is improper under Rule 30 of the Federal Rules of Civil Procedure and obstructed the Belt Line's ability to properly depose the witnesses regarding information relating to the limitation action. Given the obstructionist tactics used throughout depositions in this matter, re-deposition of the witnesses would be an insufficient remedy. **The only feasible remedy for this obstruction is the dismissal of the limitation portion of this case. Accordingly, we request that you voluntarily dismiss Carver's**

11

> **Limitation Complaint to avoid the necessity of seeking Court intervention.**

*Id.* (emphasis added).

This 'shot across the bow' is no different than in *Myers Mercedes-Benz USA, LLC*, where this Court denied a motion for sanctions outright for violating the requirement of L.R. Civ. 37(E) to enter the meet and confer process with a meaningful effort to actually resolve the dispute. No. 3:23cv755 (DJN), 2024 U.S. Dist. LEXIS 144055, at *18-19 (E.D. Va. May 15, 2024) ("threatening Defendant's counsel with a last-minute filing rather than engaging in good-faith negotiations, strikes the Court as far outside the bounds of a reasonable attempt to meet and confer prior to filing the Motion to Compel").

To be sure, the Claimants made it clear they were simply going through a *pro forma* meeting to claim to have complied with L.R. Civ. 37 before seeking a sanctions order, rather than a motion to compel or ruling on the objections that were raised in depositions. The parties conducted a videoconference on July 8, 2025 during which Carver's counsel invited the Belt Line to identify topics of deposition testimony in which it needed additional information or how the objections raised therein had prejudiced the Belt Line. **Ex. A, ¶ 47**, Carver informed that it would work to either reproduce witnesses or provide written response in interrogatory format, pending review of the Belt Line's areas of issue. *Id.* Carver followed that conference with an 8-page letter outlining specific areas of testimony from its Rule 30(b)(6) deponent that, it hoped, would clarify for the Belt Line just how responsive the testimony had been. **Ex. A-25**.

Claimants have never responded to Carver's letter and filed its Motion for Sanctions days later, on July 15, 2025. They never made a meaningful attempt at resolving the discovery dispute – if they had, the Belt Line would have provided Carver with specific topics or questions that had not been answered in deposition. Had Belt Line done so, Carver would have worked in good faith

12

to provide such information, either by reproducing a deponent or providing written answers to interrogatories – as it has been providing extensive discovery throughout this process. Notably, this **Court has already ruled** that Claimants could re-depose any of Carver's deponents if it received documents relevant to the depositions after they took place. To date, Belt Line has **not re-deposed a single witness**, despite claiming that it did not have documents available. Rather, the Belt Line has skipped through the meet and confer process and filed a motion for the ultimate sanction.

The Belt Line's failure to confer clearly violates Local Civil Rules 37, subsections (G), (E), and (H). Courts within this district regularly deny or strike, outright, any motion filed before a party satisfies the requirement to confer in good faith. See, *e.g.*, *Myers*, No. 3:23cv755 (DJN), 2024 U.S. Dist. LEXIS 144055, at *18-19 (E.D. Va. May 15, 2024) (denying motion to compel for failure to comply with Local Rule 37(E)); *Kolon Indus. v. E.I. du Pont de Nemours & Co.,* No. 3:11cv622, 2012 U.S. Dist. LEXIS 200354, at *12 (E.D. Va. Feb. 23, 2012) ("Kolon failed to meet and confer with DuPont before filing its motion as it is required to do pursuant to Local Rule 37(E), the motion will be denied"). Carver respectfully requests that the Court deny the Belt Line's pending motions for failure to confer in good faith.

### B.  Claimants' Efforts to Invade the Attorney-Client Relationship Are Improper.

The effort to set aside the attorney-client and work product privileges is equally telling. Courts within the Fourth Circuit recognize that "discovery sought from opposing counsel is universally disfavored" and therefore typically apply either the "heightened standard" from *Shelton* when evaluating discovery demands directed to attorneys. *Allen v. Brown Advisory, LLC*, Civil Action No. 3:20-mc-00008, 2020 U.S. Dist. LEXIS 170513, at *6 (W.D. Va. Sep. 17, 2020) (citation omitted); see also Kendrick v. Carter Bank & Tr., Civil Action No. 4:19-cv-00047, 2023

13

U.S. Dist. LEXIS 87944, at *10 (W.D. Va. May 18, 2023) (also applying the "apex doctrine" evaluation of relevancy and proportionality to cases in which the high ranking executive is an attorney). *Shelton* provides a three-prong test that a party must satisfy to depose the opposing party's attorney: "'(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case.'" *Allen v. Brown Advisory, LLC*, No. 3:20-mc-8, 2020 U.S. Dist. LEXIS 170513, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) (internal citations omitted)).  Similarly, "the party seeking to depose the apex executive may rebut the presumption [that it violates the Rule 26(b)(2)(c)'s proportionality standard or Rule 26(c)(1)'s undue burden or harassment prongs] by showing that (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Kendrick v. Carter Bank & Tr.,* Civil Action No. 4:19-cv-00047, 2023 U.S. Dist. LEXIS 87944, at *10 (W.D. Va. May 18, 2023).

Regardless of whether the Court applies *Shelton* or the apex doctrine to the Belt Line's demand to depose Attorney Malik, the proportionality standards of Rule 26(b)(2)(C) govern the inquiry.  And here, Attorney Malik has no personal knowledge of any facts that bear on the actual merits of the dispute.  The Belt Line admits as much – its only stated purposed is to interrogate a member of the Bar about perceived discrepancies between Attorney Malik's deposition and Carver's production.  In other words, the Belt Line is attempting to fish for a spoliation claim.  This is neither relevant to the merits of the claims nor proportional to the needs of the case.

Moreover, even if exploring for a spoliation claim is marginally relevant, the Belt Line has less intrusive means to obtain such information (though it does not exist).  To start, this Court **has**

**already ruled** that Belt Line could continue the depositions of Port Captain Lenny Baldasarre, General Manager Brian Moore, and the crewmember aboard the tug if Carver produced relevant documents after the depositions proceeded. To date, Belt Line has not re-deposed a single individual despite the fact that the very text messages they want to ask Malik about are communications by and between Moore, Baldassarre, and (now deceased) Captain Miller. Attorney Malik, who has no personal knowledge of these communications, has nothing to provide that the other witnesses cannot.

Finally, preparing corporate counsel for a deposition is inherently burdensome to Carver given the implications of the deposition on attorney-client and work product privileges. Indeed, Carver already offered to produce Attorney Malik on the understanding that he would not disclose any work product, including his thoughts or interpretations on why particular documents were or were not produced by Carver. See *Shelton*, 805 F. 2d 1323, 1329 (counsel's selective review of documents is based upon professional judgment of the issues and defenses in the case, which reflect legal theories and thought processes, "district courts within the Fourth Circuit have relied on the apex doctrine as 'an aid to ensure that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs.'" *Turner v. Amazon.com Servs. LLC*, No. 1:24-cv-01965 (LMB/WBP), 2025 U.S. Dist. LEXIS 120073, at *6 (E.D. Va. June 24, 2025); see also *In re C. R. Bard, Inc.*, No. MDL No. 2187, 2014 U.S. Dist. LEXIS 89147, at *460 (S.D. W. Va. June 30, 2014) ("[a]s a general rule, an effective way to harass and abuse a [] corporation in litigation is to notice the deposition of one of its high-level executives").

"Put simply, the apex doctrine is the application of the rebuttable presumption that the deposition of a high-ranking corporate executive either violates Rule 26(b)(2)(C)'s proportionality

15

standard or, on a party's motion for a protective order, constitutes 'good cause' for such an order as an 'annoyance' or 'undue burden' within the meaning of Rule 26(c)(1)." *Performance Sales & Mktg. LLC v. Lowe's Cos. Inc.*, No. 5:07-cv-140, 2012 U.S. Dist. LEXIS 131394 (W.D.N.C. Sept. 14, 2012). "Put another way, the elements that make up the apex doctrine should be considered—without shifting any burdens—when the traditional Rule 26 relevancy analysis, standing alone, seems insufficient to preclude the deposition of a high ranking official or corporate executive who may have a less pronounced connection to the facts of the case. *Turner*, 2025 U.S. Dist. LEXIS 120073, at *9 (E.D. Va. June 24, 2025); see also *Kendrick v. Carter Bank & Trust*, 2023 U.S. Dist. LEXIS 87944, *11-12 (W.D. Va. May 18, 2023) (finding the apex doctrine as "related" to the *Shelton* factors when, like Attorney Malik, a deponent is both a high-ranking executive and counsel for the defendant); *Allen v. Brown Advisory, LLC*, No. 3:20-mc-8, 202 *Allen v. Brown Advisory, LLC*, No. 3:20-mc-8, 2020 U.S. Dist. LEXIS 170513, 2020 WL 5603760, at *2 (W.D. Va. Sept. 17, 2020) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987) (internal citations omitted) ("*Shelton* provides a three-prong test that a party must satisfy to depose the opposing party's attorney: '(1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case'").

  The Claimants clearly do not intend to honor Carver's attorney-client relationship through a deposition of Attorney Malik and of Mr. Galioto, limited solely to non-privileged facts. Engaging in depositions in which, instead, Claimants seek to obtain attorney-client confidences and work product would be abusive and unduly burdensome even if Claimants were not simultaneously accusing a member of the bar of dishonesty. Thus, Carver respectfully requests that the Court limit the deposition notices to Malik and Galioto to non-privileged matters and that

the Court supervise the depositions by adjudicating any privilege objections on record at the time of the deposition.

### C. The Court Should Supervise the Remaining Discovery In This Matter.

District courts have broad discretion to supervise discovery and impose sanctions. *Mey v. Phillips*, 71 F.4th 203, 217-18 (4th Cir. 2023); see also Fed. R. Civ. P. 26(c)(1) (providing a party may move for a protective order requesting the Court supervise various aspects of discovery). Carver here requests that the Court supervise the remaining discovery and depositions here, including by being present or on standby for any depositions that proceed in the matter. See Fed. R. Civ. P. 26(E). Although Carver recognizes the burdens this poses to the Court, it respectfully submits it is warranted here given the cyclical pattern each discovery dispute has taken thus far: Belt Line demands the discovery or deposition; Carver produces the same, subject to a reasonable objection; the Belt Line then accuses Carver of discovery violations, fails to meaningfully confer, then parades into Court claiming Carver is obstructing it in discovery. Having the Court available to resolve discovery disputes in real time will assist the parties in bringing any dispute to rest efficiently and without a serious a back-and-forth letters and teleconferences in which the Belt Line refuses to cede any ground on their position. Carver respectfully requests that the Court supervise the remaining aspects of discovery.

### CONCLUSION

Carver respectfully asks this Court to recognize that the burden of discovery in this matter has already been substantial even without Claimants' abusive tactics and transparent efforts to justify a request for the ultimate sanction against Carver. This is despite the fact that Carver has produced its vessel for an inspection that Claimants' expert missed, that it has sought to schedule another inspection, that it has produced many witnesses and documents, including producing

documents obtained at its own expense through vendors, and when it has provided meaningful extensive testimony, and sought, in good faith, to work with Claimants to ensure a fair trial.

Under the authorities cited above, and under Local Civil Rul 37(H) any party who submits multiple needless discovery motions and who fails to abide by Local Civil Rule 37, including the meet and confer mandates, is properly subject to "sanctions provided under Fed. R. Civ. P. 37". While Carver will separately brief its oppositions to Claimants' motion seeking a dispositive sanction and its motion to compel another inspection of the M/V Mackenzie Rose, it asks, in this motion, only that (1) that this Court order Claimants to confer in the is matter in good faith; (2) that this Court order that Claimant and Intervening Claimants may not enquire into the attorney-client relationship or evaluation of the evidence in their depositions of Attorney Malik and of Mr. Galioto; (3) that this Court enter an order that it will supervise all remaining discovery, Carver will separately submit briefs as to the Claimants' pending motions to compel and for sanctions, but Carver respectfully submits that (4) [ECF Nos. 67-68] & (5) [ECF Nos. 69-70] both of those motions should be denied or stayed pending completion of supervised discovery. Finally, Carver requests an order (6) that Carver be awarded its attorneys' fees and costs for bringing this motion.

Dated: July 23, 2025    **CLYDE & CO US LLP**

By: */s/ Harold L. Cohen*
Harold L. Cohen, Esq. (VSB No.: 98148)
1221 Brickell Avenue, Ste. 1600
Miami, Florida 33131
Email: harold.cohen@clydeco.us

James H. Rodgers, Esq.
*Pro Hac Vice*
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel No.: (212) 702-6771
Fax No.: (212) 710-3950
Email: james.rodgers@clydeco.us

        Siobhán M. Murphy, Esq., *Pro Hac Vice*
        Michael H. Roman, Esq., *Pro Hac Vice*
        Dawn L. Johnson, Esq., *Pro Hac Vice Forthcoming*
        30 S. Wacker Drive, Ste. 2600
        Chicago, IL 60606
        Tel: (312) 635-6971
        Fax: (312) 635-6950
        Email: Michael.roman@clydeco.us
              Dawn.johnson@clydeco.us

        Rachel Werner, Esq.
        *Pro Hac Vice*
        One North Central Avenue, Suite 1030
        Phoenix, AZ 85004
        Tel: (480) 746-4580
        Fax: (480) 746-4556
        Email: Rachel.Werner@clydeco.us

        ***Attorneys For Coeymans Marine Towing, LLC***
        ***D/B/A Carver Marine Towing***

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 23rd day of July 2025, the foregoing was served by electronic mail on the following:

Mark C. Nanavati, Esq. (VSB #38709)
G. Christopher Jones, Jr., Esq. (VSB #82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866
(Nanavati) (804) 893-3862
(Jones) (804) 378-2610
(Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company, s/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ CRAIG LLP
11525 North Community House Road, Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
jhuber@butler.legal
*Counsel for Evanston Insurance Company, s/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
Breanna Morgan
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
bmorgan@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

                  By:*/s/ Jennifer Alonzo*