# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge occurring June 15, 2024 in and about the Elizabeth River, Virginia. | **Civil Action No: 2:24-cv-00490** |

**DECLARATION OF JAMES H. RODGERS**
**SUPPORTING CARVER'S MOTION FOR PROTECTIVE ORDER**

I, James H. Rodgers, declare pursuant to 28 U.S.C. § 1746, as follows:

1. I provide this declaration in support of Petitioner's Motion for Protective Order in the above captioned matter, pursuant to Federal Rule of Civil Procedure 26(c)(1) and L.R. Civ. 37(G) and (H) for a protective order to (1) prevent Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Intervening Claimant, Evanston Insurance Company, from engaging in abusive and unnecessary discovery and discovery motions and to require that they engage in good faith efforts to resolve discovery discussions, rather than refusing to engage while demanding that Carver concede its case or waive its rights; (2) to prevent Plaintiffs from conducting discovery depositions designed to invade Carver's attorney-client relationship, attorney-client privilege and work product based on an unfounded *ad hominem* attack on Carver, its attorneys, and its Chief General Counsel, Josef Malik, Esq., and (3) and, in light of the abusive practices of Claimants in this matter, Carver asks this Court to supervise the remaining discovery to facilitate bringing this matter to a resolution on the merits without violating Carver's rights and privileges, and (4) for an Order Denying or Staying Claimants' pending motion seeking a dispositive sanction, and (5) for an Order Denying or Staying Claimants' pending motion to compel an additional inspection of the M/V Mackenzie Rose, and (6) for costs and sanction as this Court deems necessary and proper.

2. I am an attorney at Clyde & Co, in New York, New York, and I am one of the attorneys representing Petitioner. I am admitted *pro hac vice* before this Court. I have personal knowledge of the facts set forth below.

1

3. On April 25, 2025, your Honor granted in part and denied in part the Belt Line's Motion to Compel. See this Court's Order (the "Order") (ECF No. 50).

4. On April 25, 2025, Carver produced its Responses to Evanston's First Requests for Production (CARVER 000911-941).

5. On April 28, 2025, Carver produced General Manager Brian Moore for deposition. See Moore's deposition transcript as **Exhibit 1**.

6. On April 29, 2025, Carver produced Port Captain Leonard Baldassare, an ex-employee, non-party, for deposition. See Baldassare's deposition transcript as **Ex. 2**.

7. On April 30, 2025, Carver produced Deckhand Jarkeis Morrissey for deposition. See Morrissey's deposition transcript as **Ex. 3**.

8. On April 30, 2025, Carver produced Deckhand Sharif Porter for deposition. See Porter's deposition transcript as **Ex. 4**.

9. On May 5, 2025, the Belt Line served on Carver document demands from the depositions that were purported to be identical to the Belt Line's original demands; however, the demands contained numerous requests that were being made for the first time. The Belt Line refused to serve supplemental demands for the items being requested for the first time. See **Ex. 1**, 357:8-358:20 (Carver's counsel requesting that the Belt Line's counsel put any new document demands in writing) and the Belt Line's letter as **Ex. 5**.

10. On May 6, 2025, Carver produced its Third Supplemental Response to the Belt Line's Second Set of Requests for Production (CARVER 000944-1086).

11. On May 9, 2025, Carver arranged for the inspection of the Mackenzie Rose in Charleston, South Carolina. **The Belt Line's expert failed to appear**. Counsel for Carver was present.

12. On May 12, 2025, Carver's counsel traveled to Carver headquarters in Albany, New York to assist with streamlining discovery production efforts.

13. On May 20, 2025, Carver deposed the Evanston's fact witness, Paul Hudgens, Markell Executive Claims Examiner.

14. On May 22, 2025, Carver produced its Second Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER 001087-1350, 1699-1727, 1732-1928, CARVER TBS HELM CONNECT 00001-96).

15. On May 22, 2025, Carver produced its Fourth Supplemental Response to the Belt Line's Second Set of Requests for Production (CARVER 001351-1698, 1728-1731, CARVER TBS HELM CONNECT 0000097-280).

16. On May 23, 2025, Carver produced its First Supplemental Answers to the Beltline's First Set of Interrogatories. See the same as **Ex. 6**.

17. On May 23, 2025, Carver produced its Third Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER TBS HELM CONNECT 000281-731).

18. On May 23, 2025, Carver produced records subpoenaed by the Belt Line from Carver's expert, Meyerrose & Co Inc (JM 0001-238).

19. On May 23, 2025, Carver produced ESI documents in native format in its Third Supplemental Response to the Belt Line's First Set of Requests for Production.

20. On May 28, 2025, Carver produced its Amended Third Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER ESI 000001 – 001867).

21. On June 3, 2025, Carver voluntarily retained TBS Helm Connect, a third-party vendor, to obtain records and documents responsive to the Belt Line's discovery requests <u>that were not in Carver's direct possession or control</u>. The cost of the work of this third-party vendor is being borne by Carver.

22. On June 3, 2025, the Belt Line sent a letter to Carver with document demands that were purported to be identical to the Belt Line's original demands; however, the demands contained numerous requests that were being made for the first time, including documents purportedly identified during Carver depositions. **This was a material misrepresentation which is now being repeated in the Belt Line's dispositive motion, i.e., that the Belt Line is prejudiced vis-à-vis Carver depositions for Carver's failure to produce, when in fact, the Belt Line failed to demand relevant documents prior to the depositions.** See the Belt Line's letter as **Ex. 7** and Carver's June 10th response as **Ex. 8**.

23. On June 4, 2025, Carver produced its Expert Witness Identification pursuant to this Court's Order (ECF No. 56) and Fed. R. Civ. P. 26(a)(2)(A).

24. On June 4, 2025, Carver's counsel deposed Cannon Moss, President of the Belt Line.

25. On June 5, 2025, Carver voluntarily retained KL Discovery, a third-party vendor, to obtain text messages and data from Lenny Baldassare's work phone and the Mackenzie Rose tug cell phone in response to the Belt Line's request for documents. The cost of retrieving and extracting the text messages, which were not in Carver's possession, is being borne by Carver.

26. On June 5, 2025, Carver's counsel deposed William O'Brian President of Operations of the Belt Line.

27. On June 5, 2025, Carver's counsel deposed Adam Reeder, Superintendent of the Belt Line.

28. On June 9, 2025, Carver produced its Fourth Supplemental Response to the Belt Line's First Set of Requests for Production.

29. On June 9, 2025, Carver produced its Fifth Supplemental Response to the Belt Line's Second Set of Requests for Production (CARVER 1929-1957, CARVER TBS HELM CONNECT 000732-1078, 1079-1618).

30. On June 9, 2025, Carver produced a Declaration from Josef Malik, Chief Legal Counsel, regarding Carver's discovery production efforts. See the Declaration of Josef Malik as **Ex. 9.**

31. On June 10, 2025, the Belt Line unilaterally noticed James Morrissey's deposition in Panama City, Florida for June 24, 2025, without consulting Carver for availability.

32. On June 10, 2025, the Belt Line served Carver with a revised 30(b)(6) Notice of Deposition.

33. On or about June 11, 2025, the parties held a meet and confer to discuss various topics including, ESI production. During that conference, Carver asked the Belt Line to provide any relevant search terms and custodians, that they felt may provide additional, relevant and responsive ESI that had yet to be produced. The Belt Line declined.

34. On June 11, 2025, Carver produced its Fifth Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER 1958-1985, CARVER TBS HELM CONNECT 001619-002413).

35. On June 12, 2025, Carver raised objections to the topics in the Belt Line's revised 30(b)(6) deposition notice. **Ex. 10** That same day, the Belt Line prepared a letter to Carver requesting a meet and confer to discuss Carver's objections to the 30(b)(6) notice. See **Ex. 11**. Among other things, Carver raised that the factual basis of its analysis as to the allision would be grounded on testimony already adduced in the case.

36. On June 13, 2025, the parties held a telephone conference to discuss Carver's objections to the Belt Line's 30(b)(6) topics. In that telephone conference, Carver again explained that it would be adopting the factual testimony of the members of the crew who had been deposed. Following this discussion, the Belt Line drafted a letter to Carver purporting to memorialize the conversation. See the Belt Line's letter as **Ex. 12.** Carver's counsel disagreed with the Belt Line's interpretation of the discussion. Notwithstanding, Carver agreed to produce Mr. Laraway without withdrawing its objections. See Carver's response as **Ex. 13**.

37. On June 17, 2025, Carver produced Nick Laraway for its 30(b)(6) deposition. See the Carver 30(b)(6) deposition transcript as **Ex. 14** The substance of Carver's testimony, through Mr. Laraway, is detailed in **Ex. 25.**

38. On June 18, 2025, Carver produced Engineer, Jason McGrath for deposition. See McGrath's deposition transcript as **Ex. 15**.

39. On June 23, 2025, the Belt Line sent a letter to Carver alleging breach of the Court's Order and requesting additional records. See **Ex. 16**. Even though Carver disagreed with the allegations outlined in the letter, Carver contacted TBS (its third-party vendor) for clarification and assistance and produced supplemental records to the Belt Line. See Carver's Response as **Ex. 17**.

40. On June 24, 2025, Carver's counsel traveled to Panama City, Florida for the deposition of James Morrissey, unilaterally noticed by the Belt Line; however, Mr. Morrissey failed to appear.

41. On June 25, 2025, Carver deposed the Belt Line fact witness, Howard Swanson, Chief Engineer of Hardesty & Hanover.

42. On June 30, 2025, the Belt Line sent a letter to Carver regarding its counsel's inability to locate documents in Carver's production. See the Belt Line's letter as **Ex. 18**. In response, Carver sent a five-page detailed letter to the Belt Line directing counsel where to find the documents previously produced. See Carver's response on July 2, 2025, as **Ex. 19.**

43. On July 3, 2025, Carver produced its Sixth Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER ESI 1868-1884, CARVER TBS HELM CONNECT 002414-2961).

44. On July 3, 2025, Carver produced its Sixth Supplemental Response to the Belt Line's Second Set of Requests for Production (CARVER TBS HELM CONNECT 002962-002993).

45. On July 3, 2025, the Belt Line emailed Carver demanding production of the attachments to text messages produced from Lenny Baldassare's work cell phone. See email from the Belt Line's counsel as **Ex. 20**. Counsel for Carver replied that texts were not in Carver's possession and would again reach out to the third-party vendor to search for the attachments. See Carver's reply as **Ex. 21**.

46. On July 3, 2025, the Belt Line prepared a letter to Carver demanding voluntary dismissal of the limitation action based on alleged violations of Fed. R. Civ. P. 30 during Carver's depositions, particularly including the 30(b)(6) deposition that had occurred two weeks earlier, on June 17, 2025. **Prior to this letter demanding that Carver withdraw its limitation petition, the Belt Line requested no conference with Carver and did not identify any facts or questions where it sought additional testimony regarding Mr. Laraway's 30(b)(6) deposition.** See the Belt Line's letter as **Ex. 22.**

47. On July 8, 2025, the parties met and conferred regarding the Belt Line's demand that Carver dismiss its limitations action as a voluntary discovery sanction. Carver asked Belt Line's counsel to address what additional discovery was needed or to identify how the Belt Line was prejudiced by the answers to discovery, which they would not or could not do. The premise of the requested discussion was that the sole solution that would be acceptable to Belt Line and Evanston was dismissal.

5

48. Two days later, on July 10, 2025, in response to the Belt Line's demand for dismissal, Carver sent an eight-page letter to the Belt Line discussing the testimony provided and the evidence adopted by Mr. Laraway in his 30(b)(6) deposition. See Carver's letter as **Ex. 25**. The Belt Line and Evanston never responded to the letter.

49. On July 11, 2025, Carver produced its Seventh Supplemental Response to the Belt Line's First Set of Requests for Production (CARVER ESI 001885-001887, CARVER TBS HELM CONNECT 002994-3728).

50. On July 14, 2025, the parties met and conferred regarding the Belt Line's demand for additional Carver depositions of Josef Malik and Jason Galioto. See the email from Carver's counsel on July 15, 2025, as **Ex. 27**, and the Notices of Deposition for Josef Malik and Jason Galioto as **Exs. 23 & 24.**

51. On July 15, 2025, the Belt Line and Evanston filed a Joint Motion to Compel Inspection of the Mackenzie Rose and for Sanctions, even though Carver's counsel was still consulting with its client to arrange for the inspection. **The Belt Line filed the Motion to Compel the Inspection of the Mackenzie Rose without meeting and conferring with Carver.** See the email from Carver's counsel as **Ex. 26.**

52. On July 16, 2025, the Belt Line and Evanston filed a Motion for Relief Under Rules 30 and 37. The Belt Line filed its dispositive/discovery motion without responding to Carver's letter of July 10, 2025, as set forth above in ¶ 48.

53. On July 17, 2025, Carver produced its Eighth Supplemental Response to the Belt Line's First Requests for Production (CARVER ESI 001888-001901, 002041-002053). See a copy disclosed as **Ex. 27**. [Note: Ex. 27 includes all prior seven supplemental responses to the Belt Line's First Requests for Production.]

54. On July 17, 2025, Carver produced its Seventh Supplemental Response to the Belt Line's Second Requests for Production (CARVER 002041-2049). See a copy disclosed as **Ex. 28**. [Note: Ex. 28 includes all prior six supplemental responses to the Belt Line's Second Requests for Production.]

55. On July 17, 2025, the Belt Line sent a letter to Carver regarding the deposition of Carver Legal Counsel, Josef Malik, rejecting Carver's objections vis-à-vis attorney/client privilege and work product. In its letter, counsel for the Belt Line, James Chapman, implicitly accused Mr. Malik of submitting materially false or misleading sworn representations, without basis or evidence, and implicitly accused Carver of not preserving evidence. See the Belt Line's letter as **Ex. 29.**

56. On July 21, 2025, a meet and confer was held by all parties regarding the following: the proposed deposition of Mr. Malik, the proposed deposition of Carver employee Jason Galioto, the Belt Line's motion to compel the tug inspection, and the Belt Line's motion to dismiss the limitation petition based on, *inter alia*, Mr. Laraway's 30(b)(6) testimony. At the meet and confer, the undersigned requested that Mr. Chapman withdraw the Belt Line's motion to dismiss the limitation petition. Mr. Chapman

6

declined to withdraw the same. Likewise, the undersigned counsel requested that the Belt Line withdraw its motion to compel inspection of the tug. Mr. Chapman declined to withdraw the same. Finally, undersigned counsel requested that the Belt Line withdraw its positions on Mr. Malik's deposition as set forth above in its letter on July 17, Mr. Chapman declined to withdraw same. See Carver's counsel's email as **Ex. 32**.

57. In addition to the July 21, 2025 meet and confer, the undersigned informed Mr. Chapman and all counsel that Carver would be filing the motion for protective order. Later that evening, undersigned counsel confirmed in correspondence with Mr. Chapman and all counsel. See Carver's counsel's email as **Ex. 30**.

58. On July 21, 2025, Carver sent the Belt Line an affidavit from Jason Galioto attesting to his lack of personal knowledge and that his involvement in the case was providing documents part of the defense team. See Jason Galioto Affidavit as **Ex. 31.**

59. The above details many of the activities and telephone calls in this case, but is not truly exhaustive.

I hereby affirm under the penalties of perjury that the contents of the foregoing declaration are true and correct to the best of my personal knowledge, information, and belief.

Dated: July 23, 2025                                         CLYDE & CO US LLP


                                                             By: /s/ *James H. Rodgers*