# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of MiT Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | **Civil Action No: 2:24-cv-00490** |

**CARVER'S FIRST SUPPLEMENTAL ANSWERS TO**
**BELT LINE'S FIRST SET OF INTERROGATORIES**

Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing, by counsel, pursuant to Fed. R. Civ. P. Rules 26 & 34, and EDVA Local Rule 26, for its Answers to Norfolk and Portsmouth Line Railroad Company's (the "Belt Line") First Set of Interrogatories, states as follows:

**INTERROGATORIES**

1. **Identify** all persons who assisted in preparing answers to these Interrogatories.

**ANSWER: Subject to and without waiving its written objections served on March 7, 2025, these are the answers of Carver, with the assistance of counsel, based on the books and records of the company.**

2. **Identify** every person known or believed by **You** to have knowledge of any information relating to the allegations in the Complaint. For each person identified, state the subject matter of the information that person possesses, and **identify** all **documents** evidencing or supporting your answer.

ANSWER: Subject to and without waiving its written objections served on March 7, 2025, see the documents produced in Carver's Rule 26(a)(1). To the extent there are additional persons with knowledge of information relating to the allegations in the Complaint, Carver will supplement its responses as those persons become known during the course of discovery.

3. Describe in detail how the Barge WEEKS 281 was made up to the M/T MACKENZIE ROSE at the time of the Incident.

1

**ANSWER:** Subject to and without waiving its written objections served on March 7, 2025, see response to The Belt Line's First Requests for Production, No. 5. See also CARVER 000156 – 000161 7-3 MASTER'S DAILY VESSEL REPORTING - MACKENZIE ROSE 06-15-2024. To the extent that there are additional documents responsive to this Interrogatory, Carver will supplement its production.

4. With regard to any operator of the **Vessel** on June 15, 2024, state the following;

   a. With regard to any operator of the Vessel on June 15, 2024, state the following;

   b. The length of time prior to the **Incident** he was licensed to operate a tug;

   c. The dates during which he was employed by **You** and in what capacity;

   d. Whether his licenses were ever suspended or revoked;

   e. Whether he has been involved in any prior accidents while operating a vessel, **and the details of such accidents, if any.**

**ANSWER:** Subject to and without waiving its written objections served on March 7, 2025, please see CARVER 00088 - CARVER 00095 - James Morrissey; CARVER 000089 – 000093 - James Morrissey - Twic, MM, Passport. Carver will check with its corporate counsel to determine if there are additional responsive documents to this Interrogatory. To the extent that there are additional documents responsive to this Interrogatory, Carver will supplement its production.

**FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving its written objections served on March 7, 2025, Christopher Lee Miller (deceased) was Captain of the subject vessel on June 15, 2024. He was not the operator at the time of the subject incident. Capt. Miller is now deceased. Capt. Miller was employed by Carver from 1/24/2024 through 2/6/2025. Since 1995 and at the time of subject incident, Capt. Miller held a Masters Ticket (Master 1600 Ton Oceans with Master of Towing Vessels). See CARVER 000043-000049 and CARVER 001087-1127. At the time of the incident, his license has not been suspended or revoked. Capt. Miller reported that until the subject incident he did not have any prior accidents while operating a vessel. See CARVER 000043-000049 and CARVER 001087-1127. Carver is not aware of any suspensions or revocations of Capt. Miller's license referenced above. Confirmation as to any suspension or revocation is publicly available through the U.S. Coast Guard National Maritime Center or relevant licensing authorities.

James Morrissey was an operator and Mate of the subject vessel on June 15, 2024. Mate Morrissey was employed by Carver from May 28, 2023 through September 27, 2024. Since 2008, Mate Morrissey held a Masters Ticket (Master 1600 Ton Oceans with Master of Towing Vessels). See resume and licensing information at CARVER 00088 - CARVER 00095 - James Morrissey; CARVER 000089 – 000093 - James Morrissey - Twic, MM, Passport and CARVER 1128-1160. Carver is not aware of any suspensions or revocations of Capt. Miller's license referenced above. Reports of prior incidents, including those involving James Morrissey, can be located in the following documents CARVER TBS HELM CONNECT 000226-239 9.5 Incident Report 8.24.23; CARVER TBS HELM CONNECT 000171-181 9.5 Incident Report 1.21.24. Confirmation as to any suspension or revocation is publicly available through the U.S. Coast Goard National Maritime Center or relevant licensing authorities.

5.     Identify each crewmember, officer, and other person aboard the **Vessel** and/or **Barge** during their transit of the Elizabeth River on June 15, 2024, and state his or her job title or office, specific location at the time of the **Incident,** watch station (if any), and job responsibilities.

**ANSWER: Subject to and without waiving its written objections served on March 7, 2025, see the Crew Matrix: CARVER 000050, Jamal - CARVER 000069, Miller - CARVER 000043, McGrath – CARVER 000078, and Morrissey - CARVER 000088. See also CARVER 000019-000024 - 6-15-2024 - 7.3 Masters Daily Vessel Reporting; CARVER 000056-000057 – Logbook 2024-06-15; CARVER 000190-000191 – Logbook 2024-06-15; and CARVER 000156-000157 - 7-3 MASTER'S DAILY VESSEL REPORTING - 06-15-2024. See also CARVER 000049 - Chris Miller - June 15 Incident Report (signed); CARVER 000048- Chris Miller June 15 Statement of Incident; CARVER 000047 - Chris Miller - Hand Written Statement; CARVER 000067 - 000077 - Jarkeis Jamal; CARVER 000072 - Jarkeis - June 15 Statement (signed), CARVER 000070 - Jarkeis - June 15 Statement, CARVER 000071 - Jarkeis Bass Morrissey - Hand Written Statement; CARVER 000079 - Jason McGrath Hand Written Statement, CARVER 000082 - McGrath - June 15 Incident Report (signed), and CARVER 000082 - McGrath - June 15 Incident Report (signed).**

6.     **Identify** all witnesses to the **Incident** of whom **You** are aware, whether on or off the **Vessel**, and for each person identified, state the character and subject matter of his or her knowledge (e.g., eyewitness, causation, damages, investigation, repairs, etc.) and i**dentify** all documents (including witness statements) that evidence or related to such knowledge.

ANSWER: See Carver's Answer to Interrogatory No. 5 above.

7.     Describe in detail the actions taken by each crewmember, officer, and other person aboard the **Vessel** and/or **Barge** immediately after the **Incident** including, but not limited to, any operational or reporting actions. If any actions were taken to report the **Incident**, identify all person(s) who took such action(s) and all **documents** memorializing or evidencing the action(s) taken.

ANSWER: See Carver's written objection to Interrogatory No. 7 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** **Subject to and without waiving its written objection served on March 7, 2025, all actions taken by Carver on June 15, 2024 and June 16, 2024 following the subject incident are documented in the vessel's logs:**

**CARVER 000019-000024 - 6-15-2024 - 7.3 Masters Daily Vessel Reporting;**
**CARVER 000025-000026 - 6-16-2024 - 7.3 Masters Daily Vessel Reporting;**
**CARVER 000056-000059 – Logbook 2024-06-15; Logbook 2024-06-15**

3

**CARVER 000190-000193 – Logbook 2024-06-15; and Logbook 2024-06-16**
**CARVER 000156-000159 – 7-3 MASTER'S DAILY VESSEL REPORTING - 06-15-2024; -3 MASTER'S DAILY VESSEL REPORTING - 06-15-2024.**
**CARVER - Photocopy of 2024 Log Book for MacKenzie Rose**

**See also additional accounts of the June 15, 2024 incident: at Wheelhouse Rough log for June 15-16, 2024 at CARVER 000242-243; and at Helm Connect log - Daily Towline Terminal Gear, June 15- 16, 2024 at CARVER 000179-182. See also Helm Connect official log June 15, 2024 at CARVER 000066.**

Following the incident, photos were taken of the subject vessel were at CARVER 000244-CARVER 000248.

Initially, the crew stated they did not visually observe damage to the subject bridge. The crew members were asked to record their statements of the occurrence: See also crew statements taken CARVER 000049 - Chris Miller - June 15 Incident Report (signed); CARVER 000048- Chris Miller June 15 Statement of Incident; CARVER 000047 - Chris Miller - Hand Written Statement; CARVER 000067 - 000077 - Jarkeis Jamal; CARVER 000072 - Jarkeis - June 15 Statement (signed), CARVER 000070 - Jarkeis - June 15 Statement, CARVER 000071 - Jarkeis Bass Morrissey - Hand Written Statement; CARVER 000079 - Jason McGrath Hand Written Statement, CARVER 000082 - McGrath - June 15 Incident Report (signed), and CARVER 000082 - McGrath - June 15 Incident Report (signed).

Once damage was reported to Carver by the United States Coast Guard, Carver timely submitted reports at CARVER 000111- 000117. Carver also then conducted an internal investigation that is summarized in the Incident Report dated June 19, 2024 and produced at https://clydeco.box.com/s/w6247613eptjqn4fn50dppt9x300duy4.

The United States Coast Guard conducted witness interviews of Leonard Baldassare, Port Captain for Carver Marine and James Morrissey, the Mate who was operator of the Mackenzie Rose on June 15, 2025. Counsel for the Belt Line, including Ryan Snow and Robert Bracknell, and Belt Line President Cannon Moss witnessed the interviews by Zoom. See CARVER 1715-1719.

Plaintiff has taken depositions of key personnel at Carver pertaining to post-incident events. Deposition testimony of Brian Moore, General Manager of Carver Marine at the time of the incident, was taken on April 28, 2025.

Deposition testimony of Leonard Baldassare, the Port Captain for Carver Marine at the time of the incident, was taken April 29, 2025.

The depositions of crew members/deckhands, Sharif Porter, taken April 30, 2025; and deckhand Jarkeis Morrissey, taken April 30, 2025.

The deposition of crewmember/engineer Jason McGrath is tentatively scheduled for June 12, 2025. Consequently, other than the initial written statements, Carver is not in possession of any other testimony or transcripts regarding Jason McGrath.

4

**In addition, Capt. Miller is deceased and his deposition testimony was not taken before his death.  Consequently, other than the initial written statements, Carver is not in possession of any other testimony or transcripts regarding Capt. Miller.**

**Mate Morrissey is a third-party defendant, is not in the control of Carver, and his deposition has not yet been taken at this time.  Consequently, other than the initial written statements, Carver is not in possession of any other testimony or transcripts regarding Mate Morrissey.**

8. **Identify** all communications pertaining to the **Incident** to or from **You**, the **Vessel's** crewmembers or officers any repair facility and/or any government entity, including but not limited to the United States Coast Guard, from **June 15, 2024 to present**.

ANSWER:   See Carver's written objection to Interrogatory No. 8, served on March 7, 2025.  *See* also statements produced in response to Interrogatory No. 5 above. See also CARVER 000114 - 000115 - MACKENZIE ROSE Chemical Testing 26JAN2024 and CARVER 000111 – 000113 - CG_2692 26JUN2026 BM. See also CARVER000001-252 for document production to the US Coast Guard served 2024.07.26. See also CARVER 000706-795 for communications by and between counsel for Carver and the United States Coast Guard from June 15, 2024, to the present. To the extent that there are additional documents responsive to this Interrogatory, Carver will supplement its production.

**FIRST SUPPLEMENTAL ANSWER:   Subject to and without waiving its written objections served on March 7, 2025, please see deposition testimony of Brian Moore, General Manager of Carver Marine at the time of the incident, was taken on April 28, 2025.  Deposition testimony of Leonard Baldassare, the Port Captain for Carver Marine at the time of the incident, was taken April 29, 2025.  See also Emails: CARVER 001699-001714 Fw MACKENZIE ROSE - Document Request; CARVER 001715-001719 RE External Witness Interviews Leonard Baldassare   James Morrissey; CARVER 001699-001714 Fw MACKENZIE ROSE - Document Request.  See also Answer to Interrogatory No. 7.**

9. State when **You** first notified the United States Coast Guard of the **Incident** and in what manner **You** did so, including the **identity** of all person(s) who prepared or communicated such notice and all **documents** memorializing or evidencing the steps **You** took to report the **Incident** under 46CFR 4.05-1.

ANSWER: See Carver's written objection to Interrogatory No. 9 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:   Subject to and without waiving its written objections served on March 7, 2025, please see Answers to Interrogatories 7 and 9.**

5

10. State when **You** first notified the **Belt Line** of the **Incident** and in what manner **You** did so, including the **identify** of all person(s) who prepared or communicated such notice and all **documents** memorializing or evidencing the steps **You** took to notify the **Belt Line**.

ANSWER: See Carver's written objection to Interrogatory No. 10 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** **Subject to and without waiving its written objections served on March 7, 2025, Carver will produce email communications under separate cover.**

11. For each investigation, inspection, or analysis of the facts and circumstances of the **Incident**, state all results, findings, and determinations, thereof, and **identify** the person(s) who conducted such investigation, inspection, or analysis, all **documents** that evidence or relate to the same, and the person or organization on whose behalf such investigation, inspection, or analysis was conducted.

ANSWER: See Carver's written objection to Interrogatory No. 11 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER**: **See detailed Answer to Interrogatory No. 7, including the incident report dated June 19, 2024 summarizing Carver Port Captain Baldarassi's internal investigation of the incident.**

12. **Identify** all communications equipment or systems available or aboard the **Vessel** during the voyage in which the **Incident** occurred, including, without limitation, radios, satellite, communication systems, electronic mail, facsimile devices, cellular phones in use on the **Vessel**, and any identifying or account information for the use of such systems.

ANSWER: See CARVER 000796-000815, Meyerrose & Co., Inc. Inspection Report/Survey, produced herewith.

13. **Identify** all navigation equipment or systems available or aboard the **Vessel** during the voyage in which the **Incident** occurred, including, without limitation, Automatic Identification System ("AIS") equipment, satellite navigation devices, chart plotters or recorders, depth sounding equipment, radars, Automatic Radar Plotting Aid ("ARPA") radar equipment, speed log, engine order bell logger, voyage recording device or system, and identifying or account information for the use of such systems.

ANSWER: See Carver's written response to Interrogatory No. 12.

6

14. **Identify** any voice or video recording systems that were available aboard the **Vessel** in June 2024, whether or not actually in use at the time of the **Incident**, that could record, without limitation, radio communications with other vessels or shore side entities, conversations or activities of persons on the bridge, internal communications among vessel watch stations, and/or communications between line handling stations and others, etc., and identify all documents that show or memorialize their use on June 15, 2024.

ANSWER: See Carver's written response to Interrogatory No. 12.

15. **Identify** all vessel voyage records, including electronic data relating to the Incident, that have been retained pursuant to the requirements of 46 C.F.R. § 4.05-15 or otherwise, and identify the custodian of said records.

ANSWER: Subject to and without waiving its written objections served on March 7, 2025, to the extent that The Belt Line is seeking a "vessel voyage record" or "voyage data recorder (VDR)", Carver will endeavor to produce additional data responsive to this Interrogatory.

**FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving its written objection to Interrogatory No. 7 served on March 7, 2025, see vessel voyage records produced by Carver in responses to the Belt Line's Second Supplemental Response to NPBL's First Requests for Production and Fourth Supplemental Response to NPBL's Fourth Second Set of Requests for production.

16. **Identify** all **documents** relating to any survey, appraisal, valuation, or refinancing of the M/T MACKENZIE ROSE during the period from January 1, 2020 through December 31, 2024.

ANSWER: See CARVER 000796-000815 MeyerRose Survey/Inspection Report, produced herewith.

**FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving its written objections served on March 7, 2025, please see MeyerRose file as subpoenaed by Belt Line to be produced under separate cover.

17. If **you** contend that the **Incident**, or any part of the **Belt Line's** damages, was caused or contributed to by any act or omission of the **Belt Line**, its agents or employees, please state with particularity what each such act or omission was, when and where it occurred, who committed or omitted it, and how it caused or contributed to the **Incident** or damages; and **identify** all persons and **documents** from whom or from which **You** obtained information concerning the same; and if **You** make no such contention, so state.

7

ANSWER: See Carver's written objection to Interrogatory No. 17 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** **Subject to and without waiving its written objections served on March 7, 2025, Carver contends that the Belt Line had a duty to maintain and upkeep the bridge per its annual inspection recommendations for repair and/or replacement and failed to do so. Additionally, Carver contends that Belt Line has included work on the Bridge that is unrelated to the allision and/or would have been performed notwithstanding the events of June 15, 2024. Carver is in the process of reviewing Belt Line records recently served on May 20, 2025, which may relate to Carver's contention. In addition, Carver is still conducting depositions of Belt Line's personnel and its engineers and contractors. Investigation continues.**

18. If **you** contend that the **Incident**, or any part of the **Belt Line's** damages, was caused or contributed to by any act, omission, event, condition, or other thing outside **Your** supervision and control, not mentioned in your Answer to the previous Interrogatory, please state with particularity what each such act, omission, event, condition, or other thing was, when and where it occurred or was located, and how it caused or contributed to the **Incident** or damages; and **identify** all persons and **documents** from whom or from which **You** obtained information concerning the same; and if **You** make no such contention, so state.

ANSWER: See Carver's written objection to Interrogatory No. 18 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** **Subject to and without waiving its written objections served on March 7, 2025, Carver restates its Supplemental Answer to Interrogatory No. 17 and further states that, upon information and belief, Belt Line's contractors performed work that is unrelated to the allision.**

19. If, at any time during the voyage on which the Incident occurred, or in the ten years prior to that voyage or the time since that voyage to present, any navigational, steering, electronic guidance, or autopilot system or device aboard the Vessel malfunctioned or failed to operate as intended or expected, please state, as to each such occurrence, the date and time thereof, the facts and circumstances thereof, and any action taken by You as a consequence thereof; and identify all persons involved and all documents that evidence or relate to the same.

ANSWER: See Carver's written objection to Interrogatory No. 19 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** **Subject to and without waiving its written objections served on March 7, 2025, Carver purchased the Mackenzie Rose in 2020. The dates, persons, facts and circumstance, and action taken with regard to any navigational, steering, or auto pilot issue**

8

and/or malfunction since 2020 is documented in the following documents previously produced by Carver:

**CARVER 000033 – 36 10. 1 DAILY ENGINE ROOM LOG – MAINT PROCED REP-MACKENZIE ROSE;**
**CARVER 000234 – 243 Tug Mackenzie Rose - Emergency Steering Procedure – Rough Engine Logs;**
**CARVER TBS HELM CONNECT 000277-280 Tasks – 2024;**
**CARVER TBS HELM CONNECT 000272-276 Tasks – 2023;**
**CARVER TBS HELM CONNECT 000269-271 Tasks – 2022;**
**CARVER TBS HELM CONNECT 000263-268 Tasks – 2021;**
**CARVER TBS HELM CONNECT 000262-265 Tasks – 2020.**

In addition to the above, see records previously produced pertaining to near miss incidents associated with auto pilot and steering issues on the MacKenzie Rose at CARVER 000025 -000042.

Repairs conducted relating to the navigation, steering, or autopilot system on the Vessel from 2020 are set forth in the following records:

**CARVER 000033 – 36, 10. 1 DAILY ENGINE ROOM LOG – MAINT PROCED REP-MACKENZIE ROSE,**
**CARVER 000251 -1 1-20-2023 GMT Report Auto Pilot,**
**CARVER 000252 - 3-2-2024 GMT Report Auto Pilot**
**CARVER 000821 - 11-30-2023 GMT Report 8**
**CARVER 000982 - 11/30/23 GMT Report;**
**CARVER 000963 - 10/7/23 GMT Report;**
**CARVER 001052 - 9/22/23 GMT Report;**
**CARVER 001074 - 9/7/23 GMT Report;**
**CARVER 001072 - 9/3/23 GMT Report;**
**CARVER 001025 - 7/10/23 GMT Report;**
**CARVER 001001 - 4/4/23 GMT Report;**
**CARVER 000944 - 1/3/24 GMT Report.**

Prior to the subject incident involving the Mackenzie Rose on June 15, 2025, on April 3-5, 2024 and April 10-11, 2024, Ayers Marine Electronics performed repairs and replaced the software pertaining to the autopilot system on the Mackenzie Rose, as documented in Invoice No. 35331 at CARVER 000249, and Invoice No. 35706, CARVER 000249.

20. Describe everything **You** did to inspect and/or test the navigational, steering, electronic guidance, and autopilot systems on June 15, 2024, before beginning **your** voyage from Virginia to New York and prior to the **Incident**, and identify all persons involved and all documents that evidence or relate to the same.

ANSWER: See Carver's written objection to Interrogatory No. 20 served on March 7, 2025.

9

**FIRST SUPPLEMENTAL ANSWER:** Subject to and without waiving its written objections served on March 7, 2025, please see Answer to Interrogatory No. 19, above.

21. State the basis for Affirmative Defenses 1 through 21 as stated in **Your** Answer to the Belt Line's Claim and **identify** all **documents** supporting **Your** answer.

ANSWER: See Carver's written objection to Interrogatory No. 19 served on March 7, 2025.

**FIRST SUPPLEMENTAL ANSWER:** Carver answers that discovery is ongoing, thus the entire factual bases for each of its Affirmative Defenses the entire factual is not currently known and will be developed through testimony and documentary evidence. Carver denies any and all liability. Subject to Carver reserving its right to supplement and prove its affirmative defenses on a full factual record, Carver provides the bases for its defenses, based on information currently available, as follows:

1. **Failure to State A Claim.** Carver answers that this defense is raised to preserve it under Fed. R. Civ. P. 12(h)(2) and it presents a question of law. Answering further, the factual bases for this defense include that based on investigation and facts currently known, Belt Line seeks recovery damages for betterments and improvements to the Bridge which are not recoverable by law and therefore they have failed to state a claim for certain of their damages. Investigation continues.

2. **No duty owed.** This defense is raised to preserve it under Fed. R. Civ. P. 12(h)(2) and it presents a question of law. Carver denies it breached any duty allegedly owed to Belt Line. Answering further, the factual bases include that Belt Line apparently seeks recovery of damages for betterments and improvements to the Bridge which are not recoverable by law and therefore Carver owes no duty to Belt Line for certain of its claimed damages. Investigation continues.

3. **Negligence and Acts/Omissions of Others.** Certain of Belt Line's damages result from failure to maintain the Bridge or allow it to deteriorate. Additionally, certain of the claimed work performed on the Bridge was for betterments, improvements, and repairing normal wear and tear which were not caused by the allision. Some of the components of the Bridge were bent or damaged prior to the allision, which were not caused by Carver. Belt Line's insurer also apparently paid for certain betterments or improvements that were not caused by the allision thereby increasing the subrogation claim and resultant alleged damages. Investigation continues.

4. **Seaworthiness.** This is an ultimate issue to be decided at trial. Notwithstanding, and without limitation, Carver answers that all crew members were licensed and/or experienced mariners, competent, and adequately trained. Carver regularly inspected and maintained the M/V Mackenzie Rose and there were no mechanical or other operational issues with the vessel.

5. **Reasonable acts to avoid injury.** Carver maintained policies and procedures to protect persons and property from injury, loss, or damage, including but not limited to a Safety

  Management System. Carver hired and trained competent crew. The vessel was well-maintained and seaworthy on and before the date of the allision.

6. **Intervening/Superseding Cause.** Certain of Belt Line's claimed damages are for betterments or improvements to the Bridge. Carver did not cause these alleged damages. Any such work was done and caused by Belt Line, its contractors, or third parties and their decision(s) to perform such work.

7. **Failure to mitigate damages.** Belt Line did not limit its work on the Bridge to repairs necessitated by the allision and included additional work for betterments, improvements, or repairing normal wear and tear. Moreover, Belt Line's insurer did not sufficiently review the Proof of Loss or apply the terms of its policy in adjusting the claim. Any work for repairs unrelated to the allision and payment of the same has increased the claimed damages in this action.

8. **Conditions precedent.** Belt Line and its insurer seek damages that cannot be recovered unless they first defeat the exoneration and/or limitations action.

9. **Latent undiscoverable defects.** Carver, by itself and through regarded third-party contractors, regularly inspected and maintained the vessel, including but not limited to its autopilot, steering, and mechanical systems, and was unaware of any alleged defect or unseaworthiness.

10. **Denial of negligence.** Carver denies negligence and any liability. It is Belt Line's burden and that of its insurer to prove to the contrary. In addition, Belt Line's alleged damages include work for betterments, improvements, or other repairs that are unrelated to the allision and any alleged negligence on the part of Carver. Answering further, Carver had no privity or knowledge of any alleged negligence or unseaworthiness and Belt Line's claim is barred or reduced under the Limitation Act.

11. **Proximate cause.** Carver denies that its actions or omissions were the proximate cause of any of Belt Line's alleged damages, including but not limited to, Belt Line's work related to betterments, improvements, or other repairs that are unrelated to the allision and any alleged negligence on the part of Carver. Answering further, Carver had no privity or knowledge of any alleged unseaworthiness negligence and Belt Line's claim is barred or reduced under the Limitation Act.

12. **Barred by General Maritime Law.** To the extent negligence and unseaworthiness are defined by general maritime law, and negligence and unseaworthiness are key components of the exoneration and/or limitation determination, Belt Line's claims and those of its insurer are barred *de jure*.

13. **Limitation of Liability.** Carver has filed its exoneration and/or limitation action. In addition, Carver had no privity or knowledge of any alleged unseaworthiness or negligence and Belt Line's claim is barred or reduced under the Limitation Act. Belt Line has answered Carver's Petition and thus acknowledged Carver has stated a plausible claim for relief.

14. **Estoppel.** Belt Line has included alleged damages for work to the Bridge that was not caused by the allision. This work would have been performed regardless of the events of June 15, 2024 yet Belt Line now asserts the contrary position that the work was necessitated by Carver's alleged negligence.

15. **Waiver.** Carver withdraws this defense, without prejudice, and reserves the right to reassert it.

16. **Failure to Preserve Evidence.** On information and belief, Belt Line did not preserve all artifacts from the demolition and repairs done to the Bridge.

17. **Lack of notice of defects or conditions.** Carver had no privity or knowledge of any alleged unseaworthiness or negligence, including lack of privity or knowledge about any alleged defects in the autopilot, steering, or other mechanical systems of the vessel.

18. **Compliance with legal and industry standards.** The vessel was seaworthy and mechanically sound prior to the allision. Carver used experienced and competent marine contractors to inspect and maintain the vessel. The vessel passed audit inspections required by law.

19. **Statute of limitations.** Carver withdraws this defense, without prejudice, and reserves the right to reassert it.

20. **No breach.** Upon information and belief, Belt Line seeks recovery of damages for betterments and improvements to the Bridge which are not recoverable by law thus Carver owes no duty to Belt Line for certain of its claimed damages and therefore did not breach any alleged duty. Investigation continues.

21. **Lack of privity and knowledge.** Carver had no privity or knowledge of any alleged unseaworthiness or negligence, including lack of privity or knowledge about any alleged defects in the autopilot, steering, or other mechanical systems of the vessel.

Dated: May 23nd, 2025

Respectfully submitted,

**CLYDE & CO US LLP**

By:/s/ *James H. Rodgers*
James H. Rodgers, Esq., *Pro Hac Vice*
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel No.: (212) 702-6771
Fax No.: (212) 710-3950

12

James.rodgers@clydeco.us

Harold L. Cohen, Esq.
VSB No.: 98148
1221 Brickell Avenue, Ste. 1600
Miami, Florida 33131
Harold.Cohen@clydeco.us

Michael H. Roman, Esq. *Pro Hac Vice*
Dawn L. Johnson Esq., *Pro Hac Vice*
Rachel L. Werner Esq., *Pro Hac Vice*
30 S. Wacker Drive, Ste. 2600
Chicago, IL 60606
Dawn L. Johnson, Esq.
Pro Hac Vice Forthcoming
Tel: (312) 635-6971
Fax: (312) 635-6950
Michael.roman@clydeco.us;
Dawn.johnson@clydeco.us
Rachel.Werner@clydeco.us
***Attorneys For Coeymans Marine Towing, LLC D/B/A Carver Marine Towing***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of May 2025, I served the foregoing by electronic mail on the following:

| | |
|---|---|
| Mark C. Nanavati, Esq. (VSB No.: 38709) | James L. Chapman, IV, VSB No. 21983 |
| G. Christopher Jones, Jr., Esq. (VSB No.: 82260) | W. Ryan Snow, VSB No. 47423 |
| SINNOT, NUCKOLS & LOGAN, P.C. | Mackenzie R. Pensyl VSB No. 100012 |
| 13811 Village Mill Drive | CRENSHAW, WARE & MARTIN, P.L.C. |
| Midlothian, Virginia 23114 | 150 W. Main Street, Suite 1923 |
| (804) 893-3866 (Nanavati) | Norfolk, Virginia 23510 |
| (804) 893-3862 (Jones) | Telephone (757) 623-3000 |
| (804) 378-2610 (Facsimile) | Facsimile: (757) 623-5735 |
| mnanavati@snllaw.com | jchapman@cwm-law.com |
| cjones@snllaw.com | wrsnow@cwm-law.com |
| *Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company* | mpensyl@cwm-law.com |
| | *Attorneys for Norfolk and Portsmouth Belt Line Railroad Company* |

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

## **VERIFICATION**

I declare and verify under penalty of perjury that the statements made in the foregoing First Supplemental Answers to Norfolk and Portsmouth Belt Line Railroad Company's First Set of Interrogatories are true and correct.

Executed on  23/5/2025 | 18:28 BST

*Josef Malik*
Coeymans Marine Towing, LLC

By: Josef Malik

Its: Chief Legal Officer