IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

**PETITIONER CARVER'S BRIEF IN OPPOSITION TO
MOVANTS' MOTION FOR SANCTIONS**

Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), for its Brief in Opposition to Plaintiff Norfolk and Portsmouth Belt Line Railroad Company's ("Belt Line") and Evanston Insurance Company's ("Evanston") (together, "Movants") Motion for Relief Under Fed. R. Civ. P. 30 and 37 (ECF Nos. 69-70), states as follows:

**Introduction**

Movants seek the draconian remedy of dismissal rather than, for example, compelling discovery responses or additional depositions because Movants claim a lesser sanction would allow Carver to "re-prepare for known lines of questioning and [] inform themselves of critical facts and expert theories after the Belt Line already disclosed its reports." (ECF No. 70 at p. 27). This is a purported prejudice of Movants' own manufacturing. The depositions of Brian Moore, Lenny Baldassare, and Jarkeis Morrissey proceeded **three months ago**, in April 2025. Carver's Rule 30(b)(6) witness deposition proceeded weeks before expert deadlines, on June 17, 2025. Movants made no effort to raise any issue with any deposition until July 3, 2025, exactly one day

1

after their expert reports and disclosures were served. At that time, Carver had agreed that it would support a reasonable extension of time for those disclosures as both parties knew that Mate Morrisey's testimony would be important to the liability experts, and as Mate Morrissey had not yet been deposed. **Exhibit 1**. While the parties expected that deposition to proceed on June 24, 2025, it did not, and has not proceeded. (ECF No. 72-1, ¶ 40). Despite the importance of testimony from this non-cooperative witness, Movants did not bring any motion to extend the disclosure dates to allow all parties to obtain the critical testimony of Mate Morrissey, but instead rushed to claim prejudice from the supposed lack of other testimony.

Movants now claim that the only appropriate remedy is dismissal and an order deeming facts admitted, which, if granted, will avoid a resolution of this case on the merits, even though Carver has provided substantive good faith discovery in this matter. Movants should not be rewarded for failing to file any motion to compel or to overrule objections and moving for the ultimate sanction only after they made their disclosures, then claiming irreversible prejudice.

Movants' sanctions strategy flies directly in the face of the Fourth Circuit's "strong public policy that cases be decided on the merits." *United States v. Schaeffer Equip. Co.*, 11 F.3d 450, 465 (4th Cir. 1993). The available information as to the merits of this case have been known to the parties since the U.S. Coast Guard completed investigatory interviews of Carver's personnel, well before discovery in this suit began. Transcripts of those interviews have not yet been produced to the parties, but Movants' attorneys enthusiastically participated in those interviews. They personally examined Mate James Morrissey and heard him testify, firsthand, that he had initially misreported to Carver and blamed the allision on a nonexistent autopilot and/or steering system issue. In actuality, Mate Morrissey simply failed to switch the autopilot and properly maneuver the tug. In other words, when his mariner's license was on the line, Mate Morrissey

corrected the Coast Guard record and truthfully explained his error that caused the damage to the Belt Line's bridge. Carver then submitted a revised CG-2692 incident report based on Mate Morrissey's correction, which the Coast Guard accepted, and it remains the report of record in its file.

Movants have long understood that Mate Morrissey's testimony as to the actual events supports Carver's Limitation of Liability Petition. See *Usinas Siderugicas de Minas Geras, SA-Usiminas v. Scindia Steam Navigation Co.*, 118 F.3d 328, 334 (5th Cir. 1997) ("Any negligence of the master concerning the movement of a vessel would be considered a navigational or managerial error, not an unseaworthy condition"). Movants make much ado in their sanctions motion about mechanical repairs performed on the tug in the months leading up to the allision, but, notably, they do not cite any document, testimony, or other evidence indicating that the autopilot system *actually malfunctioned* on June 15, 2024 and was a cause of the allision.

That is because no such evidence of unseaworthiness exists. To be sure, Movants have turned over every stone in discovery searching for it. Carver has produced thousands of pages of vessel logs, emails, text messages, policies, incident reports, repair records, inspections, and surveys of the vessel, plus multiple company witnesses for depositions. *See* Declaration of James H. Rodgers. (ECF No. 72-1). The true record shows that Movants' defective autopilot theory is based on speculation, innuendo, and their counsel's *ipse dixit*.

Against this backdrop, Movants ask this Court to throw aside the merits and hand them a technical win for purported "obstructionist behavior" in discovery. They complain, at bottom, that Carver:

- Instructed its witnesses not to answer several deposition questions about why employees separated from the company (after the allision) and how Carver complied with its attorney's instructions to preserve evidence for litigation;

3

- Made speaking objections during discovery depositions;

- Relied upon testimony of its General Manager and Port Captain for its Rule 30(b)(6) testimony; and

- Has not yet produced communications from its General Manager's personal cell phone, which are duplicative of text messages between its General Manager, Port Captain, and the Tug that Carver has produced from collecting them from company-issued phones.[1]

Carver's post-incident employment decisions have no relevancy to proving causation or damages in this case. Nor is there anything improper about a Rule 30(b)(6) witness relying upon other more knowledgeable persons to speak on behalf of the company. See *McPike v. Zero-Gravity Holdings, Inc.*, No. 1:17-cv-562, 2019 U.S. Dist. LEXIS 227509, at *11-13 ("Plaintiff misses the point … the 30(B)(6) witness's testimony that she was not aware of any agreement [between the parties] does not preclude [two executives], who may be more informed about SA's business dealings, from testifying that such an agreement did exist"). In addition, Movants already have text messages from Brian Moore that were received by Carver's Port Captain, Lenny Baldassare, and the Tug phone. **Exhibit 2**.

Movants have failed to show any true prejudice resulting from Carver's assertion of objections in discovery and their motion for sanctions should be denied with prejudice. If and to the extent Carver's objections are overruled and Movants show they have not obtained relevant information, the proper remedy is to compel the discovery or take additional depositions. Dismissal as a sanction should be denied, with prejudice, under any circumstance.

---

[1] Notwithstanding that Carver views production of the duplicative text messages as unduly burdensome and irrelevant, it is in process of collecting text messages from Brian Moore's personal phone and intends to produce the relevant and responsive communications upon completion.

**Statement of Facts**

1. Pursuant to Federal Rule of Civil Procedure 10(c), Carver incorporates its Background and Statement of Facts section of its motion and brief seeking protective order (ECF Nos. 71 and 72) as if fully set forth herein, including the Declaration of James H. Rodgers and accompanying exhibits (ECF No. 72-1).

2. In summary of the Declaration and Statement of Facts, the relevant depositions proceeded as follows:

    - April 28, 2025 – General Manager Brian Moore
    - April 29, 2025 – Port Captain Leonard Baldassare
    - April 29, 2025 – Deckhand Jarkeis Morrissey
    - April 30, 2025 – Deckhand Sharif Porter
    - June 17, 2025 – President Nick Laraway, as Rule 30(b)(6) representative
    - June 18, 2025 – Engineer Jason McGrath

(ECF No. 72-1, ¶¶ 5-8, 37-38). Movants never requested a call to the Court or any resolution of objections on the record at the time of any deposition and never filed a motion for the Court to overrule the objections.

3. On July 2, 2025, Movants made their expert witness disclosures. Belt Line's maritime expert, Captain Nicholas Lewis, agrees that Mate Morrissey's testimony to the U.S. Coast Guard accurately summarized that there were no defects in the autopilot system. Specifically, he opines that Mate Morrissey's navigational error caused the allision:

> "The Officer of the Watch (Captain [sic] James Morrissey) failed to properly disengage the autopilot and did not switch to manual steering (Non-Follow-Up mode) in a confined navigational channel, resulting in loss of directional control."

**Exhibit 3;** *cf.* Pl. Br., (ECF No. 70 at 27) (misrepresenting there were "pervasive issues with the autopilot and steering systems on the tug" and that the tug went "'hard over the way it turned to port before the allision on June 15, 2024" to claim prejudice in support of dismissal).[2]

4. After making their disclosure, on July 3, 2025, Belt Line served correspondence claiming, for the first time, there was a discovery dispute concerning the depositions from months earlier. (ECF No. 72-1, ¶ 46). Belt Line claimed there was no remedy other than dismissal to cure this discovery dispute:

> *Such conduct is improper under Rule 30 of the Federal Rules of Civil Procedure and obstructed the Belt Line's ability to properly depose the witnesses regarding information relating to the limitation action. Given the obstructionist tactics used throughout depositions in this matter, re-deposition of the witnesses would be an insufficient remedy.* ***The only feasible remedy for this obstruction is the dismissal of the limitation portion of this case. Accordingly, we request that you voluntarily dismiss Carver's Limitation Complaint to avoid the necessity of seeking Court intervention.***

5. Movants made no effort to resolve the dispute in the ensuing meet and confers and instead stood on their demand for Carver to dismiss its Petition for Limitation of Liability. In fact, after Carver asked Movants to explain how they were prejudiced, which they declined, Carver sent an eight-page letter detailing how the discovery to that point had addressed the facts Movants sought to discover.

6. It is true that Carver objected to discovery about employment decisions made by Carver when those questions were directed to employee witnesses and when Carver had not

---

[2] This expert's other opinions on unseaworthiness include: (1) Carver did not "post" a lookout in violation of 33 CFR § 83.05, which says nothing of "posting" a lookout and only requires a vessel pilot to "at all times *maintain* a proper look-out"; and (2) Carver failed to maintain a policy restricting use of autopilot on the Elizabeth River, though Capt. Lewis does not cite any rule, regulation or standard that actually requires such a policy. See **Ex. 3**.

determined whether there were confidentiality obligations in place as to those relevant employees. That said, Mr. Laraway testified regarding those issues, when asked. This was also addressed in Carver's letter of July 10, 2025 as follows:

> Mr. Laraway testified as to records as to the suspension and termination of Captain Morrissey but did not know why he was marked not eligible for rehire; he also acknowledged that if the HR information system did not record the date of Captain Morrissey's suspension, he could not provide it. 106:11 – 109:20. The documents produced reflect that Captain Morrissey was suspended as of June 20, 2024. CARVER ESI 001629-001630. This documentation had been produced prior to the 30(b)(6) deposition.
>
> Likewise, Mr. Laraway explained that the reason for Captain Morrissey's discharge was that the company "didn't feel it appropriate to continue to pay him as a suspended mariner while he was working for someone else." 109:13-20. His discharge was effective September 27, 2024. *Id.*, 112:24-114:13. The company had been waiting for the Coast Guard investigation to be complete before evaluating whether any other action as to Mr. Morrissey was appropriate. *Id.*, 116:3 – 117:1. He also denied any employment action taken against Captain Miller as a result of the allision with the Belt Line Bridge. *Id.*, 115:15- 116:2.

(ECF No. 72-1, ¶ 45, and ECF Nos. 72-26, at pp. 4-5) (Ex. 25 to the Declaration of James H. Rodgers). While the reasons for employment decisions have questionable relevance, at best, Mr. Laraway was prepared to testify on this topic, and did so.

7.  Carver likewise properly raised concerns as to the efforts of Movants to invade the attorney-client relationship and work product privileges during various depositions and in advance of Movants' requested deposition of Carver's general counsel, Josef Malik. (ECF Nos. 72-28). Carver's concerns are well founded. *See, e.g., Shelton v. American Motors Corp.*, 805 F.2d 1323, 1329 (8th Cir.1986) ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research.... We believe [counsel's] selective review of [her clients'] numerous documents was based on her professional judgment of the issues and defenses involved in this case."); *Sporck v. Peil*, 759 F.2d 312, 316 (3d

7

Cir.) ("We believe that the selection and compilation of documents in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). See also *James Julian v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case."). Rather than bring a motion for a ruling on the objection or seeking to meet and confer in May, June or even July, Movants simply progressed to a motion for an ultimate sanction.

8. Carver also addressed Movants' assertion that Mr. Laraway was not prepared as a 30(b)(6) witness:

> You allege that Nick Laraway was an improper 30(b)(6) corporate representative for Carver because he relied on the testimony of Brian Moore and Lenny Baldassare, as well as the documents produced throughout discovery, for topics on which he did not have direct knowledge. The reality is that Mr. Laraway provided extensive relevant testimony. As we had discussed prior to the deposition, he also relied on other testimony and evidence.
>
> Mr. Laraway testified that he had reviewed the 30(b)(6) deposition notice and understood that he was present to testify on behalf of the company with regard to the noted topics. Dep, 7:1-10, 25; 8:1-2. He reviewed hundreds of documents to prepare to testify. Id. 111:17-19. This included reading summaries of depositions that were provided to him by counsel. 68:13-18; 70:1; 71:5-6. Although Mr. Laraway could not identify what employees sent e-mail using the Mackenzie Rose email address. However, you know from questioning three out of the five crew members onboard that they had no access to vessel computer or any company email. There are two remaining crew members. Chris Miller is deceased; and James Morrissey is avoiding deposition.

*Id.* In addition, Mr. Laraway gave extensive testimony about other topics in the notice, including issues of Ownership of the Vessel, Value of the Vessel, Mortgages on the Vessel, the corporate structure and ownership of Coeymans Marine Towing, LLC, and information as to Petitioner's personnel. This is detailed in the July 10th letter, as well as through the 30(b)(6) transcript, itself.

9. Carver also addressed the testimony and production as to the "operation, course and speed of the Vessel on the date of the incident (Dep. Topic No. 9):

> On the question of the "operation course and speed of the vessel on the date of the incident", Mr. Laraway deferred to the documents and prior testimony. 67:18-23. He also testified that he had not read those witnesses' testimony but had read summaries that were provided by counsel. 68:13-18; 70:1; 71:5-6. Notably, counsel did not ask Mr. Laraway any questions going to the actual testimony of Messrs. Moore and Baldassare, but instead suggested that the deposition summaries reviewed by Mr. Laraway were provided by "Chat GPT". *Id.*, at 70:11-14.
>
> As you know, Petitioner long since produced the engine logs, daily logs, and Rose Point data in our best available format, which is the native file (a .CEVDR format). The same information was sent to the United States Coast Guard, which has not indicated any concerns as to accessibility of the data. You are also in possession of CARVER 000943, which is an .mp4, depicting the movement of the bridge [sic – vessel and barge], wind speed, *et cetera*, reflecting the course of the vessel and covering more than seven minutes leading to the impact. Mr. Moore testified that the data from Rose Point was downloaded and e-mailed to the Coast Guard and was saved. Moore Dep., 119:13-19.
>
> You had the opportunity to mark CARVER 000943 as an Exhibit and to play that .mp4 for Mr. Laraway. You also had the opportunity to confirm Mr. Moore's testimony with Mr. Laraway, which would likely be a duplicative effort, as Mr. Laraway made it clear that the Petitioner relies on that testimony as to what occurred. We did not, in any way, prevent you from asking questions about the data during the 30(b)(6) deposition or depositions of other witnesses.

*Id.*, at p. 7 (Ex. 25 to the Declaration of James H. Rodgers).

10. Tellingly, Movants were asked repeatedly to explain how they were prejudiced given Carvers' extensive responses to discovery. Movants have never asked to re-depose any Carver employee despite this Court's Order allowing them to do so if Carver produced relevant documents after a deponent testified. As noted above, Movants' expert Captain Nicholas Lewis was able to express an opinion as to how the accident occurred. He did not opine that he lacked any necessary information to reach his conclusions.

## Legal Standard

District courts typically have wide discretion over discovery matters, however where a party requests dismissal as a sanction "the district court's range of discretion is more narrow

9

because the district court's desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989).

Evaluating these competing interests and whether to award sanctions under Rule 37 requires the application of a four-part test: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions. *Id.* at 92 (citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977), *cert. denied*, 434 U.S. 1020, 54 L. Ed. 2d 768, 98 S. Ct. 744 (1978).

The test is similar if the Court considers sanctions pursuant to its inherent authority, which requires consideration of six factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that [courts] seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. *Davis v. United States*, 767 F. App'x 396, 397 (4th Cir. 2018).

### Argument

**A. Movants have failed to show bad faith on the part of Carver.**

Movants have not met their burden of showing Carver acted in bad faith and thus cannot meet the first prong of the *Wilson* test. The record of Carver's efforts in discovery stands on its own. *See* Declaration of James H. Rodgers, (ECF No. 72-1). Carver has taken extensive efforts

10

to locate all responsive documents that were ordered to be produced. These tasks proved to be more cumbersome than initially anticipated and included retaining ESI vendors, paying existing vendors to pull data directly from their databases, and tracking down ex-employees to obtain information from them. Carver and its counsel have focused efforts on this case on an almost daily basis and made good faith efforts to obtain and provide responsive discovery to Movants.

The bulk of Movants' complaints of Carver's supposed noncompliance relates to its Rule 30(b)(6) deponent deferring to the testimony of its General Manager and Port Captain, both of whom were actively involved in day-to-day operations of Carver's marine business and had knowledge of the relevant issues to this lawsuit. There is nothing in the federal rules that prohibits this approach. *McPike v. Zero-Gravity Holdings, Inc.*, No. 1:17-cv-562, 2019 U.S. Dist. LEXIS 227509, at *11-13 ("Plaintiff misses the point … the 30(B)(6) witness's testimony that she was not aware of any agreement [between the parties] does not preclude [two executives], who may be more informed about SA's business dealings, from testifying that such an agreement did exist"). Movants have not cited any rule or case law that prohibits Carver's approach to the deposition other than their belief that this conduct is improper. Contrary to Movants assertion of bad faith "obstruction" to the Rule 30(B)(6) deposition, Carver's actions are permissible under the Rules.

Movants have failed to show bad faith and their motion for sanctions should be denied with prejudice.

**B. Movants have not been prejudiced by Carver's objections to discovery**.

Movants have not shown any true prejudice from Carver stating objections during depositions or having its Rule 30(b)(6) witness defer to testimony of its General Manager and Port Captain on issues which they were personally knowledgeable. This is exemplified by Movants' refusal to engage in a good faith discussion of how they actually were prejudiced after Carver

provided an 8-page letter summarizing the vast amount of information that its Rule 30(B)(6) deponent testified to. Mr. Laraway simply deferred on several issues to Brian Moore or Lenny Baldassare, including issues of training mariners and Carver's policies for its marine business.

Messrs. Moore and Baldassare testified to these issues. Mr. Moore, specifically, testified that Carver outsources its training to a vendor, TBS, and that TBS's records reflect the training for Carver's mariners including Mate Morrissey and others on board the *M/T Mackenzie Rose*. (ECF No. 72-2) (Ex. 1 to the Declaration of Mr. Rodgers, the Moore Tr. at pp. 312-314). Carver engaged TBS directly and to ensure a complete production of all training records held by TBS, in addition to other records stored in TBS's Helm Connect such as "near-miss reports." ECF No. 72-1, ¶34. Mr. Laraway simply had nothing more to offer on behalf of the company than what Mr. Moore had testified to (i.e., TBS is responsible for training). Movants have made no effort to depose TBS, or re-depose any Carver witness after receiving the records from TBS. Movants have failed to show any prejudice from Mr. Laraway's adoption of prior testimony and Movants' motion should be denied with prejudice.

Moreover, *Wilson* requires that consideration of the prejudice factor include "an inquiry into the materiality of the evidence [a party] failed to produce." *Wilson*, 561 F.2d 494 at 503-04. Movants complain of nonresponsive answers in depositions that are immaterial to the merits issues in the case. For example, Movants claim violation of Rule 30(b) for instructing witnesses not to divulge information regarding employees' separations from Carver and Carver's efforts to preserve evidence for litigation. Carver's post-incident personnel decisions have no bearing on Movants' attempts to defeat Limitation or prove their damages. In addition, Movants are simply wrong that discovery into litigation hold efforts is *per se* allowed. See *Bhattacharya v. Murray*, No. 3:19-cv-00054, 2022 U.S. Dist. LEXIS 86077, at *29 (W.D. Va. May 12, 2022) (privilege

objections over "litigation hold letters" "are proper given that the documents 'were created and sent from in house counsel . . . to convey specific legal advice on document preservation'" in this litigation). The simple fact that Movants are pressing for Carver to produce its general counsel and an employee whose relevant assignment was to assist the defense team, while demanding a preemptive waiver of privilege is telling, and should result in the entry of a protective order in this matter, rather than in the imposition of sanctions.

Movants cannot show any material prejudice from Carver's objections at the depositions and their motion should be denied with prejudice.

### C. If there Were Legitimate Concerns, the proper remedy Would Be to allow Movants additional discovery.

If the Court finds Carver's objections were improper, there are much less drastic sanctions available to Movants than dismissing Carver's case or deeming facts admitted. The proper remedy would be to allow Movants the opportunity to re-depose Carver witnesses on any topic that was improperly objected to. As set forth in Carver's Motion for Protective Order, the Court may supervise these depositions to ensure the parties' objections are adjudicated in real time. Such a remedy would balance Movants' claimed need for additional and duplicative discovery with Carver's rights to a trial and its day in court. *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989).

### CONCLUSION

Movants here clearly and deliberately have proceeded through discovery and received extensive productions and testimony, while waiting to raise their issues until they could claim it was too late to resolve them. There is no reasonable good faith basis for Movants to have waited from April 28th to July 3rd to raise these issues, particularly given the fact that counsel were available to each other to meet and confer regarding various other issues. Productions and

depositions in this case proceeded essentially daily, and conferences among counsel occurred on almost a weekly basis. The fact of this motion is that the first time it was raised, the only relief Movants sought was Carver's agreement to dismiss its limitations action, or the Court's decision to dismiss that action. The present motion should be denied.

Dated: July 30, 2025

CLYDE & CO US LLP

By: /s/ Harold L. Cohen
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
dawn.johnson@clydeco.us

Rachel Werner*
One North Central Avenue, Suite 1030
Pheonix, Arizona 85004
Phone: 480-746-4556
Email: rachel.werner@clydeco.us
*pro hac vice

**CERTIFICATE OF SERVICE**

       I hereby certify that on July 30, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

                                      */s/ Harold L. Cohen*