IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al.* | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY AND EVANSTON INSURANCE COMPANY'S JOINT REPLY TO PETITIONER'S BRIEF IN OPPOSITION TO CLAIMANTS' JOINT MOTION TO COMPEL INSPECTION OF THE M/T MACKENZIE ROSE AND FOR SANCTIONS UNDER RULES 34 AND 37**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Evanston Insurance Company ("Evanston") (collectively, "Claimants"), by counsel, pursuant to Fed. R. Civ. P. 34 and 37(d) and Local Rule 37, submits this Joint Reply to Petitioner's Brief in Opposition to Claimants' Joint Motion to Compel Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver" or "Petitioner") to provide full and complete inspection of the M/T Mackenzie Rose. In the alternative, Belt Line and Evanston request sanctions under Fed. R. Civ. P. 37(d)(3), including limitation of any rebuttal liability expert opinion.

**Reply**

Carver continues its months-long game of hide and seek along the East Coast with its vessel involved in the hit and run allision that is the subject of this litigation. The very vessel containing evidence for the development of Claimants' case-in-chief and in opposition to Petitioner's Limitation Action remains unavailable despite months of assurances to the contrary. Now, as the close of discovery approaches, Carver's bait-and-switch following Claimants' joint motion to compel only further demonstrates Carver's intention to hide the vessel indefinitely under the thinly veiled guise of economic hardship. In reality, this obstructionist discovery strategy should not be

permitted, and is sanctionable. Given the passage of time, the condition of the vessel relative to its immediately post-hit and run allision condition remains unknown, as Carver failed to alert either the Belt Line or the Coast Guard of the allision, or to provide an immediate post-allision inspection as required by federal law. *See* 46 C.F.R. § 4.05-1. As a recent ESI document production from Carver confirmed, Carver's Port Captain lied to the crew about calling the Coast Guard, and instructed the vessel to proceed to New York:





Carver continues to prejudice the Belt Line and Evanston by consistently and thoroughly impeding its ability to develop facts to defeat Carver's limitation effort. The refusal to permit Belt Line's and Evanston's jointly designated marine tug expert to inspect the Tug is yet another example of impermissible discovery tactics.

In Reply to Carver's Brief in Opposition (DE 74), Belt Line and Evanston show the Court as follows:

1. Carver incorrectly asserts the Belt Line and Evanston did not "meet and confer" in accordance with L.R. 37(E). As noted in the Certification contained in Petitioners' Joint Motion (DE 68 and DE 68-5), a good faith effort to resolve the outstanding inspection request for the vessel was conducted on June 10, 2025. Based on repeated assurances that the vessel would be made available, Belt Line and Evanston believed the issue was resolved.

2. Prior to the June 10, 2025, meet and confer, Belt Line circulated a list of topics for discussion during the consultation. (DE 68-5). L.R. 37(E) provides:

> (E) **Consultation Among Counsel:** Counsel shall confer to decrease, in every way possible the filing of unnecessary discovery motions. No motion concerning discovery matters may be filed until counsel shall have conferred in person or by telephone to explore with opposing counsel the possibility of resolving the discovery matters in controversy. The Court will not consider any

3

motion concerning discovery matters unless the motion is accompanied by a statement of counsel that a good faith effort has been made between counsel to resolve the discovery matters at issue.

L.R. 37(E) does not request the Parties to identify topics that will then be subject to a Motion to Compel. Rather, L.R. 37 (E) inherently suggests the consultation is a precursor to any Motion to Compel. In other words, by outlining topics in advance of a call that are then the subject of a consultation, the Movant fulfilled its obligations under Rule 37(E). Further, when a good faith agreement is reached, then reversed by one consenting Party, the logical next step is Court intervention via a Motion to Compel. Oddly, Carver asserts no request for inspection was served prior to the meet and confer, but yet Carver attaches Belt Line's Rule 34 Request for Inspection as part of their Brief in Opposition (DE 74-1).

3. To be sure, Carver agreed to an inspection of the tug, but only advised where and when it would take place (in Charleston, SC commencing at 7:30 a.m. on May 9, 2025) less than 24 hours before it was scheduled by Carver. (DE 68-3) The towing expert jointly retained by the Belt Line and Evanston promptly made air travel arrangements from his home in Florida to inspect the tug the following morning. An unavoidable Act of God disrupted the initial May 9, 2025 vessel inspection. Claimants immediately renewed their good faith informal requests to reschedule the inspection. This continued through the June 10, 2025 meet and confer call, followed by Evanston's formal request served on June 23, 2025, requesting inspection prior to July 15, 2025. Belt Line and Evanston requested an inspection at a date and time at one of Carver's ports in either New York or Charleston, or other location as available. On July 11, 2025 and without provocation, Carver withdrew its prior consent to inspect, and made no further effort to make the vessel available prior to July 15, 2025, leaving Belt Line and Evanston with no choice but to seek relief from the Court (DE 67).

After the Claimants' Joint Motion to Compel was filed and in an effort to resolve the continuing request to inspect the tug without Court intervention, Counsel for Belt Line[1] reasonably requested 3 days' notice of the potential inspection. This request was made as the May 9, 2025 inspection was frustrated by

---

[1] Carver's Brief in Opposition to Belt Line and Evanston's Joint Motion to Compel incorrectly identified their Ex. A as authored by Counsel for Evanston. (DE 74 and 74-1).

4

Carver's confirmation less than 24 hours prior to the 7:00am start time. Carver is aware Belt Line and Evanston's joint tug expert is located in Florida and requires adequate notice for travel.

4. Claimants advised Carver their expert was available July 26, 27, or 31, 2025. Carver replied the vessel would be at the New York Harbor Friday July 25, 2025 through the weekend.

5. Extensive correspondence among the parties on July 23 and July 24, 2025 confirmed the vessel would be made available on <u>Sunday</u> July 27, 2025. (Ex. 1) Prior to filing their Brief in Opposition, Carver's motivation for securing a vessel inspection hinged on the availability of their own designated expert, Capt. Stephenson:

> From: Rodgers, James <James.Rodgers@clydeco.us>
> Sent: Friday, July 18, 2025 1:34 PM
> To: Mark Nanavati <mnanavati@snllaw.com>; Alonzo, Jennifer <Jennifer.Alonzo@clydeco.us>; James Chapman <jchapman@cwm-law.com>; W. Ryan Snow <wrsnow@cwm-law.com>; Christopher Jones <cjones@snllaw.com>; Zach Jett <zjett@butler.legal>; Mackenzie Pensyl <mpensyl@cwm-law.com>; Tressa Lucas <tlucas@cwm-law.com>; Jennifer Huber <jhuber@butler.legal>
> Cc: Cohen, Harry <Harry.Cohen@clydeco.us>; Johnson, Dawn <Dawn.Johnson@clydeco.us>; Murphy, Siobhan <Siobhan.Murphy@clydeco.us>; Keating, Lourdes <Lourdes.Keating@clydeco.us>; Harris, Tammy <Tammy.Harris@clydeco.us>; Werner, Rachel <Rachel.Werner@clydeco.us>; Vega, Joslin <Joslin.Vega@clydeco.us>; Holbert, Liset <Liset.Holbert@clydeco.us>; Roman, Michael <Michael.Roman@clydeco.us>; Alonzo, Jennifer <Jennifer.Alonzo@clydeco.us>
> Subject: Re: Carver Marine Towing v. NPBL, et al. - 2:24-cv-00490 - Amended Notices of Deposition of Experts Captain Nicholas Lewis and Robert Furborough [CC-US.60032.10679176]
>
> Mark,
>
> I will pass those tug dates on to Carver. ==Also depends on Capt Stephenson.==
>
> Either 1 or 2 days on your experts. If 1 day I would just amend to 10-3 pm for Capt Lewis. And then 3 pm for Furborough.
>
> Thanks
> Jim

6. Once confirmed, Carver cancelled, effectively continuing the game of hide and seek of the hit and run vessel, reportedly because the vessel was delayed. (Ex. 2) In reality, it appears the vessel remained

5

moored in the Wilmington, DE harbor. According to Vessel Finder[2] (an online database that provides tracking information on vessels at sea), the vessel departed for Wilmington, DE on July 22, 2025, remained in Wilmington, DE from July 25 – July 27, 2025, then sailed to New York Harbor on Monday July 28, 2025. The vessel then sailed to upstate New York. (Ex. 3) The necessary attendees already planned to inspect, and could have pivoted to a different location, but Carver afforded no such accommodation.

7. This saga of the request to inspect the tug is one of a number of obstructionist tactics employed by Carver, forcing Belt Line and Evanston to seek relief from this Court. (DE 42, DE 67, DE 69).

8. Carver argues that Belt Line and Evanston should have requested yet another meet and confer regarding the inspection. Carver's conduct both before the filing of the motion and since demonstrates the futility of such a requirement and would only afford it the opportunity to continue playing a cat and mouse game to avoid the requested inspection. Repeated informal requests, two separate formal Requests for Inspection under Rule 34, and the June 10, 2025 meet and confer all resulted in good faith assurances the vessel would be made available. The issue was not "open." Following a lengthy meet and confer on July 8, 2025, Carver withdrew its prior consent to inspect the vessel in a July 11, 2025 email (DE 68-7). In the same email, Carver then suggested they "will take (Belt Line and Evanston's) request…to (Carver)" presumably for the first time since the frustrated May 9, 2025 attempted inspection. This correspondence underscores Carver's ongoing overt efforts to thwart the discovery process.

9. As noted, Belt Line and Evanston made exhaustive attempts to inspect the vessel prior to filing the instant motion. Assertions to the contrary are inaccurate.

10. Belt Line and Evanston complied with L.R. 37 (E). This matter is ripe for judicial intervention.

11. Astonishingly, Carver argues a single vessel inspection wherein Belt Line and Evanston offered to go to any port along the East Coast on three day's notice creates an economic hardship. The underlying issue in the instant hit and run allision stems from Belt Line and Evanston's joint economic hardship that presently totals $15,542,871.55, exclusive of costs, expenses, fees, and punitive damages. Carver's

---

[2] *See* https://www.vesselfinder.com/?imo=8968765

6

suggestion that their coordinating a routine Fed. R. Civ. P. 34 request of the very vessel that caused over $15.5 million in damages is too great of an economic burden is beyond the pale.

12.   In yet another incomplete recitation of the facts, Carver ignores the June 10, 2025 meet and confer, along with the number requests to inspect noted herein. Then, in support of their Brief in Opposition, Carver offers a portion of an email wherein Claimants advise their expert remained unavailable on July 28, 2025. (DE 74-2). In full candor, the entire email is attached. (Ex. 4). The only attempt to make the vessel available was on the very day Claimants' jointly designated expert tug captain was not available.

13.   A request to inspect evidence controlled by one party that is the subject of litigation pursuant to Fed. R. Civ. P. 34 is arguably one of the most fundamentally basic discovery request in any litigation. Carver filed this action seeking to have its liability limited to the value of the vessel. The parties now approach the close of discovery, over a year after the hit and run allision, and the vessel remains unavailable for an initial inspection. Carver's claimed "attempts" to produce the vessel hardly demonstrate good faith.

14.   Carver's repeated obstruction and delay tactics continue to increase litigation expenses to both the Belt Line and Evanston, in addition to the $15.5 million caused by the hit and run allision. Carver should be Ordered to produce the vessel within 10 days at their own expense with at least 5 day's notice. The Belt Line and Evanston do not request oral arguments, and request that the Court rule promptly on the motion.

## Conclusion

WHEREFORE, the Belt Line and Evanston respectfully renew their request that this Court enter an Order *allowing* the inspection of the Tug within 10 days and with at least 5 day's notice; *in the alternative,* prohibit Carver's rebuttal expert liability witness from offering any opinion, and *granting* the Belt Line and Evanston all other just relief, including attorneys' fees.

This 30th day of July 2025.

        s/*Zachary M. Jett*
Zachary M. Jett, Esq. (VSB # 93285)
BUTLER WEIHMULLER KATZ CRAIG LLP
11525 N. Community House Road, Suite 300
Charlotte, North Carolina  28277
Telephone: (704) 543-2321
Facsimile:   (704) 543-2324
Email: zjett@butler.legal

Mark C. Nanavati, Esq. (VSB # 38709)
G. Christopher Jones, Jr., Esq. (VSB # 82260)
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia  23114
Telephone: (804) 893-3866 (Nanavati)
Telephone: (804) 893-3864 (Jones)
Facsimile: (804) 378-2610
mnanavati@snllaw.com
cjones@snllaw.com

*Attorneys for Intervening Plaintiff / Claimant Evanston Insurance Company*

      s/*James L. Chapman*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com

*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July 2025 a true and correct copy of the forgoing *Norfolk And Portsmouth Belt Line Railroad Company And Evanston Insurance Company's Joint Reply To Petitioner's Brief In Opposition To Claimants' Joint Motion To Compel Inspection Of The M/T Mackenzie Rose And For Sanctions Under Rules 34 And 37* has been filed through the Court's CM/ECF electronic filing system, which will automatically delivery electronic notification of the same to the following counsel of record:

Harold L. Cohen, Esq.
Clyde & Co US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida  33131
Harry.Cohen@Clydeco.us

Michael J. Roman, Esq.
Dawn L. Johnson, Esq.
Siobhan Murphy, Esq.
Clyde & Co US LLP
30 S. Whacker Drive, Suite 2600
Chicago, Illinois  60606
Michael.Roman@clydeco.us
Dawn.Johnson@clydeco.us
Siobhan.murphy@clydeco.us

*Attorneys for Coeymans Marine Towing, LLC
d/b/a Carver Marine Towing*

James H. Rodgers, Esq.
Clyde & Co US LLP
405 Lexington Avenue
New York, New York  10174
James.Rodgers@clydeco.us

Rachel Werner, Esq.
One North Central Avenue, Suite 1030
Phoenix, Arizona  85004
Rachel.Werner@clydeco.us

*Attorneys for Coeymans Marine Towing, LLC
d/b/a Carver Marine Towing*

I further certify that on this 30th day of July 2025 a true and correct copy of the forgoing *Norfolk And Portsmouth Belt Line Railroad Company And Evanston Insurance Company's Joint Reply To Petitioner's Brief In Opposition To Claimants' Joint Motion To Compel Inspection Of The M/T Mackenzie Rose And For Sanctions Under Rules 34 And 37* has been served upon the following by electronic mail and by placing a copy in the United States Mail, postage pre-paid, to:

James Morrissey
4723 Baywood Drive
Lynn Haven, Florida 32444
jdmorrissey15@gmail.com
*Pro Se* Defendant

                                                      Zachary M. Jett, Esq.