IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

**PETITIONER CARVER'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR A PROTECTIVE ORDER**

Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), for its Reply Brief in Support of its Motion for a Protective Order (ECF Nos.71 and 72), states as follows:

**Introduction**

Petitioner brought this limitations action to address an accident in which a barge being pushed by the tug, M/T MACKENZIE ROSE, struck a bridge owned by the Plaintiff Norfolk and Portsmouth Belt Line Railroad Company's ("Belt Line") and insured by Evanston Insurance Company's ("Evanston") (together, "Movants"). Prior to the Belt Line's reporting the accident to Petitioner, Carver had been informed that the barge did not strike or damage the bridge. Then the Mate who had been on duty made up a false story about how the accident occurred. Finally, in a formal Coast Guard investigation, he told the truth: That the accident was due to his mistake. It is just this kind of error that is meant to lead to a limitation of liability for the owner of the vessel. This matter is now before the Court on consolidated cases, in which the Belt Line and Evanston are Respondents and consolidated Plaintiffs/Claimants.

1

Carver respectfully asks that this Court intervene to ensure that the parties bring this case to trial on the merits. Carver submits that no party should be required to waive its attorney-client and work product privileges, as Belt Line and Evanston have demanded of Carver. There is no reason why this case should not be tried on the evidence, following a process of timely good faith consultations and prompt requests for rulings on discovery issues as they arise.

The Belt Line and Evanston adopt their assertions of fact from their motion for sanctions, (ECF No. 69), in their opposition to Carver's motion for a protective order. In turn, Carver adopts its declaration and evidence (ECF Nos. 72-1 through 72-33). In addition, Carver offers the following:

### Response as to the Statements of Fact Included in Belt Line's and Evanston's Introduction and in Section B of their Brief.

The Belt Line and Evanston seek to avoid an Order of this Court requiring them to meet and confer in good faith and to complete discovery under the supervision of the Court. They base this, in part, on pre-litigation facts. (*See* ECF No. 73, p. 2) ("Carver's obstruction began with its hit-and-run departure from the scene…"). They thus ask this Court to view this litigation through the lens of anger that the Mate, who was at the helm of the tug when the barge struck the bridge, falsely told Carver that he had not hit the bridge with the barge, and that the bridge was not damaged. The argument is without merit and irrelevant. It should be disregarded.

The Belt Line and Evanston next assert that their counsel have tried "mightily" to obtain discovery from Carver. *Id.* They base this on a single motion they brought, asking the Court to overrule objections raised by Carver as to initial discovery. *Id.* In the months since that Order (ECF No. 50), they have not brought a motion alleging that Carver somehow violated the Order. To the contrary, Carver's extensive production of evidence is documented before this Court. (See ECF No. 72-1). Similarly, despite their claim that Carver's supposed obstruction of depositions

2

has been ongoing since April 2025, they never brought a motion for a ruling on Carver's objections. They never requested a ruling followed by the opportunity to reconvene even one deposition. Carver respectfully submits that Counsel's actions are what might traditionally be called sharp practice and can be dealt with most efficiently through the protective order Carver has requested.

Next, the Belt Line and Evanston complain that their expert has not inspected the M/T MACKENZIE ROSE, without acknowledging that their expert was offered a date to do so before they filed their motion. He did not appear. Carver's counsel then said he would take their request for another date to Carver. Belt Line and Evanston treated this as a flat no—and without due consultation brought their now-pending motion to compel. The facts of that issue are briefed in Carver's opposition to the motion to compel and are adopted here. (ECF No. 74). Those facts now include that Carver identified a second date when the tug was available, in port, which the Belt Line and Evanston refused, even though Carver also provided the requested three days' notice. *Id.* There is a genuine cost to requiring Carver to have the tug stop its work in commerce, and the Belt Line and Evanston have never proposed to cover those costs, in light of the fact that they have now twice failed to conduct inspections when the tug was in harbor.

Next, the Belt Line and Evanston complain about the absolutely correct answer Carver gave to a quoted request, stating that the M/T Mackenzie Rose allided with the western section of the bridge. The Belt Line chose to use explicit definitions under which the "Vessel" is separate from the "Barge." The truth is that the contact was with the barge. This is, of course, entirely consistent with Carver's previous statement that: "The various claims all result from an allision ***between a barge*** that was ***being pushed*** by the M/V MACKENZIE ROSE ***and a bridge*** owned by Respondent/Claimant, Belt Line." (ECF No. 72., at p. 4, quoting ¶ 2).

3

Despite highlighting the above correct answer and explanatory statement, Belt Line and Evanston then assert that there is no need for the Court to manage discovery **because** Carver denied some of the requests to admit served on it, and maintained that it did not have sufficient knowledge to affirmatively admit or forever deny other issues that related to expert opinion and ongoing discovery. A party has no obligation to admit a falsehood or to claim more certain knowledge than it has. That said, both Belt Line and Evanston are obligated to meet and confer if they have a basis to ask Carver to revisit its responses. *See* L.R. 37. They have not done so—and their decision to raise this issue as a reason for the Court not to enter a protective order is contrary to their obligations under L.R.37, and otherwise. It is a back door effort to file a discovery motion without first promptly seeking to meet and confer to resolve a dispute.

The next argument posed is that Carver is seeking to prevent the deposition of Carver's general counsel. The actual relief sought in Carver's motion is "(2) that this Court order that [the Belt Line and Evanston] may not enquire into the attorney-client relationship or evaluation of the evidence in their depositions of Attorney Malik and of Mr. Galioto". (ECF No. 72, p. 18). The Belt Line and Evanson *know* that Carver proposed to produce attorney Malik "for a factual deposition related to his declaration as to discovery produced in this case, only; Carver proposed that the deposition take place … subject to objections as to both attorney-client and work product privileges." (ECF No. 72, p. 5, ¶ 6). They also do not dispute that they responded to the proposal, saying: "Please let me know whether you will withdraw the privilege objection". (ECF No. 72-31, p. 2). There is no dispute that the parties then had a video conference, at which time Carver asked that the Belt Line and Evanston withdraw their demand that they be allowed to violate Carver's privileges, as discussed at ECF No. 72, p. 6. The Belt Line and Evanston refused. *Id*. As Carver

4

will not waive its rights and privileges in advance of the deposition of its general counsel, Attorney Malik, it seeks this Court's intervention and supervision as to that deposition.

The same issue applies to Mr. Galioto, who was not involved in the subject events. Rather, after the fact, he was assigned to assist defense counsel. (See ECF No. 72-32). Carver advised the Belt Line and Evanston of Mr. Galioto's lack of personal knowledge and limited role, which is subject to both the attorney-client and work product privileges. It reconfirmed that Carver is not willing to waive its rights to allow a searching deposition of Mr. Galioto as to his knowledge obtained working with counsel. Accordingly, Carver asks this Court for a protective order, consistent with the case law in this Circuit as to the impropriety of a party seeking to invade the attorney-client relationship, which Belt Line and Evanston insist upon.

In their second footnote Belt Line and Evanston minimize the concerns Carver has as to the "effectiveness of its meet and confer efforts with the Belt Line and Evanston" saying that "all those meetings have involved discussion of the relief sought and possible paths to resolution." The truth is that Belt Line and Evanston "confer" by presenting ultimatums, not possible paths to resolution. They demand that Carver concede the case on the one hand and that Carver simultaneously waive its rights and privileges on the other. These are not good faith paths to resolution. That is precisely why Carver asks this Court to supervise discovery in this case, so that issues are resolved as they arise, such that requested discovery can proceed appropriately, without threats and unreasonable demands.

The Belt Line and Evanston further take the position that Carver's decision to ask this Court for a ruling on the depositions of Mr. Malik and of Mr. Galioto is an effort to avoid those depositions altogether, when they know that Carver proposed to produce Mr. Malik, with agreed limits to protect it from demands that it allow discovery into its attorney-client relationship,

5

confidences, and interactions. Carver respectfully gave Mr. Galioto's affidavit to Counsel, in the expectation that they would recognize that a deposition of Mr. Galioto is unreasonable.

Given that the Belt Line and Evanston demanded a waiver of those issues, and, further, given their tendency to accuse Carver of all types of dishonesty when it raises its objections during a deposition, Carver elected to ask the Court to intervene and supervise all such discovery. Curiously, the Belt Line and Evanston read an explicit request for a ruling that they may not conduct discovery depositions designed to invade Carver's attorney-client relationship as if it were a motion to entirely quash those depositions. (*See* ECF No. 72, p. 1). The truth is that Carver asked this Court to hold that it need not waive its privileges and to supervise the remaining discovery.

As to Mr. Rodgers' Declaration, which is under oath, and not opposed by any contrary declaration, the Belt Line and Evanston assert that it is somehow false that their expert "failed to appear" for the first scheduled inspection of the tug. Rather, they take the position he didn't 'just' fail to appear—he failed to appear for a reason. Mr. Rodgers' statement is true. Counsel only asks to interpose an explanation of that undisputed fact. Counsel takes a similar approach as to paragraph 51 of Mr. Rodgers' Declaration—asserting that they somehow adequately met and conferred about the tug inspection in June for a motion filed in July based on correspondence in July. Likewise, although they have not withdrawn their motion to compel the tug inspection, they deny that they have declined to withdraw their motion, offering comments to justify their position.

Counsel for the Belt Line and Evanston also assert that their changing requests for documents were always the same. Carver's good faith efforts to meet this actual moving target are reflected in multiple supplemental productions. See Ex. 72-1. Some examples include that counsel expanded their original document requests to include metadata, very specific communications, call logs and records of changes made to deck logs or the safety management

6

system. Counsel then asserts that Carver's costly good faith efforts to expand the production in response to Counsel's requests were not "altruistic or voluntary". Of course. Carver's efforts to supplement its production were good faith efforts to resolve any dispute, in the expectation that Counsel for the Belt Line and Evanston would review the supplemental productions in the ordinary course of discovery, rather than attempt to cast those supplemental production as if they were evidence of a crime.

Notably, the Belt Line and Evanston do not deny that they:

- Chose not to meet and confer about the requested second tug inspection after the July 11 letter, which they misconstrued as a refusal to try to find a solution. (ECF No. 72, p. 6, ¶ 8).

- Took multiple depositions, including those of Carver employees starting in April, as well as that of Carver, through Mr. Laraway, without seeking to meet and confer about objections, without seeking to reschedule the depositions, and without asking this Court for a ruling on the objections, until they could claim 'prejudice' because they filed a motion on this issue only after they disclosed experts. *Id.*

- Claimed that they had a good faith telephonic conference to resolve disputes when they started out demanding that Carver dismiss its case, without offering any discussion of what information they still needed or how they were prejudiced. *Id.*

- Preemptively demanded that Carver waive its attorney-client and work product privileges based on then-thinly veiled accusations of dishonesty, that have now matured into an argument that Carver was engaged in an ongoing crime or scheme to defraud, discussed below. (*Id.*, p. 7).

These uncontradicted facts more than warrant the Court's intervention.

## Argument

### 1. The Court should Limit the Depositions to Non-Privileged Matters

Carver has offered to make Attorney Malik available for a limited factual deposition, despite the facts that Malik is both an attorney integral to Carver's defense and a high-level official whose only knowledge of the matter in dispute comes from his involvement as general counsel hired after the subject allision. Carver has pointed out that Mr. Galioto has no personal knowledge

7

about the subject accident, that he never investigated the condition of the vessel, and that his only involvement was after the fact, to help the defense counsel. It is Carver's position that the request for his deposition is unreasonable, but if it is to go forward, Carver's attorney-client and work product privileges must be protected.

A deposition taken of counsel with a preemptive demand that Carver waive its privileges as to that counsel's testimony is improper. Rule 26 limits discovery to non-privileged matters. Any deposition sought simply to harass a witness who is highly placed, not because of any special knowledge of, or involvement in, the matter in dispute is improper. *Benson v. City of Lincoln*, No. 4:18CV3127, 2023 WL 5627091, at *5 (D. Neb. Aug. 31, 2023). This "apex doctrine" specifically is meant to require Plaintiff to show: "(1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Id*. at *3 (*citing Wal–Mart Stores, Inc.*, 2007 WL 4591569, at *1).

Remarkably, the Belt Line and Evanston do not address this standard, nor do they deny that they plan to enquire about attorney-client and work-product privileged matters in the requested depositions. Instead, they rely on *Rambus, Inc. v. Infineon Technologies AG*, 222 F.R.D. 280, 290 (E.D. Va. 2004), as if it justified the planned violation of privilege. *Rambus* is a case that involved a party that had intentionally destroyed documents for the purpose of evading disclosure. *See id*. at 290–93. The Court there applied the crime-fraud exception to the attorney-client privilege.

After the decision in *Rambus*, a panel of the United States Court of Appeals for the Fourth Circuit clarified the crime-fraud exception to the attorney client and work product privileges. *In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004*, 401 F.3d 247, 251–53 (4th Cir. 2005). The Fourth Circuit explained that "the party asserting the crime-fraud exception …. must make a *prima facie*

8

showing that the privileged communications fall within the exception." *Id.*, (citing *Chaudhry v. Gallerizzo,* 174 F.3d 394, 403 (4th Cir.1999)). That *prima facie* showing must establish that:

> …the client was engaged in or planning a ***criminal or fraudulent scheme*** when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud.

The Belt Line and Evanston do not identify any criminal or fraudulent scheme as to which Carver supposedly sought the advice of Attorney Malik.

> The Court of Appeals further explained that:
>
> Prong one of this test is satisfied by a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. *See In re Grand Jury Investigation,* 842 F.2d 1223, 1226 (11th Cir.1987); *In re Sealed Case,* 676 F.2d at 815; *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1242 (5th Cir.1982). Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity. *Chaudhry,* 174 F.3d at 403.

*Id.* For the crime-fraud exception to apply the evidence must be that "the communication furthered or was intended by the client to further … illegality." *Id.* (internal citations omitted).[1]

In this case, the Belt Line and Evanston complain that Carver produced a late-discovered report as to an event that occurred on May 21, 2024. Willing production of a document in discovery is not evidence of any ongoing willful crime or fraud. Further, Belt Line and Evanston's repeated assertion that this case involved a defective or malfunctioning auto pilot is unsupported by any evidence that such a malfunction actually occurred on June 15, 2024.

Counsel also suggest that the Court should vitiate Carver's privileges because at one point Carver answered there were no radars aboard the M/V MACKENZIE ROSE—an answer that has

---

[1] Further, those seeking to overcome the opinion work product privilege must make a prima facie showing that the "attorney in question was aware of or a knowing participant in the criminal conduct." Id. In its 2004 opinion, the Fourth Circuit also noted that there must be a showing that an attorney knowingly participated in the criminal activity to secure his testimony about opinion work product.

9

since been openly contradicted by Carver's own witnesses, though Counsel points to two undated photos of radar screens—as if Counsel were unaware of the testimony in this case. Counsel is well aware that Mr. Moore testified there were two radars onboard, but did not know whether they were in use at the time of the Allison. (ECF No. 72-2, pp. 139:18- 140:8; 143:5-7). Mr. Baldassarre testified that the crew told him that radar was operational and in use at the time of the Allision. (ECF No. 72-3, p. 207:2-208:11). Through Mr. Laraway, Carver adopted those witnesses' testimony about radar on the vessel. (ECF No. 72-15, pp. 164:7-13). Had Carver been asked to revisit its answer in light of the above testimony, it would have. The production of witnesses who testified directly and honestly is not evidence of any criminal scheme. In fact, there is no *prima facie* showing of any ongoing criminal scheme here, nor is there even an attempt to present such a showing.

If Belt Line and Evanston seek Mr. Malik's knowledge of fact, it will be provided. However, the truth of this matter is that Mr. Malik does not have specific and personal knowledge of events before he was even hired by Carver. Further, Counsel is well aware and does not dispute that Attorney Malik did not work for Carver on or before June 15, 2024. Likewise, Carver provided Mr. Galioto's testimony that his involvement with matters related to the M/V MACKENZIE ROSE was due to his work with defense counsel. Given the above, the requested depositions of Attorney Malik and Mr. Galioto should be appropriately limited.

2. **The Court should Supervise All Remaining Discovery in this Matter**

The Belt Line and Evanston argue that they had no option short of seeking the ultimate sanction in this matter. On this record, it is clear that they have followed a deliberate course of conduct, since April, not to seek the Court's intervention or ruling on any of Carver's objections, nor even to meet and confer until they demanded Carver's immediate surrender.

Counsel argues that "Rule 30 does not require a phone call to the Court" (ECF No. 73, p. 16), and essentially assert that they were not ethically required to act promptly to address any perceived in discovery in a case. This is a gross misunderstanding of the obligations of counsel to be diligent in preparing our cases. There are multiple decisions that have denied simple *motions to compel* based on lack of diligence. *See, e.g., Sille v. Parball Corp.*, Case No. 2:07-cv-00901-KJD-LRL, 2010 WL 2505625, at *2 (D. Nev. June 14, 2010) (denying motion to compel as untimely because counsel are "to be diligent" in bringing such motions); *see also Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010) (denying motion to compel as untimely and indicating that "the Court sees no reason why Plaintiffs could not have upheld their ethical duty to attempt to resolve the discovery conflict without court action, yet still have made this motion at a much earlier date"). Untimeliness is "sufficient ground, standing alone," to deny a discovery motion." *Cloudofchange, LLC v. Lightspeed Pos, Inc.,* No. 2:23-MC-00105-PA-BFM, 2023 WL 6172892, at *2 (C.D. Cal. Aug. 31, 2023)(*citing KST Data, Inc. v. DXC Tech. Co.*, 344 F. Supp. 3d 1132, 1136 n.1 (C.D. Cal. 2018) (citation omitted); 8B Wright, Miller & Marcus, Federal Practice & Procedure, § 2285 at 499 (2010) (courts "often deny Rule 37(a) motions because the moving party delayed too long")). If Counsel actually perceived a supposed pattern of obstruction in Carver's objections, or if it were actually denied information needed by its experts, there was time to bring a motion seeking to overrule the objections and compel the answers.

Ultimately, the Belt Line and Evanston argue that "Re-deposition now will only give Carver's witnesses an opportunity to better prepare for known lines of questioning, after the Belt Line and Evanston have disclosed their expert witness reports." Yet, as the court in *Haviland* noted, Counsel has an ethical duty to attempt, in good faith, to resolve discovery disputes promptly.

If Counsel had sought a prompt order allowing it to re-depose witnesses who were presented in April, such relief could have occurred prior to any expert disclosures. Respectfully, the Belt Line and Evanston have not sought, diligently, and in good faith, to present their case on the merits.

Carver respectfully submits that the Belt Line and Evanston's refusal to meet and confer in good faith, their decision to delay bringing issues to the Court to attempt to justify the request for an ultimate sanction, and their astounding accusation that Carver and its attorneys are engaged in a fraudulent scheme or crime more than warrant supervision of this case, going forward. The supposed prejudice to the Belt Line and Evanston could have been resolved by good faith consultation and a timely motion to compel or to overrule Carver's good faith objections.

Carver remains unwilling to concede its case or waive its attorney-client and work product privileges. The relief of a protective order is warranted, and supervision of discovery would be greatly appreciated.

## **Conclusion**

The Belt Line and Evanston have clearly and deliberately proceeded through extensive discovery without timely seeking to resolve supposed shortfalls in productions and testimony. They decided to raise their issues only after they could claim it was too late to really address them. They further accuse Carver and its counsel of some ongoing scheme to commit a crime or fraud in order to invade the attorney-client relationship. They base this outrageous accusation on the fact that Carver produced information that the Belt Line wrongly sees as proof of unseaworthiness. This is anything but evidence of a crime or of fraud. Counsel's sharp practices are outrageous, and a protective order is necessary to allow this matter to come to trial on the merits.

Accordingly, Carver asks that the Court enter an order (1) that the Belt Line and Evanston must confer in this matter in good faith; (2) that the Belt Line and Evanston may not enquire into

the attorney-client relationship or evaluation of the evidence in their depositions of Attorney Malike and of Mr. Galioto; (3) that this Court supervise all remaining discovery; (4) & (5) that the Claimants pending motions to compel and for sanctions be denied; and (6) that Carver be awarded its attorneys' fees and costs for bringing this motion.

Dated: July 31, 2025
CLYDE & CO US LLP

By: /s/ Harold L. Cohen
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
dawn.johnson@clydeco.us
Siobhan.murphy@clydeco.us

Rachel Werner*
One North Central Avenue, Suite 1030
Pheonix, Arizona 85004
Phone: 480-746-4556
Email: rachel.werner@clydeco.us
*pro hac vice

**CERTIFICATE OF SERVICE**

        I hereby certify that on July 31, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

| | |
|---|---|
| Mark C. Nanavati, Esq. (VSB No.: 38709)<br>G. Christopher Jones, Jr., Esq. (VSB No.: 82260)<br>SINNOT, NUCKOLS & LOGAN, P.C.<br>13811 Village Mill Drive<br>Midlothian, Virginia 23114<br>(804) 893-3866 (Nanavati)<br>(804) 893-3862 (Jones)<br>(804) 378-2610 (Facsimile)<br>mnanavati@snllaw.com<br>cjones@snllaw.com<br>*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company* | Zachary M. Jett, Esq. (VSB #93285)<br>BUTLER WEIHMULLER KATZ, et al<br>11525 North Community House Road<br>Suite 300<br>Charlotte, North Carolina 28277<br>(704) 543-2321 (Telephone)<br>(704) 543-2324 (Facsimile)<br>zjett@butler.legal<br>*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company* |

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

                                                      */s/ Harold L. Cohen*