IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
AND EVANSTON INSURANCE COMPANY'S
<u>REPLY IN SUPPORT OF THEIR MOTION FOR RELIEF UNDER RULES 30 AND 37</u>**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Evanston Insurance Company ("Evanston"), by counsel, submit this Reply to the Brief in Opposition of Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") to their Motion for Relief under Fed. R. Civ. P. 30 and 37.

<u>Summary</u>

Carver has engaged in a pattern of obstruction beginning with the M/T MACKENZIE ROSE's hit-and-run allision and continuing through depositions and discovery in this litigation. Its conduct has impaired the Belt Line's and Evanston's ability to investigate the facts underlying their efforts to defeat Carver's limitation action. Most recently, this obstruction has extended to depositions of Carver's witnesses including over **140** speaking objections and **13** instructions not to answer. Carver's brief does not dispute any of this.

Instead, Carver appears to blame the Belt Line and Evanston for not rushing to the Court sooner. Carver also suggests that the Belt Line and Evanston should have just re-deposed the witnesses or called the court to sort out the dozens of improper coaching efforts and remarkably unprepared 30(b)(6) designee. In suggesting these remedies, Carver attempts to shift the burden to

the Belt Line and Evanston to force Carver's compliance with the Federal Rules. This is not the way the Rules work. Carver's improper deposition tactics impeded legitimate discovery. What is worse, they were followed by incriminating texts produced months after the Order compelling them, ECF 50, making it clear the deposition tactics were part of a larger pattern of obstructionist behavior and the only adequate remedy is dismissal of the limitation action and the other relief in the Belt Line's and Evanston's Motion.[1]

Because it cannot deny the reality of these obstructionist tactics, Carver focuses on presenting a revised version of events skewed in its own favor. Carver asserts, for example, without any support, that the tug operator James Morrissey testified in a U.S. Coast Guard investigation that the allision was entirely his fault and in doing so, completely relieved Carver of liability. This is simply inaccurate, and Carver's current counsel was not even present at the investigation. The actual evidence available (to the extent it has not been obstructed) points to a known malfunction of the autopilot system, which caused the tug to turn hard to port just like it did less than a month before. Yet, like Carver's bizarre twisting of the investigative testimony, Carver has spent this entire case attempting to block the Belt Line and Evanston from uncovering and proving the truth of Carver's knowledge of that malfunction. Put simply, Carver should not be able to repeatedly obstruct discovery, then argue on the merits that its opponents have no evidence.

---

[1] Carver timing argument is not well taken. It was not just one deposition that amounted to sanctionable conduct; it was Carver's obstructionist discovery strategy over the course of multiple depositions, continuing with the late (and only partial) productions, and culminating with Carver's refusal to produce its tug for inspection, that impeded the Belt Line and Evanston's ability to obtain pertinent information in this case. Only after this obstructionist pattern became evidence did the Belt Line and Evanston filed the present Motion.

**Argument**

I.   **Carver does not dispute that its obstructionist tactics violated the Federal Rules of Civil Procedure and frustrated the Belt Line and Evanston's investigation of the facts.**

The Belt Line and Evanston have made a proper showing that Carver's conduct throughout discovery in this litigation warrants the relief sought in the Motion for Rule 30 Relief (ECF 69). Specifically, Carver has violated Rule 30 giving rise to appropriate relief under subsections (d) and (g) and this Court's inherent authority, including dismissal of Carver's limitation Complaint and an order that deems facts to be taken as established for purposes of this litigation.

Carver does not dispute that its counsel instructed witnesses not to answer on 13 occasions. *See* ECF 70, p. 11-17. These instructions were not based on a privilege or limitation order as required under Fed. R. Civ. P. 30(c)(2). They served the sole purpose of preventing a fair examination of the deponents regarding the facts outlined in **Appendix A** to the Motion for Rule 30 Relief.

Carver also does not dispute that it failed to produce a prepared 30(b)(6) deponent for deposition and frustrated the Belt Line's ability to depose a corporate representative. *See Runnels v. Norcold, Inc.*, 2017 U.S. Dist. LEXIS 161474, at *2 (E.D. Va. 2017). Instead, Carver argues that its approach was somehow permissible. Yet case law overwhelmingly establishes that deferment to other testimony cannot substitute for adequate preparation of a corporate representative. *See Abu-Eid v. Discover Prods.*, 589 F. Supp. 3d 555, 561 (E.D. Va. 2022) (holding "preparation of a Rule 30(b)(6) witness is not limited to matters of which the witness has personal knowledge, but extends to *all information reasonably available to the responding organization*."). Consequently, the 30(b)(6) deposition was not only wholly defective but amounted to a failure to appear at all. *See* Fed. R. Civ. P. 37(d)(1); *Humanscale*, 2009 U.S. Dist. LEXIS 120197, at *5-6 (E.D. Va. Dec. 2009).

Carver also does not dispute that its counsel further violated Rule 30 with repeated speaking objections throughout the depositions of its past and present employees. These objections included **52** during Brian Moore's deposition, **41** during Leonard Baldassare's deposition, **7** during Sharif Porter's deposition, **9** during Jarkeis Morrissey's deposition, and **35** during the Rule 30(b)(6) deposition, for a total of **144** improper objections. *See* Fed. R. Civ. P. 30, Advisory Committee Notes to the 1993 Amendment ("making of an excessive number of unnecessary objections may itself constitute sanctionable conduct").

Instead of disputing its misconduct, Carver argues that the Belt Line and Evanston have failed to prove bad faith. In support of this argument, Carver cites two cases that lay out the factors a court may consider in awarding sanctions. *Wilson v. Volkswagen of America, Inc*. 561 F.2d 494 (4th Cir. 1977); *Davis v. United States*, 767 F. App'x 396 (4th Cir. 2018). However, Carver mischaracterizes these considerations as "elements" of a non-existent bad faith claim and implies that sanctions can only be awarded upon a finding of bad faith. Br. in Opp. p. 10. (ECF 75).

This is a strange argument for Carver to raise since its conduct alone makes the case for bad faith. Even so, nothing in Fed. R. Civ. P. 30 requires that the Belt Line and Evanston prove Carver acted in bad faith. Instead, the language of the rule states that "[t]he court may impose an ***appropriate sanction***—including the reasonable expenses and attorney's fees incurred by any party—***on a person who impedes, delays, or frustrates the fair examination of the deponent***." Fed. R. Civ. P. 30(d)(2) (emphasis added).

There is no requirement for bad faith, only a showing that a party has impeded, delayed, or frustrated the discovery process. This is exactly the case here. Carver's repeated obstructionist behavior has impeded, delayed, and frustrated the Belt Line and Evanston's discovery efforts as explained in detail in the Brief in Support of the Motion for Rule 30 Relief (ECF 70).

As a result, the Belt Line and Evanston have made the requisite showing of Carver's obstructive discovery tactics and the sanctions sought in the Motion for Rule 30 Relief are proper, including dismissal of Carver's limitation action and an order that "designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 30(d) and (g); Fed. R. Civ. P. 37(b)(2)(A)(i).

## II. The remedies suggested by Carver are insufficient to cure the prejudice to the Belt Line and Evanston.

Carver's suggested lesser relief is inadequate to remedy the obstructionist conduct described in the Motion for Rule 30 Relief. The only appropriate remedy capable of curing the prejudice to the Belt Line and Evanston is an order dismissing Carver's limitation Complaint and deeming the obstructed facts admitted against Carver, along with its late-produced text messages.

Carver incorrectly argues that the Belt Line and Evanston should have sought "the opportunity to re-depose Carver witnesses on any topic that was improperly objected to" or court supervision of "these depositions to ensure the parties' objections are adjudicated in real time." Br. in Opp. p.13. (ECF 75). Neither of these remedies is adequate to cure the prejudice to the Belt Line and Evanston. As explained already, new depositions of the witnesses would only permit them to be better coached to answer questions now known to both the witnesses and Carver's counsel. The Belt Line was not obligated to seek Court supervision of the depositions to stop Carver's conduct, nor would supervision have cured the corporate witness' lack of knowledge on the Rule 30(b)(6) topics. Carver admits that its counsel instructed witnesses not to answer and made multiple objections throughout depositions. Br. in Opp., ¶¶ 2, 5, 6, and 8 (ECF 75). This conduct violates the rules. *See* Fed. R. Civ. P. 30, Advisory Committee Notes to the 1993 Amendment. When a party violates the rules, there are sanctions available to the Court. And when the violation of the rules manifests in perpetual obstructionism, the sanctions must rise to the level of the obstruction.

Carver is also wrong that the Belt Line and Evanston have not suffered prejudice. Carver's discovery strategy has culminated in the Belt Line and Evanston being unable to obtain essential information related to the facts listed in Appendix A to the Motion for Rule 30 Relief, most of which go directly to issues in the limitation action. ECF 69. Carver's fallback assertion that this is not "true" prejudice and that the evidence obstructed is non-material is simply untrue. Br. in Opp. p.11. Just as one example, a key issue in the limitation action is the seaworthiness of the M/T MACKENZIE ROSE at the time of the incident and Carver's privity and knowledge of the same. While Carver's incomplete production has provided some evidence of issues with the autopilot and steering systems on the tug (e.g., two rudder failures in May 2024), Carver's repeated obstruction of the discovery of relevant information has prevented the Belt Line and Evanston from developing all the facts about these issues, and Carver's deposition strategy prevented its Rule 30(b)(6) witness from testifying about them at all.

Because Carver's suggested remedies are insufficient to cure the prejudice to the Belt Line and Evanston, this Court should grant the Motion for Rule 30 Relief.

**III.    Carver cannot rewrite facts about the autopilot and other discovery issues that it has obstructed.**

Carver's Brief in Opposition attempts to distract from Carver's misconduct by incorrectly recasting facts throughout its arguments with no support whatsoever. Carver apparently hopes the Court will not deem them admitted despite its obstruction.

The best example of this tactic is Carver's argument that, despite all indications otherwise, the tug's autopilot system had nothing to do with the allision. Carver appears to make this argument based solely on inadmissible speculation. Specifically, Carver asserts that during Coast Guard interviews, Mr. Morrissey testified that there was no autopilot malfunction and that it was his own mistake that caused the allision. Br. in Opp. p.2-3, (ECF 75). This is not at all what Mr. Morrissey

said, and of course Carver provides no transcript to support its assertion because the investigation is inadmissible." 46 U.S.C. § 6308. Carver concedes this in the very same paragraph when it states, "transcripts of [Mr. Morrissey's] interviews have not yet been produced to the parties." Notably, Carver's current counsel was not even present at the Coast Guard interview of Mr. Morrissey, since a different law firm represented Carver at the time.

What is more, Carver's incorrect assertion is explicitly contradicted by the evidence in this case that Carver has not been able to block. Carver's general manager, Mr. Moore, testified to a history of problems with the autopilot system on the M/T MACKENZIE ROSE and confirmed that Carver replaced the system in early 2024:

```
 9       Q.     Had there been any problems with the
10    auto pilot system on the MACKENZIE ROSE in the months
11    in 2024 preceding the allision on June 15th, 2024?
12       A.     There were some instances where we --
13    that the crews noted deficiencies in the auto pilot
14    system.  So dating back to, I don't know, late '23
15    that we started working on it and addressing it.
16              Then they were in -- they weren't
17    consistent, so -- and then when we replaced the
18    system in April, the whole -- I believe it was April,
19    that's when the inconsistencies started to go away,
20    and we didn't have any other issues with the auto
21    pilot since then.
```

ECF 70, Ex. I, 166:9-21.

Yet after Mr. Moore's deposition, Carver produced two reports of issues with the steering or autopilot that both resulted in the tug turning hard over in the way it turned hard to port before the allision on June 15, 2024. These reports from May 2024 are attached as **Exhibit L** and identified in the Belt Line's and Evanston's opening brief at pages 26-27.[2] They date from *after* Carver allegedly repaired the autopilot system and *before* the allision.

---

[2] Exhibits A-K are attached to the Motion for Rule 30 Relief and Brief in Support (ECF 69-70).

Additionally, texts from the M/T MACKENZIE ROSE – which Carver produced July 17, 2025, after this motion was filed – show that, the vessel and Carver were communicating about issues with the autopilot system immediately following the allision. Material excerpts of these texts are pasted below. See Ex. 2 to Br. in Opp. (ECF 75-2).





Carver cannot avoid its misconduct by making baseless assertions on the merits of the case when the whole point of the Motion is that Carver obstructed development of the facts. Carver has blocked the Belt Line and Evanston's ability to uncover facts relevant to the limitation action at a level that rises to sanctionable conduct under federal law. Its current arguments about the merits

8

are the best evidence of how its obstruction has prejudiced the Belt Line and Evanston. The Belt Line and Evanston therefore ask that the Court grant the Motion for Rule 30 Relief.

## Conclusion

For the foregoing reasons and those set forth in the Brief in Support of the Motion for Rule 30 Relief (ECF 70), the Belt Line and Evanston respectfully request that this Court enter an Order *dismissing* Carver's limitation Complaint with prejudice, *allowing* this action to proceed on the claims filed by the Belt Line and Evanston without a limitation on recovery, *deeming* the facts underlying the obstructed testimony admitted as detailed in **Appendix A** to the accompanying motion, *deeming* Carver's text messages admissible for purposes of summary judgment or trial, and *granting* the Belt Line and Evanston all other just relief, including attorneys' fees.

Dated: August 1, 2025

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By:  /s/ James L. Chapman, IV
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cmw-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

EVANSTON INSURANCE COMPANY, a/s/o NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

 /s/ Mark C. Nanavati

Mark C. Nanavati, VSB No. 38709
G. Christopher Jones, Jr., VSB No. 82260
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com

Zachary M. Jett, VSB No. 93285
BUTLER WEIHMULLER KATZ CRAIG LLP
11525 N. Community House Road, Ste 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I certify that on this 1st day of August 2025 a true and correct copy of the foregoing was served on parties via CM/ECF electronic filing system upon the following:

James H. Rodgers, Esq. *(pro hac vice)*
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 702-6771
(212) 710-3950
*James.Rodgers@clydeco.us*

Harold L. Cohen. Esq.
CLYDE & CO US LLP
1221 Brickell Ave #1600
Miami, Florida 33131
(202) 747-5108
(202) 747-5150
*Harry.Cohen@clydeco.us*

Rachel Werner, Esq. *(pro hac vice)*
CLYDE & CO US LLP
One N. Central Avenue, Ste 1030
Pheonix, Arizona 85004
(480) 746-4580
(480) 746-4569 Direct
(480) 746-4556 Fax
*Rachel.werner@clydeco.us*

Michael Roman, Esq.
Dawn Johnson, Esq.
Siobhan Murphy, Esq.
CLYDE & CO US LLP
30 S. Wacker Drive, Ste 2600
Chicago, IL 60606
Tel No.: (312) 635-6971
Fax No.: (312)635-6950
*Michael.Roman@clydeco.us*
*Dawn.Johnson@clydeco.us*
*Siobhan.murphy@clydeco.us*
*Counsel for Coeymans Marine Towing, LLC,*
*d/b/a Carver Marine Towing*

James Morrissey (via electronic and regular mail)
4723 Baywood Drive
Lynnhaven, FL 32444
(850) 901-3893
*jdmorrissey15@gmail.com*

                                      */s/ James L. Chapman, IV*

Case 2:24-cv-00490-MSD-LRL   Document 79   Filed 08/01/25   Page 12 of 12 PageID# 1652