UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
*d/b/a* CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and
Appurtenances, etc., *in rem* petitioning for Exoneration from or
Limitation of Liability in allision with Norfolk and Portsmouth Belt
Line Railroad Company Main Line Railroad Bridge occurring June
15, 2024 in and about the Elizabeth River, Virginia.

Case No.: 2:24cv490

**NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,**

    **Consolidated Plaintiff/Claimant,**

**and**

**EVANSTON INSURANCE COMPANY,**

    **Intervening Plaintiff/Claimant,**

**v.**

**JAMES MORRISEY,**

    **Defendant.**

## ORDER

Before the Court is Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing's ("Carver") Motion for Protective Order and a memorandum in support. ECF Nos. 71-72. Norfolk and Portsmouth Belt Line Railroad Company and Evanston Insurance Company ("Claimants") filed a memorandum in opposition, ECF No. 73, and Carver replied, ECF No. 77. The matter has been fully and adequately briefed, and, given the contentiousness that seems to have infected this case, oral argument is unnecessary and would not aid in the decisional process.

Accordingly, the Court decides the Motion without a hearing. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J).

By its Motion, Carver seeks a protective order designed to: (1) prevent Claimants "from engaging in abusive and unnecessary discovery and discovery motions" and to require Claimants to negotiate discovery disputes in good faith; (2) prevent Claimants from conducting depositions designed to circumvent Carver's attorney-client privilege and its work product immunity; (3) have the Court "supervise the remaining discovery;" and (4) award Carver its costs.[1] ECF No. 71 at 1. Throughout its memorandum in support, Carver purports to document repeated instances where it asserts that Claimants have engaged in abusive discovery tactics and have acted in bad faith. *See, e.g.*, ECF No. 72 at 2 (alleging Claimants have engaged in "abusive discovery practices" and "accus[ed] Carver's counsel and in-house general counsel of imagined dishonesty or destruction of evidence"); *id.* at 6-7 (listing eight instances of Claimants' purported abuse of the discovery process); *id.* at 8 (claiming that Court supervision of the remaining discovery is necessary "to prevent Belt Line from baselessly accusing Carver of discovery noncompliance"); *id.* at 10 (stating "[t]his is not the first time the Belt Line has misrepresented Carver's discovery production" and "[t]he Belt Line has taken this 'shoot first, aim later' approach at accusing Carver of discovery violations in an effort to paper a record of Carver's supposed noncompliance with discovery."); *id.* at 11 (arguing that "Claimants Are Not Acting in Good Faith"). There are many more throughout the memorandum.

---

[1] Curiously, in its Motion Carver numbers its requests for an award of costs as "(4) & (5)." *Id.* However, in its Brief in Support, Carver utilizes the numbers "(4) & (5)" to ask the Court to stay or deny Claimants' motions to compel and to dismiss, ECF Nos. 67, 69. ECF No. 72 at 1, 18. Then, in its Reply brief, Carver utilizes the numbers "(4) & (5)" to request Claimant's motions to compel and to dismiss as a sanction be denied, and utilizes the number "(6)" to request its attorneys' fees and costs. ECF No. 77 at 13.

In their response in opposition, Claimants hoist their own armaments and fire back at Carver. *See, e.g.*, ECF No. 73 at 2 (referencing "Carver's obstructive tactics in depositions" and claiming Carver's "obstruction began with its hit-and-run departure from the scene . . . continued with Carver's refusal [to allow inspection of the tug] . . . pervaded every deposition . . . and persists to this day . . ." and alleging "[t]hese are not normal discovery obstructions."). This is just one example on one page of Claimants' brief.

Not to be outdone, Carver utilized its Reply brief to scatter whatever ashes were left from the preceding conflagration. *See* ECF No. 77, *passim*.

Having fully considered the allegations and arguments, Carver's Motion must be denied. None of the relief sought is properly the subject of a protective order. Carver's first two requests for relief are already baked into the Federal Rules of Civil Procedure, the Eastern District of Virginia's Local Civil Rules, counsel's ethical and professional obligations as a member of the Bar, and ordinary good manners. These rules and obligations already (1) prohibit attorneys from engaging in abusive discovery practices and require them to negotiate discovery disputes in good faith; and (2) prevent the discovery of information protected from disclosure by the attorney-client privilege and work product immunity. All counsel are reminded that, pursuant to Eastern District of Virginia Local Civil Rule 83.1(J), "[t]he ethical standards relating to the practice of law in civil cases in this Court shall be Section II of Part Six of the Rules of the Virginia Supreme Court . . ." Those Rules incorporate the Virginia Rules of Professional Conduct, including Rule 3.1 (instructing lawyers on meritorious claims and contentions and directing lawyers to only assert issues or claims for which there is a non-frivolous basis), and Rule 3.4 (instructing lawyers on fairness to the opposing party, and directing lawyers not to make frivolous discovery requests, and to make reasonably diligent effort to comply with legally proper discovery). Since counsel are

3

already obligated to adhere to these requirements, repeating them in a protective order is redundant, and unnecessary. With respect to the parties' dispute regarding the proposed depositions of Mr. Malik and Mr. Galioto, Carver has apparently agreed to produce these witnesses for deposition, but seeks an order specifically preventing Claimants from eliciting information protected from disclosure by the attorney-client privilege and work product immunity. The Court cannot and will not anticipate precisely what questions might be asked that would infringe on one of these privileges, and thereby issue an order with any kind of specificity ahead of the deposition.

As for Carver's third request—that the Court engage in direct supervision of remaining discovery, including, apparently, its attendance either in-person or on standby at all upcoming depositions—is wholly unreasonable, impractical and unacceptable. This Court has neither the time nor the inclination to chaperone attorneys to ensure that they follow the Federal Rules of Civil Procedure and fulfill their ethical and professional obligations in how the conduct themselves. To expect the Court to monitor their behavior necessarily absolves them of their own responsibility to do so. This the Court will not do. Certainly, the Court will not referee the depositions to ensure that the attorneys do not cross the line. It is the obligation of the attorneys themselves to ask proper questions and assert only proper objections, being ever mindful of their obligations under the Virginia Rules of Professional Conduct.[2]

---

[2] The parties are advised that if a legitimate, good faith dispute arises during a deposition, the Court may be available via telephone to resolve such a dispute. However, counsel should be extraordinarily mindful before involving the Court with such disputes. If the parties contact the Court for resolution of an issue during a deposition, the Court fully expects the parties to have already engaged in a civil, well-founded discussion based on a good faith interpretation of the Federal Rules of Civil Procedure and the Virginia Rules of Professional Conduct. Anything less is unacceptable.

In Carver's fourth request, it asks for its attorneys' fees and costs. Having denied Carver's Motion, the Court finds that Carver is not entitled to this relief.[3]

Finally, Carver seeks the denial or stay of two of Claimants' motions–the Motion to Compel Inspection of the M/T Mackenzie Rose, ECF No. 67, and the Motion for Dismissal, ECF No. 69. The former Motion has already been ruled on. *See* ECF No. 82. The latter Motion will rest with the District Judge. Accordingly, this relief is not available by means of the Motion for Protective Order.

Litigation is serious business. It can be difficult, time-consuming, expensive and demanding. The best attorneys honor their professional obligations without succumbing to petty disputes and engaging in discovery warfare. The client is ill-served when its lawyer loses sight of his or her obligation to exercise sound and objective judgment, and engages in unnecessary and counter-productive disputes. Avoiding such behavior frees the lawyer to represent their client's best interests while at the same time supporting and upholding the principles of professionalism and the rule of law. The Court expects nothing less here.

Carver's Motion for a Protective Order, ECF No. 71, is **DENIED**.

The Clerk is **DIRECTED** to forward this Order to counsel for Claimants and to Carver.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

**Norfolk, Virginia**
**August 13, 2025**

---

[3] The Court is also not inclined to award fees and costs to Claimants, either. The circumstances presented in this motion would make an award of expenses unjust for either party. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii).