**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC d/b/a CARVER MARINE TOWING, as Owner and Operator of the *M/T Mackenzie Rose*, (IMO No. 8968765), *et al.* | Civil Action No. 2:24-cv-00490-MSD LRL |

**PETITIONER'S BRIEF IN SUPPORT OF *DAUBERT* MOTION TO EXCLUDE
TESTIMONY AND OPINIONS OF ROBERT FURBOROUGH**

Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), for its Brief in Support of Its Motion to Exclude Testimony and Opinions of Robert Furbourgh ("Mr. Furborough"), states as follows:

**I.      Mr. Furborough's Credentials and Opinions.**

Mr. Furborough is a marine equipment technician retained by Claimant Norfolk and Portsmouth Belt Line Railroad Company as a purported expert to "consider the condition and use of the autopilot system installed on the Tug Mackenzie Rose." **Exhibit 1,** Report p. 1.

As to the "use of the autopilot," Mr. Furborough intends to opine that "[a]utopilot systems are useful when transiting open waters but are not to be used when navigating narrow waters, which include areas with obstructions or dangers to navigation such as bridges." *Id.* p. 2.  This is the same opinion offered by Claimants' marine industry expert, Captain Nicholas J. Lewis. See ECF 92-93.  Mr. Furborough relies upon Carver's Tug Safety Management System ("TSMS") and the manufacturer's manual for the SIMRAD AP-70 autopilot system as support for his autopilot use proposition.  These documents, according to Mr. Furborough, restrict the use of autopilot in "narrow waters" and around infrastructure like bridges.

Mr. Furborough concedes he has **zero** experience as a licensed mariner or vessel operator that may qualify him to opine on when and how autopilot should be used on navigable waters:

> Q. Okay. So what I'm trying to determine. Do – do you have a Coast Guard license, a mariner's license?
> **A. No.**
> Q. Have you ever had a mariner's license?
> **A. No.**
> Q. So when you were on board – and I understand what you're doing the – as a technician on board and you're riding the vessel, right?
> **A. Correct.**
> Q. You weren't in charge of the navigation of the vessel, correct?
> **A. No. There was a – it's a Coast Guard registered captain on board.**
> Q. Okay. And is it fair to say you're there to monitor the newly installed autopilot while it's operating. Is that fair to say?
> **A. That – that's correct. Yes. It's post-calibration, make sure it operates well. I also do the same after I've repaired an autopilot.**
> Q. Okay. Now have you have any training in navigation?
> **A. Not specifically, apart from what is self-taught.**
> Q. Do you have a boat yourself?
> **A. I've had a boat myself. I no longer have one.**
> Q. What kind of boat?
> **A. It was a 32-foot sailboat.**
> Q. A sailboat. Okay.
> **A. Yeah. And prior to that, it was a 20-foot power boat.**
> Q. Okay. So you've had no formal training, then, in navigation, correct?
> **A. No.**
> Q. And you had no formal training in the use of autopilot as a navigator, as a captain?
> [Objection]
> **A. No. I don't – I don't find navigating using electronic systems difficult.**
> Q. Okay. But that's not the question. I'm trying – I'm trying to determine your – your credentials and –
> **A. No. I have – I have no formal training or qualifications in navigation.**
> Q. Okay. And are you familiar with provisions of the Code of Federal Regulations regarding autopilot, other than what you learned through your lawyers in the case?
> **A. No. It's not something I necessarily would need to loop up. I'm not a captain of a boat.**
> Q. And it's – so it's fair to say you've never captained a boat in inland waters using autopilot. Is that fair to say?
> **A. Only when training, calibrating a boat and training the owner.**
> Q. Okay. But you weren't captain in regards to –
> **A. No. I – I'm never in total control of the boat. I always – I always have captain or the owner of the boat with me.**

**Ex. 2**, Tr. 23:13-26:3.  Indeed, Mr. Furborough's understanding is he was <u>not</u> retained as expert to opine on the "Inland Rules of the Road," Carver's TSMS policies, or what constitutes "narrow waters." *Id.*, Tr. 56:23-57:13.

Mr. Furborough's second set of opinions on the condition of the autopilot include that "reports of problems with the autopilot in May 2024 raise the type of concerns that would need to be promptly investigation and repaired" but there "is no indication that Carver engaged anyone to inspect the system and correct the reported failures." **Ex. 1** at 2. Like Claimants' mariner expert, Capt. Lewis, Mr. Furborough stops short of saying any autopilot failure caused the allision on June 15, 2024.  Mr. Furborough simply says "[u]nder the circumstances, Carver should have prohibited the use of the autopilot until that work could be completed." *Id.*

Mr. Furborough bases these opinions on testimony of Carver's employees and review of the SIMRAD AP 70 Operations Manual, photographs of the tug, and Rose Point data from the voyage on June 15, 2024. **Ex. 2**, Tr. 27:22-28:5. Mr. Furborough never inspected the *M/T Mackenzie Rose* or its autopilot system. Nor has Mr. Furborough ever installed or repaired a SIMRAD AP 70 autopilot system. *Id.* 36:14-37:8.  Mr. Furborough, however, ultimately concedes that he is not offering any opinion that the autopilot malfunctioned on the date of the allision:

> Q. Yes. But I – I saw that, but I want to know, are – have you made any conclusions that the autopilot itself, electronically or manually, failed on the date of the incident?
> **A. I can't tell you that. I wasn't on the boat. I'm only going based on the reports from the crew.**

*Id.*, Tr. 51:22-52:3.  However, Belt Line's counsel did not provide Mate Morrissey's amended statement to the Coast Guard in which Mate Morrissey conceded to his navigation error. *Id.*, Tr. 52:7-11.  Mr. Furborough learned of the revised CG-2692 just prior to the deposition, from counsel.

3

*Id.*, Tr. 64:5-65:8. Upon review of Mate Morrissey's corrected statement, Mr. Furborough agreed that no evidence indicated an autopilot malfunction on the date of the allision. *Id.*, Tr. 66-67.

**II.     Legal Standard.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007). Under the Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Stated otherwise, expert testimony is admissible "if it concerns (1) scientific, technical, or other specialized knowledge that will (2) aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislavad Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999). The first prong requires the court to examine "whether the reasoning or methodology underlying the expert's proffered opinion is reliable" and the second prong asks the court to analyze "whether the opinion is relevant to the facts at issue." *Id.*; see also *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ("[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."). "The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

### III. Argument

**A. Mr. Furborough is not qualified to opine on "use of the autopilot" or other navigational issues and his opinions are unreliable.**

Under Rule 702, a court "will not accept expert opinion merely because the witness purports to be an expert." *Anderson v. National R.R. Passenger Corp*, 866 F.Supp. 937, 943 (E.D. Va. 1994) ("First, the witness must have some 'specialized knowledge,' and the word 'knowledge' in Rule 702 'connotes more than subjective belief or unsupported speculation.' Second, the expert's background must show qualification sufficient to permit expression of an opinion that is borne of specialized knowledge or expertise which allows the expert to give opinion evidence in the first instance").

Mr. Furborough is admittedly unqualified to opine on the Inland Rules of the Road, when it is appropriate to use autopilot, and any other aspect of this case that bears on navigational issues. Mr. Furborough has no experience as a licensed mariner or vessel captain and has never navigated the Elizabeth River on a vessel like the *Mackenzie Rose*. As Mr. Furborough conceded, he is never alone aboard a vessel without a qualified captain or owner of the vessel. Though Mr. Furborough may have some experience installing and fixing equipment on vessels, this does not mean he is qualified to opine, as an expert, on navigational issues. See *Anderson*, 866 F.Supp. at 948 (finding experts were "eminently qualified in a number of railroad related areas, but their qualifications reflect a notable, and fatally defective, absence of experience, training or base of knowledge on the role and operations of railroad dispatch systems. Hence, they fail to satisfy the threshold requirement of expertise under [Rule 702]." Mr. Furborough should thus be barred from opining about any type of "autopilot use" or other navigational issue.

5

**B. Mr. Furborough's "autopilot condition" opinions are speculative, unreliable, and irrelevant.**

Mr. Furborough's opinion that the *M/V Mackenzie Rose* should not have sailed until after a technician reviewed the May 2024 "hard over event" is ultimately irrelevant to this case. Like Capt. Lewis, Mr. Furborough does not actually opine that any malfunction or existing purported defect on the autopilot system caused or contributed to the allision. They are therefore irrelevant and unhelpful and thus inadmissible under the second prong of *Daubert*.

Moreover, Mr. Furborough's opinions about fixing a nonexistent defect in the autopilot system is entirely unfounded and speculative. To start, Mr. Furborough was never given Mate Morrissey's amended statement to the Coast Guard in which he admitted to his navigational error in switching over from autopilot to manual steering. Mr. Furborough's opinion was thus based on a selective set of documents to sway his opinion to an "autopilot malfunction" theory of liability which is not connected to the actual record evidence in the case. *EEOC v. Freeman*, 778 F.3d 463, 469-70 (4th Cir. 2015) ("Courts have consistently excluded expert testimony that 'cherry-picks' relevant data'" because "'cherry-picking' data is essentially the converse of omitting it: just as omitting data might distort the result by overlooking unfavorable data, cherry-picking data produces a misleadingly favorable result by looking only to 'good' outcomes"); see also *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) ("expert testimony that relies on completely unsubstantiated factual assertions is inadmissible") Ultimately, Mr. Furborough's supposed expert opinions on this issue are just a repetition of the arguments Belt Line made in filings with this Court that have no foundation in the record and speak to issues that are irrelevant to causation of the allision. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) ("Ultimately, the expert must bring to the jury more than the lawyers can offer in argument") (internal quotations

6

and citations omitted). Mr. Furborough's opinions are thus speculative, unfounded, irrelevant and unreliable and should be excluded from evidence in this case.

### IV.  Conclusion.

Mr. Furborough is admittedly unqualified to render opinions on navigation issues that include whether and when Carver should have used autopilot on the Elizabeth River. His only other opinions on the "condition" of the autopilot do not bear on any real issues to be tried and are based on Belt Line's counsel's selection of records that is unsupported by the actual record in this case. Those opinions are therefore speculative, irrelevant and unreliable. Mr. Furborough should therefore be barred from testifying in this case under *Daubert* and Rule 702.

WHEREFORE, Petitioner Coeymans Marine Towing, LLC respectfully requests that the Court grant its Motion to Exclude Testimony and Opinions of Robert Furborough and enter an Order barring Claimants from eliciting or offering Robert Furborough's testimony and opinions into evidence at any stage of this litigation, and for all other relief in favor of Petitioner as the Court deems just and proper.

Respectfully submitted,

Dated: September 3, 2025                    **CLYDE & CO US LLP**

By: /s/ Harold L. Cohen
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771

7

Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
dawn.johnson@clydeco.us
Siobhan.murphy@clydeco.us

Rachel Werner*
One North Central Avenue, Suite 1030
Pheonix, Arizona 85004
Phone: 480-746-4556
Email: rachel.werner@clydeco.us
*pro hac vice

8

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

*/s/ Harold L. Cohen*