# Exhibit 22

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al.* | **Civil Action No. 2:24-cv-00490-MSD-LRL** |

**RESPONSES OF NORFOLK AND PORTSMOUTH BELT LINE**
**RAILROAD COMPANY TO PETITIONER'S**
**FIRST REQUESTS FOR ADMISSION**

Claimant/Respondent Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, for its Responses to the First Requests for Admission propounded by Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing, Inc. ("Carver"), states as follows:

**Privilege and Materiality Objections**

In setting forth these responses and objections, the Belt Line does not waive the attorney-client, work product, trial preparation, or any other privilege or immunity from disclosure which may attach to information called for or responsive to Carver's requests. These responses and any objections are submitted by the Belt Line subject to, and without in any way waiving or intending to waive, but to the contrary, intending to reserve and reserving:

(a)      All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any of the documents referred to or responses given, or the subject matter thereof, in the trial of this action or in any other action or proceeding;

(b)      The right to object to other discovery procedures involving or relating to the subject matters of Carver's requests; and

1

(c)     The right at any time to revise, correct, supplement or clarify any of these objections and any future responses.

<u>RESPONSES TO FIRST REQUESTS FOR ADMISSION</u>

1.     Admit that the Railroad Bridge was constructed in 1958.

<u>RESPONSE</u>: **Admitted.**

2.     Admit that Evanston's expert, Zane Sadik, concludes the Railroad Bridge had no more than 100 years of useful service life at the time of its construction.

**<u>OBJECTION</u>: The Belt Line objects to this request on grounds that Mr. Sadik and his report speak for themselves. The Belt Line also objects to this request on the grounds that it does not seek admission of facts, the application of law to fact, or opinions about either, as required by Rule 36(a)(1)(A), or the genuineness of a document as required by Rule 36(a)(1)(b).**

**<u>RESPONSE</u>: Subject to and without waiving any objection, the Belt Line denies this request.**

3.     Admit that Evanston's expert, Zane Sadik, concluded that the Railroad Bridge had "roughly 34 years of expected useful life remaining or 34% at the low end" as of the date of the allision.

**<u>OBJECTION</u>: The Belt Line objects to this request on grounds that Mr. Sadik and his report speak for themselves. The Belt Line objects to this request on the grounds that it does not seek admission of facts, the application of law to fact, or opinions about either, as**

required by Rule 36(a)(1)(A), or the genuineness of a document as required by Rule 36(a)(1)(b).

RESPONSE: Subject to and without waiving any objection, the Belt Line denies this request.

4.    Admit that prior to the Allision, the bracing on span 1 of the Railroad Bridge had one bent bottom lateral brace in panel 4, as reflected in NPBL002183.

OBJECTION: The Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

RESPONSE: Subject to and without waiving any objection, the Belt Line admits only that the document labeled NPBL002183 identifies a bottom lateral brace in panel 4 of Span 1 but does not recommend any work associated with it. Except as so admitted, this Request is denied.

5.    Admit that prior to the Allision, the bent knee brace angle in panel 4 on the west side needed to be replaced, as reflected in NPBL002184.

**OBJECTION:** The Belt Line objects to this request to the extent that the information as phrased is not reflected in NPBL002184, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line denies this Request.

6.    Admit that prior to the Allision, the vertical member in panel 3 of the east truss needed to be repaired or replaced, as reflected in NPBL002184.

**OBJECTION:** See objection to Request No. 5.

**RESPONSE:** Subject to and without waiving any objection, the Belt Line denies Request No. 6 as the language in the Request does not appear on NPBL002184.

7.    Admit that prior to the Allision, the floorbeam at panel point 4 needed to be reinforced or replaced due to deterioration and corrosion, as reflected in NPBL002184.

**OBJECTION:** See objection to Request No. 5.

**RESPONSE**: Subject to and without waiving any objection, the Belt Line denies Request No. 7 as the language in the Request does not appear on NPBL002184.

8.      Admit that prior to the Allision, the 10" motor brake installed on the Railroad Bridge was undersized and set beyond its rated torque, as reflected in NPBL006814–15.

**OBJECTION:** The Belt Line objects to this request on grounds that NPBL006814-15 speak for themselves. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line admits only that the motor brake is identified as undersized and adjusted beyond its rated torque in a draft of a report dated after the Allision. Except as so admitted, this Request is denied.

9.      Admit that prior to the Allision, the counterweight ropes on the Railroad Bridge exhibited inadequate lubrication, surface corrosion, and abrasive crown wear, as reflected in NPBL006815.

**OBJECTION:**  The Belt Line objects to the request to the extent that the information as phrased is not reflected in NPBL006815, which speaks for itself. The Belt Line also objects

5

to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line denies Request No. 9 as the language in the Request does not appear on NPBL006815.

10.      Admit that prior to the Allision, the west counterweight was skewed due to uneven rope stretch between sheaves, as reflected in NPBL006814.

**OBJECTION:** The Belt Line objects to this request to the extent that the information as phrased is not reflected in NPBL6814, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line denies Request No. 10 as the language in the Request does not appear on NPBL006814.

11.    Admit that prior to the Allision, the trunnion shafts had considerable scoring and poor lubrication, with the west auto-lubrication system possibly nonfunctional, as reflected in NPBL006815.

**OBJECTION:** See objection to Request No. 9.

**RESPONSE:** Subject to and without waiving any objection, the Belt Line denies Request No. 11 as the language in the Request does not appear on NPBL006815.

12.    Admit that prior to the Allision, the counterweight sheave grooves were too worn to accommodate new standard wire ropes, with insufficient material to machine the grooves, as reflected in NPBL006816.

**OBJECTION:** The Belt Line objects to the request to the extent it mischaracterizes the information in NPBL006816, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

7

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line admits only that wearing of the counterweight sheave grooves is identified in a draft of a report dated after the Allision. Except as so admitted, this Request is denied.**

13.     Admit that prior to the Allision, the machinery brake used asbestos pads and had poor contact, as reflected in NPBL006816.

**OBJECTION:** **See objection to Request No. 12.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies Request No. 13 as the language in the Request does not appear on NPBL006816.**

14.     Admit that prior to the Allision, access to the machinery required climbing ladders approximately 196 feet up and 60 feet down with inadequate safety measures, as reflected in NPBL006816.

**OBJECTION:** **The Belt Line objects to this request on grounds that the request seeks information irrelevant to the claims and defenses asserted by the parties. The Belt Line also objects on grounds that the request seeks a legal conclusion.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies Request No. 14 as the language in the Request does not appear on NPBL006816.**

15.     Admit that prior to the Allision, Floorbeam 0 web had section loss with pin holes below the stringer 1 connection angle, as reflected in NPBL002183.

**OBJECTION:** **The Belt Line objects to this request to the extent it mischaracterized the information in NPBL002183, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses**

asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

<u>RESPONSE</u>: Subject to and without waiving any objection, the Belt Line admits only that the document labeled NPBL002183 identifies a stringer 1 connection angle at Floor-beam 0 but does not recommend any work associated with it. Except as so admitted, this Request is denied.

16.    Admit that prior to the Allision, the span was unbalanced due to lack of auxiliary counterweights or balance chains, increasing operating rope loads, as reflected in NPBL006814.

<u>OBJECTION:</u> The Belt Line objects to this request to the extent that it mischaracterized the information in NPBL006814, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line admits only that auxiliary counterweight or balance chains are identified in a draft of a report dated after the Allision. Except as so admitted, this Request is denied.

17.    Admit that prior to the Allision, the span lacked a buffer or hard stop to prevent overtravel in the event of brake failure, as reflected in NPBL006814.

**OBJECTION:** See objection to Request No. 16.

**RESPONSE:** Subject to and without waiving any objection, the Belt Line admits only that a buffer to prevent over traveling is identified in a draft of a report dated after the Allision. Except as so admitted, this Request is denied.

18.    Admit that prior to the Allision, there was a fatigue concern at the fillets of the counterweight trunnion shafts, warranting ultrasonic testing, as reflected in NPBL006815.

**OBJECTION:** The Belt Line objects to the request to the extent it mischaracterizes the information in NPBL006815, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

10

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies
Request No. 18 as the language in the Request does not appear on NPBL006815.**

19.    Admit that prior to the Allision, the top flange of stringer 1 in panel 4 had section
loss on the west side, as reflected in NPBL002183.

**OBJECTION: The Belt Line objects to this request to the extent that it
mischaracterized the information in NPBL002183, which speaks for itself. The Belt Line also
objects to this request on grounds that this request seeks information that is irrelevant to the
claims and defenses asserted by the parties. This request appears to be premised on an
inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P.
26. The damages suffered as a result of the allision cannot be reduced for any claimed
depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value
nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-
Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201
F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE: Subject to and without waiving any objection, the Belt Line admits only
that the document labeled NPBL002183 identifies the top flange of stringer 1 in panel 4 but
does not recommend any work associated with it. Except as so admitted, this Request is
denied.**

20.    Admit that prior to the Allision, the knee brace angle on the west side of panel 4
was bent, as reflected in NPBL002183.

**OBJECTION: The Belt Line objects to the request to the extent that the information
as phrased is not reflected in NPBL002183, which speaks for itself. This request appears to**

11

be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line admits only that the document labeled as NPBL002183 identifies a bottom lateral brace in panel 4 of Span 1 but does not recommend any work associated with it. Except so admitted, this Request is denied.**

21.    Admit that prior to the Allision, the vertical member in panel 3 of the east truss had section loss and pack rust, as reflected in NPBL002183.

**OBJECTION:** **See objection to Request No. 20.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line admits only that the document labeled NPBL002183 identifies a truss with pack rust but does not recommend any work associated with it. Except so admitted, this Request is denied.**

22.    Admit that prior to the Allision, the floorbeam at panel point 4 was heavily rusted and had a deteriorated web connection to the stringer on the west side, as reflected in NPBL002183.

**OBJECTION:** **See objection to Request No. 20.**

**RESPONSE: Subject to and without waiving any objection, the Belt Line admits only that the document labeled NPBL002183 identifies a floorbeam with localized corrosion but does not recommend any work associated with it. Except so admitted, this Request is denied.**

23.    Admit that prior to the Allision, the bent bottom lateral brace in panel 4 needed to be replaced, as reflected in NPBL002184.

**OBJECTION: The Belt Line objects to this request to the extent that the information as phrased is not reflected in NPBL002184, which speaks for itself. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. _See Or. by State Highway Comm'r v. Tug Go-Getter_, 468 F.2d 1270, 1274 (9th Cir. 1972); _J.W. Paxson Co. v. Bd. of Chosen Freeholders_, 201 F. 656, 664 (3rd Cir. 1912); _Petition of M/V Elaine Jones_, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

24.    Admit that prior to the Allision, Floorbeam 0 web needed to be reinforced due to section loss and pin holes, as reflected in NPBL002184.

**OBJECTION: See objection to Request No. 23.**

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

13

25.    Admit that prior to the Allision, the top flange section of stringer 1 in panel 4 on the west side needed to be replaced, as reflected in NPBL002184.

**OBJECTION:** **See objection to Request No. 23.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request.**

26.    Admit that the Belt Line planned to re-deck and re-rail Spans 1, 2, 3, and 4 of the Railroad Bridge in 2027.

**OBJECTION:** **The Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure.** *See Or. by State Highway Comm'r v. Tug Go-Getter***, 468 F.2d 1270, 1274 (9th Cir. 1972);** *J.W. Paxson Co. v. Bd. of Chosen Freeholders***, 201 F. 656, 664 (3rd Cir. 1912);** *Petition of M/V Elaine Jones***, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request.**

27.    Admit that Belt Line is a subsidiary of Norfolk Southern Corporation, as stated by Leah M. Fletcher to Howard Swanson in email correspondence dated June 13, 2024.

**OBJECTION**: The Belt Line objects to this request on grounds that the request seeks information that is irrelevant to the claims and defenses asserted by the parties.

**RESPONSE**: See objection.

28.    Admit that a complete rail and tie replacement was performed on Spans 1 – 4 of the Railroad Bridge after the allision.

**RESPONSE**: The Belt Line admits that a rail and tie replacement was performed on Spans 1-4 of the Railroad Bridge as a result of the Allision.

29.    Admit that costs for repairs to the Railroad Bridge increased because Belt Line authorized its contractors to work day and night shifts.

**RESPONSE**: Denied.

30.    Admit that there was no conduit for electrical wiring under the Railroad Bridge prior to the allision.

**RESPONSE**: Admitted.

31.    Admit that the invoice labeled NPBL00596 includes costs for replacing rails and ties that were not damaged in the allision.

**OBJECTION**: The Belt Line objects on grounds that NPBL000596 speaks for itself. The Belt Line further objects on grounds that this request seeks information that is irrelevant to the claims and defenses asserted by the parties as NPBL000596 is a drawing from 2013 and is not related to the allision repairs.

**RESPONSE**: Subject to and without waiving any objection, the Belt Line denies this Request, as all costs of the rail and tie replacement resulted from the Allision.

15

32.    Admit that the invoice labeled NPBL002544-45 includes costs for ties that were not damaged in the allision.

**OBJECTION:** **The Belt Line objects to this request to the extent that the information as phrased is not reflected in NPBL002544-45, which speaks for itself.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request, as all costs of the rail and tie replacement resulted from the Allision.**

33.    Admit that ASTM A572 Grade 50 steel was used to replace the steel members of the Railroad Bridge that were damaged in the allision.

**RESPONSE:** **Admitted.**

34.    Admit that ASTM A572 Grade 50 steel is a higher grade of steel than the steel used to originally construct the Belt Line's Railroad Bridge.

**OBJECTION:** **The Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure.** *See Or. by State Highway Comm'r v. Tug Go-Getter***, 468 F.2d 1270, 1274 (9th Cir. 1972);** *J.W. Paxson Co. v. Bd. of Chosen Freeholders***, 201 F. 656, 664 (3rd Cir. 1912);** *Petition of M/V Elaine Jones***, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE: Subject to and without waiving any objection, upon information and belief, the Belt Line admits that ASTM A572 Grade 50 steel is a higher grade of steel than the steel used to originally construct the Railroad Bridge. Witness testimony indicates that the use of ASTM A572 Grade 50 steel was both less expensive and more readily available than the original grade steel, which would have had to be custom ordered. Except as so admitted, this Request is denied.**

35.     Admit that ASTM A572 Grade 50 steel has a longer useful life expectancy than the steel used to originally construct the Belt Line's Railroad Bridge.

**OBJECTION: The Belt Line objects to this request on grounds that the request seeks an expert opinion. The Belt Line also objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26.  The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE: Subject to and without waiving any objection, the Belt Line lacks information sufficient to admit or deny this request and therefore denies it. See also Response to Request No. 34.**

17

36.    Admit that there was no structural damage to span 5 of the Railroad Bridge as a result of the allision.

**RESPONSE: Subject to and without waiving any objection, the Belt Line admits that span 5 was not structurally damaged but that the power cables that run the length of the Railroad Bridge through span 5 were damaged in the Allision. Except as so admitted, this Request is denied.**

37.    Admit that the Belt Line or Norfolk Southern Corporation would have compensated the Train and Engine employees listed in NPBL 008036 for 40 hours of work at their straight time rate in each workweek from June 22, 2024 through February 28, 2025 regardless of whether the allision occurred.

**OBJECTION: The Belt Line objects to this request on grounds that the request seeks information irrelevant to the claims and defenses asserted by the parties.**

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

38.    Admit that Belt Line would have compensated the Train and Engine employees listed in NPBL 008036 for 40 hours of work at their respective straight time rate in each workweek from June 22, 2024 through February 28, 2025 regardless of whether the allision occurred.

**OBJECTION: See objection to Request No. 37.**

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

18

39.    Admit that Belt Line would have compensated the Train and Engine employees listed in NPBL 008036 for 40 hours of work at their respective straight time rate in each workweek from June 22, 2024 through February 28, 2025 regardless of whether the allision occurred.

**OBJECTION:** **See objection to Request No. 37.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request.**

40.    Admit that Belt Line would have compensated the Yardmaster employees listed in NPBL 008036 for 40 hours of work at their respective straight time rate in each workweek from June 24, 2024 through February 28, 2025 regardless of whether the allision occurred.

**OBJECTION:** **See objection to Request No. 37.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request.**

41.    Admit that Belt Line would not have been charged $717,550.33 for travel expenses and per diem reflected on NPBL006557 had it retained a contractor located within the Hampton Roads, Virginia area instead of PCL Civil Contractors, Inc.

**OBJECTION:** **The Belt Line objects on grounds that this request calls for speculation and assumes facts not in evidence.**

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line denies this Request.**

19

42.    Admit that it is standard within the railroad industry to engage a competitive bidding process emergency repair projects on transportation infrastructure.

**OBJECTION: The Belt Line objects to the request on grounds that "standard within the railroad industry" is undefined and vague. The Belt Line also objects to the extent the request calls for a legal conclusion.**

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

43.    Admit that the gusset plates installed after the Allision at certain nodes of Span 1 of the Railroad Bridge were fabricated with higher yield strength or greater thickness than the gusset plates removed.

**OBJECTION: The Belt Line objects to this request on grounds that the phrases "certain nodes of Span 1" and "fabricated with higher yield strength or greater thickness" are undefined and vague. Further, the Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).**

**RESPONSE: Subject to and without waiving any objection, upon information and belief, the Belt Line admits that the gusset plates installed after the Allision were fabricated with greater thickness but denies any implication that use of the gusset plates was improper. Except as so admitted, this Request is denied.**

44.    Admit that the gusset plates installed after the Allision at certain nodes of Span 2 of the Railroad Bridge U2 of Span 2 of the Railroad Bridge were of higher yield strength or greater thickness than the gusset plates removed.

**OBJECTION: See objection to Request No. 43.**

**RESPONSE: Subject to and without waiving any objection, upon information and belief, the Belt Line admits that the gusset plates installed after the Allision were fabricated with greater thickness but denies any implication that use of the gusset plates was improper. Except as so admitted, this Request is denied.**

45.    Admit that the gusset plate upgrades installed after the Allision at nodes U1, U2, L2, and L3 on the Railroad Bridge improved stress capacity at those nodal junctions.

**OBJECTION: The Belt Line objects to this request on grounds that the terms "upgrades installed," "stress capacity," and "nodal junctions" are undefined and vague. The Belt Line also objects to the extent that this request calls for an expert opinion. Further, the Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value**

21

nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line lacks information sufficient to admit or deny this Request and therefore denies it.**

46.    Admit that reducing stress concentrations at nodal junctions improves fatigue resistance in truss bridges.

**OBJECTION:** **The Belt Line objects to this request on grounds that the terms "stress concentrations," "nodal junctions," and "fatigue resistance" are undefined and vague. The Belt Line also objects to the extent that this request calls for an expert opinion. Further, the Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" defense and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure.** *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** **Subject to and without waiving any objection, the Belt Line lacks information sufficient to admit or deny this Request and therefore denies it.**

47.    Admit that improving fatigue resistance in gusset connections can increase the service life of the span in which the gusset is installed.

22

**OBJECTION:** The Belt Line objects to this request on grounds that the terms "gusset connections" and "fatigue resistance" are undefined and vague. The Belt Line also objects to the extent that this request calls for speculation and/or expert opinion. Further, the Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" damage theory and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE:** Subject to and without waiving any objection, the Belt Line lacks information sufficient to admit or deny this Request and therefore denies it.

48.    Admit that, as a result of the installation of overbuilt gusset plates at nodes U1, U2, L2, and L3 after the Allision, the estimated service life of the Railroad Bridge has been measurably extended beyond the original design life.

**OBJECTION:** The Belt Line objects to this request on grounds that the terms "gusset plates," "measurably extended," and "original design life" are undefined and vague. The Belt Line also objects to the extent that this request calls for speculation and/or expert opinion. Further, the Belt Line objects to this request on grounds that it seeks information that is irrelevant to the claims and defenses asserted by the parties. This request appears to be premised on an inapplicable "new for old" damage theory and is therefore outside the scope of Fed. R. Civ. P. 26. The damages suffered as a result of the allision cannot be reduced

for any claimed depreciation or betterment as the repairs to the Main Line Bridge neither enhanced the value nor extended the service life of the structure. *See Or. by State Highway Comm'r v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972); *J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3rd Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

**RESPONSE: Subject to and without waiving any objection, the Belt Line denies this Request.**

49.     Admit that span 6 of the Railroad Bridge was not damaged as a result of the Allision.

**RESPONSE: Subject to and without waiving any objection, the Belt Line admits that span 6 was not structurally damaged but that the power cables which run the length of the Railroad Bridge through Span 6 were damaged in the Allision.**

50.     Admit that span 7 of the Railroad Bridge was not damaged as a result of the Allision.

**RESPONSE: Subject to and without waiving any objection, the Belt Line admits that span 7 was not structurally damaged but that the power cables which run the length of the Railroad Bridge through span 7 were damaged in the Allision.**

51.     Admit that span 8 of the Railroad Bridge was not damaged as a result of the Allision.

**RESPONSE**: Subject to and without waiving any objection, the Belt Line admits that span 8 was not structurally damaged but that the power cables which run the length of the Railroad Bridge through span 8 were damaged in the Allision.

Dated: August 15, 2025                    **NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

                                          */s/ Mackenzie R. Pensyl*
                                          James L. Chapman, IV, VSB No. 21983
                                          W. Ryan Snow, VSB No. 47423
                                          Mackenzie R. Pensyl, VSB No. 1000
                                          CRENSHAW, WARE & MARTIN, P.L.C.
                                          150 W. Main Street, Suite 1500
                                          Norfolk, Virginia 23510
                                          Telephone: (757) 623-3000
                                          Facsimile: (757) 623-5735
                                          Email: jchapman@cwm-law.com
                                          Email: wrsnow@cwm-law.com
                                          Email: mpensyl@cwm-law.com
                                          *Counsel for Defendant Norfolk Portsmouth Belt Line Railroad Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of August, 2025 a true and correct copy of the foregoing  was served on parties via CM/ECF electronic filing system upon the following:

James H. Rodgers, Esq. *(pro hac vice)*
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
(212) 702-6771
(212) 710-3950
*James.Rodgers@clydeco.us*

Harold L. Cohen. Esq.
CLYDE & CO US LLP
1221 Brickell Ave #1600
Miami, Florida 33131
(202) 747-5108
(202) 747-5150
*Harry.Cohen@clydeco.us*

Rachel Werner, Esq. *(pro hac vice)*
CLYDE & CO US LLP
One N. Central Avenue, Ste 1030
Pheonix, Arizona 85004
(480) 746-4580
(480) 746-4569 Direct
(480) 746-4556 Fax
*Rachel.werner@clydeco.us*

Michael Roman, Esq.
Dawn Johnson, Esq.
Siobhan Murphy, Esq.
CLYDE & CO US LLP
30 S. Wacker Drive, Ste 2600
Chicago, IL 60606
Tel No.: (312) 635-6971
Fax No.: (312)635-6950
*Michael.Roman@clydeco.us*
*Dawn.Johnson@clydeco.us*
*Siobhan.murphy@clydeco.us*
*Counsel for Coeymans Marine Towing, LLC, d/b/a Carver Marine Towing*

James Morrissey (via electronic mail)
4723 Baywood Drive
Lynnhaven, FL 32444
*jdmorrissey15@gmail.com*

_____*/s/ Mackenzie R. Pensyl*_____