IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al.* | Civil Action No. 2:24-cv-00490-MSD-LRL |

**CLAIMANTS' JOINT OPPOSITION TO PETITIONER'S *DAUBERT* MOTION
TO EXCLUDE TESTIMONY AND OPINIONS OF JOHN POULSON**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Evanston Insurance Company's ("Evanston") (jointly, "Claimants"), oppose the Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing's ("Carver"), Motion to Exclude Testimony and Opinions of John Poulson (the "Motion"). Because Carver's Motion relies on a mischaracterization of industry standards, and its remaining attacks on Mr. Poulson go to the weight of his testimony, not its admissibility, Carver's Motion should be denied.

**Legal Standard**

Federal Rule of Evidence 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As a preliminary matter, district courts are tasked to act as gatekeepers and exclude expert testimony from trial that is irrelevant or unreliable. See Fed. R. Evid. 104(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (discussing *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)). Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. Relevance depends upon "whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (citations omitted).

"[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 (advisory committee notes, 2000 amendments). District courts are "not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996); Fed. R. Evid. 702 (advisory committee notes, 2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, if a party offering expert testimony can prove by a preponderance of the evidence that the expert is qualified, the expert's testimony is relevant, and the testimony is reliable, a court should not exclude it. *Id*. at 590-91; Fed. R. Evid. 702 (advisory committee notes, 2000 amendments).

## Argument

**I.    Mr. Poulson's comparable sales methodology is consistent with industry standards, and his valuation opinion is reliable.**

Carver concedes that Mr. Poulson "has over fifty (50) years' experience surveying and valuing vessels and equipment within the maritime industry." ECF 97, p.1. Mr. Poulson's comparable sales valuation is the preferred method for valuing vessels. Mr. Poulson's methodology was sound, and the data he relied upon for his calculations is of the type relied upon

by experts in his field. As such, Mr. Poulson's comparable sales valuation comports with industry standards.

Carver argues that Mr. Poulson's comparable sales valuation opinion is unreliable due to supposed flaws in his methodology. ECF 97, p.4. Carver claims that Mr. Poulson did not "actually" employ the comparable sales method because he utilized sellers' offers to determine the fair market value of the vessel, rather than sales prices. ECF 97, p.4-5. "[F]air market value [is] defined as an agreed price between a willing seller and a willing buyer." ECF 97-3 (Poulson's Dep.), p. 12, 45:9-11. However, "in the event that market value is not available… alternative methods of valuation [may] be used." *F.C. Wheat Mar. Corp. v. United States*, 712 F. Supp. 2d 471, 475 (E.D. Va. 2010) ("[W]here there is an insufficient record of sales to establish a market, 'other evidence such as replacement cost, depreciation, expert opinion and the amount of insurance can also be considered to determine the value of a lost vessel.'").

There is no public database that provides exact selling prices for boats, making exact pricing information difficult to obtain. ECF 97-3 (Poulson's Dep.), p. 12, 44:21-45:6. However, sellers' offer figures, which *are* publicly available, provide a close approximation of the fair market value of vessels. Under Federal Rule of Evidence 703, an expert may rely on information in forming his opinion "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" F. R. Evid. 703. Mr. Poulson is surely aware of the types of data on which one in his field would reasonably rely. Moreover, "[w]hen [one's] methodology is sound, and the evidence relied upon [is] sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (internal citations omitted). As such, even if Carver's critique of Mr.

Poulson's comparable sales valuation method was substantiated, which it is not, it would still not bar admission of his testimony.

## II. Mr. Poulson's other methodologies are reliable.

In addition to his comparable sales valuation, Mr. Poulson provided a replacement cost valuation and a generative income valuation, both of which comport with industry standards. Carver claims that, because Mr. Poulson's replacement cost and generative income valuations served as a "check" for what they claim to be a "flawed" comparable sales valuation, that they are somehow inherently flawed themselves. ECF 97, p. 5. Carver fails, however, to supply any explanation as to how the alleged faults of the comparable sales valuation affected the efficacy of the additional valuation methods. Moreover, as discussed above, Mr. Poulson's comparable sales valuation is not flawed and is consistent with industry standards.

Carver further argues that Mr. Poulson's replacement cost and generative income valuations "have no place in this case" because such valuation methods "are only utilized in admiralty actions where the comparable sales methodology cannot reliably be used due to insufficient market data." ECF 97, p.6. Carver seems to be arguing both that Mr. Poulson's comparable sales valuation *is* unreliable and that it is *not* unreliable, such as to warrant the use of any other methodologies. Aside from the obvious contradiction, it is illogical to fault Mr. Poulson for providing *more* support to his valuation opinion than is required. While the replacement cost and generative income valuations may not be the preferred methods of valuation, the fact that Mr. Poulson provided them *in addition to* his comparable sales valuation would merely go to the weight of his testimony, not to its admissibility. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010).

4

**Conclusion**

Because there is no basis to strike any part of Mr. Poulson's report or testimony, Belt Line and Evanston request that the Court deny Carver's Motion, allow Mr. Poulson to testify at trial in accordance with his report, and grant Claimants all other just and necessary relief.

Dated: September 16, 2025

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY**

  /s/ Mackenzie R. Pensyl
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 1000
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1500
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
Email: jchapman@cwm-law.com
Email: wrsnow@cwm-law.com
Email: mpensyl@cwm-law.com
*Counsel for Defendant Norfolk Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

      I certify that on this 16th day of September 2025 a true and correct copy of the foregoing was served on parties via CM/ECF electronic filing system upon the following:

| | |
|---|---|
| Harold L. Cohen. Esq. VSB No. 98148<br>CLYDE & CO US LLP<br>1221 Brickell Ave #1600<br>Miami, Florida 33131<br>(202) 747-5108<br>(202) 747-5150<br>Harry.Cohen@clydeco.us<br><br>James H. Rodgers, Esq. *(pro hac vice)*<br>CLYDE & CO US LLP<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, New York 10174<br>(212) 702-6771<br>(212) 710-3950<br>James.Rodgers@clydeco.us<br><br>Rachel Werner, Esq. *(pro hac vice)*<br>CLYDE & CO US LLP<br>One N. Central Avenue, Ste 1030<br>Pheonix, Arizona 85004<br>(480) 746-4580<br>(480) 746-4569 Direct<br>(480) 746-4556 Fax<br>Rachel.werner@clydeco.us | Michael Roman, Esq.<br>Dawn Johnson, Esq.<br>Siobhan Murphy, Esq.<br>CLYDE & CO US LLP<br>30 S. Wacker Drive, Ste 2600<br>Chicago, IL 60606<br>Tel No.: (312) 635-6971<br>Fax No.: (312)635-6950<br>Michael.Roman@clydeco.us<br>Dawn.Johnson@clydeco.us<br>Siobhan.murphy@clydeco.us<br>*Counsel for Coeymans Marine Towing, LLC,*<br>*d/b/a Carver Marine Towing*<br><br>James Morrissey (via electronic mail)<br>4723 Baywood Drive<br>Lynnhaven, FL 32444<br>(850) 901-3893<br>jdmorrissey15@gmail.com<br><br><br>      /s/ Mackenzie R. Pensyl |