IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

**PETITIONER'S REPLY IN SUPPORT OF MOTION TO EXCLUDE
TESTIMONY AND OPINIONS OF CAPTAIN NICHOLAS J. LEWIS**

Petitioner, Coeymans Marine Towing LLC d/b/a Carver Marine Towing, by counsel, for its Reply in Support of Its Motion to Exclude Testimony and Opinions of Captain Nicholas J. Lewis (ECF 92-93), states as follows:

**ARGUMENT**

**I.      Opinion Nos. 5, 6, 7, 9 and 10 should be excluded.**

Claimants begin their opposition by claiming Capt. Lewis based Opinions Nos. 5, 6, 7, 9 and 10 on "rules, regulations, publications, and discovery documents" before conceding that the opinions are really only "derived from a review of Carver's TSMS and the Simrad autopilot manual." ECF 105 at 8. Claimants do not address, however, that Carver's TSMS is consistent with actual regulations regarding the use of autopilot (46 C.F.R. § 140.670) and they do not attempt to explain how Capt. Lewis actually opines that the SMS or 46 C.F.R. § 140.670 were, in fact, violated. As stated in Carver's opening brief, Capt. Lewis simply attempts to apply inapplicable oil tanker regulations to a towing vessel, which is governed by a completely different set of regulations. This renders Capt. Lewis' opinions regarding autopilot use excludable under *Daubert*.

1

See *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 288 (4th Cir. 2021) (finding reversible error where a District Court allowed an expert to testify despite failing to identify an industry standard governing the product at issue)

Moreover, Claimants do not explain how the Simrad autopilot manual establishes an industry standard such that it can form the basis for his opinion that Carver violated standards for safe seamanship. This makes sense; if the Simrad manual represented the industry standard, it would align with 46 C.F.R. § 140.670. Instead, the manual directly contrasts the federal government's regulations on the use of autopilot thus is meaningless for establishing standards applicable to towing vessels like the *Mackenzie Rose*. Capt. Lewis's opinions should therefore be excluded.

Finally, Claimants do not offer anything besides their arguments on the above two points in opposing Carver's speculation arguments. They simply argue that Carver ignored the manual's warnings and "marine industry standards" without any actual discussion of 46 C.F.R. § 140.670 of defense of how oil tanker regulations applied to the *Mackenzie Rose*. As discussed above, 46 C.F.R. § 140.670 is the standard that governs this case and Capt. Lewis does not seriously opine that Carver violated these federal regulations. His opinion that some other nebulous "industry standard" based on a manufacturer's manual and his own *ipse dixit* is unreliable and irrelevant. Accordingly, Capt. Lewis's Opinions 5, 6, 7, 9, and 10 should be barred under *Daubert*.

**II. Opinions 1, 2, 3, 11 and 12 should be excluded**.

Claimants admit that Opinion 11 is intended as speculative evidence as to what might have happened if Carver had reported the allision immediately to the U.S. Coast Guard. ECF 105 ("Said differently, the failure to report … prevented the immediate determination of the cause of the allision, which *inferentially supports Claimants' contention that Carver had pre-allision*

*knowledge and privity that the Tug was not seaworthy*"). Claimants point blank say they will elicit explanations from Capt. Lewis about the "purpose and potential ramifications" of reporting to the Coast Guard, for example "drug and alcohol testing of the crew" "which could [have] revealed the cause of the allision." *Id.* This is rank speculation and testimony intended to allude and infer to causes of the allision that have absolutely no basis in the factual record. *Daubert* demands more that speculation from experts. Opinion 11 is irrelevant and has no bearing on determining the real causes of the allision and it should be excluded.

Moving to Opinions 1, 2, 3, and 12, Claimants simply restate their argument that the Court will be assisted by Capt. Lewis' explanation that the crew was not properly trained on when to use autopilot and how to approach the Bridge. As stated above and in Carver's opening brief, Capt. Lewis's opinions on the standards for using autopilot are unreliable and irrelevant and thus Opinions 1, 2, 3 and 12 should be excluded.

Moreover, Claimants argue Capt. Lewis's testimony is needed to determine factual issues such as the speed of the allision and whether the *Mazkenzie Rose* deviated outside the navigational channel. Carver has produced its Rose Point navigational data showing the speed and direction of the vessel on the day of the incident thus the actual facts regarding these issues is shown through this evidence. Capt. Lewis's commentary on these issues is not needed and therefore his opinions should be excluded.

### III.   Opinion No. 8 should be excluded.

Claimants claim Capt. Lewis's experience in opining in proper lookouts is not based on his oil tanker experiences, but, rather, his experiences operating a Light Tugboat. That is not the circumstance of this case, the *Mackenzie Rose* was a towing vessel hauling a barge of commercial scrap material. Capt. Lewis conceded he has never been a mariner in similar circumstances and,

instead, based his opinion on that Mate Morrissey should have had an additional lookout on his experiences as an oil tanker mariner and understanding of additional regulations than just Inland Rule 5. See, *e.g.*, Capt. Lewis once again relies upon inapplicable regulations in attempt to apply a heightened duty upon the *Mackenzie Rose*, which renders his opinion unreliable and irrelevant. *Nicholes v. M/V Mara*, 949 F.Supp. 391, 398 (D.S.C.) ("the court notes that there is no requirement under Inland Rule 5, or the case law construing that rule, requiring the posting of a lookout a specific lookout"); *Maritrans Operating Partners L.P. v. M/T FAITH I*, 800 F. Supp. 133, 142 (D.N.J 1992) ("A Rule 5 violation does not occur when those aboard the vessel have an unobstructed view ... even though no bow lookout is posted").

     Claimants also point to *In re Vulcan Materials* for the proposition that experts are required to determine Rule 5 violations, however that case is markedly different from the one at hand. *Vulcan* involved the death of a serviceman during a Navy training exercise that resulted from a tug and barge running over the serviceman after he went overboard from a small rigid hull inflatable boat. The expert in that case opined a lookout should have been posted because it was "dark and windy; the water was choppy, which caused clutter on the [tug's] radar and made it difficult to see small boat traffic on the radar screen; the [tug] was in a narrow channel and, because of the eight barges it was pushing, had a significant blind spot; and [the captain] testified that small boat traffic is common on the James River." Here, Mate Morrissey's navigational error occurred in late afternoon on a sunny June day and involved a railroad bridge that spans that entire width of the Elizabeth River. The trier of fact does not need Capt. Lewis's common-sense opinion to determine if Mate Morrissey failed to keep a proper look and thus it should be excluded.

### IV. Opinion 13, 14, and 15 are unreliable, irrelevant and speculative.

Claimants claim that Opinion 13 should be admitted because they do not directly state that the hard over event from May 2024 was a cause of the allision. This is a roundabout way of asking this Court to allow Capt. Lewis to insinuate that somehow it is possible that an autopilot malfunction might have caused the allision on June 15, 2024. But Capt. Lewis was firm in his deposition that he is not offering any opinion that the autopilot system, steering, or other equipment aboard the vessel malfunctioned or caused the bridge strike. Capt. Lewis's opinion that Carver should have checked the systems after the May 2024 incident or somehow restricted its use (even though it did not malfunction) is simply speculative and serves only to introduce an unsupported inference at trial that the cause was anything other than Mate Morrissey's navigational error. Opinion 13 should therefore be excluded under *Daubert*.

Finally, Claimants argue Opinion 14 and 15 should be allowed because they are the "ultimate opinions" he intends to offer. These two opinions are nothing more than the first 13 opinions repackaged into generalized statements that Carver's vessel was unseaworthy on June 15, 2024 and fail for the same reasons as each does independently. Carver restates and reincorporates its arguments on each opinion and requests that the Court exclude Opinions 14 and 15 under *Daubert*.

### CONCLUSION

For the reasons stated here and in its opening brief, Petitioner Coeymans Marine Towing LLC d/b/a Carver Marine Towing respectfully requests that the Court grant its Motion to Exclude Testimony and Opinions of Captain Nicholas Lewis and bar him from offering Opinions 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 at trial.

                                                Respectfully submitted,

Dated: September 19, 2025                  **CLYDE & CO US LLP**

                                                By: /s/ *Harold L. Cohen*
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;


James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
dawn.johnson@clydeco.us
Siobhan.murphy@clydeco.us

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 19, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

| | |
|---|---|
| Mark C. Nanavati, Esq. (VSB No.: 38709)<br>G. Christopher Jones, Jr., Esq. (VSB No.: 82260)<br>SINNOT, NUCKOLS & LOGAN, P.C.<br>13811 Village Mill Drive<br>Midlothian, Virginia 23114<br>(804) 893-3866 (Nanavati)<br>(804) 893-3862 (Jones)<br>(804) 378-2610 (Facsimile)<br>mnanavati@snllaw.com<br>cjones@snllaw.com<br>*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company* | Zachary M. Jett, Esq. (VSB #93285)<br>BUTLER WEIHMULLER KATZ, et al<br>11525 North Community House Road<br>Suite 300<br>Charlotte, North Carolina 28277<br>(704) 543-2321 (Telephone)<br>(704) 543-2324 (Facsimile)<br>zjett@butler.legal<br>*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company* |

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

                                                 */s/ Harold L. Cohen*