IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY AND EVANSTON INSURANCE COMPANY'S MEMORANDUM
IN SUPPORT OF THEIR SECOND MOTION *IN LIMINE*
TO EXCLUDE EXPERT OPINION AND EVIDENCE FROM SAM STEPHENSON, J.D.**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") and Evanston Insurance Company ("Evanston"), by and through undersigned counsel, submit the following Memorandum in Support of their Motion *in Limine* to Exclude Expert Opinion and Evidence expected to be offered by Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") through the testimony of its expert witness Sam Stephenson, J.D.

## INTRODUCTION

On Saturday afternoon, June 15, 2024, the tug M/T MACKENZIE ROSE, owned and operated by Carver, pushing a 200-foot loaded barge, ran headlong into the Belt Line's Main Line Railroad Bridge that spans the Southern Branch of the Elizabeth River between Chesapeake and Portsmouth, Virginia (the "Bridge"). The impact was so severe that it displaced the steel super-structure of the Bridge by nearly 7 feet, left the western truss balancing on 3 of its 4 legs, and rendered the Bridge totally inoperable. Even so, the tug backed up, maneuvered through the Bridge opening, and left for New York without a word to the Belt Line or the U.S. Coast Guard as required by 46 C.F.R. 4.05-1. To date, repair costs have exceeded $15.9 million. Carver's Complaint seeks to limit its liability to $2.5 million.

## SAM STEPHENSON, J.D.

Carver has identified Sam Stephenson, J.D. ("Stephenson") as an expert to offer opinions on its behalf at trial. *See* Carver Marine's Disclosure of Expert Witnesses (**Exhibit A**). The disclosure refers to and incorporates Stephenson's expert report ("Report"). *See* **Exhibit B**. The expert disclosure refers to Stephenson as "a Senior Pilot with the Port Everglades Pilot Association, marine operations expert."

**1.    Report**

In his Report, Stephenson lists his background:

> My name is Captain Sam Stephenson. I am a Senior Harbor Pilot in Port Everglades, Florida. I have been a lead instructor and course developer at Resolve Maritime Academy in Fort Lauderdale, Florida for pilot and captain/officer courses. Prior to becoming a harbor pilot, I sailed as captain aboard ships of unlimited tonnage for approximately six years. I am a retired Commander of the United States Naval Reserve. In addition to my roles at Resolve Maritime Academy, I have taught at the Maritime Institute of Technology and Graduate Studies (MITAGS), Maritime Pilot Institute, and Texas A&M University at Galveston. I was Captain on the United States Training Ship Texas Clipper II. I was appointed to and served on the Navigation Safety Advisory Council, Department of Transportation, Washington, D.C., which is an internationally recognized body of maritime experts to advise the Secretary of Transportation via the Commandant of the US Coast Guard on maritime issues. I have been a maritime expert with regard to maritime issues since 1999.

Report, p. 2.

His Report states that he was asked to opine about several matters, including whether, "[t]he evidence establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false." Report, p. 12.[1]

---

[1] Belt Line and Evanston assume that the reference to a statement by Morrisey that the autopilot failed is based on a compilation of some exhibits. Attached as **Exhibit C** is a written report by Captain Miller that "James Morrissey … informed me that the tug went hard over. He said the rudder stuck." Attached as **Exhibit D** is a handwritten report by Mr. Morrissey which says, "Experienced a steering malfunction causing tug and barge to turn to port." Attached as **Exhibit E** is a log entry from 4:30 that says "Co Captain reports steering went hard over…"

As to this opinion, Stephenson states as follows:

***4. The evidence clearly establishes that Mr. Morrissey's initial statement the autopilot malfunctioned was false.***

Mate Morrissey failed to be truthful regarding the incident with the bridge. (Report, Page 28).

In his summary of opinions, Stephenson opines: "4. The evidence clearly establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false." (Report, Page 17).

In his conclusion to the Report, Stephenson opines: "4. The evidence clearly establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false." (Report, Page 34).

According to his report, he bases this inadmissible opinion on his interpretation of several documents, which are, themselves, hearsay.

A.    An Incident Report dated June 15, 2024, at 4:30 p.m. by Christopher Miller, the Captain of the tug. (Report, Page 29);

B.    A USCG 2692 form submitted on 06/25/24 (Id.);

C.    A text message from Captain Miller to Brian Moore on 6/28/2024 at 10:01:19 AM (UTC-4) (Report, Page 30).

He further opines, in an apparent response to the expert designation of Beltline and Evanston that "Mate Morrissey failed to tell the truth about the incident. He gave conflicting accounts of what happened to the crewmembers aboard the Mackenzie Rose." (Report, Page 55).

---

Attached as **Exhibit F** is a text from 4:36 to Brian Moore which says "MACKROSE rudder got stuck hard over and they hit the bridge." Attached as **Exhibit G** is a 4:30 incident report that says "Mate James Morrissey reports the auto pilot was not completely turned off…"

  **2.**  **Deposition**

  In his deposition, Stephenson testified that he is not an expert on credibility:

> Q: Okay. There was also some opinions in here regarding the credibility of Captain Morrissey.
>   Do you hold yourself out as a human factors expert?
>
> A: No.
>
> Q: Okay. And do you hold yourself out as an expert in witness credibility?
>
> A: No.

(Deposition of Sam Stephenson, J.D., August 11, 2025, P. 19, L. 6-14. Relevant portions attached collectively as **Exhibit H**).

  He testified that his opinion on the falseness of Morrisey's statement was based on those three documents:

> Q: Okay, bottom of page 28. It says, "The evidence clearly establishes that Mate Morrissey's initial statement that the autopilot malfunction was false."
>   You see that?
>
> A: Yes.
>
> Q: And it looks like that's, and correct me if I'm wrong, but that's based on inconsistent or different statements made by Mate Morrissey after the initial statement was made.
>   Is that correct?
>
> **A: Well, it's based on the incident report. It's based on the USCG 2692 form, and also the text message.**

(Id., P. 117, L. 17 – P. 118, L. 8)

He testified that the USCG 2692 form, upon which he relies, was authored by Brian Moore. (Id., P. 123, L. 22 – P. 124, L. 13).

Finally, in response to questions from Carver's counsel on rebuttal, he reiterated his opinion that the statement of Morrisey was false. (Id., P. 201, L. 4-6).

**ARGUMENT**

**1.   Stephenson's Opinion About the Truth or Falsity of Morrissey's Statement is Inadmissible Opinion on Credibility, which is for the Jury or Finder of Fact**

Basically, Stephensen is opining that because of allegedly contradictory statements, not by Morrissey himself, but reported by others, that a statement attributed to or by Morrisey that the auto pilot on the vessel failed (or the wheel went hard over, or the rudder got stuck) is false and a lie. This, even though Stephenson admits he is neither a human factors expert nor an expert on credibility.

Such opinions, whether by experts or lay witnesses, are inadmissible, as the judges of credibility are the jurors or the judge, acting as the factfinder in a bench trial. Almost forty years ago, the Fourth Circuit recognized this as the majority evidentiary position. In United States v. Cecil, 836 F.2d 1431 (4th Cir. 1988), the Court stated:

> Beyond this, while the Rule permits an expert to testify on ultimate issues if the district judge finds such evidence helpful, that principle has never been extended to the right of a psychiatrist to give an opinion on the credibility of a witness. That determination of credibility is one strictly for the jury. Many cases, decided after the adoption of the Federal Rules of Evidence, have so held. In fact, the authorities seem uniform that a psychiatrist may not testify to the credibility of a witness; that issue is one for the jury. A leading precedent to this effect is *United States v. Wertis, 505 F.2d 683, 685 (5th Cir. 1975), cert. denied, 422 U.S. 1045, 45 L. Ed. 2d 697, 95 S. Ct. 2662 (1975)*: In that case, the Court said:
>
>> Wertis' final complaint which merits brief discussion is that the court erred in refusing to permit a psychiatrist to opine whether a principal prosecution witness ". . . would . . . have a tendency to be reliable as a witness in distinguishing the truth from non-truth, realities from fantasies. . . ." Such a question as that proffered is beyond the competence of any witness. Peeled

of its thin veneer of jargon, it amounts to no more than an inquiry whether the witness is to be believed by the jury or not.

The opinion in that case had already been foreshadowed by *United States v. Barnard, 490 F.2d 907, 912-13 (9th Cir. 1973), cert. denied, 416 U.S. 959, 40 L. Ed. 2d 310, 94 S. Ct. 1976 (1974)*, decided before the adoption in 1975 of the Federal Rules of Evidence. There a psychiatrist and a psychologist had been called to testify on the reliability of Dillon, a co-defendant who had turned State's evidence as a witness. The two experts had read psychiatric evaluations of Dillon and his grand jury testimony and had observed some of his trial testimony. Both were offered by the defense as witnesses to testify that, "on the basis of this familiarity," "Dillon was a sociopath who would lie when it was to his advantage to do so." The trial judge ruled such evidence inadmissible. The circuit court affirmed, saying:

> As we have seen, competency is for the judge, not the jury. Credibility, however, is for the jury -- the jury is the lie detector in the courtroom. Judges frequently instruct juries about factors that the jury may or should consider in weighing the veracity of a witness. . . . It is now suggested that psychiatrists and psychologists have more of this expertise than either judges or juries, and that their opinions can be of value to both judges and juries in determining the veracity of witnesses. Perhaps. The effect of receiving such testimony, however, may be two-fold: first, it may cause juries to surrender their own common sense in weighing testimony; second, it may produce a trial within a trial on what is collateral but still an important matter. For these reasons we, like other courts that have considered the matter, are unwilling to say that when such testimony is offered, the judge must admit it.

836 F.2d 1431, *1441; 1988 U.S. App. LEXIS 292, **32

Again, in *United States v. Awkard, 597 F.2d 667, 671 (9th Cir. 1979), cert. denied, 444 U.S. 885, 62 L. Ed. 2d 116, 100 S. Ct. 179* and *444 U.S. 969, 100 S. Ct. 460, 62 L. Ed. 2d 383*, the court reiterated its decision in *Barnard, supra*, adding:

> Under the Federal Rules, opinion testimony on credibility is limited to character; all other opinions on credibility are for the jurors themselves to form.

*See to the same effect: United States v. Azure, 801 F.2d 336, 339-41 (8th Cir. 1986); United States v. Samara, 643 F.2d 701, 705 (10th Cir. 1981), cert. denied, 454 U.S. 829, 102 S. Ct. 122, 70 L. Ed. 2d 104; United States v. Provenzano, 688 F.2d 194, 203-04 (3d Cir. 1982), cert. denied, 459 U.S. 1071, 74 L. Ed. 2d 634, 103 S. Ct. 492; United States v. Jackson, 576 F.2d 46, 49 (5th Cir. 1978).* For a discussion of State cases applying the same rules as those in the Federal cases, *see State v. Lindsey, 149 Ariz. 472, 720 P.2d 73, 75-7 (1986).*

6

Id., 836 F.2d at 1441-42; see also United States v. Lee, No. 00-4150, 2000 U.S. App. LEXIS 23827 (4th Cir. Sep. 26, 2000); United States v. Brown, 62 F. App'x 516 (4th Cir. 2003)(police inspector's opinion).

Obviously, if the Fourth Circuit has recognized that an expert in psychology or psychiatry cannot testify as to credibility, it would be a strain to allow a "marine operations expert", who admits he is not a human factors expert or expert on credibility, to offer an opinion on the truth or falsity of a statement by a witness. Even the Federal Rules of Evidence suggest that only opinions on character of witnesses for truthfulness or falsity are allowed if based on adequate foundation. Fed. R. Ev. 608(a).

As such, Stephenson's opinion that Morrissey's statement(s) was (were) false or a lie are not admissible and should be excluded.

**2.     Stephenson Should Not Be Allowed to Rely upon, Read from or Quote at Trial from Statutorily Inadmissible Evidence**

As noted above, Stephenson's inadmissible opinion about the truth or falsity of a statement by Morrissey is based on three out-of-court written statements by people other than Morrissey. Included is an USCG 2692 form submitted on 06/25/24 by Brian Moore. Stephenson also refers to and relies upon this form in other parts of his report, supporting other opinions. (All references to the from - Report, Pages 12, 29, 30, 32, 33, 39, 40, 41, 45 and 46).

Under 46 U.S.C. § 6308(a), reference to any part of this form, or the attempt to introduce any part of this from, is inadmissible.

> **a)** Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title [*46 USCS § 6301*], including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

7

Courts have applied this prohibition to statements and other evidence gathered during the investigation.  In re Eternity Shipping, Ltd., 444 F. Supp. 2d 347, 363 (D. Md. 2006) (determining that a transcript of an individual's interview with the Coast Guard, which was an exhibit to a report, was inadmissible); Falconer v. Penn Maritime, Inc., 397 F. Supp. 2d 68, 70 (D. Me. 2005) (finding that all parts of a Coast Guard report, including photographs and notes of statements taken by a Coast Guard investigator, were inadmissible under the statute); In re Complaint of Crosby Tugs, LLC, No. CIV.A.02 1125C/W, 2004 WL 5482859, at *1-2 (E.D. La. Aug. 16, 2005) (determining that a measurement taken by the Coast Guard of the depth of a body of water during an investigation and referenced in a report was inadmissible); In re Am. Milling Co., 270 F. Supp. 2d 1068, 1075-75 (E.D. Mo. 2003) (finding the transcript of a Coast Guard investigatory hearing inadmissible), *rev'd in part on other grounds*, 409 F.3d 1005 (8th Cir. 2005). The Coast Guard itself ostensibly agrees with a broad interpretation of the statute. *See* William R. Dorsey, III, Marine Casualty Investigations by the United States Coast Guard ad the National Transportation Board, 75 Tul. L. Rev. 1387, 1413 (2001) (noting that the Coast Guard considers "written statements, transcribed testimony, or documentary evidence obtained during an investigation . . . to be part and parcel of the 'report' to which the prohibition of admissibility in § 6308 applies").

In fact, the USCG 2692 form states at the bottom:  "…however, information collected is protected from use in civil litigation per 46 U.S.C. §6308."

Accordingly, to the extent that Stephenson is allowed to render any opinions, he is not entitled to rely upon, refer to or read from this USCG 2692 form, and such should be excluded.

8

WHEREFORE, Belt Line and Evanston respectfully request that this Court enter an Order *in limine* excluding the opinion testimony of Sam Stephensen, J.D., along with any reference by him to the USCG 2692 form.

Dated: September 23, 2025

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By:     */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

EVANSTON INSURANCE COMPANY, a/s/o NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

    */s/ Mark C. Nanavati*
Mark C. Nanavati, VSB No. 38709
G. Christopher Jones, Jr., VSB No. 82260
SINNOTT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com

Zachary M. Jett, VSB No. 93285
BUTLER WEIHMULLER KATZ CRAIG LLP
11525 N. Community House Road, Ste 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)

9

          (704) 543-2324 (Facsimile)
          zjett@butler.legal
          *Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 23rd day of September 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

James Morrissey<br>
4723 Baywood Drive<br>
Lynnhaven, FL 32444

By:    */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*