UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
*d/b/a* CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and
Appurtenances, etc., *in rem* petitioning for Exoneration from or
Limitation of Liability in allision with Norfolk and Portsmouth Belt
Line Railroad Company Main Line Railroad Bridge occurring June
15, 2024 in and about the Elizabeth River, Virginia.

Case No.: 2:24cv490

---

NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

    Consolidated Plaintiff/Claimant,

and

EVANSTON INSURANCE COMPANY,

    Intervening Plaintiff/Claimant,

v.

JAMES MORRISEY,

    Defendant.

## REPORT AND RECOMMENDATION

In this limitation action, the parties are embroiled in yet another dispute they felt compelled to bring before the Court,[1] this time over Consolidated Plaintiff/Claimant Norfolk and Portsmouth Belt Line Railroad Company's ("the Belt Line") Motion for Relief Under Rules 30 and 37 ("Motion for Relief") and memorandum in support.[2] ECF Nos. 69-70. By its Motion, the Belt

---

[1] *See* ECF Nos. 42, 62, 67. After the instant motion was brought, another such motion for a protective order was filed. *See* ECF No. 71.
[2] This Motion was originally brought by the Belt Line and Claimant Evanston Insurance Company. However, Evanston has since filed a Notice of Settlement with respect to its claim. ECF No. 116.

Line seeks an Order from the Court sanctioning Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") for its allegedly obstructive conduct defending five depositions. ECF No. 69. As a sanction, the Belt Line asks the Court to (1) dismiss Carver's limitation complaint, (2) "deem facts underlying the obstructive testimony admitted against Carver," (3) deem all text messages produced by Carver after the depositions of its witnesses admissible against Carver, and (4) grant the Belt Line all other just relief, including attorney's fees associated with this motion. *Id.* at 2. Carver filed a memorandum in opposition arguing that the Belt Line failed to establish that Carver at any time acted in bad faith, that the Belt Line was not prejudiced by Carver's objections during depositions, and that dismissal is a draconian remedy when more appropriate remedies could have been considered had the Belt Line acted more promptly in raising its concerns. ECF No. 75. The Belt Line replied and argued that Carver did not dispute their deposition conduct was disruptive, that alternate remedies were insufficient, and that certain facts should therefore be deemed admitted. ECF No. 80. The Motion for Relief was then referred to the undersigned for a report and recommended disposition. ECF No. 95. The Court finds that a hearing is unnecessary and would be of little to no assistance in the deliberative process. For the following reasons, the Court **RECOMMENDS** that Belt Line's Motion for Relief, ECF No. 69, be **DENIED**.

## I. PROCEDURAL HISTORY

On August 8, 2024, Carver filed a Complaint against the Belt Line after a steel-hulled tugboat—owned and operated by Carver—allided with the Norfolk and Portsmouth Belt Line Railroad Company Main Line Railroad Bridge on the Elizabeth River, Virginia. ECF No. 1 at ¶¶ 2-3. Carver argues that it is entitled to exoneration from fault or, in the alternative, a limitation of

2

its liability under the Limitation of Liability Act, 46 U.S.C. §§ 30501-30512. *Id.* at ¶¶ 12-13. In response, the Belt Line filed its Answer on December 5, 2024. ECF No. 24.

The same day, the Belt Line filed its Claim against Carver pursuant to Rule F(5) of the Supplemental Rules for Admiralty. ECF No. 25. In addition to requesting damages resulting from the allision, the Belt Line requests a declaration that Carver is not entitled to an exoneration from or a limitation of its liability under the Limitation Act, general maritime law, or the Supplemental Rules for Admiralty. *Id.* at 9. Carver answered the Belt Line's Claim on December 18, 2024. ECF No. 28. On January 8, 2025, Evanston Insurance Company filed its Amended Intervenor Complaint against James Morrissey ("Defendant Morrissey"), the operator of the tugboat involved in the allision. ECF No. 31. Evanston has since filed a Notice of Settlement with respect to its claim. ECF No. 116.

Prior to the instant motion, the Belt Line has filed other motions for relief associated with Carver and Defendant Morrissey's conduct during the discovery process. On March 31, 2025, the Belt Line filed its Motion to Compel against Carver, requesting that Carver be compelled to provide full and complete answers and responses to the Belt Line's requests for production of documents and interrogatories, as well as to overrule Carver's privilege objections. ECF No. 42. The Belt Line responded, ECF No. 47, and Carver filed a reply, ECF No. 49. The Court held a hearing on the Belt Line's Motion to Compel on April 25, 2025, ECF No. 51, and granted the Motion in part. ECF No. 50. Then, on July 3, 2025, the Belt Line filed its Motion for Sanctions against Defendant Morrissey for his failure to appear at his deposition. ECF No. 62. The Court granted the Motion on August 20, 2025, ordering that Defendant Morrissey appear for his deposition within fourteen days of the date of the Order and granting the Belt Line its attorneys' fees associated with the failed deposition. ECF No. 88.

The Belt Line filed the instant motion and memorandum in support on July 16, 2025, seeking a sanction against Carver that would include dismissing Carver's limitation complaint. ECF Nos. 69-70. Carver filed a memorandum in opposition on July 30, 2025. ECF No. 75. The Belt Line replied on August 5, 2025. ECF No. 80. The Motion for Relief was then referred to the undersigned for a report and recommended disposition. ECF No. 95.

## II.   FINDINGS OF FACT

1.   The Belt Line conducted five depositions they contend were interfered with by Carver's attorney's conduct during the Belt Line's examination. That conduct, the Belt Line alleges, amounted to obstruction of their right to conduct discovery. The alleged obstruction took the form of improper speaking objections, instructions to the witness to not answer certain questions, and, in the case of the witness examined under Federal Rule of Civil Procedure 30(b)(6), references to records and other discovery in lieu of substantive answers.

2.   To support its claim that Carver's counsel obstructed the Belt Line's deposition examinations, the Belt Line attached limited portions of each of the five depositions where objections or instructions not to answer were asserted, and where the 30(b)(6) witness responded to a question by referring to records or other testimony. From these excerpts, the Belt Line asks the Court for relief in the form of dismissal of Carver's limitation action and an affirmative finding of certain facts the Belt Line claims Carver prevented them from establishing.

3.   For all five of the disputed depositions, neither the Belt Line nor Carver provided the Court with the complete transcript, thereby depriving the Court of any context to evaluate the impediments to discovery the Belt Line contends Carver created by its actions.[3]

---

[3] The complete deposition transcripts were not provided to the Court in connection with the Belt Line's Motion for Relief, and in determining the recommended disposition of this motion, the Court has relied on the submissions of the parties in their briefing. In its briefing for the instant motion, the Belt Line repeatedly cited to the deposition excerpts it attached as exhibits. Prior to completion of this Report and

4

## III. CONCLUSIONS OF LAW

Courts have long emphasized that "[d]iscovery is intended to be a cooperative process," designed to promote a fair and efficient exchange of information so that cases are resolved on their merits rather than on surprise. *Vanliner Ins. Co. v. ABF Freight System, Inc.*, No. 5:11-cv-122, 2011 WL 4703105, at *1 (M.D. Fla. Oct. 4, 2011); *see, e.g., United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) ("Modern instruments of discovery serve a useful purpose . . . They together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."); *United States v. 23.76 Acres of Land, More or Less, in Anne Arundel Cnty., State of Md.*, 32 F.R.D. 593, 596 (D. Md. 1963) ("It is the rare law suit [sic] in which there are not at least two versions of a single transaction or occurrence. The purpose of discovery is to permit each party to learn of the other party's version."); *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017) ("The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014))); *Vanliner Ins. Co*, 2011 WL 4703105, at *1 ("The object of discovery is to get the facts out on the table so that the parties and the Court understand what is and is not in dispute and they can intelligently apply the law to the operative facts."). That process is undermined, however, when parties misuse the tools of discovery or refuse to cooperate with one another. *See* Fed R. Civ. P. 26 advisory committee's note to 1983 amendment ("Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts

---

Recommendation, the Court, by happenstance, discovered that some of the deposition transcripts at issue may have been submitted by Carver—not the Belt Line—in connection with Carver's brief in support of its motion for protective order, ECF No. 72. The undersigned has proposed these findings and recommendations based on the information submitted by the parties regarding the instant motion. It is certainly not the Court's obligation or inclination to hunt through the voluminous docket in this case to find out if there could be other evidence germane to the issues in dispute that might be found elsewhere.

5

and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses."). This case is one such example.

When one party resists cooperating in discovery, the Federal Rules of Civil Procedure provide remedies. *See* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."); Fed. R. Civ. P. 37 (providing for sanctions when parties fail to make disclosures or cooperate in discovery). Here, however, before seeking the ultimate sanction of claim dismissal, the Belt Line failed to pursue any remedy besides requesting the Court's intervention after depositions completed. For example, the Belt Line could have requested the Court's intervention during depositions, held a meet and confer with opposing counsel to resolve any disagreement regarding counsel's deposition conduct, or sought an informal conference with the Court prior to filing a motion to compel. Perhaps the Belt Line could have simply moved to compel deposition responses they believe were inadequate. Instead, the record reflects none of these efforts from the Belt Line.

Previously in this case, the Belt Line sought relief from the Court in its motion to compel Carver to provide full and complete answers and responses to the Belt Line's requests for production of documents and interrogatories. *See* ECF No. 42. The Court held a hearing on the Motion and provided this admonition:

> So I am going to request in the strongest possible terms that the attorneys do their level best to act civilly and professionally towards each other, ***to try in good faith to resolve disagreements or disputes before they end up in court, and to just get along.*** It's a heck of a lot better way to practice law than to be at loggerheads with each other.

ECF No. 52 at 59 (emphasis added). The Court's admonition is worth repeating: attorneys must do their best to act "civilly and professionally" with one another, "to just get along" and "to resolve

6

disagreements or disputes before they end up in court." *Id.* The tools of discovery are not meant to be used as "tactical weapons." *See* Fed R. Civ. P. 26 advisory committee's note to 1983 amendment. When discovery disputes arise, parties are expected to address them promptly, cooperatively, and with the purpose of reducing conflict—not escalating it.

The conduct of parties here reveals a pattern of misusing the discovery process. Based on the briefing, the Belt Line took none of the aforementioned steps to resolve disagreements with Carver before seeking sanctions from the Court. Although full deposition transcripts were found elsewhere on the docket, *see supra* note 3, the Belt Line chose to provide only excerpts with this motion. *See* ECF No. 70, attachs. 7-11. This selective presentation deprived the Court of the full context necessary to evaluate the Belt Line's claims of misconduct. The question is whether the Belt Line has carried its burden to demonstrate harm or prejudice sufficient to justify the specific relief sought. On this record, the Court cannot say that the Belt Line has done so. Without a showing of prejudice, the Court cannot determine what, if any, harm the Belt Line suffered because of Carver's conduct during depositions. Accordingly, any assertion of prejudice remains speculative, and the extraordinary relief requested is not warranted.

Finally, the misuse of discovery in this case is most apparent in the mismatch between the relief sought by the Belt Line and the evidentiary record provided to the Court. Here, the Belt Line seeks severe sanctions, including dismissal of the limitation action and the determination that certain facts underlying the obstructed testimony be admitted against Carver. *See* ECF No. 69 at 2. However, the information submitted to the Court falls well short of what might be necessary to establish the Belt Line's entitlement to either remedy. Sanctions of this magnitude are generally reserved for egregious cases of discovery abuse. *Compare Outlaw v. Associated Container*, No. 2:06-1181-CWH, 2007 WL 2746927, at *7 (D.S.C. Sept. 19, 2007) (recommending dismissal as

the "appropriate" remedy where plaintiff's "deliberate, bad faith failure to cooperate with discovery" was prejudicial to defendant, the court previously warned parties of "severe sanctions," and plaintiff's "refusal to cooperate" with discovery gave the court "no reason to believe a lesser sanction would have a salient effect"), *with Great Lakes Anesthesia, PLLC v. State Farm Mut. Auto. Ins. Co.*, No. 11-10658, 2011 WL 3203673, at *2 (E.D. Mich. July 27, 2011) (denying defendant's motion to dismiss for plaintiffs' failure to cooperate in scheduling depositions because "the drastic remedy of dismissal to cure the all too common failure to cooperate in discovery" was inappropriate where alternative sanctions such as "fines" and "preclusion of witnesses" were available). Rather than reflecting such abuse, the record here instead shows failure by the Belt Line to pursue cooperative remedies regarding Carver's deposition conduct.

By no means does the Court countenance improper attorney behavior during depositions and thus does not suggest that Carver is at all blameless in this dispute. However, the Belt Line's approach here reflects a misuse of discovery: not to advance the merits of its claims or "mak[e] relevant information available" to both sides but to instead ask the Court to grant severe sanctions without first exhausting less drastic measures. *See* Fed R. Civ. P. 26 advisory committee's note to 1983 amendment. Because the Belt Line has not demonstrated prejudice resulting from Carver's deposition conduct, the Belt Line is not entitled to any of the relief requested in its Motion for Relief, ECF No. 69.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Belt Line's Motion for Relief, ECF No. 69, be **DENIED**.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to counsel of record for all parties and to Defendant Morrisey, *pro se*.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 6, 2025