# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division
### In Admiralty

In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia.

**Civil Action No: 2:24-cv-00490-**

## CARVER'S MEMORANDUM IN OPPOSITION TO THE
## BELT LINE'S FIRST MOTION IN LIMINE

Petitioner, Coeymans Marine Towing LLC d/b/a Carver Marine Towing ("Carver"), by counsel, for its Memorandum in Opposition to the Belt Line's First Motion *In Limine* to Preclude Coast Guard Investigative Materials and CG-2692 Forms at Trial states as follows:

## INTRODUCTION

The Belt Line broadly seeks to exclude Carver's "CG-2692 Forms and all related Coast Guard investigative materials," including "all such evidence testimony and references," from admissibility at trial pursuant to 46 U.S.C. § 6308(a). It is not yet clear what documents exist, as not all documents have yet been released by the NTSB or Coast Guard.[1] In its "Introduction and

---

[1] With the exception of several transcripts of Carver's personnel, the Belt Line broadly seeks to exclude categories of documents which have not yet been released publicly:

(1) the CG 2692 Forms filed by Carver with the Coast Guard, including any testimony, commentary or questioning regarding the contents of the firm; any reference to reliance upon or argument concerning the CG-2692 Forms as part of the record;

(2) Any introduction into evidence of other reports, records, documents, witness interviews, notes, or materials generated or maintained by the Coast Guard in its investigation of the subject allision; and

1

Background," the Belt Line focuses on an impassioned, but irrelevant argument that Carver failed to timely report the allision, an irrelevant argument which seeks to distract the Court from the real issue in this lawsuit, which is that a navigational error by Mate Morrissy as operator of the tug was the proximate cause of the allision. As a result, there was no arguable privity. The Belt Line's motion to exclude the Coast Guard testimony is premature, overbroad and not supported by the pertinent case law nor the Federal Rules of Evidence

After the parties' dispositive motions were fully briefed, the NTSB released <u>only</u> the transcripts of interviews of  Carver Captain James Morrissey, Capt. Christopher Miller, General Manager Brian Moore, Port Capt. Leonard Baldassare and crew members Jason McGrath, Jarkeis Morrissey, Sharif Porter. Those interviews were conducted from June 25, 2024 through July 18, 2024 by the United State Coast Guard, NTSB, and counsel for the parties following the allision.[2] In full transparency, Carver attaches the transcripts to Memorandum as **Exhibits A through F**.

In this case, the CG-2692 Forms attached to the Belt Line's Motion as ECF 115-1, ECF 115-2 and ECF 115-3, and other documents and data submitted by Carver to the Coast Guard, as well as transcripts of interviews and factual investigative material are admissible on several grounds. First, the 2692 Forms are outside the protections of § 6308(a) and should be deemed admissible for all purposes. The scope of § 6308(a), extends only to those materials which would provide *the Coast Guard's conclusion or findings which could influence the litigation process*, not a litigant's own documents or factual accounts of events such as testimony or photos. Second, the

---

(3) Any testimony, deposition, or trial examination of Coast Guard personnel, or other person concerning the Coast Guard's investigative process, conclusions findings, recommendations, deliberations or opinions related to the allision; and

(4) any reference to or argument concerning the Coast Guard's investigation of this matter.

[2]  At the time of the interviews, Carver was represented by prior counsel.  Counsel at Clyde & Co US LLP had not yet been retained by Carver.

CG-2692 Form, as revised [ECF 115-3], is presumptively admissible as a trustworthy factual statement in a public record under Fed. R. Evid. 803(8), and if challenged, falls under the Rule's exception to the prohibition against admission of hearsay.  Third, Mr. Moore's testimony also authenticates the revised CG-2692 Form. Fourth, the transcripts are also presumptively admissible under Fed. R. Civ. Pro. 803(8)(A)(iii), and if challenged, also fall within the hearsay exception as a public record under Fed. R. Evid. 803(8)(B). Fifth, the transcripts are outside the limited scope of §6308(a) and include testimony of both a non-cooperative witness and a deceased witness. Last, a decision regarding the admissibility of other documents which have yet to be released by the NTSB and/or Coast Guard, including but not limited to "reports, records, witness interviews, notes, or materials generated or maintained by the Coast Guard in connection with its investigation of the subject allision," is premature, but those documents would nonetheless presumptively be admissible under 803(8) under the standards set forth in *Beech Aircraft*.  And, despite Plaintiff's purported concerns to the contrary, the Court is readily able, in this bench trial, to hear, weigh and manage the relevant evidence appropriately.  For these reasons and those that follow below, the Court should deny Plaintiff's *Motion in Limine* No. 1 and adjudicate the merits of this case on a full and fair record.

## ARGUMENT

The Belt Line proposes only that Section 6308(a) prohibits the use of factual evidence that was gathered by the Coast Guard.  It is clear, however, that section 6308(a) only applies to a report of a marine casualty investigation, not the underlying facts as discovered during the  investigation, to wit:

> Notwithstanding any other provision of law, *no part of a report of a marine casualty investigation* conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be

admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

42 U.S.C. § 6308(a) (emphasis added). Furthermore, 46 C.F.R. § 4.07–1(b) explains that "[t]he investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measure for promoting safety of life and property at sea and are not intended to fix civil or criminal responsibility." *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1243-47 (S.D. Fla. 2012) (alterations added).  The scope of the statutory protection afforded by § 6308(a) is limited to the Coast Guard's investigative report, and anything included within that report. in order to avoid having the Coast Guard's investigative report *and its conclusions* influence the litigation process. *Id.*

In *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1243-47 (S.D. Fla. 2012),  the United States District Court for the Southern District of Florida held that Court documents or other materials that *Defendant produced to the Coast Guard* in furtherance of the Coast Guard's investigation were admissible evidence, not within the scope of 46 U.S.C. § 6308(a).  In that case, a personal injury lawsuit involving a slip-and-fall aboard a cruise ship which lost power following a fire in the engine room, the defendant cruise ship line sought to withhold documents that it produced to the Court Guard under 46 U.S.C. § 6308.  The District Court ordered that defendant produce copies "of all documents, photographs and any other materials provided to any governmental agency, classification  society or flag state, including but not limited to the U.S. Coast Guard, in connection with the fire, the; the failure of the fire suppression systems; and the loss of propulsion  aboard the vessel…" ). The Court found that Section § 6308(a) extended to the specific Coast Guard investigative report and, arguably, any other Coast Guard document produced in the course of its investigation that contains any findings of fact, opinion or conclusions—not, however, a litigant's own documents.  *Id.* (emphasis added).  The Court

4

reasoned that as a condition precedent to benefitting from the protection of § 6308, the relevant document must be  document produced by the Coast Guard. *Id.*  at 1246. This is because "[t]he investigations of marine casualties and accidents . . . are not intended to fix civil or criminal responsibility." 917 F. Supp at 1246.

The Belt Line does not address the applicability of any other evidentiary rules.

**A.    The CG-2692 Forms and Carver's records submitted to the Coast Guard are admissible, as they are outside the scope of § 6308(a).**

The Belt Line mistakenly argues that the 2692-B Form and CG 2692 Forms, ECF 115-1, ECF 115-2 and ECF 115-3, that Carver submitted to the U.S. Coast Guard on June 19, 2024 and June 25, 2024, respectively, are not admissible evidence.  The Belt Line argues that the 2692 forms authored and submitted by Carver will be subject to the rule cited *In re Complaint of Cozy Cover Marine, Inc*., 521 F. Supp. 2d 504, 506-07 (E.D. Ca. 2007). That case, however, does not address that the Forms are Carver's own records, and not Coast Guard reports.   Given that, as discussed in *Guest v. Carnvial Corp*., 917 F. Supp. 2d at 1243-47, *supra*, the Court held that documents or other materials that Defendant produced to the Coast Guard in Furtherance of the Coast Guard's investigation were not within the scope of § 6308(a), as that section does not extend to the *litigant's own documents*. *Id.*  Here, the 2692 forms are Carver's own documents which it submitted to the Coast Guard and admissible because they are outside the scope of 46 U.S.C. § 6308(a).

Belt Line's reliance on *In re Complaint of Cozy Cove Marine, Inc.* affirms the point that Carver's own business record is not a "report of marine casualty" under § 6308. In *Cozy Cove*, the Court addressed an unopposed motion *in limine* to "exclude a Coast Guard accident report of the incident" because it had "reason to believe that at least one of the estates intends to rely on the Report to support its case." 521 F.Supp.2d 504, 507.  In granting the unopposed motion, the Court noted that statutory language explicitly precludes using the "report of marine casualty" authored

5

by the Coast Guard which was precisely the Report one party may have intended to offer into evidence. That is not the situation before the Court. Carver is not attempting to offer the "report of marine casualty investigation" and, indeed, the Coast Guard has not even finalized such Report for the incident at issue.

Belt Line goes to great lengths in its brief to conflate "report of marine casualty investigation" with the CG-2692 Forms in an attempt to paint *Cozy Cove* as definitive law on the issue, but that case is inapposite. *See* [ECF 115] (arguing "exclusion of CG-2692 Forms is not only a matter of prejudice but one of statutory exclusion," then citing to cases that excluded Coast Guard "reports"). Indeed, district courts within the Fourth Circuit have regularly drawn the distinction between admissibility of records submitted *to the Coast Guard* as part of its investigation and other factual records (which are subject to Federal Rules of Evidence) with the Coast Guard's "report of marine casualty investigation" (which is barred under §6308). The *Goodwin v. Cockrell* district court, by example, "agree[d] with the more narrow interpretation of [§ 6308]," under which records like photographs, written statements, and diagrams collected during the Coast Guard's investigation are admissible so long as they pass muster under the Federal Rules of Evidence. No. 4;13-cv-199-F, 2012 U.S. Dist. LEXIS 163674, *9 (E.D.N.C. Nov. 21, 2014) ("The court is of the view that the written statement of Arthur Cockrell and his hand-drawn diagram do not constitute a 'part of a report of a marine casualty investigation'").

The primary document at issue here is a CG-2692 Form containing a narrative authored by Carver's management after they witnessed and observed the Coast Guard interviews of Mate Morrissey and the crew aboard the M/T MACKENZIE ROSE. This is a simple record generated in the normal course of Carver's investigation which Belt Line now argues is inadmissible and outside the purview of Federal Rule of Evidence 807 simply because Carver submitted it to the

Coast Guard after authoring it.  Section § 6308 is not so expansive, yet under Belt Line's logic any business record that is turned over to the Coast Guard would be inadmissible in Court simply because it may later become a "part of a report of a marine casualty investigation."  The absurd result of Belt Line's argument has been recognized been numerous courts, including *Goodwin v. Cockrell*, which simply affirms that a company's own narrative authored on a Form that is made publicly available by the Coast Guard is subject to the Federal Rules of Evidence like any other record.  And, notably, Belt Line's only argument against admissibility is that the CG-2692 Form is *per se* excludable under § 6308.

For the reasons stated, § 6308(a) Carver's 2692 Forms are not "reports of a marine casualty investigation" and thus § 6308 does not bar their admissibility at trial and Belt Line's Motion should be denied with prejudice.

**B.**     **The facts reported in the 2692 Forms are Admissible under Fed. R. Evid. 803(8)(A)(iii) and if admissibility is challenged, it meets the test under *Beech Aircraft*.**

Here, the general hearsay exception under  Fed. R. Evid. 803(8)(B), previously Fed. R. Evid. 803(8)(C),[3] as interpreted by *Rainey v. Beech Aircraft Corp,* and *Kennedy v. Joy Technologies* leads to the conclusion that the admissibility of the facts and factual assertions in the

---

[3] *Beech Aircraft* was decided under former Fed. R. Evid. 803(8)(C) which provided in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness ... (8) ... Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) [when used] in civil actions and proceedings ... <u>factual findings</u> resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Coast Guard 2692 Forms meet the evidentiary admission requirements in that they meet the Federal Rules of Evidence's trustworthiness requirement.  Rule 803(8) provides:

> **(8) Public Records.** A record or statement of a public office if:
>
> > **(A)** it sets out:
> >
> > > **(i)** the office's activities;
> > > **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> > > **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> >
> > **(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

As the Supreme Court has recognized, "portions of investigatory reports otherwise admissible under [former Rule 803(8)(C)] are not inadmissible merely because they state a conclusion or opinion." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (holding that portions of Judge Advocate report concerning crash of military aircraft which were labeled "opinions" and which contained the author's statement as to probable cause of the crash were not inadmissible simply because they contained conclusions or opinions and, upon determination that the conclusions were trustworthy, they were admissible under public records and reports hearsay exceptions under former Fed. R. Evid. 803(8)(c)).  The admissibility of a  public record specified in the rule is assumed as a matter of course, unless there are sufficient negative facts to indicate a lack of trustworthiness.  *Kennedy v. Joy Technologies*, 269 Fed. Appx. 302, 310 (4th Cir. 2008) (unpublished)[4] (analysis under former Fed. R. Evid. 803(8)(C)  (*citing Zues Enterprises, Inc. v. Alphin Aircraft, Inc*., 190 F.3d 238, 241 (4th Cir. 1999)).  The party opposing the admission of such a report bears the burden of establishing its unreliability.  *Kennedy*

---

[4]  The *Kennedy v. Joy Technologies* case has been attached as **Exhibit G.**

*v. Joy Technologies*, 269 Fed. Appx. at 310.  When the trustworthiness of such an investigative report has been challenged, a court should assess and weigh factors such as: (1) the timeliness of the investigation; (2) the special skill or experience of the investigators; and (3) any possible motivation problems. *Id*.  The Fourth Circuit has also identified "other factors that may, in the proper circumstances, be appropriate to such an evidentiary assessment, including "unreliability, inadequate investigation, inadequate foundation for conclusions, [and] invasion of the jury's province." *See id.* (*citing Distaff, Inc. v. Springfield Contracting Corp.,* 984 F.2d 108, 111 (4th Cir.1993)) (holding under former Rule 803(8)(C) district court erred in failing to accord a presumption of admissibility and failing to apply various factors recognized by precedent for assessing the reliability of such a report "and in presumably placing the burden on Mrs. Kennedy to establish the Reports conclusions were admissible – rather than on the moving defendants to show that they were in inadmissible).

Brian Moore testified under oath he admitted to drafting the revised 2692 Form after receiving a call from the Coast Guard:

> Q.    The entries in block 25A and block 25B, were those drafted by you?
> A.    Yes, I believe so.
> **Q.    So in 25A, the second sentence says The officer on watch, James Morrissey, was in auto pilot and didn't switch over to non-followup hand steering, but thought he did. Sir, is there any reference to being in auto pilot in either of Mr. Morrissey's statements?**
> **A.    Not in the statements I can recall, but it was during the NTSB interview with the Coast Guard on board, as well. That's when I believe Lieutenant asked me to revise it, after she heard.**
> Q.    Did you attend that interview?
> A.    Yes, sir.
> Q.    And it was aboard the vessel?
> A.    Yep.
> Q.    Like in the galley or –
> A.    In the wheelhouse.
> Q.    Oh, in the wheelhouse?
> A.    Yes, sir.

Q.     And who all was present?

A.     It was the gentleman from NTSB; and then there was three people, via Teams or Zoom, from Coast Guard sector Norfolk; and then it was individually different counsel before Clyde Co.

MR. RODGERS: For Carver?

THE WITNESS: Yes.

A.     Our Carver -- our counsel, and then the individuals being interviewed.

Q.     So Mr. Abel, an attorney in Norfolk, Virginia, was present for those interviews?

A.     Yes, sir.

Q.     And were all five crew members interviewed by the Coast Guard?

A.     I don't recall all five being interviewed. I believe they did Captain Chris -- correction.
       They did everybody who was on board. Captain Morrissey was already off, because the NTSB had arrived a couple days later, and I believe they did his via Teams or Zoom, whatever it was, separately. But I was not there for that one.

Q.     So there was a person from the National Transportation Safety Board present in person for those interviews?

A.     Yes, sir.

*See* [ECF 99], Petitioner's Memorandum of Law in Support of Motion for Summary Judgment, Statement of Undisputed Facts, ¶ 24, at Ex. 1, Moore Dep. 244:8-248:3.

Under the test applied in *Beech Aircraft* and *Joy Technologies*, both documents, but particularly the CG-2692 Form, as revised [ECF 115-3], are presumptively admissible. If challenged, and the Belt Line has not done so, the facts set forth by all Carver personnel interviewed are admissible as a trustworthy factual finding of a legally authorized investigation under Federal Rule of Evidence 803(8)(B) and an exception to the prohibition against admission of hearsay. Mr. Moore testified, as the passage above shows, that the revised 2692 Form, submitted after the interviews of Captains. Morrissey and  Miller were revised at Lt. Meghan Palomba's request to Mr. Moore to do so after hearing Mr. Morrissey's account of what occurred and were thereafter accepted by the Coast Guard as revised.  Moreover, Mr. Moore testified under oath and was questioned by counsel for the Belt Line, which is evidence as it is under oath, as to

how he came to the conclusion that the form should be amended. In this regard, Mr. Moore's testimony also authenticates the revised CG-2692 Form.

**C.    The 2692 Forms are admissible under Fed. R. Evid. 803(6).**

Under fed. R. Evid. 803(6), the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

* * *

(6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness

By its language, under  Rule 803(6), once a proponent satisfies the basic admissibility requirements, the opposing party has the burden to demonstrate untrustworthiness. If unsuccessful, the evidence will be admitted under the hearsay exceptions.

On June 19, 2024, Mr. Baldassare completed the Coast Guard 2692 Form [ECF 115-1, ECF 115-2] as instructed by Lt. Meghan Palumba, Marine Investigator, United States Coast Guard, Sector Virgina.  *See*  [ECF 99], Petitioner's Memorandum of Law in Support of Motion for Summary Judgment, Statement of Undisputed Facts,  ¶ 22 at Ex. 10, Baldassare Dep., 67:24-68:7.

On June 20, 2024, Mr. Baldassare submitted the CG-2692 form [ECF 115-1, ECF 115-2] to the Coast Guard. *See id.*

As set forth, supra, following his discussion with Lt. Palumba, on June 25, 2024, Carver General Manager Brian Moore submitted a revised Form CG-2692 and 2692A [ECF 115-3] on behalf of Carver, reporting a serious marine casual pursuant to 46 CFR 4.05-1 and 4.05-10. See [ECF 99] at SUMF, ¶ 24 and citations to the record set forth therein.

Carver's 2692 Forms created shortly after the allision and concurrently with the investigation. and submitted to the Coast Guard June 19, 2024 and June 25, 2024 [ECF 115-1, 115-2 and 115-3], respectively were created and submitted by Mr. Baldassare  and Mr. Moore as a regular part of reporting to the Coast Guard following a reportable event and other Carver business records fall presumptively within Fed. R. Evid. 803(6) and if challenged, would meet the requirements of trustworthiness and reliability set forth in the Rule.

**D.  Mate Morrissey's Testimony is admissible under Fed. R. Evid.  804(a)(2).**

The transcript of the interview of James Morrissey is admissible under Federal Rule of Evidence 804(a)(2). Under Rule 804(a)(2),  a declarant as unavailable if they refuse to testify about the subject matter of their statement despite a court order to do so. For a declarant to be considered unavailable under this rule, the court must have actually ordered them to testify, and the declarant must have persisted in their refusal to provide testimony.   On August 20, 2025, the Court granted the Claimants Belt Line and Evanston's Motio for Sanctions based on Mr. Morrissey's failure to appear for his deposition and ordered Mr. Morrissey to appear for his deposition "within fourteen days of the date of this Order at the office of counsel for Claimant."  [ECF 88, 8/20/25 Order re ECF 62 Motion for Sanctions].  Mr. Morrissey failed to do so.

For these reasons, the Court should deny the belt Line's *Motion in Limine No.* as to James Morrissey's Interview transcript, Exhibit A, released by the NTSB.

**E.      Capt. Miller's testimony is admissible under Fed. R. Evid. 804(a)(4).**

Rule 804(a)(4) provides an exception to the rule against admission of hearsay for testimony where a declarant is considered unavailable. Under Rule 804(a0(4), a declarant is unavailable if he:

> (4)      cannot be present or testify at the trial or hearing because death or a then-existing infirmity, physical illness or mental illness; . .

Captain Christopher Miller is now deceased. Any written statement that Carver provided to the Coast Guard would be admissible under Fed. R. Evid. 804(a)(4). If we were to receive a transcript or further statements, including from the NTSB, any such statement would be admissible.

**F.      The Evidence is admissible under Fed. R. Evid. 807.**

Rule 807 is "a narrow exception" to the rule against hearsay that "should be utilized only after much consideration and examination." *United States v. Cunningham*, 761 Fed. App. 203 (4th Cir. 2019) (*citing United States v. Dunford*, 148 F.3d 385, 392, 394 (4th Cir. 1998)). The Court may admit hearsay under the residual exception only upon finding that (1) the hearsay has circumstantial guarantees of trustworthiness equivalent to those of the recognized exceptions, (2) it is offered as evidence of a material fact, (3) it is more probative than any other evidence that the proponent can reasonably obtain, and (4) admitting it will best serve the purposes of the Federal Rules of Evidence and the interests of justice. Fed. R. Evid. 807(a). In determining whether the District Court abused its discretion in finding sufficient circumstantial guarantees of trustworthiness, we look to the total context in which the states were made and that render the declarant particularly worthy of belief. *United States v. Cunningham*, 761 Fed. Appx. at 206.

This report was drafted by Mr. Moore after Mr. Moore sat through the Coast Guard's investigation, updated it in consultation with the Coast Guard, and is reliable. His testimony was given in circumstances which would ensure reliability. He was questioned before a government body as to how the allision occurred and admitted his error in navigation involving his failed attempt to turn off the autopilot and switch over to Non-Follow-Up Mode with a minute or more to do so and failed to do it correctly. This is an issue, which had Mate Morrissey lied, could have placed his license at issue and would be against his interest.

Given the above, the USCG Forms [ECF 115-1, 115-2 and 115-3] are admissible as exceptions to the hearsay rule under Fed. R. Evid. 807.

**G.    The Interview Transcripts, and likely all Coast Guard records, are admissible for all purposes under the hearsay exception as public records under *Beech Aircraft* and *Joy Technologies*.**

More importantly, under Fed. R. Evid. 803(8)the transcripts of interviews, and potentially other documents to be released by the NTSB, are presumptively admissible under Fed. R. Evid. 803(8), the public records exception to hearsay. If challenged, the factual statements set forth in the interviews conducted June 25 through July 3, 2024, 10 days after the incident, nonetheless meet the test outline by *Beech Aircraft* and the Fourth Circuit in *Joy Technologies*. The Coast Guard has investigated the incident for more than a year, beginning with the interviews. Lt. Palomba and her colleagues, all of whom participated in the interviews, possessed skills as mariners and Coast Guard officers, and the Belt Line has not suggested any ""motivational problems" relating to either the investigation or the transcripts. The attorneys for Carver and the Belt Line were present for the interviews. Under *Beech Aircraft* and *Kennedy v. Joy Technologies*, the facts set forth in the interview transcripts are presumptively admissible, and if challenged, meet

14

the requirements of truthfulness, a public record and should be admissible for all purposes under Fed. R. Evid. 803(8) the public records exception to hearsay.

**H.    The Interview Transcripts May Be Admissible for Impeachment under *Holzhauer***

In addition to a company's own documents as falling outside the reach of § 6308, transcripts of interviews of a litigant or its representatives or other witnesses may be admissible for impeachment.  In *Holzhauer v. Golden Gate Bridge Highway & Transport*, Dist., 745 Fed. Appx. 285, 267-68 (9th Cir. 2018) (unpublished)[5] the Ninth Circuit Court of Appeals held that the District Court did not err in admitting Coast Guard interview summary of Captain's testimony about the incident admissible at trial for impeachment, as the summary <u>did not contain the Coast Guard's findings of fact or conclusions</u>, but merely documented what the captain said when asked questions about the incident. This case involved a lawsuit for Limitation of Liability involved a marine accident involving Plaintiff's speedboat and a passenger ferry in San Francisco Bay owned by the defendant. At the bench trial, the District Court relied on an expert report and the Coast Guard's interview summary of the ferry's captain, which the defendant argued was an abuse of discretion in interpreting 46 U.S.C. § 6308(a) which should result in a new trial.

The Ninth Circuit Court of Appeals affirmed the trial court's finding that the interview summary fell outside the scope of  § 6308(a), reasoning that the summary did not contain the Coast Guard's findings of fact or conclusions and was not being used directly to "fix civil or criminal responsibility." 745 Fed. Appx. at 268.  Importantly, the Court also found that the summary constituted an exception to inadmissible hearsay as public record exception under Federal Rule of Evidence 803(8), as it set forth factual findings of a legally authorized investigation by the Coast Guard and the opponent (the captain, an employee of the defendant Golden Gate Bridge) did not

---

[5] The *Holzhauer* case has been attached as **Exhibit H.**

show lack of trustworthiness. 745 Fed. Appx. at 268.  In addition, the Court found that the summary qualified as an exception to the hearsay rule as it was a statement of a party opponent. *Id*. (*citing* Fed. R. Evid. 801(d)). *See also Goodwin v. Cockrell*, No. 4:13-cv-199-F, 2014 WL 6630105 (E.D. N.C.) (holding that written statement and diagram do not constitute "part of a report of a marine casualty investigation within the meaning of 6308(a)); *Complaint of Danos and Curole Marine Contractors, Inc*., 278 F. Supp. 2d 783, 785 (E.D. La. 2003) (holding that photos taken by Coast Guard personnel were admissible as they "do not provided findings of fact, opinions, recommendations, deliberations, nor conclusions," but rather, merely illustrated the condition of the objects depicted the condition of the objected depicted in the photos at the time the photos were taken.")

First, the transcripts of interviews of Carver crew and employees are Carver's account of the events leading to the allision, and do not contain the Coast Guard or NTBS's impressions, conclusions or findings of fact, and should therefore, be available for use to impeach under *Holzhauer.*

## I.    Carver's Expert Witnesses May Rely on Otherwise Inadmissible Information.

Federal Rule of Evidence 703 explicitly states that experts may rely on inadmissible evidence in forming their opinions and may disclose that inadmissible evidence to a jury in certain circumstances. Fed. R. Evid. 703. To the extent that Carver's experts, including but not limited to Captain Sam Stephenson, relied on the 2692 Forms, transcripts and any other Coast Guard investigative materials in forming their opinions, they may rely on that evidence—regardless of its independent admissibility—at trial. In a bench trial, as the Supreme Court has explained, the Federal Rules place no restriction on the revelation of such information to the fact finder. When the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason

16

for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose. *Williams v. Illinois*, 567 U.S. 50, 69 (2012) (plurality opinion) (emphasis in original) (abrogated on other grounds by *Smith v. Arizona*, 144 S. Ct. 1785 (2024)). Capt. Stephenson may testify, for example, that Capt. Morrissey's transcript is evidence that the cause of the allision was caused solely by a navigational error.   At a bench trial, there is minimal risk that this Court will misuse inadmissible information on which experts rely.

**J.      The Belt Line's Motion is Premature and Overbroad.**

The Belt Line's Motion to Exclude broadly encompasses multiple categories of documents that may not even exist and have not yet been released by the Coast Goard or NTSB. Plaintiffs' motion to exclude under —6308(a) is premature and overbroad.  In advance of Carver seeking to introduce any of these documents into evidence, including whether Carver can establish their admissibility, the Belt Line asks this Court to wholesale exclude – based on speculation "[a]ny introduction into evidence of other reports, records, documents, witness interviews, notes, or materials generated or maintained by the Coast Guard in its investigation of the subject allision;. . . .".  The Coast Guard documents are valuable, reliable, and trustworthy documents which include factual investigations into the cause of the allision, among other evidence. Such evidence may very likely be admissible public records under Fed. Rule of Evidence 803(8)(C).  It is important that the Court assess their admissibility as the evidence is introduced, giving Carver the opportunity to lay the foundation for the documents' admissibility and relevant.  That is particularly true in the bench trial setting, where the Court can evaluate whether the document or evidence is offered for the truth of the matter asserted, as well as evaluate the admissibility of relevant exceptions to the rule, such as Rule  803(8)(C).  For these reasons, including the analyses raised supra, the Court

should reserve judgment and evaluate any materials or evidence in context, rather than deciding their admissibility now.

The Court should reject the Belt Line's request to prejudge the  admissibility of unreleased Coast Guard records on this premature motion.

## <u>CONCLUSION</u>

For the foregoing reasons, Carver requests that the Court:

(1)    Deny the Belt Line's Motion in Limine No. 1 and find that the USCG Forms and interview transcripts currently released by the NTSB admissible under 46 U.S.C. 46 U.S.C. 6308(a) and/or the exception to hearsay, and/or as premature; and

(2)     Defer ruling on the admissibility as to potentially other records to be released by the NTSB until such time as the records are offered into evidence, and

(3)    Award Carver all other just relief.

Respectfully submitted,

Dated: October 7, 2025

**CLYDE & CO US LLP**

By: /s/ *Harold L. Cohen*
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson

Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
       dawn.johnson@clydeco.us
       Siobhan.murphy@clydeco.us

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
 mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

*/s/ Harold L. Cohen*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem,* ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: **2:24-cv-00490** |

**INDEX OF EXHIBITS CITED IN**
**CARVER'S MEMORANDUM IN OPPOSITION**
**TO THE BELT LINE'S MOTION IN LIMINE NO. 1**

| EXHIBIT NO. | DESCRIPTION |
|---|---|
| EXHIBIT A | Interview Transcript of James Morrissey, taken June 26, 2024 |
| EXHIBIT B | Interview Transcript of Sharif Porter, taken July 3, 2024 |
| EXHIBIT C | Interview Transcript of Jarques Bass Morrissey, taken June 25, 2024 |
| EXHIBIT D | Interview Transcript of Jason McGrath, taken June 25, 2024 |
| EXHIBIT E | Interview Transcript of Brian Moore, taken July 18, 2024 |
| EXHIBIT F | Interview Transcript of Lenoard Baldassare, taken July 3, 2024 |
| EXHIBIT G | *Kennedy v. Joy Technologies, Inc.*, 269 Fed. Appx. 302 (4th Cir. 2008) |
| EXHIBIT H | *Holzhauer v. Golden Gate Bridge Highway and Transp Dist.*, 745 Fed. Appx. 265 (9th Cir. 2018) |