# Exhibit G

Case 2:24-cv-00490-MSD-LRL    Document 139-7    Filed 10/07/25    Page 2 of 10 PageID# 4765

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

269 Fed.Appx. 302
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S.Ct. of Appeals 4th Cir. Rule 32.1.
United States Court of Appeals, Fourth Circuit.

Mollie L. KENNEDY, Administratrix of the Estate of
Gregory R. Kennedy, deceased, Plaintiff—Appellant,

v.

JOY TECHNOLOGIES, INCORPORATED;
Matric Limited, Defendants—Appellees.

No. 06–2307
|
Argued: Dec. 5, 2007.
|
Decided: March 12, 2008.

**Synopsis**
**Background:** Administratrix of estate of coal miner brought products liability suit against manufacturer of continuous miner machine that had crushed miner, causing his death, and against manufacturer of component remote control unit. The United States District Court for the Western District of Virginia, James P. Jones, Chief Judge, 455 F.Supp.2d 522, entered summary judgment for manufacturers. Administratrix appealed.

**Holdings:** The Court of Appeals held that:

[1] District Court abused its discretion in concluding that Mine Safety and Health Administration (MSHA) report did not fit within hearsay exception for factual findings resulting from investigation authorized by law, but

[2] District Court did not abuse its discretion in excluding opinions of expert proffered by administratrix.

Affirmed in part, reversed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (2)

[1] **Summary Judgment** Documents and documentary evidence

District court abused its discretion, at summary judgment stage of products liability action against manufacturers of continuous miner machine and machine's component remote control unit, in concluding that Mine Safety and Health Administration (MSHA) report, indicating that miner's accident was caused by debris in operating lever socket, was speculative, and thus did not fit within hearsay exception for factual findings resulting from investigation authorized by law, in that court failed to apply presumption of admissibility to report, failed to assess reliability of report's conclusion, and presumably placed burden on administratrix of miner's estate to establish that report's conclusions were admissible. Fed.Rules Evid.Rule 803(8)(C), 28 U.S.C.A.; Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

16 Cases that cite this headnote

[2] **Summary Judgment** Conclusions

District court did not abuse its discretion, at summary judgment stage of products liability action against manufacturers of continuous miner machine and machine's component remote control unit, in excluding opinions of expert proffered by administratrix of miner's estate, where expert's report helpfully summarized evidence of record, but did not do so with any specific scientific gloss or expertise. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.; Fed.Rules Evid.Rule 702, 28 U.S.C.A.

11 Cases that cite this headnote

**\*303** Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. James P. Jones, Chief District Judge. (2:05–cv–00030–JPJ).

Case 2:24-cv-00490-MSD-LRL    Document 139-7    Filed 10/07/25    Page 3 of 10 PageID# 4766

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

**Attorneys and Law Firms**

ARGUED: James J. O'Keeffe, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellant. Frank Kenneth Friedman, Woods Rogers, P.L.C., Roanoke, Virginia; Patrick D. Blake, Willcox & Savage, Norfolk, Virginia, for Appellees. ON BRIEF: Monica Taylor Monday, Charles H. Smith, III, Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Appellant. Mark D. Loftis, Woods Rogers, P.L.C., Roanoke, Virginia, for Appellee Joy Technologies, Incorporated.

Before WILKINSON and KING, Circuit Judges, and HENRY F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed in part, reversed in part, vacated in part, and remanded by unpublished PER CURIAM opinion.

Unpublished opinions are not binding precedent in this circuit.

**Opinion**

PER CURIAM:

This appeal arises from a lawsuit relating to a 2003 mining accident in southwestern Virginia, in which coal miner Gregory Kennedy was fatally crushed by a continuous mining machine.[1] Mollie Kennedy, the administratrix of her husband's estate, appeals from the district court's award of summary judgment to defendants Joy Technologies, Incorporated, and Matric Limited. *See Kennedy v. Joy Tech., Inc.,* 455 F.Supp.2d 522 (2006) (the "Opinion").[2] Mrs. Kennedy contends on appeal that the court erred in excluding from evidence a portion of the accident investigation report made by the Mine Safety and Health Administration concerning her husband's death (the "MSHA Report"), and in excluding the opinions of her causation expert. **\*304**[3] As explained below, we affirm the court's ruling on the expert, reverse its ruling on the MSHA Report, vacate the summary judgment award, and remand.

I.

A.

At approximately 10 a.m. on October 22, 2003, Gregory Kennedy, a forty-one-year-old coal miner, was operating a continuous miner (the "mining machine") with a remote control device (the "remote controller") in an underground mining operation in Paramount Coal Company's No. 7 mine, in Dickenson County, Virginia.[4] Although Joy sold the remote controller under its name as a component of the mining machine, Matric had manufactured the remote controller under contract with Joy. The remote controller contained two levers, each of which controlled one of the mining machine's two tracks, generally referred to as "trams," on its right and left sides. By utilizing the remote controller's two levers, the operator controlled the trams and thus the direction of the mining machine. In his work, Mr. Kennedy walked alongside the mining machine during its operations and wore the remote controller on a harness strapped to his body.

On the morning of October 22, 2003, Mr. Kennedy was engaged in a process called "retreat" mining (also known as "pillaring"), and was backing the mining machine out of a cut it had made in a pillar of coal.[5] Mr. Kennedy backed the mining machine through an intersection of two mine entries (underground tunnels within a coal mine), preparing to make the next cut into the pillar. At the time, two other coal miners, Anthony Blackburn and Willie Mullins, were nearby hanging a ventilation curtain, with their backs to Mr. Kennedy. After noticing a change in the sound of the mining machine, Blackburn turned and observed that Mr. Kennedy was no longer moving. He immediately illuminated Mr. Kennedy and the mining machine with a light, and saw that Kennedy was slumped over with blood flowing from his nose and mouth. Blackburn promptly approached Mr. Kennedy and discovered that he was stuck between the mining machine and the corner of the coal rib (the wall of the mine) around which the machine had been maneuvering. At that time, Mr. Kennedy's back was against the coal rib and the mining machine was pressed against his abdomen. Although the mining machine's left tram was spinning, Blackburn observed that the levers on the remote controller were not depressed.

Blackburn promptly hit the emergency stop button on the remote controller, de-energizing the mining machine and stopping the left tram from spinning. While other miners hurriedly sought emergency assistance, Blackburn tried to move the mining machine away from Mr. Kennedy's body by using the remote controller. Although **\*305** Blackburn cut the remote controller from Mr. Kennedy's body, he was unable to get it to function. Finally, after removing the

Case 2:24-cv-00490-MSD-LRL    Document 139-7    Filed 10/07/25    Page 4 of 10 PageID# 4767

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

power cord from another unit and attaching it to the remote controller, Blackburn was able to move the machine away from Mr. Kennedy's body. Mr. Kennedy was then airlifted to the emergency room of St. Mary's Hospital in Norton, Virginia, where he was declared dead at 10:55 a.m.

The state agency responsible for mine safety in Virginia, the Commonwealth's Department of Mines, Minerals, and Energy ("DMME"), was notified of Mr. Kennedy's fatal accident within twenty minutes. A few minutes later, MSHA also received such notification, and representatives of both agencies arrived at the coal mine about mid-day to begin a joint investigation. The MSHA investigatory team included an electrical engineer, a mining engineer, a mine inspection supervisor, and a mine safety and health inspector. The MSHA team, working with DMME, collected relevant information, questioned company personnel, and examined and photographed the accident scene, beginning their work within two or three hours of the accident. The investigation proceeded thereafter over several months with an expanded investigative team, including, inter alia, the district manager and assistant district manager of MSHA's regional office. From this effort, the MSHA team developed precise drawings of the accident scene. The team conducted extensive interviews with those having knowledge of the accident and tested the mining machine to assess whether it had been functioning properly at the time of the fatality. It also tested the remote controller, along with its various power sources and components, in a laboratory setting.

MSHA's investigative efforts culminated in its detailed MSHA Report, which fully described the accident investigation and included appendices on MSHA's examination and testing of the mining machine and remote controller. After describing Mr. Kennedy's activities prior to the accident, the MSHA Report detailed the tragic event, including the following:

> Kennedy was located close to the inby, left corner of the outby block when the machine pivoted to the right. He was crushed between the machine's motor compartment of the ripper head and the coal rib. He was standing with his back against the coal rib and the machine against his abdomen. The bottom of the remote controller was against the right portion of Kennedy's abdomen. The controls of the remote controller were not depressed by any means. Neither his hands nor any other objects were on the controls. The left side track on the machine was still spinning in the forward direction.

J.A. 627. The MSHA Report observed that there were no eye witnesses to the accident, "[n]o one stated the continuous mining machine would make unexpected movements prior to the accident," and "[n]o one stated Kennedy had been previously observed within the turning radius of the machine." *Id.* at 630. Importantly, the "Overview" section of the Report concluded that:

> The most likely explanation for this continued operation is a build up of debris in the left side track operating lever's socket, located on the remote controller, which prevented the lever from returning to its neutral position.

*Id.* at 623. The MSHA Report listed "causal factors" in its "Root Cause Analysis" section, concluding that the "primary cause was the victim's position within the turning radius of the continuous mining **\*306** machine while it was being trammed." *Id.* at 632. The Report also specified another "causal factor," concluding that "[t]he remote control transmitter could have caused the left tram drive to continue after the machine operator released the tram lever due to debris lodged between the tram lever and the plate." *Id.* at 633. In its "Conclusion" section, the Report determined, in language similar to that used in its Overview, that:

> The left side track of the machine apparently continued to move due to a fouled tram lever on the remote controller. Debris accumulated in the lever's socket prevented the lever from returning to its neutral position.

*Id.* In its Appendix C, the MSHA Report indicated that "the socket for the left tram lever was nearly full of dust and dirt, restricting its free travel." *Id.* at 639.[6]

B.

On July 7, 2005, Mrs. Kennedy, for her husband's estate, filed suit against the defendants in the Western District of Virginia, asserting that his death was caused by a defective mining machine and its associated defective remote controller. Specifically, Mrs. Kennedy alleged two negligence claims plus a products liability claim, contending that the defendants had negligently designed the mining machine and remote controller and negligently failed to warn of their dangers. In her products liability claim, Mrs. Kennedy contended that the defendants had breached implied warranties of merchantability and fitness for a particular purpose because the mining machine and remote controller were defectively designed, manufactured, and marketed. These allegations are spelled out in the Amended Complaint filed by Mrs. Kennedy on September 29, 2005, which sought both compensatory and punitive damages. On August 11, 2006, Mrs. Kennedy abandoned her negligence claims.

On September 5, 2006, the defendants moved for summary judgment on the products liability claim, asserting that Mrs. Kennedy was unable to prove that their products were defective. Defendant Matric also contended that Mrs. Kennedy could not prove that any defect in its remote controller caused the death of Mr. Kennedy. In support of their contentions, the defendants argued alternate causes of the fatal accident, through expert testimony and other evidence —first, that Mr. Kennedy had committed user error, based in part on his alleged position within the "red zone," or turning radius of the mining machine, at the time of the accident; and, second, that Paramount Coal had made unauthorized alterations to the remote controller that allowed excessive dust and debris to accumulate in its tram levers.

When they sought summary judgment, the defendants also moved to exclude the evidence of Mrs. Kennedy's expert witnesses, Dr. Thomas Butler and Dr. Farhad Booeshaghi. In response to the exclusion motion, Mrs. Kennedy withdrew Dr. Booeshaghi as an expert, but opposed the motion to exclude Dr. Butler. In opposition to the defendants' summary judgment and exclusion motions, Mrs. Kennedy filed, inter alia, the expert report and testimony of Dr. Butler, the MSHA Report, and various documents illustrating the problems that defendant Joy had experienced earlier with debris accumulation in its remote controllers **\*307** and the resulting unplanned movements of its mining machines.[7]

The district court conducted a motions hearing on October 4, 2006, and issued its Opinion the next day, granting summary judgment to the defendants and excluding the opinions of Dr. Butler. By its Opinion, the court concluded that "[a]fter a careful review of the summary judgment record, ... the plaintiff is unable to prove causation in this case, an essential element of her claim of breach of warranty." Opinion 5. The court went on to relate that,

> [w]hile it is certainly possible that this tragic accident was caused by the excessive accumulation of coal fines and debris in the control sockets, the evidence is equally strong that the unplanned movement of the left-hand tram resulted from other causes—for example, an electronic malfunction (as suggested by one of the plaintiff's former experts) or an inadvertent error on the operator's part (as suggested by a defense expert).

*Id.* After observing that, in a products liability action, proof of causation must ordinarily be supported by expert testimony, the court considered the issue of whether the opinions of Dr. Butler were admissible. *Id.* In so doing, the court recognized that Dr. Butler had "opine[d] in his report that the accident was caused by accumulated debris in a tram control lever socket," but noted that Dr. Butler "did no testing," failed to "perform [ ] any calculations regarding the accident and admitted that there could be alternative explanations," and that his testimony relied primarily on the MSHA Report. Accordingly, the court granted the defendants' "motion to exclude Butler's testimony on this point." *Id.* at 6.[8]

The district court—acting sua sponte[9]—then determined that "the MSHA report's opinion that 'the most likely explanation' for the accident is debris in the lever socket of the 3–X remote [controller] is likewise entirely speculative and thus inadmissible under [Federal Rule of Evidence] 803(8)(C)." *Id.* at 7.[10] Accordingly, the court concluded that "the

Case 2:24-cv-00490-MSD-LRL Document 139-7 Filed 10/07/25 Page 6 of 10 PageID# 4769

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

plaintiff is unable to prove an essential element of her ***308** case—causation—and thus her suit must fail." *Id.* In so ruling, the court pointed out that defendant Joy "did not directly assert insufficient causation evidence as a ground" for summary judgment, but that defendant Matric had argued this proposition. The court thus observed that its ruling would not come as a surprise to Mrs. Kennedy. *Id.*

Two weeks later, on October 20, 2006, Mrs. Kennedy sought relief under Federal Rule of Civil Procedure 59(e), requesting the district court to reconsider its summary judgment award to the defendants on the products liability claim. The court denied reconsideration on November 13, 2006, and Mrs. Kennedy filed her notice of appeal on December 12, 2006. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's award of summary judgment, viewing the facts and all inferences drawn properly therefrom in the light most favorable to the nonmoving party. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.,* 377 F.3d 408, 418 (4th Cir.2004). An award of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In opposing a summary judgment motion, the nonmoving party is entitled to have the "credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him." *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial. *See Maryland Highways Contractors Ass'n, Inc. v. State of Maryland,* 933 F.2d 1246, 1251 (4th Cir.1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment").

A district court possesses broad latitude in ruling on the admissibility of evidence, including expert opinions, and we are unable to overturn evidentiary rulings with respect to relevance and reliability absent a finding that the presiding court abused its discretion. *See GE v. Joiner,* 522 U.S. 136, 141–42, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). A district court has abused its discretion if its evidentiary ruling was guided by erroneous legal principles, or rested upon a clearly erroneous factual finding. *See Westberry v. Gislaved Gummi, A.B.,* 178 F.3d 257, 261 (4th Cir.1999).

III.

A.

**[1]** In considering this appeal, we first assess Mrs. Kennedy's contention that the district court abused its discretion in excluding the MSHA Report's conclusion on the cause of her husband's fatal accident, as being "entirely speculative and thus inadmissible under [Federal Rule of Evidence] 803(8)(C)." Opinion 7. As noted, a team of MSHA officials and investigators arrived on the accident scene shortly after it occurred on October 22, 2003. The MSHA team, comprised of engineers, safety inspectors, and other experts, worked jointly with the DMME to secure the relevant information, question witnesses, and examine and photograph the accident scene, beginning their effort within a few ***309** hours of the accident. During the investigation, MSHA tested the mining machine and remote controller, seeking to ascertain whether they had been functioning properly at the time of the fatality.

When the MSHA Report was finalized, its "Overview" section concluded that:

> The most likely explanation for this continued operation is a build up of debris in the left side track operating lever's socket, located on the remote controller, which prevented the lever from returning to its neutral position.

J.A. 623. In its summary judgment ruling, however, the Opinion determined that "the MSHA report's opinion that 'the most likely explanation' for the accident is debris in the lever socket of the 3–X remote [controller] is likewise entirely speculative and thus inadmissible under Rule 803(8)(C)." Opinion 7. Mrs. Kennedy challenges this adverse admissibility determination, contending that consideration of

Case 2:24-cv-00490-MSD-LRL     Document 139-7     Filed 10/07/25     Page 7 of 10 PageID# 4770

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

this aspect of the MSHA Report is proper with respect to the summary judgment issue, and that such consideration will compel the denial of summary judgment to the defendants.

Mrs. Kennedy's appellate contention on the admissibility of the MSHA Report's conclusion implicates the provisions of Federal Rule of Evidence 803(8)(C). That hearsay exception specifically addresses the use in evidence of "factual findings resulting from an investigation made pursuant to authority granted by law." Fed.R.Evid. 803(8)(C).[11] It specifies that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness ... (8) ... Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) [when used] in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

*Id.*

Under Rule 803(8)(C), the evidentiary admissibility of public records and reports is deemed to be presumed, based on the policy determination that such admissibility is warranted "because of the reliability of the public agencies usually conducting the investigation, and their lack of motive for conducting the studies other than to inform the public fairly and adequately." *Ellis v. Int'l Playtex, Inc.,* 745 F.2d 292, 300 (4th Cir.1984) (internal quotation marks omitted). As the Supreme Court has recognized, "portions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or opinion." *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). When the trustworthiness of such an investigative report has been challenged, a court should assess and weigh factors such as: (1) the timeliness of the investigation; (2) the special skill or experience of the investigators; and (3) any possible motivation problems. *Ellis,* 745 F.2d at 300–01. We have also identified other factors that may, in the proper circumstances, be appropriate to such an evidentiary assessment, including "unreliability, inadequate investigation, inadequate foundation for conclusions, [and] invasion **310** of the jury's province." *Distaff, Inc. v. Springfield Contracting Corp.,* 984 F.2d 108, 111 (4th Cir.1993).

In light of the foregoing, the district court necessarily abused its discretion in excluding the MSHA Report's conclusion from its summary judgment assessment. First and foremost, the court failed to recognize and apply a presumption of admissibility to the MSHA Report. As we recognized in *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.,* "[t]he admissibility of a public record specified in the rule is assumed as a matter of course, unless there are sufficient negative factors to indicate a lack of trustworthiness." 190 F.3d 238, 241 (4th Cir.1999) (internal citations omitted). Furthermore, the party opposing the admission of such a report bears the burden of establishing its unreliability. *Ellis,* 745 F.2d at 301. Thus, Rule 803(8)(C) "is not a rule of exclusion, but rather is a rule of admissibility," so long as the proffered report satisfies the requirements of the rule. *Zeus,* 190 F.3d at 241.

In this situation, the district court excluded the MSHA Report's conclusion from its summary judgment assessment without identifying or explaining any "negative factors [that] indicate a lack of trustworthiness," sufficient to overcome the presumption of admissibility. *Id.* at 241. Although the court observed that the Report's conclusion was speculative, it failed to identify any deficiencies in the MSHA investigation or in MSHA's testing on the mining machine and remote controller. As the Supreme Court recognized in *Beech Aircraft,* if an investigatory report is otherwise admissible under Rule 803(8)(C), portions of that report are not rendered inadmissible simply because they state a conclusion or opinion. 488 U.S. at 170, 109 S.Ct. 439. Accordingly, the rule of presumptive admissibility created by Rule 803(8)(C) was applicable to both the data and the conclusions spelled out in the MSHA Report.

Moreover, the district court failed to assess the reliability of the MSHA report's conclusion by use of the various factors recognized by our precedent. And, these factors plainly weighed in favor of the admissibility of the Report, i.e., —MSHA had investigated the fatal accident over several months, beginning immediately after it occurred; the MSHA investigators possessed special skills and experience; and the defendants have not suggested any "motivational problems" relating to either the investigation or the Report. *Ellis,* 745 F.2d at 300–01 (determining that court should assess

Case 2:24-cv-00490-MSD-LRL Document 139-7 Filed 10/07/25 Page 8 of 10 PageID# 4771

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

admissibility of investigatory report by examining timeliness of investigation, special skill or experience of officials, and possible motivation problems).

Mrs. Kennedy also emphasizes on appeal that the court should not have ruled sua sponte on the admissibility of the MSHA Report's conclusion. She argues that, despite extensive briefing on the summary judgment issues, the defendants had never challenged the admissibility of the Report. As a result, Mrs. Kennedy relied on the Report's unchallenged and unassailed contents as being admissible in their entirety, and she contends that the Report was central to her opposition to the defendants' summary judgment request. [12] **\*311** Although a trial court possesses broad discretion in addressing evidentiary issues in any pending case, the defendants bore the burden of proof on this issue, and they raised no "negative factors to indicate a lack of trustworthiness" of the Report. *Zeus,* 190 F.3d at 241; *see also Ellis,* 745 F.2d at 301 (concluding that "burden is on the party opposing admission to demonstrate that the report is not reliable" and determining that this is so because "it is far more equitable to place that burden on the party seeking to demonstrate why a time tested and carefully considered presumption is not appropriate").

In these circumstances, the district court erred, as a matter of law, in failing to accord a presumption of admissibility to the conclusions of the MSHA Report. It also erred in failing to apply the various factors recognized by our precedent for assessing the reliability of such a report, and in presumably placing the burden on Mrs. Kennedy to establish that the Report's conclusions were admissible —rather than on the moving defendants to show they were inadmissible. Accordingly, the district court abused its discretion in excluding the MSHA Report's conclusion from its summary judgment consideration. [13] We thus reverse the court's ruling as to the MSHA Report's conclusion. [14]

B.

 **[2]** Finally, Mrs. Kennedy asserts that the district court erred in excluding her proffered expert, Dr. Thomas Butler. According to Mrs. Kennedy, the court abused its discretion when it excluded Dr. Butler's opinions, premised on its determination that Butler had failed to perform any independent testing, and relied solely on the MSHA Report. The defendants, in contrast, contend that Butler's qualifications were highly questionable and that he based his opinion on a single line in the MSHA report's "Overview." After acknowledging that Dr. Butler had opined that the accident was caused by accumulated debris in a tram control lever socket, the court determined that "Dr. Butler's deposition, part of the summary judgment record, clearly shows that this opinion is mere supposition on his part, based primarily on his reading of the report of the investigation of the accident by [MSHA]." Opinion 6. Because "Dr. Butler did no testing nor performed any calculations regarding the accident and admitted that there could be alternative explanations for the accident that were beyond his expertise," the court excluded Dr. Butler's testimony "on this point." *Id.*

We review a district court's exclusion of expert testimony for abuse of discretion, **\*312** and we do "not overturn *Daubert* evidentiary rulings with respect to relevance and reliability absent an abuse of discretion." *Bryte v. Am. Household, Inc.,* 429 F.3d 469, 475 (4th Cir.2005) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). A district court is afforded "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The rules of evidence provide that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. And, as the Supreme Court has explained, "[t]he trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786.

Dr. Butler's report indicates that he was "asked to review the available documents and other materials and to determine, if possible, the cause of the accident." J.A. 795. The documents and materials that Dr. Butler reviewed in the preparation of his report included: the complaint, answer, and certain other pleadings; photographs and videotapes of the scene of the accident; the DMME report, the MSHA Report and data; audio cassettes of interviews with those who witnessed relevant events on October 22, 2003; documents produced by Joy; and deposition testimony. Although Dr. Butler's report provides a helpful summary of the deposition testimony, the MSHA Report, and the documents produced by Joy, it does not do so with any specific scientific gloss or expertise.

Case 2:24-cv-00490-MSD-LRL   Document 139-7   Filed 10/07/25   Page 9 of 10 PageID# 4772

Kennedy v. Joy Technologies, Inc., 269 Fed.Appx. 302 (2008)
75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

Furthermore, most of the conclusions of his report were apparently adopted from the MSHA Report.

The Supreme Court's decisions in *Daubert* and *Kumho Tire,* read together, mandate the trial courts to serve as gatekeepers on expert evidence, and to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert,* 509 U.S. at 589, 113 S.Ct. 2786; *see also Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167. In this case, Dr. Butler's report does not demonstrate any particular scientific expertise that can be assessed for reliability or that would ultimately assist the finder of fact. The Report merely summarizes the evidence of record, without providing any specialized analysis to support its conclusions.

In according the district court the deference to which its challenged ruling is entitled, we are therefore unable to disturb its exclusion of Dr. Butler's opinions. We thus affirm that aspect of this appeal, but authorize the court to revisit it on remand if it sees fit so to do—in light of this opinion.

IV.

Pursuant to the foregoing, we affirm the district court's ruling on the expert witness, reverse its ruling on the MSHA Report, vacate the summary judgment award, and remand for such further proceedings as may be appropriate.

*AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, AND REMANDED.*

**All Citations**

269 Fed.Appx. 302, 75 Fed. R. Evid. Serv. 1173, Prod.Liab.Rep. (CCH) P 17,959

---

**Footnotes**

1   A continuous miner is a piece of mining equipment that cuts coal directly from a coal seam, replacing many conventional mining tasks such as drilling and blasting. *Consol. Coal v. Marshall,* 663 F.2d 1211, 1213 n. 1 (3d Cir.1981).

2   The Opinion can be found at J.A. 1236–43. (Citations herein to "J.A. ———" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

3   Mrs. Kennedy also contends on appeal that the award of summary judgment to the defendants resulted from an impermissible weighing of the causation evidence, i.e., that the court failed to view the evidence in the light most favorable to her, as the nonmoving party. For the reasons discussed *infra* note 14, we need not reach this contention.

4   The facts underlying this appeal are presented in the light most favorable to Mrs. Kennedy, as the nonmoving party with respect to the summary judgment motion. *See Seabulk Offshore, Ltd. v. Am. Home Assur. Co.,* 377 F.3d 408, 418 (4th Cir.2004).

5   "Pillar" or "retreat" mining is the process by which a coal mining operation works "back from a remote portion of the mine toward the entrance and permit[s] the roof to fall in as the pillars of coal supporting it [are] removed." *Alsted Coal Co. v. Yoke,* 200 F.2d 766, 767 (4th Cir.1952).

6   The Report also related that the MSHA investigation team had learned of a subsequent incident that occurred six months after Mr. Kennedy's fatal accident. In that incident, the left side tram of the same mining machine continued to operate after both tram levers on a replacement remote controller had been released, causing the machine to slew to the right.

7   At the request of MSHA, and after receiving complaints that remote controllers were sticking because of debris, Joy made a series of design revisions to its remote controllers. In connection with a recall of its remote

controllers—necessary to install the mandated revisions—Joy warned its customers to "[p]lease remember that unplanned machine movement may also occur due to sticking or damaged switches." J.A. 974.

8   It is unclear whether the court excluded all of Dr. Butler's opinions, or only his conclusion that the accident was caused by accumulated debris in the remote controller's lever socket. For the purposes of our analysis, we assume that all of Dr. Butler's proposed opinions were excluded.

9   The district court raised the issue of admissibility of the MSHA Report at the motions hearing, asking Mrs. Kennedy's counsel, "does the plaintiff contend that the MSHA report, including its finding that you read to me, is admissible?" J.A. 1232. After Mrs. Kennedy's counsel responded in the affirmative, the court asked the defendants for their position. Not having previously raised an issue concerning the admissibility of the Report, the defendants simply responded that, if the court intended to admit the conclusions of the MSHA Report, they must meet evidentiary standards of reliability. From this record, it is clear that the defendants had not contemplated the possibility that the MSHA Report's conclusions might be deemed inadmissible.

10  The Opinion seems to indicate that only the "MSHA report's opinion"—as opposed to the entire Report—was excluded. Opinion 7. Because the parties share this understanding, we assume that the district court considered the MSHA Report, save the Report's conclusion in its "Overview" section, that the "most likely explanation for this continued operation is a build up of debris in the left side track operating lever's socket." J.A. 623.

11  MSHA's investigation and Report on Mr. Kennedy's fatal accident were made pursuant to authority granted by law. *See* 30 U.S.C. § 813(a) (requiring authorized representatives of Secretary of Labor (MSHA) to make frequent inspections and investigations of mines to determine, inter alia, causes of accidents); 30 C.F.R. § 50.1 (describing MSHA's authority to "investigate, and to obtain and utilize information pertaining to, accidents, injuries, and illnesses occurring or originating in mines").

12  On appeal, the defendants now seek to raise issues on the trustworthiness of the MSHA Report. Specifically, they contend that the Report was "rife with contradictions." Br. of Appellees 46. Their contention in this regard is premised on the fact that portions of the Report conclude that a stuck switch could have caused the accident, whereas other portions are more certain of this result. The defendants now argue that the Report is unreliable because it does not indicate whether the investigators were qualified or whether they ruled out operator error as a possible cause, and because the Report conflicts with the DMME's conclusion. The defendants, of course, should have presented these contentions in the district court, rather than in this appeal.

13  We note that evidence otherwise admissible under Rule 803(8)(C) remains subject to other pertinent evidentiary limitations, such as those in Rules 402 and 403. *See* Fed.R.Evid. 402 (providing for exclusion of evidence which is not relevant); Fed.R.Evid. 403 (providing for exclusion of relevant evidence if probative value is outweighed by danger of unfair prejudice, confusion, or delay).

14  In light of our disposition of the MSHA Report issue, we need not address Mrs. Kennedy's contention that the district court erroneously awarded summary judgment to the defendants after weighing the evidence on causation and determining that it was "equally strong" on both sides. Opinion 5. On remand, the evidence of causation should be revisited and include the MSHA Report's conclusion. We note, however, our concern with the apparent consideration of material initially presented by Mrs. Kennedy's withdrawn expert witness, and observe that she is entitled to have her evidence viewed in the proper light. *See, e.g., Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979).

---

**End of Document**   © 2025 Thomson Reuters. No claim to original U.S. Government Works.