IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S OPPOSITION TO JOINT MOTION TO DISMISS WITH PREJUDICE**

Claimant/Respondent Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") opposes the Joint Motion to Dismiss with Prejudice filed by Evanston Insurance Company ("Evanston") and Coeymans Marine Towing LLC d/b/a Carver Marine Towing ("Carver") (ECF 132 & 133) as follows:

**Introduction**

This case arises out of an allision on June 15, 2024 in which Carver's tug, the M/T MACKENZIE ROSE, pushed a 200-foot loaded barge into the Belt Line's Main Line Bridge, causing nearly $16 million in damages. Before the allision, the Belt Line secured insurance for the Bridge under a policy with Evanston. While not admissible here, the Belt Line received $10 million toward the repair costs pursuant to this policy. Both the Belt Line and Evanston brought suit against Carver and filed claims in this limitation action. Carver and Evanston have now settled and seek dismissal of Evanston's claims before the Belt Line is paid.

The proposed settlement invokes two legal principles, the collateral source rule and the made whole doctrine, which prohibit any settlement or dismissal from impairing the Belt Line's rights. Under the collateral source rule, tortfeasors may not reduce their liability by an amount a

1

plaintiff recovers from an independent or collateral source. *See Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358 (5th Cir. 2016). Under the made whole doctrine, subrogation rights cannot be enforced until the whole debt owed to an insured is paid. *See Sustainable Sea Prods. Int'l, LLC v. Am. Empire Surplus Lines Ins. Co.*, 2022 U.S. Dist. LEXIS 149405, at *14 (E.D. Va. 2022).

The Belt Line's claim against Carver arises from damage to the Belt Line's property caused by Carver's negligence, meaning the collateral source rule applies. Evanston's claim against Carver is exclusively a result of subrogation rights, meaning the made whole doctrine applies.

Consistent with these legal principles, dismissal of Evanston's claim as a result of the settlement can be permitted only if it complies with both the collateral source rule and the made whole doctrine. In other words, dismissal cannot proceed unless two conditions are met: (1) Carver is prohibited from citing insurance proceeds from Evanston as a setoff to the Belt Line's $16 million claim, and (2) the settlement payment to Evanston is held in abeyance and released only after the Belt Line has been made whole. For example, if the Belt Line proves $16 million in damages at trial and no limitation applies, insurance proceeds could not offset that amount under the collateral source rule. Because $16 million is sufficient to make the Belt Line whole, the Belt Line would be entitled to $16 million from Carver, less the settlement amount, and Evanston would be entitled to the settlement amount. In a different damages scenario, however, if payment of the settlement amount to Evanston would leave the Belt Line less than whole, Carver would have to pay the Belt Line at least $6 million (to make the Belt Line whole) before paying Evanston.

Rule 41(a) expressly grants this Court the power to impose such conditions on dismissal necessary to protect the Belt Line's rights. To proceed with the dismissal and settlement without these conditions would significantly prejudice the Belt Line's potential recovery and violate Rule 41(a). The Belt Line therefore respectfully requests that this Court deny the Motion to Dismiss or

condition the dismissal as described above consistent with the collateral source rule and made whole doctrine.

## Standard of Review

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." As stated by the Fourth Circuit, in deciding a Rule 41(a)(2) motion, "a district court should consider factors such as the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." *Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 178-79 (4th Cir. 2008).

Fed. R. Civ. P. 41(a)(2) is meant to permit voluntary dismissals unless the parties will be unfairly prejudiced. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The Fourth Circuit has held that "Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Davis,* 819 F.2d at 1273.

## Argument

**I.    Examining Carver's motive in settling with Evanston, prejudice to the Belt Line is undeniable if the collateral source rule and made whole doctrine are not followed.**

Carver has made clear its motive in this settlement. After announcing the settlement, Carver stated that the remaining issue for trial is only the "Belt Line's uninsured claim for damages that purportedly amounts to ~$5,992,000." ECF 131 at 2 (Motion to Modify Briefing Schedule). This

incorrect statement demonstrates the potential prejudice to the Belt Line if Evanston's subrogation claims are dismissed without conditions.

Rule 41(a) requires a Court to consider whether a voluntary dismissal would unfairly prejudice the parties and permits a court to impose conditions on dismissal to prevent prejudice. *See Davis*, 819 F.2d at 1273. If the end game of the dismissal of Evanston is to leave the Belt Line able to prove only $6 million in damages at trial, which Carver will then seek to diminish further, the Belt Line will be severely prejudiced. Not only would this violate the collateral source rule, but it would raise a host of problems of proof at trial—like which specific damages Carver believes it settled and which damages would be part of the $6 million that Carver thinks the Belt Line should be limited to establishing. The settlement agreement between Evanston and Carver does not identify which damages are being settled, and the Belt Line certainly is not bound by their agreement anyway. The Belt Line's claim is for the full amount of the damages Carver caused, and under the collateral source rule, the Belt Line is entitled to prove the full $16 million.

## II. The Settlement must comply with the collateral source rule to avoid prejudicing the Belt Line's ability to recover its losses.

Carver's position that its settlement with Evanston affords a $10 million credit against the damages owed to the Belt Line is wrong. ECF 131 at 2 (*supra*). Evanston is the Belt Line's insurer. Its subrogation claim may be $10 million, but that claim has no relevance to the Belt Line's claim against Carver under the collateral source rule.

When assessing damages in maritime tort cases such as this one, courts apply the collateral source rule. *See Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1311 (11th Cir. 2020); *see also Deperrodil*, 842 F.3d at 358 (discussing "the maritime collateral-source rule"); *Phillips v. Western Co. of North America*, 953 F.2d 923, 930 (5th Cir. 1992) (applying the collateral source rule to a claim under the Jones Act).

4

Under the collateral source rule, "a plaintiff is entitled to recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party (like an insurance company[])." *Higgs*, 969 F.3d at 1310; *see also Sloas v. CSX Transp., Inc.*, 616 F.3d 380, 389 (4th Cir. 2010) ("The collateral source rule holds that 'compensation from a collateral source should be disregarded in assessing tort damages.'"). The rule is designed to encourage plaintiffs to prudently pay for insurance and allow them to fully appreciate the benefits, while simultaneously deterring negligence by requiring tortfeasors to be responsible for the full amount of their wrongdoing. *Higgs*, 969 F.3d at 1311. In other words, "if the tortfeasor does not provide the benefit to the plaintiff as compensation for his or her injury, the benefit is from a collateral source and should not be offset against the sum awarded from the tort nor considered in determining that award." *Sloas*, 616 F.3d at 389.

In *Phillips v. Western Co. of North America*, the Fifth Circuit, applying the rule to a claim under the Jones Act, explained its several justifications:

> [T]he plaintiff should not be penalized for having had the foresight to obtain insurance, particularly where, but for the tortfeasor's actions, that insurance would have continued to be available for other purposes; allowing the tortfeasor a credit for the plaintiff's insurance detracts from the function of deterrence in tort law; and the defendant deserves to pay for his fault.

953 F.2d 923, 930 (5th Cir. 1992). Because "substantive law disallows a setoff from the tortfeasor's damages for the plaintiff's collateral benefits, evidence of collateral benefits simply has no relevance in the lawsuit." *Id.* at 930. And under Rule 402, "[i]rrelevant evidence is inadmissible." Fed. R. Evid. 402. As such, "the collateral source rule bars the admission of evidence of payments made by third parties." *Higgs*, 969 F.3d at 1310; *see also Deperrodil*, 842 F.3d at 358.

In line with these justifications, in *Danner v. Int'l Freight Sys. of Wash., LLC*, the United States District Court for the District of Maryland prohibited common carrier defendants from

5

offsetting their liability with insurance payments received by the plaintiffs for cargo that was lost or damaged by the defendants. 2013 U.S. Dist. LEXIS 1233 at *71. The court explained the policy concerns underlying the collateral source rule:

> In this case, plaintiffs purchased insurance for the Cargo through a contract with their insurer, by which the insurer agreed to pay plaintiffs a fixed amount if the Cargo was lost. Plaintiffs paid valuable consideration for this contract with their insurer, in the form of the premium they paid for the insurance policy. ***The [][d]efendants were not a party to the insurance contract and paid no portion of the premium. There is no reason that they should be the gratuitous beneficiaries of an insurance benefit purchased with plaintiffs' premiums, thereby receiving a windfall reduction in the amount of their liability***.

*Danner*, 2013 U.S. Dist. LEXIS 1233 at *71 (emphasis added).

Here, like in the cases above, the Belt Line secured insurance coverage for its Bridge and received insurance proceeds after the allision. At no point did Carver contribute to those proceeds, so all of them are from a collateral source. Accordingly, under the collateral source rule, to avoid prejudicing the Belt Line's ability to prove its case and recover the full damages available to it, this Court should either deny dismissal of Evanston or condition such dismissal on Carver's inability to use the insurance proceeds as a setoff to the Belt Line's claim.

### III. The made whole doctrine prevents Evanston from settling out of this case before the Belt Line is paid in full.

This Court has also recognized the made whole doctrine as "a general equitable principal of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." *Sustainable Sea Prods.*, 2022 U.S. Dist. LEXIS 149405, at *14 (E.D. Va. 2022) (applying Virginia law) (internal citations omitted).

The policy behind the made whole doctrine is "that the insured has paid the insurer to bear the risk of loss when one party must go unpaid to some extent." *Id*. at *14. To that end, this Court has noted that "[t]he right of subrogation cannot be enforced until the whole debt is paid, and until

6

the creditor be wholly satisfied there ought to be and can be no interference with his rights or his securities which might, even by bare possibility, prejudice or embarrass him in any way in the collection of the residue of his claim." *Id*. (quoting *Obici v. Furcron*, 160 Va. 351, 361, 168 S.E. 340, 344 (1933)) (emphasis added).

The Motion to Dismiss seeks to dismiss Evanston's Claim and Intervening Complaint as a result of the settlement between Carver and Evanston. However, under the law above, Evanston cannot enforce its subrogation rights, even by settlement, without the Belt Line first being made whole. Indeed, Evanston's pleadings in this case expressly state that Evanston's claims arise *only* out of its subrogation rights to the Belt Line's recovery.

> 18. By virtue of its payment, Intervening Plaintiff is subrogated to the Belt Line's right of recovery against any third-party for damages arising out of the June 15, 2024 incident.

*See* ECF 5-1, ¶ 18 (Evanston's Claim).

> 17. By virtue of its payment, Evanston is subrogated to Belt Line's right of recovery against any third-party for damages arising out of the Allision.

*See* ECF 22, ¶ 17 (Evanston's Intervening Complaint).

In other words, Evanston is seeking to enforce its subrogation rights by settling out of this case before its insured, the Belt Line, has fully recovered its losses. To permit Evanston to do so would undermine the policy considerations behind the made whole doctrine. The Belt Line, as the insured, paid Evanston a premium to bear the risk of loss in the event of damage to the Belt Line's Bridge. *See Sustainable Sea Prods. Int'l,* 2022 U.S. Dist. LEXIS at *14. Allowing Evanston to receive payment and be dismissed from this case before the Belt Line receives payment of its own costs would undermine the recovery that Evanston was paid to protect.

7

**Conclusion**

WHEREFORE, for all these reasons, the Belt Line respectfully requests that this Court (1) deny the Motion to Dismiss or (2) impose conditions on dismissal such that (i) Carver is prohibited from using or in any way introducing evidence of insurance proceeds from Evanston as a setoff to the Belt Line's $16 million claim, and (ii) the settlement payment to Evanston is held in abeyance and released only after the Belt Line has been made whole. To the extent further relief is necessary to accomplish the foregoing, the Belt Line asks for all other just relief.

Dated: October 24, 2025

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By: ___/s/ W. Ryan Snow___
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 24th day of October 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

        James Morrissey
        4723 Baywood Drive
        Lynnhaven, FL 32444

                              By:     */s/ W. Ryan Snow*
                                      James L. Chapman, IV, VSB No. 21983
                                      CRENSHAW, WARE & MARTIN, P.L.C.
                                      150 W. Main Street, Suite 1923
                                      Norfolk, Virginia 23510
                                      Telephone: (757) 623-3000
                                      Facsimile: (757) 623-5735
                                      jchapman@cwm-law.com
                                      *Counsel for Norfolk and Portsmouth Belt*
                                      *Line Railroad Company*