IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765) her cargo, engines, boilers, tackle, equipment, apparel, and appurtenances, etc., *in rem*, ("M/T MACKENZIE ROSE"), petitioning for Exoneration from or Limitation of Liability in allision with Belt Line Main Line Railroad Bridge (the "Bridge") occurring June 15, 2024 in and about the Elizabeth River, Virginia. | Civil Action No: 2:24-cv-00490 |

**PETITIONER'S MEMORANDUM IN OPPOSITION TO THE
BELT LINE'S FOURTH MOTION *IN LIMINE*
TO EXCLUDE TESTIMONY OF JASON R. MEYERROSE**

Petitioner, Coeymans Marine Towing LLC d/b/a Carver Marine Towing, by counsel, for its Memorandum in Opposition to the Belt Line's[1] Fourth Motion *In Limine* to Exclude Testimony and Opinions of Jason R. Meyerrose. In support hereof, Carver states as follows:

**INTRODUCTION**

The Belt Line broadly seeks to exclude "testimony and opinions of Jason R. Meyerrose" on the basis that Mr. Meyerrose's extensive report of valuation of the MACKENZIE ROSE (a) fails to comply with Rule 26(a)(2)(B) and (b) as such, his supplemental reasoning for the basis of his opinion provided in Mr. Meyerrose's Rebuttal Report are outside the initial deadline and cannot cure alleged deficiencies in his initial Report.

The Belt Line's motion to exclude Mr. Meyerrose's expert valuation in this lawsuit to limit liability to the value of the MACKENZIE ROSE, the subject vessel, is misplaced. First, Mr.

---

[1] The Belt Line asserts in its Motion [ECF 138] that their motion "is submitted on behalf of Evanston Insurance Company to the extent Evanston remains in the case." This Response in Opposition to the Fourth Motion *In Limine* is therefore directed to Evanston in that regard.

1

Meyerrose's Affidavit, Carver's Identification of Mr. Meyerrose as an Expert Witness and his Inspection Report of July 7, 2024 and his supporting file materials comply with Fed. R. Civ. Pro. 26 (a)(2)(B).  Second, Mr. Meyerrose's Affidavit of Valuation, Initial Report and Rebuttal Report are reliable and fall within the Scope of FRE 702.  Last, even if Mr. Meyerrose's Initial Opinion is not considered timely filed, which Carver disputes, Carver's supposed "late disclosure" under Fed. R. Civ. Pro 37(c)(1) is substantially justified as the Belt Line failed to depose Mr. Meyerrose when given the opportunity and the Belt Line has suffered no harm, especially in light of the extended trial deadline to March 2025 within which to prepare.

**RELEVANT PROCEDURAL HISTORY REGARDING EXPERT DISCOVERY**

On June 4, 2025, Carver timely disclosed Jason R. Meyerrose to opine on the condition and value of the subject vessel, the M/T MACKENZIE ROSE, having previously submitted to the Court an Affidavit of Valuation of the vessel in an amount of $2.5 million. [ECF 3][2].  In his Affidavit of Valuation, Mr. Meyerrose testified under oath as to the value of the M/T MACKENZIE ROSE and his method of valuation:

> 1. I am a Marine Surveyor for Meyerrose and Co., Inc.
>
> 2. Meyerrose and Co., Inc. is a specialized vessel surveying and valuation service provide to the marine insurance and transportation industries.
>
> 4. [sic]  I have been requested by counsel for the Petitioner to provide a fair market valuation of the M/T MACKENZIE ROSE as of June 15, 2024.

---

[2]  On August 8, 2024, Carver filed its Complaint for Exoneration or Limitation of Liability and attachments, including proposed Notice, a proposed Order enjoining all other suits, and an Affidavit of Valuation of the M/T MACKENZIE ROSE. [ECF 3, ECF 3-1], along with a Motion to Authorize Security. On October 23, 2024, this Court approved Petitioner Carver's Ad Interim Security, Accepted Security, issued Notice, and entered an Order Restraining Prosecution of Claims. [ECF 13].  The Belt Line, having received Notice, filed a claim on December 5, 2024. [ECF 25].

**5. After examining the vessel, I compared it to the fair market value for vessels of similar size and characteristics, in order to determine the fair market value of the M/T MACKENZIE ROSE.**

**6. In a written report, dated July 25, 2024, I concluded that the M/T MACKENZIE ROSE had a maximum fair market value as of June 15, of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00).**

Affidavit of Valuation, filed August 8, 2024. [ECF 3-1]. The Belt Line does not discuss Mr. Meyerrose's Affidavit of Valuation in the instant motion.

Carver timely identified Mr. Meyerrose in its Identification of Expert Witnesses as a "Specially-Retained Expert" to opine on the condition and value of the M/T MACKENZIE ROSE as set forth his Affidavit of Valuation, which is referenced therein as "Doc 3." A copy of **Carver's Identification of Expert Witnesses served June 4, 2024**, is attached as **Exhibit A**. Mr. Meyerrose's survey of the M/T MACKENZIE ROSE and Inspection Report was served with his Identification of Expert Witnesses. Mr. Meyerrose's Inspection Report dated July 7, 2024 is attached to the Belt Line's Motion at [ECF 138, Exhibit A]. His inspection report documents his service inspection survey of the tug performed June 25, 2024. [ECF 138, Exhibit A,1]. Carver provided counsel for the Belt Line with Mr. Meyerrose's entire file, which contained the data considered by Mr. Meyerrose in forming his opinions, his CV, list of prior litigation in which he testified, and disclosed his compensation. A copy of Mr. Meyerrose's **CV, rates and prior testimony** provided to the Belt Line, is attached as **Exhibit B (7.6.2025 Email to Belt Line from Carver)**.[3]

The Court, on the parties' Joint Motion, extended the deadline for Mr. Meyerrose's Rebuttal Report to September 3, 2025, after the deposition of John Poulson, the Belt Line's marine

---

[3] Mr. Meyerrose's supporting "file" contained with supporting data from TVIB, American Bureau of Shipping, and shipyard work orders, which is too large to attach to this report but can be provided for the Court's inspection.

surveyor. By way of background, the Belt Line intends to proffer Mr. Poulson as an expert witness to opine on valuation of Carver's tug, the M/T MACKENZIE ROSE, as of the June 15, 2024 allision. In this case, Mr. Poulson says he employed the (1) "comparable sales method" (2) "replacement cost approach" and (3) "generated income approach" in arriving at his opinion that "the estimated market value of the tug M/T MACKENZIE ROSE as of June 15, 2024, was USD 4.0 Million." [ECF 97 and 97-2].

On September 2, 2024, following Mr. Pouson's deposition, Carver disclosed Mr. Meyerrose's Rebuttal Report, which addressed and elaborated on the basis for Mr. Meyerrose's fair market value method of valuation and addressed the points raised by Mr. Poulson. A copy of **Mr. Meyerrose's Rebuttal Report** is attached as **Exhibit C**.

## ARGUMENT

A vessel's value, for purposes of determining the amount of the limitation fund, is determined at the end of the voyage under which the casualty occurred. *In the Complaint of North American Trailing Co.*, 763 F. Supp. 152, 154 (E.D. Va. 1991). The Supreme Court has set forth "basic guidelines for ascertaining the value of a vessel for limitation purposes." *Id.* (*citing Standard Oil of New Jersey v. Southern Pacific Co.*, 268 U.S. 146, 155, 45 S.Ct. 465 (1925)). Under *Standard Oil*, the District Court should look first at the market value of the vessel, which is established by evidence of either the actual sale of the vessel or contemporaneous sales of comparable vessels. *Standard Oil*, 268 U.S. at 155. If there is no market for the vessel, or if sales of similar vessel are too few in number to indicate its market value with reasonable probability, the court must use other methods of arriving at its value. *North American Trailing Co.*, 763 F. Supp. at 155. The Court's objective is still to ascertain as nearly as possible:

> . . . the sum which considering all the circumstances could have been obtained for her on the date of the collision; that, is sum that in all probability would result

4

from fair negotiations between an owner willing to sell and a purchaser willing to buy.

North American Trailing Co., 763 F. Supp. at 155 (holding that in the absence of evidence of the NORTHERLY ISLAND'S true market value or evidence of recent sales of comparable vessels as the dredge was "a unique type of hopper dredge" for which there was no ascertainable market value," and because there had been no evidence of value based upon expected or probable income from the vessel, the Court must look to other indicia of value). In that regard, the Court may consider "reconstruction costs depreciated as the value of the vessel," but where that would not indicate the true market value, then, "[i]n such cases, it is appropriate to consider other types of evidence, including the opinions of marine surveyors, the condition of repair of the vessel the insured value and so forth. *North American Trailing Co.*, 763 F. Supp. at 155. "Valuation in the absence of a market is flexible, and no single factor is determinative." *Id*. Rather, the basis of valuation is a composite one which gives an end result in each instance approximating actual value as closely as possible. *Id*.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *United States v. Wilson*, 484 F.3d 267, 274-75 (4th Cir. 2007). Under the Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702

**A.     Mr. Meyerrose's Affidavit of Valuation, Carver's Identification of Mr. Meyerrose as an Expert Witness and his Inspection Report and supporting file materials comply with Fed. R. Civ. Pro. 26 (a)(2)(B).**

There is no question that Mr. Meyerrose was timely disclosed, and that his Initial Report and supporting file and Rebuttal Report were all timely filed. Although the Belt Line does not address Mr. Meyerrose's Affidavit of Valuation in the instant Motion, in his Affidavit Mr. Meyerrose utilized an accepted method of valuation which was to look first at the fair market value of the vessel. Specifically, he opined that "[a]fter examining the vessel, I compared it to the fair market value for vessels of similar size and characteristics, in order to determine the fair market value of the M/T MACKENZIE ROSE." [ECF 3-1, ¶ 5] (emphasis added) He concluded that, based on his inspection and survey of the tug, that it "had a maximum fair market value as of June 15, of Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00)." [ECF 3-1, ¶ 6] (emphasis added). Along with the production to the Belt Line of his initial report and file, he provided his survey of the tug "ascertained from a general examination of the subject vessel and machinery while afloat," to conclude that the vessel was in "satisfactory condition for operation, as well as for intended tug services." [ECF 138 at Exhibit A, Meyerrose Inspection Report, at CARVER 803]. His report contains photographs of the tug documented during his inspection on June 24, 2024. [ECF 138 at Exhibit A, Meyerrose Inspection Report, at CARVER 805-815]. He concluded that the M/T MACKENZIE ROSE has an "estimated current value of $2.25 to 2.5 Million." [ECF 138 at Exhibit A, Meyerrose Inspection Report, at CARVER 803]. His file contained the record of the repairs and maintenance under the conditions section of his report M-140905, with supporting data from TVIB, American Bureau of Shipping, and shipyard work orders, all of which were produced to the Belt Line. **Ex. C, p**. 1. In sum, Mr. Meyerrose's "report" encompasses this statement of his opinion as to the fair market value of the vessel; the

data he considered in formulating his opinion, his survey of the vessel, his qualifications set forth in his CV, the compensation paid for his testimony and a list of the other litigation he has testified in, complies with Federal R. Civ. P. 26(a)(2)(B).  Mr. Meyerrose's opinion complies with the requirement under *Standard Oil*, that the valuation should first consider the market value of the vessel.

Counsel for the Belt Line and its expert were provided with an opportunity to depose Mr. Meyerrose but did not do so.  **Exhibit D**, **Email from Belt Line to Carver**.

Mr. Meyerrose's Initial Report, including the Affidavit of Valuation and supporting file materials fully comply with Fed. R. Civ Proc. 26(a)(2)(B).

**B.   Mr. Meyerrose's Affidavit of Valuation, Initial Report and Rebuttal Report are reliable and fall within the scope of FRE 702.**

The Belt Line's expert, John Poulson, opined that he employed the (1) "comparable sales method" (2) "replacement cost approach" and (3) "generated income approach" in arriving at his opinion that "the estimated market value of the tug MACKENZIE ROSE as of June 15, 2024, was USD 4.0 Million." [ECF 97 and 97-2].

Mr. Meyerrose's Rebuttal Report (addressing Poulson Marine Consultants'' Report as "PMC"), addresses and refutes the three methods used by Mr. Poulson in opining that the value of the tug is $4 Million, and in doing so, refers to and expands on his own method of valuation in concluding that there are limited comparable vessels.  For example, in his rebuttal report, he opines that in his review of comparable vessels in the market, the M/T MACKENZIE ROSE has none, as "she is a one-off built ocean towing vessel by the original owners, not designed to be a harbor tug with high raised bow and foredeck."  Meyerrose Rebuttal Report, Ex. C, p. 1.  Mr. Meyerrose's Rebuttal analysis is within the scope of his Initial Report addressing the fair market value of the tug as a "one off" vessel.  *See also* Meyerrose Rebuttal Report, Ex. C, p. 2

7

(addressing PMC Item 5.8) (rebuttal comment by Mr. Meyerrose stating that "comparable sales, again no comparables to special build 'MACKENZIE ROSE' design.")

At pg. 2 of his Rebuttal Report, Mr. Meyerrose addresses PMC's comment that "the value of the vessel should not have changed at all after the year 2025 re-build as noted in the Meyerrose & Co. Inc. report." Mr. Meyerrose responds as follows in support of his analysis as to the fair market value of the tug following the incident:

> ". . . Replacing extensive internals of the interior of the hull, replacing (2) Auxiliary engines and replacing various electronics, including other work that was completed to the underwater machinery and steering gear are not considered to be "general maintenance" that is required. That being said, Meyerrose & Co., Inc., again stands by our valuation of the vessels current year as of early year after 2023, after the extensive rebuild that was completed by Carver."

Ex. C, Meyerrose Rebuttal Report, p. 2, at "PMC Item 6.7.

At page 3 of his Rebuttal Report, Mr. Meyerrose's statement below supports his initial opinion that given the modifications to the tug, there are no comparable vessels to the "one off built" MACKENZIE ROSE:

> . . . [B]ased on the fact that the last true sales price of the vessel was $1,000,000.00 at the time of purchase by Carver Companies in the year 2020, <u>the survey of Rich Meyerrose in 2018 valuing the tug at $3 Million</u>, and <u>based on our review done for our July 2024 survey</u>, soon after the incident, of the Marcon Intl., and Heartland barge websites of comparable vessel sales, the extensive Meyerrose Inc. file reference material (over 40 years) [sic] worth, knowledge and experience in the industry, we stand firm that as of July 2024 the "MACKENZIE ROSE' current value was $2,500,000.00.

Ex. C, Meyerrose Rebuttal Report, p. 3, at "PMC Item 7.2" (emphasis added). Mr. Meyerrose's rebuttal statement is in line with guidance provided by the Supreme Court and the Fourth Circuit, that where comparables are limited, to look at other indicia of value of a vessel, including: "[i]n such cases, it is appropriate to consider other types of evidence, including the

8

opinions of marine surveyors, the condition of repair of the vessel, the insured value and so forth."

*See North American Trailing Co.*, 763 F. Supp. at 155 (emphasis added).

Again, at p. 3 of his Rebuttal Report, Mr. Meyerrose addresses PMC's evaluation of comparable vessels as flawed in light of his own:

> **PMC Item 7.2:** PMC definition of FMV is correct. However, after reviewing the testimony of Mr. Poulson, he has stated that the comparable values he used in his valuation are based entirely on non FMV numbers and are based on the broker's values of vessels or a current "for sale" value, which would dispar [sic] the info of research tables 1 and 2 and should not be used for this valuation, and that insured value is not FMV. Based on the PMC original valuation report, using tables 1and 2,the $4,000,000.00 value by PMC is considered to have no true basis and way above the vessels actual current value at the time of the incident. Also, based on the fact that the last true sales price of the vessel was $1,000,000.00 at the time of purchase by Carver Companies in year 2020,the survey of Rick Meyerrose in 2018 valuing the tug at $3 Million, and based on our review done for our July 2024 survey, soon after the incident,, of the Marcon Intl, and Heartland Barge websites of comparable vessel sale value, the extensive Meyerrose & Co., Inc. file reference material (over 40 years worth) knowledge and experience in the industry, we stand firm that as of July 2024, the "MACKENZIE ROSE" current value was $2,500,000.00.

Ex. C, Meyerrose Rebuttal Report, p. 3, "PMC Item 7.2" (emphasis added).

In support of its argument that Mr. Meyerrose's opinion does not satisfy the requirements of FRE 702, the Belt Line also argues that "Mr. Meyerrose offers no testing, supporting literature, peer reviewed publication or any basis whatsoever to support his valuation of the M?T Mackenzie Rose." [ECF 138, p. 4]. The Belt Line's suggestion that Mr. Meyerrose rely on "testing, supporting literature, peer reviewed publication" is not in line with the data properly supporting a valuation of the vessel. Where the comparable sales are limited, such as here where the tug is a "one off built vessel" rendering it unique in the market, the Court may consider "reconstruction costs depreciated as the value of the vessel," but where that would not indicate the true market value, then, "[i]n such cases, it is appropriate to consider other types of evidence, including the opinions of marine surveyors, the condition of repair of the vessel the insured value and so forth.

9

*North American Trailing Co.*, 763 F. Supp. at 155. As the Court is aware, the purpose of a valuation is to determine the value of the vessel should Carver be entitled to limit its liability in this lawsuit – this is not a products liability lawsuit. Along those lines, Mr. Meyerrose looked at comparable vessels, and finding none, looked to the condition of the repaired value and insured value, including the survey done by his own firm in 2018, *i.e*, "the survey of Rich Meyerrose in 2018 valuing the tug at $3 Million." *See supra*, Belt Line's Motion [ECF 138 at p. 2]. Mr. Meyerrose's testimony as an expert is grounded his specialized knowledge of the industry over a considerable amount of time based on relevant data surveying like vessels:

> **PMC Item 6.6**. Meyerrose completed approximately (30) specific barge CVS reports and approximately (15) tugs. Meyerrose has completed some 672 surveys in 2024 with approximately 350 of those being On hire surveys, which 50% of those charterers were provided with our "Preliminary Advices" report, which is a short condition report with photos, and with estimated current and replacement values that are given to Underwriter's when requested to determine what they are insured based on our finding (before the full On Hire) survey report is produced. Continuing, Meyerrose has completed the following number of surveys in the past year:
> > 2024: 672 surveys (including extensive work at the Key Bridge incident, and now in 2025, starting the On Hire surveys for the FSK demo and rebuild
> > 2023 – 566 surveys
> > 2022 – 630 (beginning stages of the HRBT bridge/tunnel rebuild in Hampton Roads in which Meyerrose is doing all of the floating equipment surveys for the project).
> > 2021 599 surveys
> > 2020- 573 surveys
> > 2019 – 504 surveys
> > 2018 – 586 surveys
> > 2017 – 644 (ongoing surveys at the Tappan Zee bride rebuilding and demo throughout the entire project, including surveys from Miane to Norfolk, VA)
> > 2016 – 556 surveys

Ex. C, Meyerrose Rebuttal Report, p. 2., "PMC Item 6.6".

As an experienced surveyor and appraiser of vessels like the M/T MACKENZIE ROSE, Mr. Meyerrose's valuation and survey of the M/T MACKENZIE ROSE has reliably applied the

methods of valuation in this industry to his valuation of the M/T MACKENZIE ROSE at $2.5 Million as set forth in his Affidavit of Valuation. Mr. Meyerrose is qualified as an expert under Fed. R. Evid. 702 based on his experience and training.

Given the foregoing, the Belt Line's Motion should be denied.

**C.    Even if Mr. Meyerrose's Initial Report is not considered timely filed, Carver's supposed "late disclosure" under Fed. R. Civ. Pro 37(c)(1) is substantially justified and the Belt Line has suffered no harm.**

The Belt Line (mistakenly) argues that Mr. Meyerose Initial Report failed to disclose what method he utilized in determining the value of vessel, therefore, his supplemental opinion which expands on that theory rendered the Initial opinion "late" and should be excluded under Fed. Rule of Civ. Pro. 37(c)(1). Even if Mr. Meyerrose's initial opinion is considered untimely, whether to allow or exclude a late disclosure or supplementation is a fact-specific issue for this Court to determine. The language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is "substantial[ly] justifi[ed]," and (2) when the nondisclosure is "harmless." If a party fails to make a timely expert disclosure or supplementation, the Court must look at several factors before deciding to strike the supposed belatedly disclosed information. *Southern States Rock and Fixture v. Sherman-Williams Co.*, 318 F.3d 592, 595-99 (4th Cir. 2003). The five factors guiding the Court's discretion when determining whether to exclude expert testimony are the following: (1) surprise to the other party, (2) the other party's ability to cure any surprise, (3) any disruption of trial that might occur, (4) the explanation for the late disclosure, and (5) the importance of the expert testimony to a fair decision on the merits. . *Southern States Rock and Fixture v. Sherman-Williams Co.*, 318 F.3d at 595-96 (*citing Rambus, Inc. v. Infineon Tech A.G.*, 145 F. supp. 2d 721 (E.D. Va. 2001)) (subsequent history omitted).

11

At the outset, it is Carver's position that Mr. Meyerrose timely disclosed the basis for his valuation in his Affidavit of Valuation, which counsel for the Belt Line does not consider (or if they did) does not address in the instant motion. Since the Affidavit of Valuation was submitted at the commencement of this lawsuit and was annexed to the Meyerrose Report when timely disclosure was made, it is de facto and de jure impossible for the Belt Line to claim surprise or prejudice on the issue of Fair Market Value.

Notwithstanding, any supposed "late" disclosure was both substantially justified and harmless. First, Counsel for the Belt Line and its expert were provided with an opportunity to depose Mr. Meyerrose but did not do so. Had the Belt Line taken his deposition, they could have better explored the basis for his opinion that there were no comparable vessels to the tug, in that the tug as a "one off built ocean towing vessel by the original owners." Given that, Mr. Meyerrose's Supplemental Report addresses that opinion in detail, as set forth above. Thus, there was no surprise to the Belt Line which could not have been cured had they deposed Mr. Meyerrose. Trial is scheduled for March 2026 which provides the Belt Line with more than sufficient time to prepare. Carver's valuation of the M/T MACKENZIE ROSE is essential to this lawsuit to limit liability to the value of the vessel should the Court decide that Carver, as the vessel owner, is in fact entitled to limit its liability. Thus, Mr. Meyerrose's testimony is essential to a fair decision on the merits in that regard.

For the aforementioned reasons above, the Belt Line's Motion should be denied.

## **CONCLUSION**

For the foregoing reasons, Carver requests that the Court:

(1) Deny the Belt Line's Fourth Motion *in Limine* and find Jason Meyerrose's Initial Report and Supplemental Report timely submitted under Fed. R. Civ. Pro 26(a)(2)(B), Fed. R. Civ. Pro. 37(c)(1) and Fed. R. Evid. 702; and

(3) Award Carver all other just relief.

Dated: November 4, 2025                                  Respectfully submitted,

**CLYDE & CO US LLP**

By: /s/ *Harold L. Cohen*
Harold L. Cohen  (VSB No.:98148)
1221 Brickell Avenue, Suite 1600
Miami, FL  33131
Tel: 305-446-2646
Fax: 305-441-2374
Email: harry.cohen@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
          dawn.johnson@clydeco.us
          Siobhan.murphy@clydeco.us

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 4, 2025, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

                */s/ Harold L. Cohen*