IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al.* | Civil Action No. 2:24-cv-00490-MSD-LRL |

**EVANSTON INSURANCE COMPANY'S AND COEYMANS MARINE TOWING LLC D/B/A CARVER MARINE TOWING'S REPLY IN SUPPORT OF JOINT MOTION TO DISMISS WITH PREJUDICE**

Evanston Insurance Company ("Evanston") and Coeymans Marine Towing LLC d/b/a Carver Marine Towing ("Carver"), by and through undersigned counsel, hereby submit this Reply in Support of Joint Motion to Dismiss with Prejudice pursuant to Fed. R. Civ. P. 41(a)(2).

## INTRODUCTION

This case arises out of an allision on June 15, 2024, in which Carver's tugboat, the M/T MACKENZIE ROSE, pushed a 200-foot loaded barge into the Belt Line's Main Line Bridge ("Bridge"), causing an amount of damage disputed by Carver. Before the allision, the Belt Line obtained insurance coverage in the amount of $10 million for the Bridge through a policy issued by Evanston. Under that Policy, Exhibit 1, when Evanston paid its limits to Belt Line, that claim was transferred to Evanston:

> I.    TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US
>
> If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after the loss to impair them …

(Ex. 1 at p. 35, Commercial Property Conditions, Form CP 00 90 07 88, p. 2 of 2). The premise of the Belt Line's objection to the present motion is that it holds the entire claim, when in fact it transferred the rights to be paid for the first $10,000,000 to Evanston.

Both the Belt Line and Evanston sued Carver, with Evanston seeking recovery of its $10 million payment *from Carver* as a result of the allision. The cases were consolidated by this Court's Order dated December 20, 2024 (ECF No. 30). Carver and Evanston settled shortly after a private mediation and jointly seek dismissal of Evanston's claims with prejudice. The Belt Line objected to the proposed settlement because Belt Line did not sign the Stipulation of Dismissal filed with the Court following Evanston's settlement with Carver. (ECF No. 130). Evanston and Carver then filed a joint motion to dismiss Evanston's claims with prejudice. (ECF No. 132). Belt Line now opposes the joint motion to dismiss with prejudice on two legal grounds: the collateral source rule and the made whole doctrine. (ECF No. 149). Neither doctrine applies to the settlement between Evanston and Carver because Evanston's action is independent of Belt Line's action, and Carver has sufficient assets to make Belt Line whole if Belt Line prevails. The Court should approve the settlement and dismiss Evanston's claims with prejudice.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." As stated by the Fourth Circuit, in deciding a Rule 41(a)(2) motion, "a district court should consider factors such as the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal, as well as the present stage of litigation." *Howard v. Inova Health Care Servs.*, 302 F. App'x 166, 178-79 (4th Cir. 2008).

Fed. R. Civ. P. 41(a)(2) is meant to permit voluntary dismissals unless the parties will be unfairly prejudiced. *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). The Fourth Circuit has held that "Rule 41(a)(2) requires a court order as a prerequisite to dismissal and permits the district court to impose conditions on voluntary dismissal to obviate any prejudice to the defendants which may otherwise result from dismissal without prejudice. In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Davis,* 819 F.2d at 1273. Further, "The law favors compromise and settlement of disputed claims." *Bondcote Corp. v. Ayers*, No. 7:05CV00705, 2006 WL 938734, at *6 (W.D. Va. Apr. 11, 2006) (*Citing Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381, 457 S.E.2d 36 (1995) (citation omitted).)

## ARGUMENT

Belt Line argues the Court should disallow the settlement and dismissal of the claim between Evanston and Carver on the premise that it currently holds the claims it transferred to Evanston. Based on that premise, the Belt Line cites of two doctrines: 1) the Collateral Source Rule and 2) the Made Whole Doctrine. Neither doctrine is a valid objection to the settlement at issue. In reviewing the standard under Rule 41(a)(2) motion, the Court should note the litigious nature of this matter, the contract by which Evanston has only settled a claim already transferred to it, the contentions between the parties, and the upcoming trial date. Rather than continue expending significant resources, expenses, and time, Evanston elected to compromise its claim against Carver to reach an amicable resolution. Both parties wish to buy their peace. In the interest of judicial economy, the Court should grant the parties' joint motion to dismiss.

### I. The Collateral Source Rule Does Not Preclude A Settlement Between Evanston and Carver

The premise of Carver's collateral source rule argument is that it still holds the claim for the payments covered by Evanston. It reasons from this erroneous premise that it is entitled to deny Evanston its own recovery, because a tortfeasor may not reduce its liability by an amount a plaintiff recovers from an independent or collateral source. *See Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 358 (5th Cir. 2016). The simple truth is that Belt Line transferred the initial, disputed, $10,000,000 claim to Evanston. Carver is not seeking a reduction in its liability – it is merely compromising with the party who holds the claim -- Evanston.

Belt Line argues the collateral source rule applies because their claim against Carver arises from damage to the Belt Line's property caused by Carver's negligence. However, it is unclear how the collateral source rule could properly apply to bar the settlement between Evanston and Carver.

If this were a case in which Belt Line had not transferred its rights to Evanston, it might be appropriate to conclude that it could "recover the full value of the damages caused by a tortfeasor, without offset for any amounts received in compensation for the injury from a third party (like an insurance company[])." *Higgs v. Costa Crociere S.P.A. Co.,* 969 F.3d 1295, 1310 (11th Cir. 2020); *see also Sloas v. CSX Transp., Inc.,* 616 F.3d 380, 389 (4th Cir. 2010) ("The collateral source rule holds that 'compensation from a collateral source should be disregarded in assessing tort damages.'"). After all, in such a case, it would likely face a claim from Evanston, in equitable subrogation. The rule is designed to encourage plaintiffs to prudently pay for insurance and allow them to fully appreciate the benefits, while simultaneously deterring negligence by requiring tortfeasors to be responsible for the full amount of their wrongdoing. *Higgs,* 969 F.3d at 1311. In other words, "if the tortfeasor does not provide the benefit to the plaintiff as compensation for his

4

or her injury, the benefit is from a collateral source and should not be offset against the sum awarded from the tort nor considered in determining that award." *Sloas,* 616 F.3d at 389. Here, the plaintiff with whom Carver is settling is Evanston. Belt Line elected to insure the bridge that was damaged in the allision for $10 million. Evanston paid Belt Line the full $10 million, as a result of which the $10 million dollar claim transferred to Evanston. Evanston then proceeded to independently pursue Carver for the amount paid. Thus, Belt Line fully appreciated the benefits of the insurance policy for which it prudently paid.

Belt Line argues the Court may not consider the $5 million settlement of the $10 million claim between Evanston and Carver when considering Belt Line's damages. That is true. Carver's settlement with Evanston does not alter the Belt Line's claim – which is defined by the fact that it transferred the claim for the first $10 million in alleged damages to Evanston. That would be true with or without a settlement between Evanston and Carver.

The collateral source rule does not serve to prevent one party from settling with an adverse party. Rather, the rule serves to prevent the introduction of any amounts received in compensation for the injury from a third party (like an insurance carrier) as evidence at trial. The rule works both ways; that is, Belt Line will not be permitted to introduce evidence of Carver's liability insurance at trial and Carver will not be permitted to introduce evidence of Belt Line's property insurance at trial. With Evanston out of the case, Belt Line is protected from disclosure of its property insurance obtained through Evanston.

Of course, Belt Line is and remains entitled to pursue its uninsured losses, which are disputed by Carver. Carver settling with Evanston does not reduce any of the remaining portion of Belt Line's claim. Belt Line may still put on evidence of its damages at trial, and the Court may

determine what, if any, offset the prevailing party is entitled to once a judgment is rendered. This should not frustrate a settlement between Evanston and Carver.

### II. The Made Whole Doctrine Does Not Prevent A Settlement Between Evanston And Carver Because Belt Line May Still Be Made Whole

The Belt Line argues that the "made whole doctrine" applies even in the face of a contract under which Belt Line's claim was transferred to Evanston, to the extent of Evanston's payment – and even though Belt Line is obligated to execute all documents necessary to effectuate and honor Evanston's contractual rights. Given the contract at issue here, the "made whole" doctrine should naturally yield to the clear and unambiguous contractual agreement between Evanston and the Belt Line. *See, e.g.,* <u>Fortis Benefits v. Cantu</u>, 234 S.W.3d 642, 644 (Tex. 2007) (Contractual subrogation clauses express the parties' intent that reimbursement should be controlled by agreed contract terms rather than external rules imposed by the courts."); *Kanawha Valley Radiologists, Inc. v. One Valley Bank, N.A.*, 210 W. Va. 223, 557 S.E.2d 277 (2001) (Where subrogation arises by contract, clear and express contractual provisions govern over equitable principles). The Belt Line's own case, *See Sustainable Sea Prods. Int'l, LLC v. Am. Empire Surplus Lines Ins. Co.*, No. 3:21CV697, 2022 WL 3573247 (E.D. Va. Aug. 19, 2022), recognizes that an insurer and insured may agree not to follow the "made whole" doctrine.

In this case, however, the Court need not reach the "made whole" doctrine to resolve the pending motions. At the onset of this litigation, the parties served initial disclosures, including computation of damages and any insurance agreement that may be liable to satisfy the all or part of a possible judgment. Evanston disclosed their payment of $10 million to Belt Line and provided the relevant insurance Policy, Ex 1. Belt Line (after multiple amendments during the litigation) disclosed uninsured damages claims totaling just under $6 million. Thus, the amount of claimed

compensatory damages (before any potential award of interest, expenses, and/or fees) totals $16 million. Importantly, Carver disclosed its liability insurance in the amount of $25 million, well above $16 million.

If the made whole doctrine were to apply here, the first step in evaluating the application of the made whole doctrine would be to determine whether there are ample assets to satisfy all potential claims. If there is, then each party may proceed to settle or obtain judgment knowing there is no prejudice to another party as there is no risk of obtaining a judgment that cannot be fulfilled. Here, Evanston settled with Carver for $5 million, leaving at least $20 million remaining under Carver's primary liability insurance policy (not taking into account any potential company assets or excess insurance policies). Belt Line is free to obtain a judgment or settle without risking Carver's inability to pay Belt Line. In other words, there is nothing preventing Belt Line from being made whole if they elect to proceed to trial to obtain a judgment.

Despite the Eastern District of Virginia and the Supreme Court of Virginia recognizing the made whole doctrine, it does not apply. The made whole doctrine can be contracted around. In the same case Belt Line cites to in their objection (*Sustainable Sea Prods., supra*), the Eastern District of Virginia, after recognizing the validity of the doctrine, immediately states the contract between the parties could overrule the doctrine. Belt Line completely fails to address this exception in their objection. The reason for this failure is obvious – it is fatal to their objection.

Notably, *Sustainable Sea Prods.* involves an action by an insured against their own property insurer seeking indemnity benefits as a result of a fire as part of a first party claim. The Court evaluated the made whole doctrine in this context, and concluded that the property insurer may not pursue its subrogation rights until the property carrier settled the first party claim with their insured. The instant matter is markedly different: Evanston paid the entire policy limit of

$10 million to its insured, secured the appropriate proofs of loss to settle the first party claim, then proceeded to litigate independently against Carver based on the transfer of the $10,000,000 claim to it.

At the center of the *Sustainable Sea Prods.* case was the notion that "[b]ecause the made whole doctrine is a default rule, the parties can contract out of the doctrine." *Id.* at 8 citing *Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997). The Court held that for the parties to opt out of the made whole rule, they must "be specific and clear in establishing both a priority to the funds recovered *and* a right to any full or partial recovery." *Id.* at 8 citing *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) (emphasis in original). "[B]oilerplate subrogation clauses incorporate default common law subrogation rules, and do not modify or abrogate them." *Id.* at 8 citing *Fireman's Fund Ins. Co. v. TD Banknorth Ins. Agency Inc.*, 544 F.3d 166, 170 (2d Cir. 2011).

The question before this Court, therefore, is whether these parties established in their contract 1) a priority of the funds and 2) a right to any full or partial recovery. Because the parties did not use standard boilerplate subrogation clauses and established both a pro rata basis of recovery and established a right to recovery, the made whole doctrine does not apply, and the parties should allocate funds based on the contract.

In addition to the explicit transfer of the claim, to the extent of Evanston's payment, by endorsement, the Policy reads as follows:

> **(B)** In the event of any payment under this policy, this company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all paper required and shall do anything that may be necessary at the expense of the Insurer to secure such right. The Insurer will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in any loss, in the exercise of such rights of recovery. **As a result of subrogation, or other efforts, if any amount is recovered, the net amount recovered shall be divided between the interests concerned in the proportion of their respective interests. Necessary expenses shall be divided between the interests concerned in proportion of their respective recoveries**. If there should

8

> be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

(emphasis added). (Ex. 1 at p. 25). The endorsement transferring the claim to Evanston is clear. Belt Line is obligated to take all actions necessary to effectuate Evanston's rights. If Belt Line could prove its uninsured damages without any resulting judgment being uncollectible, Belt Line would be undamaged. The settlement resolves only the claims between Evanston and Carver. Belt Line's claims for excess, uninsured damages remain. Belt Line could only be prejudiced by the settlement if there were not enough funds to compensate them for their claim after the settlement. That is not the case. There is still ample money to pay the Belt Line's claims. Policy limits were disclosed at the onset of the case and show there will be ample funds to pay Belt Line's remaining claims, should they have merit.

The Court should find the made whole doctrine does not prevent a settlement between Evanston and Carver because (1) there are ample funds available to make Belt Line whole; (2) Evanston settled the first party claim with their insured, Belt Line, by paying the full policy limit; and, (3) the policy of insurance between Evanston and Carver clearly contracted around the made whole doctrine as permitted by Virgina law and as recognized by the Eastern District of Virginia.

## **CONCLUSION**

Evanston and Carver respectfully request the Court grant the Joint Motion to Dismiss with Prejudice.

Respectfully submitted, this 7th day of November 2025.

| | |
|---|---|
| /s/ Zachary M. Jett | /s/ Harold L. Cohen |
| Zachary M. Jett, Esq. (VSB # 93285) | Harold L. Cohen, Esq. (VSB # 98148) |
| BUTLER WEIHMULLER KATZ CRAIG LLP | CLYDE & CO US LLP |
| 11525 N. Community House Road, Suite 300 | 1221 Brickell Avenue, Suite 1600 |
| Charlotte, North Carolina  28277 | Miami, Florida  33131 |
| Telephone: (704) 543-2321 | Telephone: 305-446-2646 |
| Facsimile:   (704) 543-2324 | Facsimile: 305-441-2374 |
| Email: zjett@butler.legal | Harry.Cohen@Clydeco.us |
| | |
| Mark C. Nanavati, Esq. (VSB # 38709) | James H. Rodgers, Esq. *(pro hac vice)* |
| G. Christopher Jones, Jr., Esq. (VSB # 82260) | CLYDE & CO US LLP |
| SINNOTT, NUCKOLS & LOGAN, P.C. | 405 Lexington Avenue |
| 13811 Village Mill Drive | New York, New York  10174 |
| Midlothian, Virginia  23114 | Telephone: (212)704-6771 |
| Telephone: (804) 378-7600 | James.Rodgers@clydeco.us |
| Facsimile: (804) 378-2610 | |
| mnanavati@snllaw.com | Michael J. Roman, Esq. *(pro hac vice)* |
| cjones@snllaw.com | Siobhan Murphy, Esq. *(pro hac vice)* |
| | CLYDE & CO US LLP |
| *Attorneys for Intervening Plaintiff / Claimant Evanston Insurance Company* | 30 S. Whacker Drive, Suite 2600 |
| | Chicago, Illinois  60606 |
| | Telephone: (312) 635-7000 |
| | Michael.Roman@clydeco.us |
| | Siobhan.murphy@clydeco.us |
| | |
| | *Attorneys for Coeymans Marine Towing, LLC d/b/a Carver Marine Towing* |

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of November 2025 a true and correct copy of the forgoing *Evanston Insurance Company's and Coeymans Marine Towing LLC D/B/A Carver Marine Towing's Reply In Support Of Joint Motion To Dismiss With Prejudice* has been filed through the Court's CM/ECF electronic filing system, which will automatically delivery electronic notification of the same to the following counsel of record:

>James L. Chapman, IV, Esq.
>W. Ryan Snow, Esq.
>Mackenzie R. Pensyl, Esq,
>CRENSHAW, WARE & MARTIN, P.L.C.
>150 W. Main Street, Suite 1923
>Norfolk, Virginia 23510
>jchapman@cwm-law.com
>wrsnow@cwm-law.com
>mpensyl@cmw-law.com
>*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

I further certify that on this 7th day of November 2025 a true and correct copy of the forgoing *Evanston Insurance Company's and Coeymans Marine Towing LLC D/B/A Carver Marine Towing's Reply In Support Of Joint Motion To Dismiss With Prejudice* has been served upon the following by electronic mail and by placing a copy in the United States Mail, postage pre-paid to:

>James Morrissey
>4723 Baywood Drive
>Lyn Haven, Florida  32444
>Jdmorrissey15@gmail.com
>*Pro Se Defendant*

    /s/ Zachary M. Jett
    Zachary M. Jett, Esq.