**A STOCK COMPANY**



# EVANSTON INSURANCE COMPANY

10275 West Higgins Road, Suite 750
Rosemont, IL 60018

**INSURANCE POLICY**

**Coverage afforded by this policy is provided by the Company (Insurer) and named in the Declarations.**

In **Witness Whereof**, the company (insurer) has caused this policy to be executed and attested and countersigned by a duly authorized representative of the company (insurer) identified in the Declarations.

**Secretary**

**President**

**MJIL 1000 08 10**

EVANSTON-003842



# EVANSTON INSURANCE COMPANY

## FORMS SCHEDULE

| FORM NUMBER | FORM NAME |
|---|---|
| MJIL 1000 08 10 | Policy Jacket |
| MDIL 1001 08 11 | Forms Schedule |
| CP 02 03 01 12 | Virginia Changes |
| MIL 1214 09 17 | Trade Or Economic Sanctions |
| MPIL 1007 01 20 | Privacy Notice |
| MEIL 1200 03 23 | Service of Suit |
| IL 00 17 11 98 | Common Policy Conditions RR |
| MEIL 1211 06 10 | Minimum Earned Premium Amendment Endorsement |
| RR 1 09 00 | Common Policy Dec - Railroad |
| RR IM 1 09 00 | Commercial Inland Marine Cov Part Dec - Railroad |
| RR Manuscript | Rail Property Manuscript Form |
| CM 00 01 09 04 | Commercial Inland Marine Conditions |
| CP 00 90 07 88 | Commercial Property Conditions |
| CP 12 18 10 12 | Loss Payable Provisions |
| NMA 2914 | Electronic Data Manuscript |
| MECP 1317 09 14 | Exclusion - Biologl, Radiol Chemical Materials |
| MEIL 1326 09 14 | Exclusion - Organic Pathogens |
| IL 09 52 01 15 | Cap on Losses From Certified Acts of Terrorism |
| RR 1009 06 08 | Endorsement #1 |

EVANSTON-003843

COMMERCIAL PROPERTY
CP 02 03 01 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES – CANCELLATION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The following is added to the CANCELLATION Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing or delivering to the first Named Insured shown in the Declarations written notice of cancellation at least 5 days before the effective date of cancellation.

**A.** The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

**1.** Seasonal unoccupancy;

**2.** Buildings in the course of construction, renovation or addition; or

**3.** Buildings to which the Vacancy Permit endorsement applies.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

**B.** After damage by a covered cause of loss, permanent repairs to the building:

**1.** Have not started, and

**2.** Have not been contracted for,

within 30 days of initial payment of loss.

**C.** The building has:

**1.** An outstanding order to vacate;

**2.** An outstanding demolition order; or

**3.** Been declared unsafe by governmental authority.

**D.** Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

**E.** Failure to:

**1.** Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

**2.** Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

    Copyright, Insurance Services Office, Inc., 2011       □

EVANSTON-003844



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## TRADE OR ECONOMIC SANCTIONS

The following is added to this policy:

**Trade Or Economic Sanctions**

This insurance does not provide any coverage, and we (the Company) shall not make payment of any claim or provide any benefit hereunder, to the extent that the provision of such coverage, payment of such claim or provision of such benefit would expose us (the Company) to a violation of any applicable trade or economic sanctions, laws or regulations, including but not limited to, those administered and enforced by the United States Treasury Department's Office of Foreign Assets Control (OFAC).

All other terms and conditions remain unchanged.

**MIL 1214 09 17**                                                                                          **Page 1 of 1**



# EVANSTON INSURANCE COMPANY

## PRIVACY NOTICE

U. S. Consumer Privacy Notice                                          Rev. 1/1/2020

| | |
|---|---|
| **FACTS** | WHAT DOES MARKEL GROUP OF COMPANIES REFERENCED BELOW (INDIVIDUALLY OR COLLECTIVELY REFERRED TO AS "WE", "US", OR "OUR") DO WITH YOUR PERSONAL INFORMATION? |
| **Why?** | In the course of Our business relationship with you, We collect information about you that is necessary to provide you with Our products and services. We treat this information as confidential and recognize the importance of protecting it. Federal and state law gives you the right to limit some but not all sharing of your personal information. Federal and state law also requires Us to tell you how We collect, share, and protect your personal information. Please read this notice carefully to understand what We do. |
| **What?** | The types of personal information We collect and share depend on the product or service you have with Us. This information can include:<br><br>• your name, mailing and email address(es), telephone number, date of birth, gender, marital or family status, identification numbers issued by government bodies or agencies (i.e.: Social Security number or FEIN, driver's license or other license number), employment, education, occupation, or assets and income from applications and other forms from you, your employer and others;<br><br>• your policy coverage, claims, premiums, and payment history from your dealings with Us, Our Affiliates, or others;<br><br>• your financial history from other insurance companies, financial organizations, or consumer reporting agencies, including but not limited to payment card numbers, bank account or other financial account numbers and account details, credit history and credit scores, assets and income and other financial information, or your medical history and records.<br><br>Personal information does not include:<br><br>• publicly-available information from government records;<br><br>• de-identified or aggregated consumer information.<br><br>When you are no longer Our customer, We continue to share your information as described in this Notice as required by law. |
| **How?** | All insurance companies need to share customers' personal information to run their everyday business. In the section below, We list the reasons financial companies can share their customers' personal information; the reasons We choose to share; and whether you can limit this sharing. We restrict access to your personal information to those individuals, such as Our employees and agents, who provide you with insurance products and services. We may disclose your personal information to Our Affiliates and Nonaffiliates (1) to process your transaction with Us, for instance, to determine eligibility for coverage, to process claims, or to prevent fraud, or (2) with your written authorization, or (3) otherwise as permitted by law. We do not disclose any of your personal information, as Our customer or former customer, except as described in this Notice. |

EVANSTON-003846

| Reasons We can share your personal information | Do We share? | Can you limit this sharing? |
|---|---|---|
| **For Our everyday business purposes and as required by law –** such as to process your transactions, maintain your account(s), respond to court orders and legal/regulatory investigations, to prevent fraud, or report to credit bureaus | Yes | No |
| **For Our marketing purposes –** to offer Our products and services to you | Yes | No |
| **For Joint Marketing with other financial companies** | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your transactions and experiences | Yes | No |
| **For Our Affiliates' everyday business purposes –** information about your creditworthiness | No | We don't share |
| **For Our Affiliates to market you** | No | We don't share |
| **For Nonaffiliates to market you** | No | We don't share |
| **Questions?** Call (888) 560-4671 or email privacy@markel.com | | |

| Who We are | |
|---|---|
| **Who is providing this Notice?** | A list of Our companies is located at the end of this Notice. |

| What We do | |
|---|---|
| **How do We protect your personal information?** | We maintain reasonable physical, electronic, and procedural safeguards to protect your personal information and to comply with applicable regulatory standards. For more information, visit www.markel.com/privacy-policy. |
| **How do We collect your personal information?** | We collect your personal information, for example, when you<br>• complete an application or other form for insurance<br>• perform transactions with Us, Our Affiliates, or others<br>• file an insurance claim or provide account information<br>• use your credit or debit card<br>We also collect your personal information from others, such as consumer reporting agencies that provide Us with information such as credit information, driving records, and claim histories. |
| **Why can't you limit all sharing of your personal information?** | Federal law gives you the right to limit only<br>• sharing for Affiliates' everyday business purposes – information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• sharing for Nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See the Other Important Information section of this Notice for more on your rights under state law. |

EVANSTON-003847

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. <br>• Our Affiliates include member companies of Markel Group. |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies. <br>• Nonaffiliates that We can share with can include financial services companies such as insurance agencies or brokers, claims adjusters, reinsurers, and auditors, state insurance officials, law enforcement, and others as permitted by law. |
| **Joint Marketing** | A formal agreement between Nonaffiliated companies that together market financial products or services to you. <br>• Our Joint Marketing providers can include entities providing a service or product that could allow Us to provide a broader selection of insurance products to you. |

| Other Important Information |
|---|
| **For Residents of AZ, CT, GA, IL, ME, MA, MN, MT, NV, NJ, NC, OH, OR, and VA:** Under state law, under certain circumstances you have the right to access and request correction, amendment or deletion of personal information that We have collected from or about you. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060. <br><br>We may charge a reasonable fee to cover the costs of providing this information. We will let you know what actions We take. If you do not agree with Our actions, you may send Us a statement. |
| **For Residents of CA:** You have the right to review, make corrections, or delete your recorded personal information contained in Our files. To do so, contact your agent, visit www.markel.com/privacy-policy, call (888) 560-4671, or write to Markel Corporation Privacy Office, 4521 Highwoods Parkway, Glen Allen, VA 23060. We do not and will not sell your personal information. <br><br>For the categories of personal information We have collected from consumers within the last 12 months, please visit: www.markel.com/privacy-policy. |
| **For Residents of MA and ME:** You may ask, in writing, for specific reason, for an adverse underwriting decision. |
| **Markel Group of Companies Providing This Notice:** City National Insurance Company, Essentia Insurance Company, Evanston Insurance Company, FirstComp Insurance Company, Independent Specialty Insurance Company, National Specialty Insurance Company, Markel Bermuda Limited, Markel American Insurance Company, Markel Global Reinsurance Company, Markel Insurance Company, Markel International Insurance Company Limited, Markel Service, Incorporated, Markel West, Inc. (d/b/a in CA as Markel West Insurance Services), Pinnacle National Insurance Company, State National Insurance Company, Inc., Superior Specialty Insurance Company, SureTec Agency Services, Inc. (d/b/a in CA as SureTec Agency Insurance Services), SureTec Indemnity Company, SureTec Insurance Company, United Specialty Insurance Company, Inc. |

EVANSTON-003848



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT

Except with respect to any policy issued in any state in which the insurer is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the insurer to pay any amount claimed to be due hereunder, the insurer, at the request of the named insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the insurer's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Service, Incorporated, 10275 West Higgins Road, Suite 750, Rosemont, Illinois 60018, and that in any suit instituted against the insurer upon this policy, the insurer will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the insurer hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the named insured or any beneficiary hereunder arising out of this policy, and hereby appoints the above-named as the person to whom the said statutory designee is authorized to mail such process or a true copy thereof.

EVANSTON-003849

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

     Copyright, Insurance Services Office, Inc., 1998         □

EVANSTON-003850



POLICY NUMBER: RRP1549-11

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## MINIMUM EARNED PREMIUM AMENDMENT ENDORSEMENT

The following modifies all coverage forms and coverage parts attached to this policy.

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of ███████████████████ of the premium, whichever is the greater.  Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

All other terms and conditions remain unchanged.

**MEIL 1211 06 10**                                                                                           **Page 1 of 1**

EVANSTON-003851



**MARKEL®**

**EVANSTON INSURANCE COMPANY**

## COMMON POLICY DECLARATIONS – RAILROAD

**POLICY NUMBER:** RRP1549 -11          **RENEWAL OF POLICY:** RRP1549 -10

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

Norfolk & Portsmouth Belt Line Railroad Company

1340 Truxton Street

Chesapeake, VA 23324

Policy Period: From 04/23/2024 to 04/23/2025 at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS *FOR WHICH A PREMIUM IS INDICATED.*

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT                                                      PREMIUM

Commercial Inland Marine Coverage Part

Commercial Property Coverage Part

TRIA Coverage Part

                                        **Premium Total**

Other Charges SLT:

Audit Period: Annual unless otherwise stated

| Producer Number, Name and Mailing Address |
| --- |
| 06960 |
| Aon Risk Services, Inc. of Maryland |
| 10461 Mill Run Circle 5th Floor |
| Owings Mills, MD 21117 |

| **Endorsements** |
| --- |
| SEE ATTACHED FORMS SCHEDULE - MDIL 1001 |

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy.**

Countersigned: <u>May 29, 2024</u>                    By: _____

                    **Date**                                                          AUTHORIZED REPRESENTATIVE

| RR 1 09 00 | Page 1 of 1 |
| --- | --- |

EVANSTON-003852



**EVANSTON INSURANCE COMPANY**

## COMMERCIAL INLAND MARINE COVERAGE PART
## DECLARATIONS – RAILROAD

**POLICY NUMBER:** RRP1549 -11                  **RENEWAL OF POLICY:** RRP1549 -10

Named Insured and Mailing Address (No., Street, Town or City, County, State, Zip Code)

Norfolk & Portsmouth Belt Line Railroad Company

1340 Truxton Street

Chesapeake, VA 23324

Policy Period: From 04/23/2024 to 04/23/2025 at 12:01 A.M. Standard Time at your mailing address shown above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| Business Description |
|---|
| Railroad |

| Premium | |
|---|---|
| Premium for this Coverage Part: | ■■■■■■ |

| Endorsements |
|---|
| SEE ATTACHED FORMS SCHEDULE - MDIL 1001 |

| Producer Number, Name and Mailing Address |
|---|
| 06960 |
| Aon Risk Services, Inc. of Maryland |
| 10461 Mill Run Circle 5th Floor |
| Owings Mills, MD 21117 |

**These declarations, together with the Common Policy Conditions and Coverage Form(s) and any Endorsement(s), complete the above numbered policy**

Countersigned: <u>04/17/2024</u>                  By: _____
                          **Date**                                    AUTHORIZED REPRESENTATIVE

RR IM 1 09 00                                                                                      Page 1 of 1

EVANSTON-003853

**INSURANCE POLICY**
**FOR**
**Norfolk & Portsmouth Belt Line Railroad Company**

In consideration of the premium payable in accordance with Section 27 the below signed company(ies) (hereinafter referred to as the Insurer) agree(s) to insure the Named Insured (hereinafter referred to as the Insured) as per the terms and conditions of the following contract.

| | | |
|---|---|---|
| **(1)** | **NAMED INSURED** | Norfolk & Portsmouth Belt Line Railroad Company and any subsidiary, affiliated, associated, or allied company, corporation, firm, organization, partnership, or joint venture as now or hereafter constituted or acquired, as their respective interest may appear; and any other party in interest that is required by contract or other agreement to be named, as their respective interest may appear; **all hereafter referred to as the "Insured."** |

**(2)   TERM**

This policy attaches at 12:01 a.m., Local Standard Time, **April 23, 2024** and expires 12:01 a.m., Local Standard Time **April 23, 2025.**

**(3)   TERRITORY**

This policy covers within the United States and Canada

**(4)   PARTICIPATION**

This policy covers 100% interest in this insurance and the subscribing Insurer(s) are not liable for more than their indicated percentages of this insurance.

**(5)   LIMIT OF LIABILITY**

This Insurer shall be liable for up to:

$ 10,000,000 per occurrence; except

$ 10,000,000 per occurrence and in the annual aggregate for the peril of Flood

$ 10,000,000 per occurrence and in the annual aggregate for the peril of Earthquake

$1,000,000 per occurrence and in the annual aggregate as respects loss or damage from the peril of Flood to Buildings and Contents at the 1340 Truxton Road, Chesapeake, VA location.

**(6)   DEDUCTIBLES**

All claims for loss, damage or expense arising out of any one occurrence will be adjusted as one claim and from the adjusted claim there shall be deducted $100,000 per occurrence (including claims adjustment expenses), except

$250,000 per occurrence shall be deducted for any loss to Bridges and/or Trestles.

$250,000 per occurrence for loss or damage from the peril of Flood to Buildings and Contents at the 1340 Truxton Road, Chesapeake, VA location

In the event of loss or damage involving more than one deductible, the Insured can either elect to have the deductibles apply separately or have the single largest deductible apply; however in no event shall the sum deducted from any one loss exceed the largest single deductible (including claims adjustment expenses).

**(7)   COVERAGE**

(A)   <u>Property Damage</u>

(1)  This policy insures:

EVANSTON-003854

(a) the Insured's interest in all property owned, used, or intended for use by the Insured including property to be installed, erected or acquired, including during the course of construction, erection, assembly, alteration or repair, and including the Insured's interest in improvements or betterments to property not owned by the Insured. This policy also covers the Insured's interest in property of others, including employee's, whether or not in the Insured's care, custody or control, including the Insured's liability imposed by law or assumed by contract, whether written or oral, for such property, including property handled under rules of interchange, operating and trackage agreements.

This insurance shall cover properties which may be acquired or constructed by the Insured during the annual period, but the Insured agrees to report same to Insurer(s) as promptly as possible.

Permission is granted the Insured to transport any and all kinds of merchandise or other property in the usual and necessary course of their business and to change the number or naming of property insured hereunder, provided that a record be kept that will prove the identification of same in case of loss, anything contained in the printed conditions of this policy to the contrary notwithstanding.

Underwriters also agree to insure against consequential loss to undamaged insured property not directly involved in the insured event but which requires redesigning, relocation, removal or reconstruction due to the insured event.

(b) the expense of debris removal, rerail, salvage, defense, and rerouting of insured property damaged by an insured peril;

(c) contingent liability from the operation of any laws or order governing the demolition, repair, or replacement of insured property damaged by an insured peril;

(d) electronic data processing equipment, media, environment, peripherals, associated and other similar equipment and services; including word processing equipment, mobile train dynamic analyzers and associated equipment, all of which is owned, used or intended for use by the Insured, or hereafter installed or acquired or in the care, custody or control of the Insured, including while in transit, or while in course of installation or assembly, and including the interest in improvements and betterments to property not owned by the Insured;

(e) at the sole option of the Insured, the personal property of the Insured's officials and employees while on the premises of the Insured;

(f) contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by contract, whether written or oral;

(g) fine arts, including but not limited to paintings, etchings, drawings, lithographs, and museum quality photographs;

(h) valuable papers and records, defined as printed or otherwise inscribed documents and records, including but not limited to books, maps, drawings, films, abstracts, deeds, mortgages, and manuscripts (but does not include money and/or securities);

(i) all personal property insured hereunder in transit by any means of conveyance within the territorial limits of this policy including coastal waters thereof:

    i.    this policy attaches and covers continuously on incoming, outgoing and refused or returned shipments from the time the property is moved for the purpose of loading and unloading and in temporary storage, including while on any conveyance intended for use for any outbound or used for inbound shipment; including during deviation and delay; until safely delivered and unloaded into place of final destination.

EVANSTON-003855

      ii.    This policy is extended to cover loss or damage to property:

           (a)   sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery.

           (b)   arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery.

           (c)   occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents.

      iii.   (a)   The Insured may waive right(s) of recovery against private and contract carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting their liability, but this transit insurance shall not inure to the benefit of any other carrier, bailee, warehouseman or processor, except as provided in Section (7)(A)(1)(a).

           (b)   With respect to shipments made under F.O.B. or similar terms, this Insurer agrees to waive its rights of subrogation against consignees at the option of the Insured.

      iv.   The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

      v.   Seaworthiness of any vessel or craft is admitted between the Company and the Insured.

      vi.   The Insured may waive subrogation against railroads under Side Track Agreements.

The Insured's right of recovery under this policy for damage to those shipments moving under released value bills of lading shall not be prejudiced by the surrender of the damaged property to the carriers.

    (j)   Track and Roadbed which are owned and/or operated by the Insured or by others for the benefit of the Insured, including but not limited to:

        Rails, Ties, Fastenings, Drainage, Improved Land, grading, culverts and Ballast in place; including communication and signal systems along the right of way, interlockers, retarders and switches, except when such property is part of a building or structure. Track and Roadbed does not include bridges, tunnels and trestles.

(2)   This policy does not insure:

    (a)   currency, money, notes, evidence of debt, securities, growing crops, standing timber, "in-ground" natural resources, water or land; however, this exclusion shall not apply to the cost of reclaiming, restoring, or repairing land improvements.  Land improvements as described hereunder are defined as any alteration to the natural condition of the land by grading, landscaping, earthen dikes or dams;

EVANSTON-003856

    (b) watercraft, aircraft, trailers and semi-trailers licensed for use upon the public highways, owned, leased or for which the Insured is liable, except while as contents of buildings or on premises owned or leased by the Insured or on premises utilized by the Insured as TOFC terminals, or as lading, or when in use as hi-rail vehicles (but this exclusion shall not apply to contractor's equipment or to buses and motor vehicles used to conduct the Insured's operations);

    (c) property sold by the Insured under trust agreement, conditional sale, installment plan or other deferred payment plan, after such property has been delivered to customers (except property which the Insured has designated as being consigned);

    (d) property while covered under the Insured's import or export ocean marine policies; however, coverage on export shipments not insured under ocean marine policies does not extend beyond the time when the property is loaded on board overseas vessel or aircraft; coverage on import shipments not insured under ocean marine policies does not attach until after discharge from overseas vessel or aircraft;

    (e) property in transit via the Panama Canal.

(3) Valuation - the basis of adjustment shall be as follows:

    (a) finished goods, at the Insured's anticipated, or if sold, actual selling price, less all discounts and unincurred expenses; raw stock and stock in process, at replacement cost with like kind and quality at time and place of loss;

    (b) electronic data processing media, the full cost of reconstructing or reproducing the information (including the cost of research, engineering, or other costs of restoring or recreating information lost and/or damaged);

    (c) Electronic Data Processing Equipment - The basis of adjustment for electronic data processing equipment shall be as follows:

        i. all insured property, at the full cost to repair or replace with like kind and quality, if actually repaired or replaced; if not repaired or replaced, at actual cash value on date of loss;

        ii. the above notwithstanding, permission is granted to replace damaged equipment with a technologically superior replacement if such replacement is capable of performing the same function as the damaged equipment.

    (d) Fine Arts:  the <u>lesser</u> of

        i.  the cost to repair or replace, or

        ii.  the actual cash value as scheduled, or

        iii. the amount for which the Insured is legally liable;

    (e) Loss or damage to buildings, structures, track and roadbed or other property shall be adjusted at the replacement cost new on the date of loss if actually repaired or replaced.  If any building or structure or other property is not repaired or replaced, loss shall be adjusted based on the actual cash value.  The Insured shall be considered the unconditional owner of improvements and betterments to buildings leased or rented, notwithstanding any contract or lease the Insured may have entered into to the contrary. The cost of any betterment above like kind and quality shall be borne by the Insured unless the betterment is mandated by applicable building laws.  However, it is agreed by the Insured and Insurer that in the event of loss or damage by perils insured hereunder to properties designated as "Retired in Place", the limit of loss shall be the cost of debris removal, less any salvage value.

EVANSTON-003857

The above notwithstanding, permission is granted to replace lost or damaged obsolete equipment with a technologically superior replacement if such replacement is capable of performing the same function as lost or damaged equipment.  However, this Insurer shall not be liable for more than the reported replacement value of the lost or damaged equipment.

For the purposes of this section, replacement cost shall mean the full cost to repair or replace with new materials of like kind and quality on the date of loss (including, however, architects fees, engineering, inspection, superintendent, loss adjustment and all other expenses incidental to the repair or replacement of the property).  However, this Insurer's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts:

   i.  the amount of this policy applicable to the damaged or destroyed property; or

   ii.  the replacement cost of the property or any part thereof identical with such property and intended for the same occupancy and functional use; or

   iii.  the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

For the purpose of this section, actual cash value shall mean full cost to repair or replace with like kind and quality with proper deduction for physical depreciation on the date of loss. However, it is agreed by the Insured and Insurer that in the event of loss or damage by perils insured hereunder to properties designated as "Retired in Place", the limit of loss hereunder shall be the cost of debris removal, less any salvage value.

(f)  Rolling Stock - All questions affecting value, depreciation and repairs in connection with losses to rolling stock shall be settled as follows:

   i.  Owned Rolling Stock

Loss or damage to owned rolling stock, including buses and locomotives, shall be adjusted at the replacement cost new at the time of loss if actually  replaced.  If the above mentioned rolling stock is not replaced, the loss shall be adjusted at the actual cash value.

With respect to this Section (f) replacement cost shall mean the Insured's cost of new units of like kind and quality on the date of loss.  If units of like kind and quality are neither in production nor available for purchase as new equipment, the Insured's cost of current similar types of units will be replacement cost.

It is understood and agreed that in respect of loss to or claim for Diesel Locomotive(s) of a type or model no longer in manufacturer, the loss settlement(s) shall be based the cost of a new unit in current manufacture equal to or the next higher capacity than the involved unit.

With respect to this Section (f) actual cash value of locomotives shall mean the replacement cost as defined above depreciated by straight line depreciation of 2.5% per year subject to a maximum depreciation of 25%.  Actual cash value shall in no event exceed what it would then cost to repair or replace the lost or damaged property with material of like kind and quality.

The above notwithstanding, when values and expenses cannot be reasonably determined, all questions affecting values, depreciation, repairs, salvage, and dismantling costs shall be settled in accordance with the factors published by the Association of American Railroads in effect at the time of loss, or factors later put into effect retroactive to the time of loss.

Loss or damage to units will be considered as total when the cost of repair and/or replacement exceeds 80% of the replacement cost of that unit.

EVANSTON-003858

The basis of loss settlement for Leased or Rented rolling stock shall be the same as that for Owned Rolling Stock except to the extent of the Insured's liability therefor.

The above notwithstanding, permission is granted to replace lost or damaged obsolete equipment with a technologically superior replacement if such replacement is capable of performing the same function as lost or damaged equipment.  However, this Insurer shall not be liable for more than the reported replacement value of the lost or damaged equipment.

(g)  In case of loss or damage to any part of a machine or unit consisting of two or more parts when complete either for sale or use, the liability of the Insurer shall be limited to the value of the part or parts lost or damaged, or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts, or of repairing the machine or unit.

(h)  In the event of loss or damage under this policy that results in the enforcement of any law or ordinance regulating the construction or repair of damaged facilities, this Insurer shall be liable for:

  i.   the cost of demolishing the undamaged facility, including the cost of clearing the site;

  ii.  the replacement value of the undamaged part of the facility, and;

  iii. increased cost of repair or reconstruction of the damaged and undamaged facility on same or another site and limited to the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same or another site.  However, the Insurer shall not be liable for any increased cost of construction loss unless the damaged facility is actually rebuilt or replaced.

(i)  Valuable Papers – Valuable papers and Records, including but not limited to, books, maps, films, drawings, abstracts, evidence of debt, deeds, mortgages, mortgage files, manuscripts, and micro or electronically/magnetically inscribed documents/media, at the value blank plus the full cost of labor, service and/or supplies for actually reconstructing or reproducing the information (including cost of research, engineering, or other costs of recreating or restoring information lost and/or damaged.

The above Paragraphs (7)(A)(3)(a) through (j) notwithstanding, permission is granted to increase the amount of loss by no more than an additional 15% to the extent such additional loss is an obligation of the Insured under an applicable lease or contract.

**(B)    Time Element:**

(1)  This policy insures loss resulting from partial, complete, or potential suspension of business conducted by the Insured (including research and development) caused by loss, damage, or destruction to:

(a)  all property, except finished stock, as described in Section 7(A);

(b)  i.   electrical transmission lines and other electrical equipment and fuel, water, telephone, gas, steam, refrigeration, or other utility transmission lines and equipment situated outside premises;

     ii.   real or personal property of suppliers or distributors of electricity, fuel, water, telephone, gas, steam, refrigeration or other utilities to the Insured;

(c)  dam(s) or reservoir(s) or equipment connected therewith employed for the storage of water used as raw material or for power or other manufacturing purposes, used exclusively by the Insured or situated on land or premises owned, leased, occupied, used, or intended for use by the Insured;

(d)  real or personal property of others appurtenant to the premises of the Insured;

Rail Property Manuscript                                -6-                        **Policy No:  RRP1549-11**

EVANSTON-003859

(e) any property thereby preventing ingress to or egress from the Insured's premises;

(f) any property when access to the premises is prohibited by order of civil or military authority;

(g) records of all sums due the Insured from customers provided the Insured is unable to effect collection thereof;

(h) valuable papers and records defined as printed, or otherwise inscribed documents and records. These include such things as books, maps, films, drawings, abstracts, deeds, data processing media, mortgages and manuscripts (but do not include money and/or securities);

(i) any property which yields rents or for which the Insured is responsible for rents;

(j) real or personal property, including Attraction Properties, that directly or indirectly prevents a supplier (including suppliers of any tier) of goods and/or services to the Insured from rendering their goods and/or services, or property that prevents customers (including customers of any tier) of goods and/or services from the Insured from accepting the Insured's goods and/or services.

(k) real or personal property of a receiver of goods or services from the Insured.

(2) This policy does not insure against any increase in loss which may be occasioned by:

(a) the suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the interruption of business;

(b) interference at the described premises by strikers or other persons with:

    i. rebuilding, repairing or replacing the property damaged or destroyed;

    ii. the resumption or continuation of business.

(3) Loss, if any, shall be adjusted on the basis of:

    (a) the **ACTUAL LOSS SUSTAINED** by the Insurer, consisting of the net profit which is thereby prevented from being earned and/or all charges and expenses only to the extent that they must necessarily continue during the partial, complete, or potential suspension of business, and only to the extent to which they would have been earned had no loss occurred;

    (b) As respects accounts receivable - when there is proof that a loss of records of accounts receivable has occurred, but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be adjusted as follows:

i. the monthly average of accounts receivable during the last available twelve months, together with collection expenses in excess of normal collection costs and made necessary because of such loss or damage, and reasonable expenses incurred in reestablishing records of accounts receivable following such loss or damage, shall be adjusted in accordance with the percentage increased or decreased in the twelve months average of monthly gross revenues which may have occurred in the interim;

ii. the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records, not lost or damaged, or otherwise established or collected by the Insured and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

EVANSTON-003860

(c) As respects rents and rental value, this Insurer shall be liable for the **ACTUAL LOSS SUSTAINED** by the Insured resulting directly from necessary untenantability, caused by damage to or destruction of the insured property by a peril insured against during the term of this policy, but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy.

(d) As respects leasehold interest, this Insurer shall be liable for the pro-rata proportion (from the date of loss to expiration of the Lease, to be paid without discount) of the Insured's interest in:

    i.  the amount of bonus paid by the Insured for the acquisition of the Lease not recoverable under the terms of the    Lease for the unexpired term of the Lease;

    ii.  improvements and betterments to real and personal property during the unexpired term of the Lease which is    not covered under any other Section of this policy;

    iii.  the amount of advance rental paid by the Insured and not recoverable under the terms of the Lease for the    unexpired term of the Lease.

when property in rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the Lease is canceled by the lessor in accordance with conditions of the Lease or by statutory requirements of the state in which the damaged or destroyed property is.

    (e) As respects the payroll and payroll related expense of all employees of the Insured, the Insured shall be the sole judge as to the necessity of continuance.

(4) Loss, shall be computed:

    (a) from the time of the occurrence to the time when with due diligence and dispatch the property could be repaired and restored to normal operations not to be limited by the date of expiration named in this policy;

    (b) for such additional time as may be required with the exercise of due diligence and dispatch to:

        i.  restore stock in process to the same state of manufacture at which it stood at the time of interruption;

        ii.  replace damaged or destroyed mercantile stock;

        iii.  repair or reconstruct in full conformity with any law(s) or ordinance(s) regulating the construction, repair or demolition of real property;

    (c) from actual curtailment of production or suspension of business operations resulting from inability to procure suitable raw materials and supplies to replace similar materials and supplies damaged or destroyed, but liability for such loss shall be limited to that period for which the damaged or destroyed raw materials and supplies would have supplied operating needs.  In the event, however, that water used as a raw material or for power or for any other manufacturing purposes, stored behind dams or in reservoirs is released from storage as the result of damage to such dam, reservoir or equipment connected therewith, the liability of this Insurer for curtailment of production or suspension of business operations because of the resulting inadequate water supply shall not extend for more than thirty (30) consecutive days after the damage or destroyed dam, reservoir or equipment has been repaired or replaced;

    (d) for a period of time equivalent to the time in which, with due diligence and dispatch, property in the course of construction, erection, installation or assembly could be repaired or replaced.

EVANSTON-003861

(e) for such additional time as may be required to restore revenue to the same level as would have existed had no loss occurred, not to be limited by the date of expiration named in the policy.

(5) Extra Expense:

This policy also covers extra expenses (including detour expenses and expediting expenses) being those charges and expenses over and above those which would normally have been incurred to conduct business because of loss, damage or destruction by an insured peril to property covered under Clause (7)(B)(1). Coverage shall be computed from the time of the occurrence to the time when with due diligence and dispatch the property could be restored to normal operations, and for such additional time as may be necessary to restore revenue to the same level as would have existed had no loss occurred, not to be limited by the date of expiration named in this policy.

(6) Expense to Reduce Loss:

This policy also covers expenses (including expediting expenses) incurred for the purpose of reducing any loss.

(7) Experience of the Business:

In determining the amount of net profit, charges and expenses covered under clause (7)(B)(3):

(a) Completed Property: for purpose of ascertaining the amount of loss sustained, due consideration shall be given to the production, sales, and revenue experience of the business before the occurrence and the probable production, sales, and revenue experience thereafter had no loss occurred.

(b) Property in the course of construction, erection, installation, or assembly: for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the actual experience of the business during the 12 months after the date of damage or destruction.

Neither period to be limited by the date of expiration named in the policy

(C) Salvage and Removal Expenses - This policy covers the expense:

(1) of debris removal (as defined)

(2) of removal of obstructions in waterways and drainage systems, whether natural or man made, to the extent such expense is necessary to resume operations with the same quality of service which existed immediately preceding the loss and is the result of an insured peril;

(3) of general average, salvage and all other charges on shipments covered while waterborne or airborne.

(8) **PERILS** This policy insures against "All Risks" of physical loss, damage, or destruction including:

(A) physical loss, damage, or destruction to the property described elsewhere herein;

(B) consequential loss, damage or destruction (including that caused by change of temperature, pressure or humidity or interruption of power, heat, air conditioning, or refrigeration) to:

(1) property described elsewhere herein; or

(2) equipment, including all connections and supply or transmission lines and pipes therefor and used for:

EVANSTON-003862

      (a)   refrigeration, cooling or heating

      (b)  humidifying, dehumidifying or air conditioning

      (c)  generating or converting power

      (d)   compressing, decompressing, pressurizing or depressurizing

(C)     removal from premises endangered by the perils insured against.

(D)     destruction, distortion, or corruption of any computer data, coding, program, or software, including computer virus. "Computer Virus" shall mean a program or class of programs written to cause some form of intentional damage to computer systems or networks.

**(9)**  **PERILS EXCLUDED**  This policy does not insure:

(A)     Nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled and whether such loss be direct or indirect, proximate or remote, whether in whole or in part aggravated by perils insured against in this policy;

    (1)  if loss not otherwise excluded ensues, liability is specifically assumed for such ensuing loss or damage but not including any loss due to nuclear radiation or radioactive contamination;

    (2)  this Insurer shall be liable for loss or damage caused by sudden and accidental radioactive contamination including resultant radiation damage for each occurrence from material used, stored or transported, or from processes conducted on an insured premises and provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises.

(B)  (1) Hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack

      (a)   by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval or air forces; or

      (b)   by military, naval, or air forces; or

      (c)   by an agent of such government, power, authority, or forces;

    (2)      any weapon employing atomic fission;

    (3)      rebellion, revolution, civil war, usurped power; or action taken by governmental authority in hindering, combating, or defending against such occurrence;

    (4)      seizure or destruction by order of public authority, except destruction by order of public authority to mitigate hazard to the public;

    (5)      risks of contraband or illegal trade.

Notwithstanding the above provisions, (B)(1)(2)(3)(4) and (5) this insurance shall cover loss or damage directly caused by acts committed by an agent of any government party, or faction engaged in war, hostilities, or warlike operations, provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval, or air forces) in the country where the property is situated.

Nothing in the foregoing shall be construed to include any loss, damage, or expense caused by or resulting from any of the risks or perils excluded above, but in no event shall this insurance include any loss, damage, or expense caused by or resulting from any weapon of war employing atomic fission or radioactive forces whether in time of peace or war.

EVANSTON-003863

(C)    Ordinary wear, tear, or gradual deterioration, or the normal settling or shrinkage of walls, floors, or ceilings, unless loss not otherwise excluded herein ensues, and then only for loss or damage caused by the ensuing loss.

(D)    Neglect of the Insured's supervisory employees to initiate reasonable means to save and preserve property when practicable after knowledge of an occurrence.

(E)    Electrical injury or disturbance to electrical appliances or devices of any kind (including wiring) caused by electrical currents artificially generated unless loss not otherwise excluded herein ensues and then only for loss or damage caused by the ensuing loss. This exclusion shall not apply to EDP equipment, media or related extra expense loss.

(F)    Mechanical breakdown unless loss not otherwise excluded herein ensues and then only for loss or damage caused by the ensuing loss. This exclusion shall not apply to EDP equipment, media, or related extra expense loss.

(G)    Loss or damage caused by or resulting from moth and vermin unless loss not otherwise excluded herein ensues and then only for loss or damage caused by the ensuing loss.

(H)    Delay, loss of market, bankruptcy, foreclosure.

(I)    Against unexplained loss, mysterious disappearance, or loss or shortage disclosed on taking inventory; except this exclusion shall not apply to property while in the custody of any carrier for hire or other bailee.

(J)    Against any fraudulent or dishonest act or acts committed by the Insured or any of the Insured's employees, unless loss not otherwise excluded herein ensues and then only for loss or damage caused by the ensuing loss. "Dishonest or fraudulent acts" as used in this paragraph shall mean only dishonest or fraudulent acts committed by the Insured or the Insured's employees with the manifest intent to:

    (1)   cause the Insured to sustain such loss; and

    (2)   obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions, or other employee benefits earned in the normal course of employment.

(K)    With respect to Real and Personal Property (excluding stock, supplies or raw materials used in the manufacture of the Insured's product) errors in design, faulty workmanship, and faulty materials, unless loss not otherwise excluded herein ensues and then only for loss or damage caused by the ensuing loss.

(L)    The explosion or rupture or bursting of steam boilers or steam pipes or steam turbines or steam engines owned or operated by the Insured, unless loss not otherwise excluded ensues, and then only for loss or damage caused by the ensuing peril.

(M)    With respect to stock in process only, damage sustained while actually being worked on and directly resulting therefrom due solely to errors or omissions by the Insured in the manufacture of its product.

(N)    Flood or Earthquake Damage to Track & Roadbed

With the exception of Exclusions A., B. and L. where two perils are related in a manner such that one results from the loss or damage caused by the other, the resulting peril is covered unless both perils are excluded.

Exclusions E., F., G., K., L. and M. shall not apply to property in transit from the time the property is first moved for loading until safely delivered and accepted at the final point of destination.

EVANSTON-003864

Exclusions E., F., K. and L. shall not apply to alterations, additions and for property while in the course of construction, erection, installation, or assembly.

Exclusions E., F., G., I., K., L. and M. shall not apply to valuable papers and records, EDP equipment/media and account receivable.

Exclusion L shall not apply to locomotives, rolling stock, or other conveyance insured herein.

## (10) NOTICE OF LOSS

Knowledge of an occurrence by an Insured's agent, servant, or employee shall not constitute knowledge by the Insured unless an executive officer, partner, proprietor, or risk manager has received such notice.

As soon as reasonable after an occurrence of loss or damage is known to the Insured's Home Office Insurance Department, they shall report such occurrence with full particulars to Insurer(s) and/or their designated adjusters.

The Insurer shall not deny coverage as the result of unintentional failure by the Insured to give notice as respects any occurrence, provided notice is given as soon as reasonable after becoming aware that this policy may apply to such occurrence.

However, the Insured is not obligated to report occurrences which, in the opinion of the Insurance Department, will not exceed the applicable deductible.

## (11) PROOF AND SUITS

It is understood and agreed that the conditions of this policy relating to the time for filing proofs and the commencement of suits or action at law are waived, provided, however, that the Insured will use due diligence to present proofs at as early a date as will be practicable.

This policy is extended to include reasonable fees payable to auditors, accountants, lawyers, architects, engineers or other such professionals (but not the Insured's insurance broker, employees or public adjusters) for producing and certifying particulars or details of the Insured's business required by the Insurer(s) in order to arrive at the loss payable under this policy in the event of a claim. This coverage applies only to fees incurred in establishing the amount of loss, liability for which is otherwise accepted by the Insurer(s). Such fees shall be part of and not in addition to the limit of liability specified in this policy.

## (12) PAYMENT OF LOSS

Loss is to be adjusted with and made payable to the Insured, or as otherwise directed. All losses shall be due and payable no later than thirty (30) days after presentation and acceptance of proofs of loss by this Insurer or its appointed representative.

Subject to the foregoing, permission is granted to partially adjust claims for presentation, acceptance and payment.

## (13) REINSTATEMENT

Except for the application of aggregate limits applicable to flood and earthquake, any loss under this policy shall not reduce the amount of insurance provided by this policy.

## (14) DEFENSE

It is agreed that in all cases where claim against the Insured is resisted by the Insured with the consent and approval of the interested Insurer, the cost and expense of such resistance, whether conducted by the Insured or by the interested Insurer, shall be paid by the interested Insurer.

## (15) ARBITRATION

EVANSTON-003865

If the Insured and Insurers fail to agree on the amount of adjusted loss, each, upon the written demand either of the Insured or of Insurers made within thirty (30) days after receipt of proof of loss by the Insurer, shall select a competent and disinterested appraiser. The appraisers will then select a competent and disinterested umpire. If they should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of this Insurer such umpire shall be selected by a judge of court of record in the county and state in which such appraisal is pending. Then at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and this Insurer shall each pay his chosen appraiser, and shall bear equally the other expenses of the appraisal and of the umpire.

**(16) SUBROGATION & RECOVERIES**

(A) Any release from liability entered into by the Insured prior to loss hereunder, other than as previously provided in this policy, shall not affect this policy or the right of the Insured to recover hereunder. The right of subrogation against the Insured or subsidiary or affiliated corporations or companies or any other corporations or companies associated with the Insured through ownership or management is waived.

(B) In the event of any payment under this policy, this company shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all paper required and shall do anything that may be necessary at the expense of the Insurer to secure such right. The Insurer will act in concert with all other interests concerned, i.e., the Insured and any other company(ies) participating in any loss, in the exercise of such rights of recovery. As a result of subrogation, or other efforts, if any amount is recovered, the net amount recovered shall be divided between the interests concerned in the proportion of their respective interests. Necessary expenses shall be divided between the interests concerned in proportion of their respective recoveries. If there should be no recovery, the expense of proceedings shall be borne proportionately by the interests instituting the proceedings.

**(17) BRAND OR TRADEMARK**

In case of damage to property bearing a brand or trademark or which in any way carries or implies the guarantee or the responsibility of the manufacturer or Insured, the salvage value of such damaged property shall be determined after removal, at the Insurer's expense, in the customary manner of all such brands or trademarks or other identifying characteristics. The Insured shall have full right to the possession of all goods involved in any loss under this policy and shall retain control of all damaged goods. The Insured, exercising a reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this policy are fit for consumption and no goods so deemed by the Insured shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow this Insurer any salvage value obtained by the Insured on any sale or other disposition of such goods.

**(18) OTHER INSURANCE**

Except for insurance permitted by the Contributing Insurance Clause, by the Excess Insurance Clause, or by the Underlying Insurance Clause, this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, and whether directly or indirectly covering the same property against same perils. This Insurer shall be liable for loss or damage only to the extent of that amount in excess of the amount recoverable from other such insurance. Notwithstanding that this policy only covers for the excess of any other collectible insurance, this Insurer guarantees prompt payment in full of the amount of loss which would otherwise have been recoverable hereunder, and agrees to advance the amount of loss as a loan, without interest, repayable only in the event of and to the extent of recovery from such other insurance.

**(19) CONTRIBUTING INSURANCE**

EVANSTON-003866

Permission is granted to obtain additional policies written upon the same plan, terms, conditions, and provisions of those contained in this policy.

This policy shall contribute to the total of each loss otherwise payable hereunder only to the extent of the participation of this policy in the total limit of liability set forth herein.

**(20)  EXCESS INSURANCE**

Permission is granted the Insured to have excess insurance over the limit of liability set forth in this policy without prejudice to this policy, and the existence of such insurance, if any, shall not reduce any liability under this policy.

**(21)   UNDERLYING**

Permission is granted to the Insured to purchase insurance on all or any part of the deductible and against all or any of the perils covered by this policy.  The existence of such underlying insurance shall not prejudice or affect any recovery otherwise payable under this policy. If the limits of such underlying insurance exceed the deductible amount which would apply in the event of loss under this policy, then that portion which exceeds such a deductible amount shall be considered "other insurance".

**(22)  SUE AND LABOR**

In case of actual or imminent loss or damage, it is expected the Insured will initiate action to defend or recover the property in question, and such will be done without prejudice to this insurance.  Further, any such initiated actions on the part of the Insured or Insurer taken in defending ,safeguarding or recovering the insured property shall not be considered a waiver or an acceptance of an abandonment.  Expenses for such action as taken by the Insured, or an agent of the Insured, to defend, safeguard and recover insured properties against actual or imminent loss are covered by this policy.

**(23)  SALVAGE**

All salvages, recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made to the parties involved.

**(24)  DEFINITIONS**

(A)  Occurrence

Loss, or a series of losses or several losses, which are attributable directly or indirectly to one cause or disaster or to one series of similar causes or disasters arising from a single event. All such losses shall be added together and the total amount of such losses shall be treated as one occurrence irrespective of the period of time or area over which such losses occur.

When the term applies to windstorms, it shall be defined as the sum total of all losses arising out of or caused by the same atmospheric disturbance during any period of 72 consecutive hours.  The Insured shall have the right to elect the moment from which the 72 hour period shall be deemed to have commenced, provided always that no elected period of 72 hours shall commence within the period of any previous occurrence.  However, it is further understood and agreed that any loss from windstorm and resulting loss and damage as respects any storm cell that is declared by the National Weather Bureau and/or National Hurricane Center and/or any other similar weather center in foreign countries, shall be considered as a single occurrence regardless of the duration of a named or numbered storm cell.

When the term applies to earthquake, it shall be defined as the sum total of all the Insured's losses sustained during any period of 168 consecutive hours by reason of one earthquake or a series of earthquake shocks.  The Insured may elect the moment from which the 168 hour period shall be deemed to have commenced, provided always that no elected period of 168 hours shall commence

EVANSTON-003867

within the period of any previous occurrence.

When the term applies to flood, it shall be defined as the sum total of all losses sustained by reason of one flood or a series of floods.

When the term applies to theft, the sum total of all losses insured herein resulting from one or more fraudulent or dishonest acts committed by a person(s) acting alone or in collusion with others shall constitute one occurrence.

Should any time period referred to above extend beyond the expiration date of this policy and commence prior to the expiration, this Insurer shall pay all losses occurring during such period as if such period fell entirely within the terms of this policy.

This Insurer shall not be liable, however, for any loss caused by any earthquake shock, volcanic action, or flood occurring before the effective date and time of this policy.

(B)  Contingent Liability from Operation of Laws Governing the Demolition, Repair or Replacement of Insured Property.

This policy shall cover consequential expenses or losses resulting from the enforcement of laws or ordinances which do not permit restoration of structures to their condition prior to the damage caused by a peril insured against.  These expenses include the loss of value of any undamaged portion of the structure, cost of demolition of the undamaged portion of the structure, and increased expense to replace the structure with one conforming to laws or ordinances or to repair the damaged structure so that it meets current building laws or ordinances.

(C)  Debris Removal

This policy shall cover the following expenses resulting from a peril insured against:

(1)  the cost of removal of debris of property covered hereunder;

(2)  the cost of removal of debris of property not insured hereunder from the premises of the Insured;

(3)  cost of restoration of land made necessary to prevent further insurable loss;

(4)  cost of removal, disposal, decontamination and replacement of property insured hereunder which has been contaminated by a sudden and accidental peril insured hereunder and by law, ordinance or order of civil authority must be removed, disposed or decontaminated.

(D)  Flood

Wherever in this policy the word "flood" appears, it shall be held to mean a general and temporary condition of partial or complete inundation of normally dry land areas ensuing from the overflow of inland or tidal waters, tsunami or the unusual and rapid accumulation or runoff of surface waters (including the overflowing and breaking of boundaries from any source.

(E)  Rental Value - the sum of

(1)  The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and

(2)  The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

(3)  The fair rental value of any portion of said property which is occupied by the Insured.

(F)  Securities

EVANSTON-003868

All negotiable and non-negotiable instruments or contracts representing either money or other property, and includes revenue and other stamps in current use.

(G)  Track and Roadbed

Rails, Ties, Fastenings, Drainage, Improved Land, grading, culverts and Ballast in place; including communication and signal systems along the right of way, interlockers, retarders and switches, except when such property is part of a building or structure.  Track and Roadbed does not include bridges, tunnels, and trestles.

(H)  Detour

The term Detour as used herein shall mean rerouting when such rerouting has been made necessary due to loss, damage, or destruction to property of the type insured hereunder.

(I)  Attraction Properties

Properties not owned or operated by the Insured, which attract potential customers to the Insured's business.

(J)  Named Windstorm

The term windstorm shall mean the direct action of wind, including wind driven rain, storm surge and flood when associated with or occurring in conjunction with a storm or weather disturbance which is named by the National Weather Bureau, National Hurricane Center or any other recognized meteorological authority.

(K)  Earthquake

Quaking, vibratory or undulating movement of a portion of the earth's crust, produced by underground volcanic forces or by breaking and shifting of rock beneath the earth's crust.  It is understood and agreed that, wherever used in this policy, the term "loss caused by" or "loss arising from" earthquake shall be restricted exclusively to the actual, specific cracking, rupturing, shifting or toppling of property and shall not include ensuing loss or damage, not otherwise excluded, resulting from other loss or damage insured.  Such ensuing loss shall be construed to have been of the same **occurrence**, but of a different proximate cause.

**(25)  LOSS ADJUSTERS**

As agreed between Insured and Company

**(26)  PREMIUM**



**(27)  CANCELLATION**

(A)  This policy may be canceled at any time at the request of the Insured and may also be canceled by the Insurer by delivering or mailing to the Insured's Department of Insurance ninety (90) days written notice of intent to cancel or non-renew, or, ten (10) days written notice of intent to cancel for nonpayment of premium.

The Insured's mailing address is:

EVANSTON-003869

Norfolk & Portsmouth Belt Line Railroad Company
1340 Truxton Street
Chesapeake, VA 23342

B) The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in this notice shall become the end of the policy period. Delivery of such written notice either by the Insured or this Insurer shall be equivalent to mailing.

(C) Cancellation shall not affect coverage on any shipment in transit on the date of cancellation. Coverage will continue in full force until such property is delivered and accepted at the point of final destination.

**(28) CONTINUITY**

This policy will be continuous through, and not invalidated by, any encumbrances of mortgage on insured property, or chattel mortgages, trust deeds, conditional purchase contracts, or if any foreclosure proceedings be commenced or notice given of sale, or any contracts or sales be entered into concerning the insured property.

**(29) CROSS LIABILITY**

The insurance afforded by this policy applies separately to each Insured against whom claim is made or suit is brought, and the inclusion herein of more than one Insured shall not operate to increase the limits of the Insurer's liability.

**(30) ERRORS OR OMISSIONS**

No unintentional error or omission made by the Insured shall void or impair the insurance hereunder, but shall be corrected when discovered.

**(31) TITLES**

Titles of paragraphs of this form and any subsequent endorsements are used solely for convenience of reference and do not limit, increase, or change the provisions to which they relate.

**(32) ENDORSEMENTS**

Changes in the terms and conditions of this policy will be made by numbered endorsements.

**(33) CERTIFICATES**

It is hereby understood and agreed that Holders of Certificates of Insurance issued against this policy that are shown as Additional Insureds, Mortgagees, or Loss Payees are added to this policy as their interest may appear as respects the property listed on the certificate. Aon Risk Services is authorized to issue Certificates of Insurance as respects property covered hereunder.

**(34) ASSISTANCE & COOPERATION OF INSURED**

The Insured shall cooperate with this Insurer, and, upon this Insurer's request and expense, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining and attendance of witnesses, and in the conduct of suits.

**(35) SUIT AGAINST THE COMPANY**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this policy and unless commenced within twelve (12) months next after the happening becomes known to the Insured's Home Office Insurance Department, unless a longer period of time is provided by applicable Statute.

EVANSTON-003870

**(36)  EXTORTION**

This insurance shall not be prejudiced by the refusal of the Insured to comply with any extortion demand.

**(37)  WAIVER**

The typewritten terms and conditions of this form and any subsequent endorsements are substituted for the printed policy jacket, or other printed forms which may be attached, the terms and conditions of the printed policy jackets and forms (except those required by law) being waived.

**(38)  JOINT LOSS AGREEGEMENT**

In the event the Insured suffers a loss or damage to property at a location designated in this policy and also designated in a Boiler insurance policy, and there is a disagreement between this Insurer and the Boiler Insurer with respect to:

1.  Whether the loss or damage was caused by a peril insured against by this policy or by an accident insured against by such Boiler insurance policy, or

2.  The extent of participation of this policy and of such Boiler insurance policy in the loss or damage;

then, after agreement among the Insured, this Insurer and the Boiler Insurer as to the total amount of the loss or damage recoverable under both policies, this Company will, upon written request of the Insured, pay to the Insured, in addition to that portion of the total recoverable loss or damage for which it admits liability:

One-half (½) of that portion of the total recoverable loss or damage which is in disagreement (but in no event more than the minimum amount remaining payable under either this policy or the Boiler insurance policy after making provisions for undisputed payments) provided that the Boiler Insurer shall simultaneously pay to the Insured the remaining one-half (½) of the portion of the total recoverable loss or damage which is in disagreement.

Such payment by the Insurer and the acceptance of the same by the Insured signifies the agreement of the Insurer to submit to and proceed with arbitration within ninety (90) days of such payment in order to apportion the amount of the total recoverable loss or damage which is in disagreement between this Insurer and the Boiler Insurer.  The arbitrators shall be three in number, one of whom shall be appointed by this Insurer, one of whom shall be appointed by the Boiler Insurer, and the third appointed by consent of the other two.  The decision by the arbitrators shall be binding on the parties.

The Insured agrees to cooperate in furnishing information and technical data as may be required by this Insurer in connection with such arbitration or any other method of apportionment upon which this Company and the Boiler Insurer may decide, but not to intervene therein.

Except as otherwise expressly provided herein, this section does not modify or waive any of the terms and conditions of this policy or affect in any way the rights of the Insured or the Insurer thereunder.

This section shall not apply unless the Boiler insurance policy is similarly endorsed, and it may be canceled by the Insurer on ten days' written notice to the Insured.

Signed and accepted by:

AUTHORIZED REPRESENTATIVE

EVANSTON-003871

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

**LOSS CONDITIONS**

**A. Abandonment**

There can be no abandonment of any property to us.

**B. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**C. Duties In The Event Of Loss**

You must see that the following are done in the event of loss or damage to Covered Property:

**1.** Notify the police if a law may have been broken.

**2.** Give us prompt notice of the loss or damage. Include a description of the property involved.

**3.** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**4.** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**5.** You will not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**6.** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**7.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**8.** Send us a signed, sworn proof of loss containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**9.** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit.

**10.** Cooperate with us in the investigation or settlement of the claim.

**D. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**E. Loss Payment**

**1.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**2.** We will not pay you more than your financial interest in the Covered Property.

**3.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**4.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

EVANSTON-003872

5. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if you have complied with all the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of the loss; or

   b. An appraisal award has been made.

6. We will not be liable for any part of a loss that has been paid or made good by others.

## F. Other Insurance

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## G. Pair, Sets Or Parts

1. Pair Or Set

   In case of loss or damage to any part of a pair or set we may:

   a. Repair or replace any part to restore the pair or set to its value before the loss or damage; or

   b. Pay the difference between the value of the pair or set before and after the loss or damage.

2. Parts

   In case of loss or damage to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

## H. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## I. Reinstatement Of Limit After Loss

The Limit of Insurance will not be reduced by the payment of any claim, except for total loss or damage of a scheduled item, in which event we will refund the unearned premium on that item.

## J. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance; or

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you.

   This will not restrict your insurance.

## GENERAL CONDITIONS

## A. Concealment, Misrepresentation Or Fraud

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

## B. Control Of Property

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. Legal Action Against Us

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the direct loss or damage.

© ISO Properties, Inc.,  2003

**CM 00 01 09 04**     □

EVANSTON-003873

**D. No Benefit To Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**E. Policy Period, Coverage Territory**

We cover loss or damage commencing:

**1.** During the policy period shown in the Declarations; and

**2.** Within the coverage territory.

**F. Valuation**

The value of property will be the least of the following amounts:

**1.** The actual cash value of that property;

**2.** The cost of reasonably restoring that property to its condition immediately before loss or damage; or

**3.** The cost of replacing that property with substantially identical property.

In the event of loss or damage, the value of property will be determined as of the time of loss or damage.

EVANSTON-003874

COMMERCIAL PROPERTY
CP 00 90 07 88

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory is:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

EVANSTON-003875

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

EVANSTON-003876

POLICY NUMBER: RRP1549-11

COMMERCIAL PROPERTY
CP 12 18 10 12

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

### SCHEDULE

| Location Number:  ATIMA | Building Number:  ATIMA | Applicable Clause                          C.1 (Enter C.1., C.2., C.3. or C.4.): |
|---|---|---|
| **Description Of Property:**  ATIMA | | |
| **Loss Payee Name:**     The Commonwealth of Virginia, the Virginia Department of Transportation and officer, agents and employees of these entities **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** **(Enter C.1., C.2., C.3. or C.4.):** |
| **Description Of Property:** **Loss Payee Name:** **Loss Payee Address:** | | |
| **Location Number:** | **Building Number:** | **Applicable Clause** **(Enter C.1., C.2., C.3. or C.4.):** |
| **Description Of Property:** **Loss Payee Name:** **Loss Payee Address:** | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

© Insurance Services Office, Inc., 2011

EVANSTON-003877

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

**C.** The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**1. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

**2. Lender's Loss Payable Clause**

**a.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**(1)** Warehouse receipts;

**(2)** A contract for deed;

**(3)** Bills of lading;

**(4)** Financing statements; or

**(5)** Mortgages, deeds of trust, or security agreements.

**b.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**(1)** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**(2)** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**(3)** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(a)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(b)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(c)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**(4)** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(a)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(b)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**c.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**d.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

© Insurance Services Office, Inc., 2011

EVANSTON-003878

3. **Contract Of Sale Clause**

   **a.** The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

   **b.** For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

   **(1)** Adjust losses with you; and

   **(2)** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

   **c.** The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

4. **Building Owner Loss Payable Clause**

   **a.** The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

   **b.** We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

   **c.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

EVANSTON-003879

INSURED:   Norfolk & Portsmouth Belt Line Railroad Company

RISK:     All Risk Coverage

POLICY NO.: RRP1549-11

EFFECTIVE: 04/23/2024

IT IS HEREBY UNDERSTOOD AND AGREED THE FOLLOWING CONDITION IS ADDED TO THE POLICY:

1.        **Electronic Data Exclusion**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

a)   This Policy does not insure loss, damage, destruction, distortion, erasure, corruption or alteration of ELECTRONIC DATA from any cause whatsoever (including but not limited to COMPUTER VIRUS) or loss of use, reduction in functionality, cost, expense of whatsoever nature resulting therefrom, regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

ELECTRONIC DATA means facts, concepts and information converted to a form useable for communications, interpretation or processing by electronic and electromechanical data processing or electronically controlled equipment and includes programmes, software and other coded instructions for the processing and manipulation of data or the direction and manipulation of such equipment.

COMPUTER VIRUS means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. COMPUTER VIRUS includes but is not limited to 'Trojan Horses', 'worms' and 'time or logic bombs'.

b)   However, in the event that a peril listed below results from any of the matters described in paragraph a) above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the Policy period to property insured by this Policy directly caused by such listed peril.

EVANSTON-003880

Listed Perils

Fire
Explosion
Derailment/Collision

2.    **Electronic Data Processing Media Valuation**

Notwithstanding any provision to the contrary within the Policy or any endorsement thereto, it is understood and agreed as follows:-

Should electronic data processing media insured by this Policy suffer physical loss or damage insured by this Policy, then the basis of valuation shall be the cost to repair, replace or restore such media to the condition that existed immediately prior to such loss or damage, including the cost of reproducing any ELECTRONIC DATA contained thereon, providing such media is repaired, replaced or restored. Such cost of reproduction shall include all reasonable and necessary amounts, not to exceed USD **$10,000,000** any one loss, incurred by the Assured in recreating, gathering and assembling such ELECTRONIC DATA. If the media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank media. However this Policy does not insure any amount pertaining to the value of such ELECTRONIC DATA to the Assured or any other party, even if such ELECTRONIC DATA cannot be recreated, gathered or assembled.

Attached to and forming part of Policy No:  **RRP1549-11**

AUTHORIZED REPRESENTATIVE

**NMA 2914 (25.1.01)**

EVANSTON-003881

COMMERCIAL PROPERTY



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – BIOLOGICAL, RADIOLOGICAL OR CHEMICAL MATERIALS

This endorsement modifies insurance provided under all Property and similar or related coverage forms attached to this policy.

The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage caused directly or indirectly by the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**Biological, Radiological Or Chemical Materials**

Loss or damage caused directly or indirectly by the actual or threatened malicious use of pathogenic or poisonous biological, radiological or chemical materials, whether in time of peace or war, and regardless of who commits the act.

All other terms and conditions remain unchanged.

EVANSTON-003882

INTERLINE



# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ORGANIC PATHOGENS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

**A.** The following exclusion is added and is therefore not a Covered Cause Of Loss:

We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless or any other cause or event that contributes concurrently or in any sequence to the loss.

**Organic Pathogens**

Presence, growth, proliferation, spread or any activity of "organic pathogens".

This exclusion applies regardless of whether there is any:

**1.** Direct physical loss or damage to Covered Property;

**2.** Loss of use, occupancy or functionality or decreased valuation of Covered Property or loss of Business Income;

**3.** Action required including, but not limited to, testing, repair, replacement, removal, clean-up, abatement, disposal, relocation or actions taken to address medical or legal concerns; or

**4.** Suit or administrative proceeding, or action involving the insured.

This exclusion replaces any "Fungus", Wet Rot, Dry Rot And Bacteria exclusion or other similar exclusion in this policy.

**B.** If this policy includes the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, that Additional Coverage is deleted in its entirety.

**C.** With respect to this exclusion, the following definitions are added and replace any similar definitions in this policy:

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Organic pathogen" means:

   **a.** Any organic irritant or contaminant including, but not limited to, "fungus", wet or dry rot, bacteria, virus, or other microorganisms of any type, and their by-products such as spores or mycotoxins; or

   **b.** Any disease-causing agent as classified by the Environmental Protection Agency.

All other terms and conditions remain unchanged.

EVANSTON-003883

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

   © Insurance Services Office, Inc., 2015

EVANSTON-003884



**RAILROAD**
POLICY NUMBER: RRP1549-11

# EVANSTON INSURANCE COMPANY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ENDORSEMENT #1

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE SCHEDULES ON FILE WITH UNDERWRITERS ARE FOR INFORMATIONAL PURPOSES ONLY AND NOT ALL PROPERTY MAY BE SCHEDULED.

All other terms and conditions remain unchanged.

**RR 1009 06 08**

**Page 1 of 1**

EVANSTON-003885