IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S
REPLY IN SUPPORT OF ITS FOURTH MOTION *IN LIMINE* TO EXCLUDE
TESTIMONY AND OPINIONS OF JASON R. MEYERROSE**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, for its Reply in Support of its Fourth Motion *in Limine* to Exclude Testimony and Opinions of Carver's expert, Jason R. Meyerrose ("Mr. Meyerrose"), states as follows:

**Introduction**

As explained in the Belt Line's opening brief, nowhere in Mr. Meyerrose's Expert Report did he provide the basis or reasons for his valuation opinion, nor did he include any data that he considered to reach it, in violation of Rules 26(a)(2)(B) and 702. *See* ECF 138, pp. 2-4. Carver's Opposition does not contend that Mr. Meyerrose's Expert Report contains this information but, instead, argues that the deficiencies of the Report are somehow cured by Mr. Meyerrose's six-paragraph Affidavit of Valuation and unspecified "supporting file materials." *See* ECF 156, p. 7. Carver further argues that its "late disclosure" of Mr. Meyerrose's methodologies is harmless and substantially justified under Rule 37(c)(1).

Notably, not one of the documents Carver has produced reveals the actual methodologies or data utilized to arrive at Mr. Meyerrose's valuation opinion. This information is still unknown.

1

Throughout Carver's Opposition, it provides conflicting accounts regarding what methodology Mr. Meyerrose supposedly utilized. Carver first references Mr. Meyerrose's Affidavit of Valuation, where Mr. Meyerrose swore under oath that his valuation opinion is based on a review of the fair market value of comparable vessels. *See* ECF 3-1. However, no comparable sales data was identified in his Affidavit or any other document produced by Carver. In an attempt to justify this omission, Carver goes on to argue that no sales of comparable vessels exist, and that Mr. Meyerrose's valuation was *actually* based on his survey of the vessel and "specialized knowledge of the industry." ECF 156, p. 10. This is obfuscation as Carver failed to provide *any* data to support this supposed "methodology."

This is not the case of "late disclosure," as Carver argues, but of no disclosure at all. Carver's belated attempt to piece together multiple, disconnected documents produced over the course of discovery to try to cure the deficiencies of Mr. Meyerrose's Expert Report is not only unfounded, [1] but fails to yield the methodologies and data required by Rules 26(a)(2)(B) and 702. As such, Mr. Meyerrose's opinions are inadmissible.

## Argument

**I.   Mr. Meyerrose's Expert Report fails to comply with requirements of Rule 26(a)(2)(B).**

The Rule 16(b) Scheduling Order required the Parties' expert witnesses to submit reports compliant with Federal Rule of Civil Procedure 26(a)(2)(B). ECF 66, p.1. Rule 26(a)(2)(B) provides, in relevant part:

---

[1] Rule 26(a)(2)(B) explicitly requires that an expert's opinions, the basis and reasons for them, and the data considered in forming them be contained in a single report. *See* Fed. R. Civ. P. 26(a)(2)(B) ("***The report*** must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them[.]") (emphasis added). Nowhere in the Rule does it provide for a party to make such disclosures throughout the course of discovery in multiple, disconnected documents.

> Unless otherwise stipulated or ordered by the court, this ***disclosure must be accompanied by a written report***—prepared and signed by the witness—***if the witness is one retained or specially employed to provide expert testimony*** in the case or one whose duties as the party's employee regularly involve giving expert testimony. ***The report must contain***: **(i)** ***a complete statement of all opinions the witness will express and the basis and reasons for them***; [*and*] **(ii**) ***the facts or data considered by the witness in forming them***[.]

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Mr. Meyerrose authored a report, dated July 7, 2024, in which he provided a description of the M/T MACKENZIE ROSE that concludes with a one-line estimated *range* of its value (the "Expert Report"). See ECF 138-1. Mr. Meyerrose's report failed to include, however, the basis or reasons for his opinion, nor did he include any data that he considered to reach it. See ECF 138, pp. 2-3. He merely provided eleven pages of photos of the vessel and a seven-page description of it, along with his assumption that the tug was in working order, but without supporting data or methodologies used to arrive at his valuation. See ECF 138-1.

Carver does not contend that Mr. Meyerrose's Expert Report contains this information but, instead, argues that the deficiencies of the Report are cured by Mr. Meyerrose's Affidavit of Valuation and various "supporting file materials." See ECF 156, p. 7 ("Mr. Meyerrose's [Expert] Report, including the Affidavit of Valuation and supporting file materials fully comply with [Rule 26(a)(2)(B)].").[2] This argument fails for three reasons.

First, Mr. Meyerrose's Affidavit of Valuation does not cure the deficiencies of his Expert Report. Carver argues that "in his Affidavit Mr. Meyerrose utilized an accepted method of

---

[2] Carver also states that "Counsel for the Belt Line and its expert were provided with an opportunity to depose Mr. Meyerrose but did not do so." ECF 156, p. 7. The Belt Line was under no obligation to depose Mr. Meyerrose and, given the blatant deficiencies of his Expert Report, properly concluded that any deposition would prove fruitless. With no data or methodologies to support Mr. Meyerrose's one-sentence valuation of the M/T MACKENZIE ROSE, the Belt Line would have been unable to meaningfully evaluate his opinion.

valuation[.]" ECF 156, p. 6. In his six-sentence Affidavit, Mr. Meyerrose swears that, "[a]fter examining the [M/T MACKENZIE ROSE], [*he*] ***compared it to the fair market value for vessels of similar size and characteristics***, ***in order to determine the fair market value of the M/T MACKENZIE ROSE***" and "[i]n a written report dated July 25[*sic*], 2024, [he] concluded that the M/T MACKENZIE ROSE had a maximum fair market value as of June 15, 2024 of [$2,500,000.000]."[3] ECF 3-1 (emphasis added). However, Carver's Opposition contradicts Mr. Meyerrose's sworn statement.

In its Opposition, Carver argues that the reason Mr. Meyerrose's Expert Report lacked the requisite data regarding comparable vessels' fair market value is because no such vessels exist. *See* ECF 156, p. 8 ("Mr. Meyerrose's statement… supports his initial opinion that given the modifications to the tug, ***there are no comparable vessels to the 'one off built' MACKENZIE ROSE***[.]") (emphasis added); *see also* ECF 156, p. 10 ("Mr. Meyerrose looked at comparable vessels, and ***finding none***, looked to the condition of the repaired value and insured value, including the survey done by his own firm in 2018[.]") (emphasis added). For instance, Carver states:

> Mr. Meyerrose's Rebuttal Report…refers to and expands on his own method of valuation in ***concluding that there are limited comparable vessels***. For example, in his [R]ebuttal [R]eport, he opines that ***in his review of comparable vessels in the market, the M/T MACKENZIE ROSE has none, as 'she is a one-off built ocean towing vessel by the original owners***, not designed to be a harbor tug with high raised bow and foredeck.'… ***Mr. Meyerrose's Rebuttal analysis is within the scope of his Initial Report addressing the fair market value of the tug as a 'one off' vessel***.

ECF 156, p. 7 (emphasis added). Thus, according to Carver, Mr. Meyerrose did not actually utilize the comparable sales methodology that he swore he utilized in his Affidavit of Valuation, making

---

[3]   The only two reports Carver produced by Mr. Meyerrose regarding the value of the tug as of June 15, 2024 are dated July 7, 2024 and August 8, 2025.

4

his opinion even more unreliable.

Second, the "supporting file materials" Carver references similarly fail to reveal the basis for Mr. Meyerrose's opinions. Carver argues that:

> [Mr. Meyerrose's] ***file*** *contained the record of the repairs and maintenance under the conditions section of his report M-140905, with supporting data from TVIB, American Bureau of Shipping, and shipyard work orders, all of which were produced to the belt Line.* ***Ex. C, p. 1***. ***Mr. Meyerrose's "report" encompasses this statement of his opinion as to the fair market value of the vessel; the data he considered in formulating his opinion, his survey of the vessel, his qualifications set forth in his CV, the compensation paid for his testimony and a list of other litigation he has testified in, complies with Federal R[ule] [of] Civ[il] P[rocedure] 26(a)(2)(B)***.

ECF 156, p. 7 (emphasis added).

The "file" to which Carver apparently refers to is Mr. Meyerrose's Rebuttal Report. *See* ECF 156-3. However, an expert witness cannot cure the deficiencies of his initial report by stating the basis and reasons for his opinions in a rebuttal report. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 797 (Md. 2013) (holding that supplementation "does not create a right to produce information in a belated fashion") (internal quotations omitted); *Luke v. Family Care & Urgent Med Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009) (finding that Rule 26(e) "creates a duty to supplement, not a right. Nor does [it] create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed."). Moreover, the additional documents Carver references as comprising Mr. Meyerrose's "report"—his survey of the vessel, his qualifications set forth in his CV, the compensation paid for his testimony and a list of other litigation he has testified in—reveal nothing about the data or methodology Mr. Meyerrose actually utilized to form his opinion regarding the value of the M/T MACKENZIE ROSE. *See* ECF 138-1; Mr. Meyerrose's Expert Disclosure,

5

attached as **Exhibit A**; Mr. Meyerrose's CV, attached as **Exhibit B**.

Finally, Rule 26(a)(2)(B) explicitly requires that an expert's opinions, the basis and reasons for them, and the data considered in forming them be contained in a single report. Fed. R. Civ. P. 26(a)(2)(B) ("***The report*** must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them[.]") (emphasis added). Nowhere in the Rule does it provide for a party to make such disclosures throughout the course of discovery in multiple, disconnected documents. Moreover, even if this belated, piecemeal approach to Rule 26(a)(2)(B) disclosures were permissible, as discussed above, it would still fail in this case as none of the documents produced by Carver reveal the methodologies and data required by the Rules.

Because Mr. Meyerrose's Expert Report did not provide the basis or reasons for his valuation opinion, nor did it include any data that he considered to reach it, it fails to comply with the requirements of Rule 26(a)(2)(B). Even if the additional documents produced by Carver were able to cure the deficiencies of Mr. Meyerrose's Report (they cannot), they do not in this case, as none reveal the actual methodology or data utilized by Mr. Meyerrose in arriving at his opinion.

II. **Mr. Meyerrose's opinions regarding the value of the M/T MACKENZIE ROSE are unreliable and fail to comply with the requirements of Federal Rule of Evidence 702.**

Mr. Meyerrose's opinion regarding the value of the M/T MACKENZIE ROSE is unreliable, as he fails to provide any explanation at all for how he reached his conclusion. Under Rule 702, an expert opinion must (1) be "based on sufficient facts or data;" (2) be "the product of reliable principles and methods;" and (3) reflect "a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. An expert opinion "must not be based on 'belief or speculation and inferences must be derived using other valid methods.'" *Small v.*

*WellDyne, Inc.*, 972 F.3d 169, 177 (4th Cir. 2019) (quoting *Oglesby v. General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999)). "Without testing, supporting literature in the pertinent field, peer reviewed publications or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'" *Small v. WellDyne, Inc.*, 972 F.3d at 169; *see also Hambrick v. Ken-Bar Mfg. Co.*, 422 F. Supp. 2d 627, 633 (W.D. Va. 2002) ("Even when an expert is eminently qualified to opine on an issue, the expert must still actually *apply* a reliable methodology to the facts, drawing upon his specialized knowledge by testing the product or referring to expert literature, in order for his proffer to be admissible.").

Here, Mr. Meyerrose's Expert Report provides only a description of the M/T MACKENZIE ROSE and a one-line estimated *range* of its value. He offers no testing, supporting literature, peer reviewed publication, or *any basis* whatsoever to support his valuation. Carver argues that Mr. Meyerrose's "Affidavit of Valuation, [Expert] Report and Rebuttal Report[,]" taken together, are reliable and fall within the scope of FRE 702. *See* ECF 156, p. 7. However, the only document Carver references in support of this argument is Mr. Meyerrose's Rebuttal Report. *See id.* at pp. 7-11. As discussed above, an expert witness cannot cure the deficiencies of his initial report by stating the basis and reasons for his opinions in a rebuttal report. *See supra* Section I. Moreover, Mr. Meyerrose's Rebuttal Report and Carver's references to it in its Memorandum are riddled with contradictions regarding the data and methods he supposedly utilized.

Carver's Memorandum begins by arguing that Mr. Meyerrose's "report" complied with Rule 26(a)(2)(B) because, "in his Affidavit [of Valuation] Mr. Meyerrose utilized an accepted method of valuation" by "comparing [the M/T MACKENZIE ROSE] to the fair market value for

7

vessels of similar size and characteristics[.]" ECF 156, p. 6. However, neither Mr. Meyerrose's Expert Report nor his Rebuttal Report contained any such fair market values, in violation of Rule 702. *See* ECF 138-1, 138-2; *see also* Fed. R. Evid. 702. Seemingly recognizing this deficiency, Carver goes on to claim that Mr. Meyerrose did not provide said values because no such comparable vessels exist. *See* ECF 156, pp. 7-11. Immune to irony, Carver supports this argument with quotes from Mr. Meyerrose's Rebuttal Report in which he explicitly states that he utilized comparable sales data to arrive at his valuation opinion, without ever revealing the data itself:

> [B]ased on the fact that the last true sales price of the vessel was $1,000,000.00 at the time of purchase by Carver Companies in year 2020, the survey of Rick Meyerrose in 2018 valuing the tug at $3 Million, and ***based on our review done for our July 2024 survey, soon after the incident, of the Marcon Intl., and Heartland Barge websites of comparable vessel sale values***, the extensive Meyerrose & Co., Inc. file reference material (over 40 years worth), knowledge and experience in the industry, we stand firm that as of July 2024 the "MACKENZIE ROSE" current value was $2,500,000.00.

ECF156, p. 9 (emphasis added).[4]

Carver can't have it both ways. Either there is sufficient comparable vessel data—in which case Mr. Meyerrose should have included such in his Report—or there is not—in which case Mr. Meyerrose should have supplied the other data and methodologies he utilized to reach his opinion. Because Mr. Meyerrose failed to provide any data and methodologies at all, as required by Rule 702, his opinion regarding the value of the M/T MACKENZIE ROSE is inadmissible.

### III. The facts and methodology supporting Mr. Meyerrose's valuation opinion remain unknown.

Federal Rule of Civil Procedure 37(c)(1) provides that "if a party fails to provide

---

[4] Further contradicting itself, in moving to exclude the opinions of the Belt Line's expert, John Poulson, on the basis that Mr. Poulson "strayed from applying the appropriate comparable sales methodology" by using offer prices rather than sales prices in conducting his calculations, Carver claims that there is a robust pool of comparable sales data that Mr. Poulson could have utilized. *See* ECF 97, p. 7.

information… as required by Rule 26(a)… the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). Carver mistakenly contends that Belt Line "argues that Mr. Meyerrose's Initial Report failed to disclose what method he utilized in determining the value of [the] vessel, therefore, his supplemental opinion which expands on that theory rendered the Initial opinion 'late' and should be excluded under Fed. Rule of Civ. Pro. 37(c)(1)." ECF 156, p. 11. After setting up this strawman, Carver points to *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.,* 318 F.3d 592 (4th Cir. 2003), to argue that the belated disclosure of Mr. Meyerrose's opinion is substantially justified and caused the Belt Line no harm. .

Carver's reliance on *Southern States Rack and Fixture* is misplaced. That case involved an expert's opinion that he *disclosed for the first time at trial*. 318 F.3d at 599.[5] In this case, Mr. Meyerrose's opinion is known. What is missing are the data and methodologies he utilized to reach his opinion. *See* ECF 138, p. 6 ("In that Rebuttal Report, Mr. Meyerrose provided a slight, ***yet still deficient***, explanation as to how he arrived at his initial valuation…. Not only does this explanation ***still fall short of the requirements of Federal Rule of Evidence 702***, but it came well after the deadline for Rule 26(a)(2)(B) disclosures.") (emphasis added). This is not the case of a late disclosure, as in *Southern States Rack and Fixture*, but of *no disclosure at all*.

Here, the facts and methodology supporting Mr. Meyerrose's valuation opinion remain unknown. Not only was such information missing from Mr. Meyerrose's initial Expert Report, in violation of Rules 26(a)(2)(B) and 702, but it failed to appear in any of the belatedly produced documents that Carver now invokes in an attempt to cure the deficiency. Without any data or methodologies to support his valuation, Mr. Meyerrose's opinion is unreliable under Rule 702. As

---

[5] The Fourth Circuit established a five-factor test to determine whether this late disclosure was without substantial justification and harmful under Rule 37. *See* 318 F.3d at 595-99.

such, Mr. Meyerrose's opinion is inadmissible, and he should be precluded from testifying.

## Conclusion

WHEREFORE, the Belt Line requests that the Court exclude from trial expert testimony from Carver's expert Jason R. Meyerrose and grant it all other just and necessary relief.

Dated: November 18, 2025

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By: /s/ Mackenzie R. Pensyl
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

James Morrissey
4723 Baywood Drive
Lynnhaven, FL 32444

By:     */s/ Mackenzie R. Pensyl*
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*