UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
d/b/a CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and App,

Case No.: 2:24cv490

**NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,**

    Consolidated Plaintiff/Claimant,

v.

**JAMES MORRISEY,**

    Defendant.

## ORDER

This is an admiralty limitation action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug *MACKENZIE ROSE* ("the tug") struck the Norfolk and Portsmouth Belt Line Railroad Company's Main Line Bridge. The tug was owned and operated by Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), who filed the underlying action to limit its liability for the allision. Carver alleges that the allision resulted from a navigational error by Mate James Morrissey and that the tug was seaworthy at the time of the incident. Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") disputes Carver's entitlement to a limitation of its liability, placing at issue the circumstances surrounding the tug's navigation and Carver's responsibility for events leading to the allision.

Presently before the Court is Belt Line's First Motion in Limine to Preclude Coast Guard Investigative Materials and CG-2692 Forms at Trial and an accompanying memorandum in support. ECF Nos. 114–15. Therein, Belt Line seeks to preclude any evidence of or reference to Coast Guard investigative materials, specifically Coast Guard marine casualty report forms. Carver filed a memorandum in opposition, ECF No. 139, and Belt Line filed its reply, ECF No. 141.

Accordingly, the Motion in Limine is fully briefed and ripe for disposition. For the reasons explained below, the Motion, ECF No. 114, is **GRANTED**.

## I. LEGAL STANDARD

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, No. 1:13cr222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). District courts are granted "broad discretion" when evaluating evidentiary issues, including motions in limine. *See, e.g., Kaufman v. Park Place Hosp., Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). In general, relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The proponent of the evidence has the burden of establishing its relevance and admissibility. *United States v. Williams*, 461 F.3d 441, 446 (4th Cir. 2006).

## II. ANALYSIS

Belt Line seeks to exclude as evidence Coast Guard investigative materials, particularly Coast Guard marine casualty report forms ("CG-2692 Forms") that Carver filed with the Coast Guard shortly after the allision. ECF No. 115 at 1. Belt Line more broadly seeks to preclude any "mention of" or "reference to" any Coast Guard investigative materials, including the CG-2692 Forms. *Id.*

On June 19, 2024 and June 25, 2024—four days and ten days after the allision, respectively—two of Carver's employees filed CG-2692 Forms with the Coast Guard notifying them of the allision. ECF No. 139 at 5; *see* ECF No. 115, attachs. 2–3. The Coast Guard's investigation of the allision also included transcripts of interviews with the tug crew and Carver employees. *See* ECF No. 139 at 2; ECF No. 139, attachs. 1–6. Belt Line argues that the CG-2692 Forms, as well as any Coast Guard investigative materials that Carver intends to reference during trial, are statutorily inadmissible in civil actions under 46 U.S.C. § 6308(a). ECF No. 115 at 3. Section 6308 prohibits the admission, discovery, or use of marine casualty investigation materials in civil litigation:

> (a) Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a). According to Belt Line, Carver's repeated reliance on the forms in depositions, expert disclosures, summary judgment briefing, and proposed trial exhibits violates this statutory bar. ECF No. 115 at 4. Relying on *In re Eternity Shipping* and *In re Complaint of Cozy Cove Marina*, Belt Line argues that § 6308 imposes a broad evidentiary bar. *Id.* at 3 (citing

*In re Cozy Cove Marina, Inc.*, 521 F. Supp. 2d 504, 506–07 (E.D.N.C. 2007);[1] *In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liab.*, 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006)). Those decisions, Belt Line maintains, follow a line of authority interpreting the statute to exclude not only final Coast Guard reports but all investigative materials, such as "opinions, recommendations, deliberations, and conclusions." *Id.* at 5. In Belt Line's view, a broad interpretation of § 6308 is consistent with Congress's intent both to keep marine casualty investigations separate from determinations of civil liability and to prevent prejudice from selective use of investigative documents. *Id.*

In addition to the statutory bar, Belt Line points to the Privacy Act Notice on the third page of the CG-2692 Form as further support for the Forms' exclusion. The Notice states that the Forms are not to be used in civil litigation. *Id.* at 4. Belt Line further argues that allowing reference to the CG-2692 Forms and other Coast Guard investigative materials would unfairly prejudice Belt Line given the official nature of government forms, which may improperly lend undue credibility to self-serving and potentially misleading narratives prepared by Carver's own employees. *Id.* at 5. Because these forms are part of the Coast Guard's investigation into the allision, Belt Line argues, they must be excluded.

In response, Carver argues that the CG-2692 Forms are admissible because § 6308 does not impose a categorical bar on all Coast Guard materials but instead applies narrowly to the Coast Guard's ultimate conclusions or findings. ECF No. 139 at 3–4. In Carver's view, the statute is designed to prevent the Coast Guard's official conclusions from influencing the litigation process, not to exclude every document generated or underlying fact discovered during an investigation.

---

[1] Both parties incorrectly cited this case in their briefing, with Belt Line citing it as an Eastern District of Virginia case (ECF No. 115 at 3) and Carver citing it as an Eastern District of California case (ECF No. 139 at 5).

4

*Id.* Because the records at issue are not themselves the Coast Guard's conclusions or "reports of a marine casualty investigation," Carver argues that they fall outside the scope of § 6308's statutory protection. *Id.* at 4–6. In support, Carver relies on *Guest v. Carnival Corp.*, which follows a line of authority interpreting § 6308 narrowly and permitting the admission of certain Coast Guard-related records when they do not convey the Coast Guard's conclusions. *Id.* at 4 (citing *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1243–47 (S.D. Fla. 2012)).

Carver further argues that, even if the records constitute hearsay, they are admissible under various hearsay exceptions. *See id.* at 7–16. Carver also emphasizes that because this case will be heard during a bench trial and not before a jury, there is accordingly no risk that the factfinder will be improperly swayed by the perceived authority of government forms or assume their contents must be true simply because they were produced during a Coast Guard investigation. *Id.* at 17.

In its reply, Belt Line argues that the plain language of the statute bars the application of any hearsay exceptions found in the Federal Rules of Evidence. Section 6308(a) begins, "Notwithstanding any other provision of law," which Belt Line argues supersedes conflicting evidentiary rules and forecloses reliance on those provisions in admitting Coast Guard investigative materials. ECF No. 141 at 2. Belt Line contends that this "notwithstanding" clause reflects Congress's intent to impose an absolute evidentiary bar and is supported by decisions interpreting "notwithstanding" clauses similarly. *Id.* at 2–3 (citing *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 290 (2017); *Shomberg v. United States*, 348 U.S. 540, 547–48 (1955); *United States v. Frank*, 8 F.4th 320, 331–39 (4th Cir. 2021)). Accordingly, even if the records might qualify for admission based on a hearsay exception, Belt Line maintains that they remain inadmissible in civil litigation due to § 6308's express prohibition on their use.

The Court finds that no portion of the Coast Guard's investigation of the allision—including CG-2692 Forms and witness interview transcripts—may be introduced as evidence, referenced, or relied upon by expert opinions in this case. Courts are divided as to whether § 6308 should be interpreted narrowly or broadly, but the Court believes a broad interpretation is consistent with the purpose of the statute. The Code of Federal Regulations emphasizes that the statute is designed to encourage a full, accurate investigation, and that the prospect of civil liability attaching would impede the search for truth in the investigative process. *See* 46 C.F.R. § 4.07-1(b) ("The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility."). Allowing parties to rely on materials generated during such investigations in civil litigation would encourage self-serving characterizations of events at the investigative stage. The CG-2692 Forms at issue here exemplify this self-serving position. The first form, completed on June 19, 2024, deemphasized the allision and suggested no liability from Carver. *See* ECF No. 115, attach. 2. Then, the second form, completed on June 25, 2024, acknowledged damage to the Main Line Bridge but attributed responsibility entirely to Mate Morrissey. *See* ECF No. 115, attach. 3. Excluding these materials from use in this litigation would not only be consistent with the text and purpose of § 6308 but would also prevent Coast Guard investigations from being used to strategically assign liability rather than promote maritime safety.

The narrow interpretation of § 6308, adopted by the *Guest* court, limits the exclusion of Coast Guard investigative materials to five categories of information: findings of fact, opinions, recommendations, deliberations, or conclusions. *See Guest*, 917 F. Supp. 2d at 1244–45. In contrast, as exemplified in *Eternity Shipping*, the broader interpretation of § 6308 construes

6

"including" in to mean, "including, but not limited to" those five categories. *See In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d at 363 n.56. The *Eternity Shipping* court reasoned that § 6308's list "is not exclusive" to findings of fact, opinions, and conclusions. *Id.* Instead, the court understood the statute to exclude the Coast Guard investigative record in its entirety. *Id.* Under this broader interpretation, the court excluded a transcript of a post-accident interview with the Coast Guard because it constituted "an excerpt to the Coast Guard's report regarding the accident," thereby falling within § 6308's exclusionary sweep. *Id.* at 363.

In contrast to the broad interpretation adopted in *Eternity Shipping*, the *Guest* court framed the evidentiary dispute as a question of how far § 6308 extends beyond the Coast Guard's final investigative report: "The issue boils down to this: what is the scope of 46 U.S.C. § 6308? And, more specifically, whether that statute allows this Defendant to withhold the documents or other materials that *it produced to the Coast Guard* in furtherance of the Coast Guard's investigation." *Guest*, 917 F. Supp. 2d at 1244. From there, *Guest* begins with the uncontroversial premise that "courts considering this question universally agree that the Coast Guard's *report* is protected from discovery and is inadmissible as evidence," citing several cases holding that such reports fall within § 6308's exclusion. *Id.* at 1245 (citing *In re Complaint of Atl. Marine Prop. Holding Co.,Inc.*, Civ. A. No. 06-0100-CG-B, 2008 WL 3828801, at *1 (S.D. Ala. Aug. 13, 2008); *Bruce Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Me. 2005); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. Civ. A. 03-1230, 2005 WL 859199, at *1 (E.D. La. Apr. 20, 2004); *I & M Rail Link, LLC v. Northstar Nav., Inc.*, 98 C 50359, 2001 WL 460028, at *6 (N.D. Ill. Apr. 27, 2001); *Conagra, Inc. v. Weber Marine, Inc.*, No. Civ. A. 97-1019, 1999 WL 705546, at *2 (E.D. La. Sept. 8, 1999); *Eckstein Marine, Service, Inc. v. The Crescent Marine Towing, Inc.*, No. Civ. A. 98-1467, 1999 WL 58264, at *1 (E.D. La. Feb. 2, 1999); *The Tokio*

7

*Marine and Fire Ins. Co., Ltd. V. M/V Flora, et al.*, No. Civ. A. 97-1154, 1998 WL 516110, at *2 (E.D. La. Aug. 18, 1998)).

From there, *Guest* concludes that *only* the report is protected from discovery and is inadmissible in evidence, finding that the caselaw "clearly and consistently limits § 6308 to the Coast Guard's actual investigative report." *Id.* However, a finding that "the Coast Guard's report is protected from discovery and is inadmissible as evidence" does not mean that only the report is so constrained, because those cases relied upon by the *Guest* court did not address—much less foreclose—the broader question of whether § 6308 also excludes other materials produced as part of a Coast Guard marine casualty investigation. *See id.* And, notwithstanding *Guest*'s observation that it could find no authority to support the proposition that all material produced as part of a Coast Guard investigation is subject to § 6308, other courts have, in fact, found that such material *is* excluded by § 6308. *See, e.g.*, *In re Eternity Shipping, Ltd.*, 444 F. Supp. 2d at 363 n.56 (citing *Falconer v. Penn Maritime, Inc.*, 397 F. Supp. 2d 68, 70 (D. Me. 2005); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, No. Civ. A. 03-1230, 2004 WL 859199, at *1 (E.D. La. Apr. 20, 2004)); *In re Cozy Cove Marina, Inc.*, 521 F. Supp. 2d 504, 507 (E.D.N.C. 2007) (finding a Coast Guard accident report inadmissible because by passing § 6308, "Congress has expressly precluded the use of Coast Guard accident reports in private civil litigation" in order to "prevent the Coast Guard from becoming embroiled in private litigation resulting from marine accidents"); *Thompson v. Yellow Fin Marine Servs., LLC*, No. CV 15-311, 2016 WL 3997060, at *2 (E.D. La. July 26, 2016) ("Courts have interpreted this provision broadly. . . . Accordingly, the Coast Guard report referenced in the parties' proposed Joint Pre-Trial Order is inadmissible, and Yellow Fin may not employ it at trial for any purpose, including impeachment." (citations omitted)).

This broader reading is reinforced by language found within the CG-2692 Form itself. The Privacy Act Notice on the CG-2692 Form reads, "Some of the casualty **information collected on this form** may be made available for public inspection; however, **information collected is protected from use in civil litigation** per 46 U.S.C. § 6308." ECF No. 115, attach. 2 at 3 (emphasis added). Significantly, this language reflects the Coast Guard's understanding of § 6308's scope, which is to exclude the Form from use in civil litigation. This provision specifically applies to the Form in its entirety, even though the Form does not contain "findings of fact, opinions, recommendations, deliberations, or conclusions." *See* 46 U.S.C. § 6308(a). Thus, the inclusion of this notice underscores that the statutory exclusion is not limited to just those five categories of the investigation but instead covers other material produced as part of a Coast Guard marine casualty investigation.

Finally, the Court finds that § 6308 forecloses Carver's reliance on hearsay exceptions to admit the CG-2692 Forms and other Coast Guard investigative materials. By providing that such materials are inadmissible "[n]otwithstanding any other provision of law," § 6308 supersedes the Federal Rules of Evidence and bars admission even where a hearsay exception might apply. *See* 46 U.S.C. § 6308(a). Accordingly, Carver's arguments regarding hearsay exceptions do not overcome § 6308's express prohibition against this type of investigative material.

Accordingly, the Court concludes that no portion of the Coast Guard's investigation of the allision—including the CG-2692 Forms and witness interview transcripts—may be introduced as evidence, referenced, or relied upon by expert opinions in this case.

### III. CONCLUSION

For the reasons explained above, Belt Line's First Motion in Limine to Preclude Coast Guard Investigative Materials and CG-2692 Forms at Trial, ECF No. 114, is **GRANTED.**

9

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 6, 2026