UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
d/b/a CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and App,

Case No.: 2:24cv490

NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

    Consolidated Plaintiff/Claimant,

v.

JAMES MORRISEY,

    Defendant.

## ORDER

    This is an admiralty limitation action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug *MACKENZIE ROSE* ("the tug") struck the Norfolk and Portsmouth Belt Line Railroad Company's Main Line Bridge. The tug was owned and operated by Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), who filed the underlying action to limit its liability for the allision. Carver alleges that the allision resulted from a navigational error by Mate James Morrissey and that the tug was seaworthy at the time of the incident. Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") disputes Carver's entitlement to a limitation of its liability, placing at issue the circumstances surrounding the tug's navigation and Carver's responsibility for events leading to the allision.

Presently before the Court is Carver's Motion to Exclude Testimony and Opinions of Robert Furborough and an accompanying memorandum in support. ECF Nos. 100–01. Therein, Carver seeks to exclude both of Furborough's opinions on the grounds that they are unreliable or irrelevant. Belt Line filed a memorandum in opposition. ECF No. 113. No reply was filed, and the time to do so has expired.

Accordingly, the Motion to Exclude is fully briefed and ripe for disposition. For the reasons explained below, the Motion, ECF No. 100, is **GRANTED IN PART** and **DENIED IN PART**.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of the expert must demonstrate it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Accordingly, the Court is tasked with "a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

The *reliability* of expert testimony is a "flexible inquiry" that requires the Court to ensure an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on belief or speculation." *Id.* (emphasis in original) (quotation omitted). Trial courts have "broad latitude" to determine "reasonable measure of reliability in a particular case," which can "depend on[] the nature of the issue, the expert's particular expertise, and the subject of [the expert's] testimony." *Id.* (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The *relevancy* of expert testimony depends on whether the opinion "has a valid scientific connection to the pertinent inquiry" to "ensure that the expert helps the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations and citation omitted). Ultimately, if an opinion is not relevant to a fact at issue, it must be excluded. *Id.*

While some experts may proffer "[p]urely scientific testimony . . . characterized by its falsifiability or refutability, or testability," other experts may proffer testimony based on their experience, which does not "rely on anything like the scientific method." *Wilson*, 484 F.3d at 274. In those instances, it is a function of the Court's gatekeeping role to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 152). Thus, an experiential expert must still "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation and quotation omitted).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not

3

intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. ANALYSIS

Belt Line proffers Robert Furborough as a marine electronics technician to "consider the condition and use of the autopilot system installed on the Tug Mackenzie Rose." ECF No. 101, attach. 1 at 3. Furborough has worked as a marine electronics technician for over fifteen years and has "experience and expertise in marine electronics and navigation conditions on the Southern Branch of the Elizabeth River." *Id.* His experience extends to "telecom circuit manufacturing," providing "technical sales and specifications" for communications equipment, and consultation work for sales of "marine engines." *Id.* at 1. Furborough is a member of the National Marine Electronics Association and is certified as a marine electronic installer. *Id.*, attach. 2 at 3.

Furborough's expert report provides two opinions regarding the autopilot system on the tug. *See id.*, attach. 1. Carver's Motion seeks to exclude both opinions on reliability and relevancy grounds. The Court addresses each opinion in turn below.

### A. Furborough's First Opinion

Regarding how autopilot systems are used, Furborough opines that "[a]utopilot systems are useful when transiting open waters but are not to be used when navigating narrow waters,

4

which include areas with obstructions or dangers to navigation such as bridges." *Id.* at 4. Consistent with this understanding, the operator manual for the SIMRAD AP-70 autopilot system specifies not to use autopilot "[i]n heavy traffic areas or in narrow waters." *Id.* However, as Furborough opines, "Carver did not prohibit the use of the autopilot system in any circumstances," which effectively allowed for its use "under all circumstances." *Id.* Thus, as Furborough concludes, Carver's "failure to prohibit use of the autopilot" in certain circumstances created a situation in which the autopilot was engaged "when it should not have been." *Id.* Furborough bases this opinion on deposition testimony, the operator manual for the autopilot system, photographs of the tug, Rose Point data of the voyage underlying the complaint, and his experience and expertise. *Id.* at 3.

Carver argues that Furborough's first opinion regarding the use of autopilot systems should be excluded under Rule 702 because Furborough is not qualified to offer opinions about "when and how autopilot should be used" in inland navigation. ECF No. 101 at 2. Carver asserts that Furborough has no experience as a licensed mariner or vessel captain, has never navigated the Elizabeth River on a vessel like the *MACKENZIE ROSE*, and is never aboard a vessel by himself without a qualified captain or owner of the vessel. *Id.* at 5. Carver argues that Furborough is therefore unqualified to opine on autopilot use during inland navigation, particularly when he was not retained for his expertise in inland navigation, Carver's Tug Safety Management System policies, or what constitutes "narrow waters." *Id.* at 3.

In response, Belt Line argues that, although Furborough does not have a mariner's license and has never personally navigated the Elizabeth River on a vessel like the *MACKENZIE ROSE*, his experience installing and operating marine electronic systems for vessel navigation qualifies

5

him to testify on the autopilot system at issue. ECF No. 113 at 4. Belt Line also contends that any gap in Furborough's experience goes to the weight of his opinion rather than its admissibility.[1] *Id.*

While Furborough may be an expert in autopilot systems and how they function, that expertise does not qualify him to discuss the circumstances under which it is safe or unsafe to engage the autopilot. During his deposition, Furborough stated that he has no training in navigation "apart from what is self-taught." ECF No. 101, attach. 2 at 24:9–24:10. Thus, while Furborough has expertise in designing, installing, and operating autopilot systems, that expertise does not extend to vessel navigation. *See id.* at 23:18–23:25 (confirming that, when riding vessels, he is not in charge of the navigation but that instead a "Coast Guard registered captain on board" is in charge). As a result, he is not qualified to offer opinions regarding the circumstances under which it is safe or unsafe to engage an autopilot while navigating a particular waterway.

Moreover, Furborough's first opinion rests primarily on warnings contained in the SIMRAD AP-70 operator manual cautioning against the use of autopilot in narrow waters or heavy traffic. Furborough concludes that, by not following these warnings and failing to prohibit autopilot use in such circumstances, Carver acted improperly. *See* ECF No. 101, attach. 1 at 4 ("Carver's failure to prohibit use of the autopilot created the situation where the autopilot was in use when it should not have been . . . . Under the circumstances, Carver should have prohibited the use of the autopilot until that work [correcting reported failures with the autopilot system] could be completed."). This reasoning, however, does not require expertise. A factfinder is

---

[1] Belt Line's entire argument consisted of the following paragraph: "Unlike the experts in *Anderson*, Mr. Furborough has extensive experience installing, operating, and troubleshooting marine electronic systems for vessel navigation, including Simrad autopilot systems such as that in the M/T MACKENZIE ROSE. Therefore, Mr. Furborough has the requisite experience and base knowledge to testify to the use and operations of the autopilot system at issue. Moreover, any alleged gap in Mr. Furborough's knowledge and experience would go to the weight given to his testimony, not disqualify its admissibility. *Radiance Found., Inc.*, 27 F. Supp. 3d at 674." ECF No. 113 at 4.

capable of reading the manual and understanding what it says regarding when not to use the autopilot system without the assistance of an expert. To the extent Furborough merely identifies a manufacturer's caution and asserts that it was not followed, his testimony would not "help the trier of fact to understand the evidence or to determine a fact in issue." *See* Fed. R. Evid. 702(a).

Moreover, Furborough is not opining on governing standards for safe navigation or concluding that no circumstances justified deviation from them here. Opinions of that nature *would* require navigational expertise. An expert offering such testimony would need to address whether the manual's admonitions reflect industry standards, why there are no exceptions to those admonitions, or whether there have ever been such exceptions and, if so, why such exceptions would not apply here. Furborough does none of this, nor has he demonstrated the qualifications necessary to do so: he holds no mariner's license, lacks the necessary training in navigation, and has no experience operating vessels in the waters at issue.

Without navigational expertise, Furborough is not qualified to opine on when an autopilot should or should not be engaged during vessel operations. Accordingly, the Court finds that Furborough's first opinion must be excluded.

### B. Furborough's Second Opinion

Furborough's second opinion is that, given the repeated prior failures of the autopilot system used on the tug, Carver "should have prohibited the use of the autopilot" until those issues had been resolved. ECF No. 101, attach. 1 at 4. Furborough opines that the problems with the autopilot system from May 2024 "raise the type of concerns that would need to be promptly investigated and repaired by a qualified technician," but that there was "no indication that Carver engaged anyone" to make such repairs. *Id.*

Carver argues that Furborough's second opinion should be excluded because he does not contend that the autopilot system was defective and somehow caused the accident, thereby making his assertion that the autopilot system should have been examined speculative and irrelevant. ECF No. 101 at 6. Carver contends that, regardless of the autopilot's condition, the accident was caused by Mate Morrissey's navigational error, an issue on which Furborough was not provided evidence[2] and is not qualified to opine. Therefore, Carver maintains, Furborough's opinions about "fixing a nonexistent defect" with the autopilot are "unfounded and speculative." *Id.*

In response, Belt Line argues that Furborough's second opinion is relevant to the issue of what condition the tugboat's autopilot system was in and whether the tug was seaworthy. ECF No. 113 at 4. Belt Line contends that Furborough does not have to testify on the ultimate issue—what caused the accident—but rather just needs to provide information that will assist the trier of fact, pursuant to Federal Rule of Evidence 702. *Id.* Here, Belt Line maintains, Furborough's second opinion is helpful in that he explains why Carver never should have permitted the autopilot to be used until it had been thoroughly examined after its repeated malfunctions. *Id.* at 4–5.

One of Belt Line's arguments in support of summary judgment is that Carver is not entitled to relief due to its privity and knowledge of the conditions that caused the allision, specifically that the tug's autopilot system had previously malfunctioned and that Carver neither properly repaired it nor prohibited its use. *See* ECF No. 91 at 21–22. This Court is not determining at this juncture whether the Belt Line's theory establishes sufficient proximate cause—that determination is reserved for the District Judge upon resolving the pending motions for summary judgment.

---

[2] Both parties reference the Forms CG-2692, which are the subject of Belt Line's motion in limine, ECF No. 114. Carver relies on them to prove the accident was solely Mate Morrissey's fault, while Belt Line argues that the forms are inadmissible under 46 U.S.C. § 6308.

If Belt Line's theory is ultimately deemed viable, Furborough's second opinion is admissible as both reliable and relevant. Furborough's testimony supplements Belt Line's theory by explaining that the autopilot's repeated failures underscored the need for Carver to prohibit its use in those conditions. Thus, Furborough provides relevant context regarding the risks associated with continued use of the autopilot system. Accordingly, because Furborough has the expertise to offer this opinion and the opinion may be relevant to the issue of Carver's duty, it is admissible under Rule 702.

### III. CONCLUSION

For the reasons explained above, Carver's Motion to Exclude Testimony and Opinions of Robert Furborough, ECF No. 100, is **GRANTED IN PART** and **DENIED IN PART**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 6, 2026