UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
d/b/a CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and App,

Case No.: 2:24cv490

NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,

 Consolidated Plaintiff/Claimant,

v.

JAMES MORRISEY,

 Defendant.

## ORDER

This is an admiralty limitation action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug *MACKENZIE ROSE* ("the tug") struck the Norfolk and Portsmouth Belt Line Railroad Company's Main Line Bridge. The tug was owned and operated by Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), who filed the underlying action to limit its liability for the allision. Carver alleges that the allision resulted from a navigational error by Mate James Morrissey and that the tug was seaworthy at the time of the incident. Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") disputes Carver's entitlement to a limitation of its liability, placing at issue the circumstances surrounding the tug's navigation and Carver's responsibility for events leading to the allision.

Presently before the Court is Belt Line's Second Motion in Limine to Exclude Expert Opinion and Evidence from Captain Sam Stephenson, J.D. and an accompanying memorandum in support. ECF Nos. 123–24. Therein, Belt Line seeks to exclude one of Stephenson's opinions regarding credibility as well as any reference by him to a U.S. Coast Guard 2692 form. Carver filed a memorandum in opposition, ECF No. 147, and Belt Line filed its reply, ECF No. 151.

Accordingly, the Motion in Limine is fully briefed and ripe for disposition. For the reasons explained below, the Motion, ECF No. 123, is **GRANTED**.

## I. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent of the expert must demonstrate it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see also United States v. Wilson*, 484 F.3d 267, 274–75 (4th Cir. 2007). Accordingly, the Court is tasked with "a special gatekeeping obligation on the trial judge to ensure that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (cleaned up).

The *reliability* of expert testimony is a "flexible inquiry" that requires the Court to ensure an expert's opinion is "based on scientific, technical, or other specialized *knowledge* and not on

belief or speculation." *Id.* (emphasis in original) (quotation omitted). Trial courts have "broad latitude" to determine "reasonable measure of reliability in a particular case," which can "depend on[] the nature of the issue, the expert's particular expertise, and the subject of [the expert's] testimony." *Id.* (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). The *relevancy* of expert testimony depends on whether the opinion "has a valid scientific connection to the pertinent inquiry" to "ensure that the expert helps the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations and citation omitted). Ultimately, if an opinion is not relevant to a fact at issue, it must be excluded. *Id.*

While some experts may proffer "[p]urely scientific testimony . . . characterized by its falsifiability or refutability, or testability," other experts may proffer testimony based on their experience, which does not "rely on anything like the scientific method." *Wilson*, 484 F.3d at 274. In those instances, it is a function of the Court's gatekeeping role to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001) (quoting *Kumho Tire Co.*, 526 U.S. at 152). Thus, an experiential expert must still "explain how [his] experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Wilson*, 484 F.3d at 274 (citation and quotation omitted).

As emphasized by the Fourth Circuit, in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is "indispensable" and "cannot be overstated." *Id.* at 283–84. However, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg.,*

3

*Sales Pracs. & Prods. Liab. Litig.*, 892 F.3d 624, 631 (4th Cir. 2018) (quoting *United States v. Stanley*, 533 F. App'x 325, 327 (4th Cir. 2013) (per curiam) (unpublished)). "Indeed, *Daubert* itself stressed the importance of the 'conventional devices' of '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' (rather than wholesale exclusion by the trial judge) as 'the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

## II. ANALYSIS

Carver proffers Captain Sam Stephenson, J.D. as a marine operations expert. ECF No. 124, attach. 1 at 1. Stephenson is a Senior Port Everglades State Harbor Pilot, a Port Everglades First Class Federal Pilot, and a retired Commander of the United States Naval Reserve. ECF No. 124, attach. 2 at 3. As a harbor pilot, Stephenson is responsible for safely navigating vessels such as ships, tugs, barges, and yachts that enter and depart ports. *Id.* at 4. He is a licensed Master Mariner in the U.S. Merchant Marine, and he holds a Master of Science in Marine Management as well as a law degree. *Id.* at 3. Stephenson was asked to opine whether:

> 1. The Mackenzie Rose was properly manned, the crew was licensed by the US Coast Guard, and in compliance with work/rest requirements of six hours on/six hours off.
> 2. The watch officer acting as look-out was appropriate under the prevailing conditions.
> 3. Autopilot is prohibited for use while transiting a waterway with bridges.
> 4. The evidence establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false.
> 5. Mate Morrissey failed to engage the switch from Auto to NFU when he thought he did.

*Id.* at 13. In addition to his experience and education, Stephenson relied on documents including U.S. Coast Guard marine casualty report forms ("CG-2692 Forms"). *Id.* at 11. Stephenson's fourth opinion—the subject of Belt Line's Motion—is that "the evidence clearly establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false." *Id.* at 18. Stephenson

4

explains that Morrissey "did not disengage the autopilot as he believed he had," a conclusion supported by evidence including the incident report, the CG-2692 Forms, and a text message from Captain Miller to Brian Moore. *Id.* at 30–31. Stephenson ultimately concludes that the autopilot worked properly on the date of the allision and that, based on the evidence reviewed, Morrissey's failure to properly disengage the autopilot was the sole cause of the allision. *Id.* at 32.

Belt Line's Motion seeks to exclude Stephenson's fourth opinion on the grounds that it impermissibly addresses Morrissey's credibility and impermissibly relies on inadmissible Coast Guard investigation records, namely the CG-2692 Forms.[1] Belt Line argues that Stephenson's fourth opinion about the falsity of Morrissey's statement is an inadmissible opinion on credibility, which is a conclusion reserved for the fact finder. ECF No. 124 at 5. Belt Line argues that under well-established Fourth Circuit case law, expert witnesses are not permitted to offer opinions on the credibility of other witnesses. *Id.* at 5–7 (citing *United States v. Cecil*, 836 F.2d 1431, 1441–42 (4th Cir. 1988); *United States v. Lee*, No. 00-4150, 2000 WL 1390856 (4th Cir. Sep. 26, 2000); *United States v. Brown*, 62 F. App'x 516 (4th Cir. 2003)). Belt Line further argues that Stephenson's fourth opinion must be excluded because it relies in part on CG-2692 Forms, which are statutorily inadmissible under 46 U.S.C. § 6308(a). *Id.* at 7–8.

In response, Carver argues that Belt Line misrepresents the evidence Stephenson relied on in forming his opinions. ECF No. 147 at 6. Carver asserts that Stephenson did not only rely on CG-2692 Forms but also on multiple independent sources in forming his conclusions, including contemporaneous reports and other evidence. *Id.* Carver also asserts that Stephenson's opinions do not hinge on the Coast Guard interview transcripts, which were produced after he completed

---

[1] Belt Line's First Motion in Limine to Preclude Coast Guard Investigative Materials and CG-2692 Forms at Trial, ECF No. 114, seeks exclusion of these records as inadmissible, an issue the Court resolves in a separate order.

5

his initial report. *Id.* at 5–6. To the extent Stephenson has reviewed those transcripts, he will testify that they do not alter his opinions. *Id.* at 5. Carver further argues that Stephenson's opinion "does not depend on 'credibility' evidence" as Belt Line contends but is instead grounded in objective data such as text messages, time-stamped data, and reports. *Id.* at 8–9. Carver characterizes Morrissey's initial statement as "patently false" and "unequivocally established" as false by the evidence in the record.[2] *Id.* at 8, 10. Even if certain materials relied upon by Stephenson were deemed inadmissible, experts are permitted to rely on inadmissible evidence in forming their opinions, and any concern about "misuse" of such evidence is minimized in a bench trial, where the Court is presumed capable of considering the evidence for its proper purpose.[3] *Id.* at 3, 10, 13. Finally, Carver incorporates by reference its arguments from its Opposition to Belt Line's First Motion in Limine, ECF No. 139, that the CG-2692 Forms are independently admissible under applicable hearsay exceptions. *Id.* at 11.

In its reply, Belt Line reiterates that Stephenson impermissibly gives an opinion on Morrissey's credibility. ECF No. 151 at 2. Belt Line also argues that permitting Stephenson to testify about whether a regulation required a CG-2692 Form, or whether a party complied with that regulation, "invades the Court's judicial role." *Id.* at 3. Belt Line characterizes Carver's position as contending that "Stephenson will 'explain' Coast Guard reporting obligations and maritime standards; that is impermissible legal instruction reserved exclusively to the Court."[4] *Id.* at 3. Belt Line further argues that § 6308 bars the use of investigative material, and that Rule 703

---

[2] It is unclear to this Court exactly how Carver rebuts Belt Line's arguments regarding Stephenson's allegedly impermissible credibility determination. It appears Carver is arguing that Morrissey's statement is objectively contradicted by the evidence in the record such that no credibility assessment is required to reject it. *See* ECF No. 147 at 8–10.

[3] Although Carver argues that any potential "misuse" of evidence is mitigated in a bench trial, Carver does not explain how the evidence could be used properly rather than misused.

[4] Notably, neither this argument nor the word "explain" appears in Carver's Opposition.

is not a work-around. *Id.* at 3–4. Belt Line further argues that Stephenson's opinion should be excluded because he has not established a reliable methodology to reach an opinion regarding causation "without legal instruction, credibility assessments or Coast Guard dependency."[5] *Id.* at 4.

The Court finds that Stephenson's challenged opinion (Opinion #4) is inadmissible. In forming his opinion, Stephenson both improperly assesses Mate Morrissey's credibility and impermissibly relies on Coast Guard investigative materials, including the CG-2692 Forms and witness transcripts. An expert may not opine on the truthfulness of a witness or characterize a witness's statements as false—such credibility determinations are reserved for the jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a court."); *United States v. Cecil*, 836 F.2d 1431, 1441 (4th Cir. 1988) (holding that "an opinion on the credibility of a witness" is reserved "strictly for the jury"); *Philadelphia Indemnity Ins. Co. v. Apple Inc.*, Civil No. SAG-20-00651, 2023 WL 4407582, at *6 (D. Md. July 7, 2023) ("Witness credibility, of course, is a quintessential jury issue. The law does not permit an expert witness to opine on any lay witness's credibility . . . ."). By concluding that Morrissey "lied" or that his initial statement was false, Stephenson makes a credibility assessment that exceeds the bounds of his permitted analysis as an expert witness. *Compare United States v. $307,970.00 in U.S. Currency*, No. 4:12-CV-136, 2019 WL 2173432, at *11–12 (E.D.N.C. May 20, 2019) (holding that expert testimony linking a witness's antisocial personality disorder to a propensity to lie and frequent substance abuse to impaired memory was inadmissible as an improper assessment of the witness's credibility), *with United States v. Lee*, No. 00-4150, 2000

---

[5] This argument for exclusion was not made in Belt Line's opening brief, ECF No. 124.

7

WL 1390856, at *3 (4th Cir. Sep. 26, 2000) (holding that expert testimony explaining a victim's mental limitations did not improperly opine on credibility because the expert "merely defined the limitations of [victim's] intellectual capabilities and left the ultimate determination as to whether or not she was telling the truth to the jury"). Moreover, the Court has already ruled, pursuant to 46 U.S.C. § 6308 and the related motion in limine, that no portion of the Coast Guard's investigation—including CG-2692 Forms or witness interview transcripts—may be relied upon or used as a basis for expert opinions in this case.[6]

Because Stephenson's fourth opinion necessarily depends on both an impermissible credibility determination and materials he is barred from considering, it is neither reliable nor helpful to the trier of fact and must be excluded under Rule 702.

### III. CONCLUSION

For the reasons explained above, Belt Line's Second Motion in Limine to Exclude Expert Opinion and Evidence from Sam Stephenson, J.D., ECF No. 123, is **GRANTED**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 6, 2026

---

[6] By its ruling, the Court does not hold that Stephenson may not offer opinions directly based on the facts. For instance, although Stephenson may not opine that Mate Morrissey's initial statement was "patently false," he may be permitted to opine whether the facts support the conclusion that the tug veered "hard over," so long as that opinion is not based on Coast Guard investigative materials.