# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

In the Matter of COEYMANS MARINE TOWING, LLC,
*d/b/a* CARVER MARINE TOWING AS OWNER AND
OPERATOR OF M/T MACKENZIE ROSE, (IMO No. 8968765),
Her Cargo, Engines, Boilers, Tackle, Equipment, Apparel, and App,

Case No.: **2:24cv490**

---

**NORFOLK AND PORTSMOUTH BELT LINE
RAILROAD COMPANY,**

      **Consolidated Plaintiff/Claimant,**

v.

**JAMES MORRISEY,**

      **Defendant.**

## ORDER

This is an admiralty limitation action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug *MACKENZIE ROSE* ("the tug") struck the Norfolk and Portsmouth Belt Line Railroad Company's Main Bridge. The tug was owned and operated by Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), who filed the underlying action to limit its liability for the allision. Carver alleges that the allision resulted from a navigational error by Mate James Morrissey and that the tug was seaworthy at the time of the incident. Claimant Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") disputes Carver's entitlement to a limitation of its liability, placing at issue the circumstances surrounding the tug's navigation and Carver's responsibility for events leading to the allision.

Presently before the Court is Belt Line's Third Motion in Limine to Preclude all Efforts to Depreciate the Belt Line's Repair Costs and all Testimony by Carver's Expert Witnesses at R.L. Banks & Associates, Inc. and an accompanying memorandum in support. ECF Nos. 134–35. Therein, Belt Line seeks to preclude any evidence of or reference to (1) all efforts to depreciate the Belt Line's repair costs for its Main Line Bridge, and (2) all testimony by Carver's proposed expert witnesses at R.L. Banks & Associates, Inc., who opine that Belt Line's repair costs should be depreciated. Carver filed a memorandum in opposition, ECF No. 148, and Belt Line filed its reply, ECF No. 155.

Accordingly, the Motion in Limine is fully briefed and ripe for disposition. For the reasons explained below, the Motion, ECF No. 134, is **GRANTED**.

## I. LEGAL STANDARD

Although not specifically provided for in the Federal Rules of Evidence, motions in limine "ha[ve] evolved under the federal courts' inherent authority to manage trials." *United States v. Verges*, No. 1:13cr222, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014). District courts are granted "broad discretion" when evaluating evidentiary issues, including motions in limine. *See, e.g.*, *Kaufman v. Park Place Hosp., Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012). In general, relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. However, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The proponent of the evidence

has the burden of establishing its relevance and admissibility. *United States v. Williams*, 461 F.3d 441, 446 (4th Cir. 2006).

## II. ANALYSIS

In its Motion, Belt Line seeks to preclude Carver's evidence and argument that Belt Line's damages should be depreciated. Specifically, Belt Line seeks to preclude evidence of, suggestion of, or reference to two topics:

> 1. All efforts to depreciate the Belt Line's repair costs for its Main Line Bridge; and
>
> 2. All testimony by Carver's proposed expert witnesses at R.L. Banks & Associates, Inc., W. M. Marianos[1] and Charlie Cunningham, who opine that the Belt Line's nearly $16 million[2] in repair costs should be depreciated to $2,972,767.[3]

ECF No. 134 at 1. R.L. Banks & Associates, Inc., a railroad consulting firm based in Virginia, was asked to provide an assessment of the Main Line Bridge's condition at the time of the allision, variables that may have affected the depreciated state of the bridge, and an economic analysis of Belt Line's damages given the depreciated value of the bridge as of the date of the allision. ECF No. 135, attach. 3 at 4. Two employees with R.L. Banks & Associates provided "collective opinions" for the report: Ward Nicholas Marianos, Jr., a self-employed consultant bridge engineer, and James Charles Cunningham, Senior Director at R.L. Banks & Associates. *Id.* at 4–6. The report found that Belt Line's claimed damages "did not account for the depreciated state of the bridge," thereby overstating its damages. *Id.* at 7. After applying depreciation and excluding scrap

---

[1] The Court notes that Belt Line's Motion incorrectly identifies W. N. Marianos as "W. M. Marianos." ECF No. 134 at 1. Although the error is not repeated anywhere else in the parties' briefing, the Court corrects the record for purposes of clarity and accuracy.

[2] Belt Line notes in its Motion that, at the time R.L. Banks's report was prepared, Belt Line's damages were approximately $15.5 million but that the latest contractor invoice reflects damages in the amount of $15,922,877.46. ECF No. 134 at 1 n.1.

[3] Although Belt Line's categorical use of "all testimony" potentially suggests that it is seeking to exclude the experts' testimony on any subject, the context of the relief sought—focusing almost entirely on the depreciation issue—has led the Court to interpret the Motion as seeking the exclusion of depreciation evidence only, as opposed to the entire potential testimony of the experts.

steel credit and "inappropriate labor charges," R.L. Banks & Associates reduced Belt Line's claimed damages from $15,542,872 to $2,972,767. *See id.* at 7–8.

Belt Line argues that any evidence and argument from Carver regarding the depreciation of Belt Line's costs should be excluded for several reasons. First, Belt Line contends that the proper measure of damages is the cost of repairs when repairs are made to an integral part of a structure and do not enhance the structure's value. ECF No. 135 at 4 (citing *BP Exploration & Oil, Inc. v. Moran Mid-Atlantic Corp.*, 147 F. Supp. 2d 333, 341 (D.N.J. 2001)). Under the principle of *restitutio in integrum*, Belt Line asserts that damages should restore the injured party to its pre-loss condition. *Id.* (citing *Hewlett v. Barge Birtie*, 418 F.2d 654, 657 (4th Cir. 1969)). According to Belt Line, the repairs at issue were limited to Span 4 of the bridge—an integral component of the overall structure—and did not increase the bridge's value or extend its useful life. *Id.* at 7–10. Rather, Belt Line contends, the repairs merely returned Belt Line to the position it was in prior to the allision. *Id.* at 10. Belt Line further argues that Carver's experts do not opine otherwise, as they never state that the bridge's useful life was extended by the repairs. *Id.* at 12.

Belt Line also challenges the admissibility of the expert report on procedural and substantive grounds, arguing that although the report is authored by two individuals, it fails to specify which expert held which opinions in violation of Rule 26(a)(2)(B). *Id.* at 12–13. Additionally, Belt Line argues that the report is not supported by sufficient facts or data because the experts neither visited nor inspected the Main Line Bridge and instead relied on generalized statements from four publications. *Id.* at 14–15. Finally, Belt Line argues that the experts make two incorrect claims: that Belt Line (1) failed to credit the value of scrap metal and (2) improperly depreciated the substantial costs associated with realigning the bridge. *Id.* at 16–19.

4

In response, Carver argues that the experts can and must depreciate Belt Line's repair costs. Carver contends that Belt Line's proposed measure of damages has not been adopted within the Fourth Circuit and that, instead, the *Marlin* decision—which involved the same bridge—controls. ECF No. 148 at 2 (citing *Norfolk & Portsmouth Belt Line R.R. Co. v. M/V Marlin*, No. 2:08-cv-134, 2009 WL 3363983 (E.D. Va. Oct. 9, 2009)). *Marlin* held that the proper measure of damages is the market value of the property immediately before the loss, and that this valuation necessarily accounts for depreciation. *Id.* at 8 (citing *M/V Marlin*, 2009 WL 3363983, at *9). Carver asserts that the repairs enhanced the value of the bridge, including through the use of "modern, freshly fabricated steel" on Span 4 of the bridge, and that therefore the repair costs must be depreciated. *Id.*

Carver also emphasizes that Belt Line has not designated any expert to testify regarding the bridge's life expectancy. *Id.* at 5. Carver further argues that the "integral component exception" does not apply here because Span 4 was a total loss, but that even if the exception was applicable, the repairs enhanced the bridge's value and extended its life. *Id.* at 13. Carver additionally responds to Belt Line's procedural challenges by asserting that the two experts properly offered collective opinions rather than separate opinions that required delineation under Rule 26(a)(2)(B). *Id.* at 15. Carver argues that the experts relied on sufficient facts and data and disputes Belt Line's claim that no site inspection occurred, noting that Marianos "conducted a site visit of the bridge" and took photographs.[4] *Id.* Carver further maintains that the experts' reliance on published literature is appropriate for their analysis and that any issues Belt Line takes with their experts' analyses goes to the weight of their opinions rather than their admissibility. *Id.* at

---

[4] The Court notes that a "site visit" is not the same as conducting an inspection. Carver appears to suggest that Marianos actually inspected the bridge; however, if Belt Line's representation is accurate that Marianos observed the damage only from a vessel and took some photographs, such activity would not constitute an inspection.

16–17.  Finally, Carver argues that the burden of proving damages rests with Belt Line, not with Carver, and that Belt Line improperly attempts to shift that burden in its motion.  *Id.* at 17–19.

In its reply, Belt Line argues first that *BP Exploration & Oil, Inc.* is not inconsistent with *Marlin* because the factual circumstances between the two cases are materially different.  In *Marlin*, the damage to the fender system—a structure entirely separate from the bridge—was so severe that the fender needed to and could be replaced in its entirety, which justified treating the replacement as a total loss subject to depreciation.  ECF No. 155 at 5 (citing *M/V Marlin*, 2009 WL 3363983, at *10).  In contrast here, the Main Line Bridge was not destroyed in its entirety and did not require wholesale replacement; instead, Belt Line needed to repair only one integral span of the bridge.  *Id.* at 6.  Although Span 4 was an integral component of the bridge, Belt Line argues that repairing one span does not equate to replacing the bridge in its entirety and does not extend the useful life of the entire structure.  *Id.*  Instead, the bridge remained fundamentally the same before and after the repairs, distinguishing it from the fender system at issue in *Marlin*.  *Id.*

Belt Line further contends that Carver failed to meet its burden of showing that the repairs added value to the bridge, which is a prerequisite to applying depreciation.  *Id.* at 7.  According to Belt Line, the use of new or improved steel does not establish added value because it was actually less expensive and simply reflects modern materials rather than an upgrade.  *Id.* at 7–9.  Belt Line also notes that Carver did not meaningfully dispute that the majority of the costs were attributable to realigning the bridge,[5] which constitutes a repair necessary to "salvage" a structure following an allision and is not subject to depreciation.  *Id.* at 15.  Taken together, Belt Line argues that depreciation is inappropriate under the circumstances and that any evidence of, suggestion of, or reference to depreciation of Belt Line's repair costs should therefore be precluded.  *Id.*

---

[5] Notably, Carver did not address Belt Line's argument that the bulk of the repair costs were attributable to realigning the bridge, which further undermines Carver's depreciation argument.

The Court does not find persuasive the argument that depreciation should apply. Here, the damage caused by the allision was confined to Span 4, which, although a discrete segment, is an integral part of the bridge and cannot be treated as stand-alone property whose repair enhanced the bridge's value. The bridge has no value if Span 4 remains unrepaired, as it is unusable. The repair of that span was therefore necessary to restore the bridge to its pre-allision condition rather than to improve or upgrade it.

Additionally, *BP Exploration & Oil, Inc.* and *Marlin* are not inconsistent. In *Marlin*, the damaged fender system was a separate structure that required complete replacement. *M/V Marlin*, 2009 WL 3363983, at *10. Here, the bridge was not a total loss because only a portion of an integrated structure required repair. As a result, repairs to Span 4 could not have extended the useful life of the entire bridge because the bridge was not replaced in its entirety. The remaining portions of the bridge were unaffected by the allision, and their life expectancy is no different after the incident than it was before. Simply stated, repairing one span of the bridge cannot conceivably extend the life of the entire structure, because the rest of the bridge is just as old and worn as it ever was. The bridge's useful life must therefore be assessed as a whole, not by isolating a single repaired component.

With respect to Belt Line's remaining challenges, while the experts may not apply depreciation or factor depreciation into their analyses, their testimony remains admissible to the extent it solely critiques specific repair and labor costs as unnecessary, excessive, or otherwise non-recoverable. Those opinions go to the reasonableness of the claimed damages and may be challenged through cross-examination. Removing the depreciation opinions from the equation, these remaining opinions are based on the facts and data provided in the repair costs. Similarly, Belt Line's complaint that the experts failed to credit the value of scrap metal may also be

addressed on cross-examination, as can Belt Line's complaint that Marianos may not have conducted an inspection of the bridge but only visited the site in a boat.

Finally, the Court is not persuaded that Rule 26(a)(2)(B) has been violated simply because Carver disclosed the opinions as jointly held by both experts rather than attributing them to each expert individually.   Because Carver contends that both experts in fact hold each opinion, disclosing the opinions jointly sufficiently apprises Belt Line under the Rule.

### III. CONCLUSION

For the reasons explained above, Belt Line's Third Motion in Limine to Preclude all Efforts to Depreciate the Belt Line's Repair Costs and all Testimony by Carver's Expert Witnesses at R.L. Banks & Associates, Inc., ECF No. 134, is **GRANTED**.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 6, 2026