**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**
**In Admiralty**

<table>
<tr><td>In the Matter of COEYMANS MARINE TOWING,<br>LLC D/B/A CARVER MARINE TOWING <em>et al.</em></td><td><strong>Civil Action No: 2:24-cv-00490</strong></td></tr>
</table>

**CARVER'S RULE 72(A) OBJECTIONS TO MAGISTRATE JUDGE LEONARD'S**
**FEBRUARY 6, 2026 ORDER PRECLUDING TESTIMONY**
**AND OPINIONS OF JASON R.  MEYERROSE**

Petitioner Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver"), by

counsel, pursuant to Federal Rule of Civil Procedure 72(a), respectfully submits these objections

to the Magistrate Judge's Order entered (Dkt. 172) granting NPBL's Motion in Limine to Exclude

Testimony of Jason R. Meyerrose as follows:

**I. BACKGROUND**

Magistrate Judge Leonard granted the Belt Line's Motion to Exclude the testimony and

Opinions of Jason R. Meyerrose as to the value of the MACKENZIE ROSE.  Relying on *Standard*

*Oil Co. of New Jersey v. Southern Pacific Co*., 268 U.S. 146 (1925), as applied in F*.C. Wheat*

*Maritime Corp. v. United States*, 663 F.3d 714 (4th Cir. 2011), Magistrate Judge Leonard found

that Meyerrose's methodology for valuing the tug is not reliable because it failed to properly apply

the  governing  fair  market  value  standard  which  must  be  sued  to  value  a  vessel  unless  the

information required for such a valuation is unavailable. Magistrate Judge Leonard reasoned that:

> Meyerrose's methodology for valuing the tug is not reliable
> because it failed to properly apply the governing fair market value
> standard.  Under *Standard Oil Co. of New Jersey v. Southern Pacific*

1

*Co.*, 268 U.S. 146 (1925) – later applied in *F.C. Wheat Maritime Corp. v. United States*, 663 F.3d 714 (4th Cir. 2011) – fair market value must be used to value a vessel unless the information required for such a valuation is unavailable.  Belt Line is therefore correct than an expert who claims to rely on fair market value must explain how that value was determined and what market data supports it. Here, Meyerrose's opinions are internally inconsistent: In his 2024 Affidavit of Valuation, Meyerrose stated he used a fair market value approach, ECF No. 3, attach. 1 at 7, yet one year later in his rebuttal report, he asserted that the tug was unique – a "one off" – and that fair market value could therefore not be analyzed, ECF No. 138, attach. 2 at 4.  Additionally, Carver asserts that Meyerrose relied on his industry knowledge, yet nothing in his report reflects what he relied on or how he reached his specific valuation.  This shift is particularly problematic given that Belt Line's valuation expert, John Poulson, stated that comparable sales figures existed, despite choosing not to analyze them. See ECF No. 97, attach 3 at 44:5-45:6 (acknowledging that actual sales price information was available from a source he was familiar with).

Magistrate Leonard concluded that:

> Carver's argument that Meyerrose's valuation is admissible because it is grounded in his industry experience does not cure these deficiencies.  Rule 702 requires more than a conclusory assertion of expertise:  it requires a reliable methodology and a clear application of that methodology to the facts.  Here, Meyerrose reliable o unspecified "industry knowledge," without identifying relevant data sources or analytical steps, provides no basis for the Court to assess reliability. **. . .**

(Dkt. 172), p. 7.

## II. LEGAL STANDARD

The District Judge must consider timely objections to a Magistrate Judge on non-dispositive matters and modify or set aside any part of the order that is clearly erroneous or is contrary to the law. 28 U.S.C. § 636(b)(1)(A); *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 756 (E.D. Va. 2014). "A court's finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014)

2

(quoting  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)) (internal quotation marks omitted).  "'Clearly erroneous' and 'contrary to law' are not synonymous. *HSBC Bank USA, Nat. Ass'n v. Resh,* No. 3:12–CV–00668, 2014 WL 317820, at *7 (S.D.W.Va. Jan. 28, 2014). For questions of law "there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a] de novo standard." (quoting *Robinson v. Quicken Loans Inc.,* No. 3:12–cv–0981, 2013 WL 1704839, at *3 (S.D.W.Va. Apr. 19, 2013))." *Id.*

"In the context of Rule 72(a), this 'contrary to law' standard is equivalent to *de novo* review. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (holding that review of a question of law 'is plenary under the 'contrary to law' branch of the Rule 72(a) standard' and that therefore, '[f]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and ... [a] de novo standard" (citations omitted)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (holding that while "[t]he district court is bound by the clearly erroneous rule in findings of facts[,] the phrase 'contrary to law' indicates plenary review as to matters of law"); *Bruce*, 21 F. Supp. 3d at 594; *HSBC Bank USA, Nat'l Ass'n*, 2014 WL 317820, at *7; 12 Charles Allen Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3069 (2d ed. 2017) (noting that "[r]egarding legal issues, the language 'contrary to law' appears to invite plenary review"). *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017).

### III.  LAW APPLICALE TO VALUATION OF A VESSEL

In limitation of liability proceedings, the "value" of the vessel is typically its fair market value at the end of the subject voyage*. In the Complaint of North American Trailing Co.*, 763 F. Supp 152, 154 (E.D. Va. 1991).  If there is no market for the vessel, or if sales of similar vessels are too few in number to indicate its market value with reasonable probability, the Court must use

other methods of arriving at its value. *North American Trailing Co.*, 763 F. Supp. at 155. In a case where evidence of recent sales is unavailable, the Court may consider "reconstruction costs depreciated as the value of the vessel," but where reconstruction costs depreciated do not indicate true market value, then "[i]n such cases, it is appropriate to consider other types of evidence, including the **opinions of marine surveyors, the condition of repair of the vessel, the insured value** and so forth. *North American Trailing Co.*, 763 F. Supp. at 155 (emphasis added). "Valuation in the absence of a market is flexible, and no single factor is determinative." *Id*. Rather, the basis of valuation is a composite one which gives an end result in each instance approximating actual value as closely as possible. *Id*. (holding that in the absence of evidence of the NORTHERLY ISLAND's true market value or evidence of recent sales of comparable vessels as the subject dredge was "a unique type of hopper dredge" for which there was no ascertainable market value," and because there had been no evidence of value based upon expected or probable income from the vessel, the Court must look to other indicia of value.); *U.S. Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 825–28 (4th Cir.1992) (concluding that "[a] court may permissibly value a vessel for which a market value is not ascertainable by relying upon any number of methodologies, including the vessel's replacement cost depreciated."); *F.C. Wheat maritime Corp. v. U.S.*, 663 F.3d 714 (4th Cir. 2011) (applying fair market value rather than replacement cost should be used to value yacht where "Appellants simply used the Marquessa as a yacht and did not prove that their use of the vessel was so idiosyncratic as to lack any market comparables" and filled "no special qualities… that would not be recognized in her commercial price.").

### III. ARGUMENT

The Magistrate Judge's Order is clearly erroneous and contrary to law because:

**1.     The Order incorrectly found that Mr. Meyerrose's opinions are contradictory, rather than complementary, where the subject tug is "one off" or unique.**

Magistrate Leonard observed that Mr. Meyerrose's opinions are "internally inconsistent" because Mr. Meyerrose initially stated that he used a fair market approach to valuation, and a year later, explained that the tug was a "one off," that the fair market value could not be analyzed. Carver disagrees.

In this case, Mr. Meyerrose's opinions are complementary, not contradictory, in light of the guidelines for valuation provided in *North American Trailing*, 763 F. Supp. at 155, where there are no true comparables to the MACKENZIE ROSE.

Indeed, Meyerrose's initial  valuation provided in his "Affidavit of Valuation"  provides this two-part methodology, including examination of the market and where there were none, provided a valuation based on the condition of the tug:

. . .

> 3.  I have been requested by counsel for the Petitioner to provide a fair market valuation of the M/T  MACKENZIE ROSE as to June 15, 2024.
>
> 4.  On June 25, 2024, at the request of Petitioner, I performed a General Condition and Suitability for Service Inspection Survey of the M/T MACKENZIE ROSE.  . . .

 (ECF 3-1)

In his Rebuttal, Mr. Meyerrose responded to Mr. Poulsons' assertion that were, in fact, comparables, and disagreed, as the market data provided an incomplete picture in light of the subject tug:

> Over item 6 is mostly filler material, assumes showing comparisons when in fact there is no other vessels comparable to the one off bult "MACKENZIE ROSE".

5

**The only comparisons can be to similar vessels including review of HP, type, age and intended service. Next is factoring in age and classification, if any, again all opinions. And finally, the conditions of the vessel as found are one of the most significant factors in the valuation process**. **With note, this tug was a one off built tug for offshore towing by the original owners' oil barges, <u>is extremely ungainly for harbor work and sat for numerous years as unsellable.</u>** Pursuant to the provided testimony of Mr. Nick Laraway of Carver Companies, the vessel was purchased from Gellatly * Criscione in year 2020 for $1,000,000.00, ad subsequently, as noted from Mr. Laraway's testimony that it was insured for around $3,000,000.00 based upon the survey and valuation that was done by Mr. Rick Meyerrose of this office in year 2018 prior to Carver's Purchase. At the time of the purchase Mr. Laraway states that no immediate work was required to the vessel, to put it into immediate service. **This further supports our 2024 evaluation of $2.5 Million is accurate based on normal depreciation of the vessel since the time of purchase by Carver.**

Meyerrose Rebuttal Report (ECF 138), p. 2

Based on the above testimony, where the comparable sales are inapplicable given the subject tug, like the "unique type of hopper dredge" in *North American Trailing*, the subject tug was also "unique." The Meyerrose firm, either Jason Meyerrose or Rick Meyerose before him, had had performed valuations of the subject tug since its purchase in 2018. Jason Meyerrose testified that the subject tug "is extremely ungainly for harbor work and sat for numerous years as unsellable." (ECF 138), Meyerrose Rebuttal Report, p. 3. Mr. Meyerrose did in fact look at the fair market value of comparable vessels in his initial valuation of the tug, but based upon his experience and his firm's experience, he found none applicable. Thus, he looked to the condition of the tug, both before and after Carver purchased it, and records provided to him by counsel as to the tug's condition. (ECF 138), Meyerrose Rebuttal Report, pp. 2-3. He testified that he relied on records regarding repairs and maintenance under the conditions section of Report M-14905,

showing a list of major work completed on the tug. *Id*. at pp. 1-3.  He also reviewed the extensive

TVB, ABS and shipyard work orders provided by Carver prior to this survey.  In Carver's prior

report, this is the "data" provided by Carver to the Belt Line. *Id*. at pp. 1-3.  This included the

American Bureau of Shipping ("ABS)[1] and Shipyard work orders, provided to the Belt Line during

discovery as ABS 1-ABS 238 depicting the condition of the hull and structure of the tug, including

systems, equipment, and machinery to confirm that the vessel remains in satisfactory condition,

without serious defects that would affect safety or fitness to proceed.

Given the above, Magistrate Judge Leonard erred in holding that that fair market value

should have been applied and relied on the Belt Line's misinterpretation of Mr. Meyerrose's

opinion, an opinion which comports with the standard set forth in *North American Trailing*.

## CONCLUSION

For the foregoing reasons, Carver respectfully objects to the Magistrate Judge Order dated

February 6, 2026 granting Belt Line's Fourth Motion in Limine to Exclude the Testimony and

Opinions of Jason R. Meyerrose (ECF 138) and, respectfully requests that the District Judge vacate

the order, rule that Jason R. Meyerrose's Opinions and Testimony are admissible, or, alternatively,

vacate the order and reserve ruling on the issue until after the close of evidence.

Respectfully submitted,

Dated: February 20, 2026                    **CLYDE & CO US LLP**

By: /s/ *Matthew J. Obiala*
Matthew J. Obiala (VSB No, 100626)
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606

---

[1] As the Court may be aware, ABS is a classification society that sets technical rules for the design, construction, and survey of ship s and marine structures, then inspects vessels to verify they meet those rules.

Tel: 312-635-7000
Email: matt.obiala@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
        dawn.johnson@clydeco.us
        Siobhan.murphy@clydeco.us

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

*/s/ Harold L. Cohen*

9