IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**RULE 72 OBJECTION
OF NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY TO THE
MAGISTRATE JUDGE'S ORDER GRANTING PETITIONER'S MOTION TO
EXCLUDE TESTIMONY AND OPINIONS OF JOHN S. POULSON**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Federal Rule of Civil Procedure 72, for its Objection to the Magistrate Judge's Order Granting the Motion of Petitioner, Coeymans Marine Towing, LLC d/b/a Carver Marine Towing's ("Carver"), to Exclude Testimony and Opinions of John S. Poulson, states as follows:

**Introduction**

The Magistrate Judge's decision is not supported by the record. Carver moved to exclude Mr. Poulson's testimony and opinions on the grounds that his comparable sales valuation opinion is unreliable "because he utilized sellers' offers to determine the fair market value [of the M/T MACKENZIE ROSE], rather than sales prices." ECF 111, p. 3. The Magistrate Judge granted Carver's Motion, concluding that the failure to utilize actual sales price in his valuation departed from the governing legal standard and undermined the reliability of Mr. Poulson's opinions. ECF 171, p. 7. However, while actual sales prices of comparable vessels would be preferable to sales listings utilized by Mr. Poulson, the parties agree that "***Where the comparable sales are limited***, such as here where the tug is a 'one off built vessel' rendering it unique in the market… ***it is***

1

***appropriate to consider other types of evidence***" Carver's Brief in Opposition to Belt Line's Motion in Limine to Exclude Meyerrose, ECF 156, p. 9.

As explained below, publicly available sales prices of vessels comparable to the M/T MACKENZIE ROSE do not exist. Because the Magistrate Judge's conclusion is unsupported by the record, his Order should be set aside.

## Standard of Review

Where a Magistrate Judge issues an order under Rule 72(a), a party may serve and file with the clerk of court an objection to the order within 14 days of being served with a copy. *See* Fed. R. Civ. P. 72(a). The United States District Judge shall "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. A finding is "clearly erroneous" only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Subpoena for Documents Issued to Peninsula Pathology Assocs.*, 2023 U.S. Dist. LEXIS 171595 at *2 (E.D. Va. 2023). "A ruling is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. at 2 (internal citations omitted).

## Argument

I. **Both Parties admit that there are no publicly available sales prices of vessels comparable to the M/T MACKENZIE ROSE.**

A generally accepted method for determining the fair market value of a vessel is the comparable sales method, which involves looking to "contemporaneous sales of like property in the way of ordinary business." *F.C. Wheat Mar. Corp. v. United States*, 663 F.3d 714, 724 (4th Cir. 2011). However, a court may permissibly value a vessel "by relying on any number of methodologies, including the vessel's replacement cost depreciated; expert opinion regarding the

2

value of the vessel; the earning capacity of the vessel; and the amount for which the vessel was insured." *United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 826 (4th Cir. 1992).

Here, the Order concludes that Mr. Poulson's methodology for valuing the M/T MACKENZIE ROSE is not reliable because it utilizes vessel asking prices rather than confirmed sales prices of comparable vessels. *See* ECF 171, pp. 6-7. Notably, this conclusion relies on an incorrect interpretation of Mr. Poulson's deposition testimony:

> ***Importantly, the actual sales price was available to Poulson*** on a source which he admitted he was familiar with but did not seek out. ***During his deposition, Poulson acknowledged that such information existed but that he had not visited those publications that provided final sale prices***, despite recognizing its relevance.

*See* ECF 171, p. 7 (citing depo p. 44:5-45:6).

Contrary to this statement, Mr. Poulson never acknowledged that there are publicly available sales prices of vessels comparable to the M/T MACKENZIE ROSE. Rather, in his deposition, Mr. Poulson acknowledged the existence of *one* resource he was in touch with in the past that proffered sales prices of vessels:

```
11    Q.  Is it fair to say on Figure 1 you don't
12   actually know what the sale price was for any of
13   those, is that fair to say, the final sale price
14   that it actually sold for?
15    A.  Yes, that's fair to say.  In the final
16   analysis of transaction, that's an unknown.
17    Q.  Well, there's publications you can go
18   to, right, to see what the final sale prices
19   were on certain tugs or vessels?
20    A.  I've not gone there.
21    Q.  But are there publications where you
22   can research and see what final sale prices are?
23    A.  There may be, but I'm not aware of
24   them -- well, let me correct that.  There are
25   some, yes.  There are some, yes.  There is a
 1          J. S. POULSON, MSc [sic]
 2   website company I was frequently in touch with,
 3   Compass Maritime, who did publish actual sales.
 4   But again, that's to the best of their
```

3

> 5  **knowledge.  The final details of a transaction**
> 6  **are privy really to the buyer and the seller.**

ECF 97, Exhibit 3 at 44:11 – 45:6 (emphasis added).[1]  Notably, Compass Maritime is a ship broker and does not offer any such service on its website, see https://compassmar.com (last accessed February 19, 2026).  Other than this single mention of Compass Maritime in the deposition, the testimony failed to establish the current availability or accuracy of the purported actual sales data or if it is relevant to the valuation of the Mackenzie Rose, a tug boat.  As Mr. Poulson stated, the details of whatever type of sales data may have been provided in the past by Compass Marine were privy only to the buyer and seller.  *Id.*[2]

Carver too admits that there are no comparable sales prices to the M/T MACKENZIE ROSE.  *See* ECF 156, pp. 7-10.  In its Memorandum in Opposition to the Belt Line's Fourth Motion *in Limine*, explaining its own expert Jason R. Meyerrose's failure to utilize comparable sales prices in his valuation of the M/T MACKENZIE ROSE, Carver states:

> ***Where the comparable sales are limited, such as here*** where the tug is a "one off built vessel" rendering it unique in the market… it is appropriate to consider other types of evidence, including the opinions of marine surveyors, the condition of repair of the vessel the insured value and so forth…. ***Mr. Meyerrose looked at comparable vessels, and finding none***, looked to the condition of the repaired value and insured value[.]

ECF 156, p. 9 (internal citations omitted).[3]

---

[1]  The deposition of Mr. Poulson is attached hereto as Exhibit 1.  His expert report is attached hereto as Exhibit 2.
[2]  Should the Court require further testimony by Mr. Poulson regarding his knowledge of Compass Maritime, he can be made available at trial or before.
[3]  Mr. Meyerrose's Rebuttal Report repeatedly states that there are not comparable sales prices to the M/T MACKENZIE ROSE.  *See* ECF 138-2, Item 6.4 ("There are no true comparables to the MACKENZIE ROSE as she is a one off built ocean towing vessel"); *Id.* at Item 6.8 ("[N]o comparables to special build MACKENZIE ROSE design"); *Id.* at Item 6 ("IN FACT there is no other vessel comparable to the one off built MACKENZIE ROSE").

The record demonstrates and both Parties agree, that there are no actual sales prices of vessels to the M/T MACKENZIE ROSE. As such, the Magistrate Judge's finding that such sales prices were available to Mr. Poulson is clearly erroneous and should be set aside.

## II. Mr. Poulson's comparable sales methodology is consistent with industry standards.

Federal Rule of Evidence 703 provides that an expert may rely on information in forming his opinion "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]" Fed. R. Evid. 703. Moreover, "[w]hen [one's] methodology is sound, and the evidence relied upon [is] sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above the minimum threshold) may go to the testimony's weight, but not its admissibility." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010) (internal citations omitted).

Here, the Order states that "[Mr.] Poulson's decision not to rely on the sales price departs from the governing legal standard behind vessel valuations and undermines the reliability of his opinions." ECF 171, p. 7. This is a misapplication of the applicable law and recognized appraisal methodologies. Though there is no public database that provides the exact sales prices of vessels, there are databases that publish sellers' offer prices, which provide an approximation of vessels' fair market values that Mr. Poulson utilized.[4]

---

[4] This method of utilizing asking prices in arriving at a market value determination is supported by the International Valuation Standards (ISV) for valuation of tangible equipment (2025). As prescribed under ISV 300 (Plant, Equipment and Infrastructure), Section 70.02 provides: When using the market approach, types of evidence will include: (a) actual sales of identical assets, (b) actual sales of similar assets, (c) asking prices for identical assets, (d) *asking prices for similar assets*. (emphasis added); https://saicawebprstorage.blob.core.windows.net/uploads/resources/IVS-effective-31-January-2025.pdf, p. 115 (last accessed Feb. 19, 2026). Relevant pages attached as Exhibit 3.

Because sales listing information is publicly available, this data is relied upon by experts in valuing vessels. As such, Mr. Poulson's valuation is reliable; any critique would go to the weight of his testimony, not its admissibility. The Magistrate Judge's conclusion regarding the reliability of Mr. Poulson's comparable sales valuation should be set aside.

### III. Mr. Poulson's other methodologies are reliable and proper in this case.

Even if Mr. Poulson's comparable sales valuation is flawed, which it is not, his other methods of valuation are reliable and admissible in this case. A court may permissibly value a vessel "by relying on any number of methodologies, ***including the vessel's replacement cost depreciated***; expert opinion regarding the value of the vessel; ***the earning capacity of the vessel***; and the amount for which the vessel was insured." *United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 826 (4th Cir. 1992). The Magistrate Judge recognized this, stating that "fair market value must be used to value a vessel ***<u>unless</u> the information required for such valuation is unavailable*** (that is, the price a willing buy[er] would pay and a willing seller would accept)." ECF 171, p. 6. Here, in the absence of available comparable sales prices, Mr. Poulson properly provided two additional acceptable methods of valuation: replacement cost valuation and generative income valuation. [5]

Federal Rule of Evidence 702 allows a witness "qualified as an expert by knowledge, skill, experience, training, or education" to testify in the form of an opinion or otherwise if:

---

[5]  *See also*, Uniform Standards of Professional Practice, published by the Appraisal Institute, Standards Rules 2-7 and 2-8 for the appraisal of personal property, which calls for the utilization of the three recognized approaches to valuation (market, cost and income) (2021) in rendering valuation opinions; https://static1.squarespace.com/static/5aa2098fe2ccd17acd3e8c5d/t/64a5a99f6829b5683620a325/1688578475358/2020-21+USPAP.pdf, pp. 42-50 (last accessed Feb. 19, 2026). Relevant pages attached as Exhibit 4.

>    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

District courts are tasked to act as gatekeepers and exclude expert testimony from trial that is irrelevant or unreliable. *See* Fed. R. Evid. 104(a); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (discussing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)). Reliability is determined by assessing "whether the reasoning or methodology underlying the testimony is scientifically valid." *Daubert*, 509 U.S. at 592-93. Factors for evaluating reliability include, but are not limited to, testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant community. *Daubert*, 509 U.S. at 593-94.

Here, the Magistrate Judge does not determine that Mr. Poulson's replacement cost valuation and generative income valuation were unreliable. Rather, he simply states that such methods are improper here, as actual sales of comparable vessels were available to Mr. Poulson. *See* ECF 171, p. 7. However, these additional approaches to valuation are accepted independent methodologies and must be performed to arrive at an expert opinion of value. [6] As such, Mr. Poulson's utilization of the replacement cost valuation and generative income valuation is proper in this case.

---

[6]     *See* n.5

**Conclusion**

Because the Magistrate Judge's conclusion is clearly erroneous and contrary to law, Belt Line requests that the Court set aside the Order, allow Mr. Poulson to testify at trial in accordance with his report, and grant Belt Line all other just and necessary relief.

Dated: February 20, 2026  NORFOLK AND PORTSMOUTH BELT
LINE RAILROAD COMPANY


By: */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 20th day of February 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

      James Morrissey
      4723 Baywood Drive
      Lynnhaven, FL 32444

By: */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*