IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*.

Civil Action No. 2:24-cv-00490-MSD-LRL

### NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S LIMITED OBJECTION TO MAGISTRATE JUDGE'S ORDER AT ECF 175

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, pursuant to Federal Rule of Civil Procedure 72(a), for its limited objection to the Magistrate Judge's Order entered February 6, 2026 (ECF 175) on the Belt Line's Third Motion in Limine to Preclude Efforts to Depreciate Repair Costs by R.L. Banks & Associates and Related Expert Testimony (ECF 134), states as follows:[1]

### Introduction

This objection is narrow. The Belt Line does not challenge the Magistrate Judge's principal holding that Carver cannot attempt to depreciate the Belt Line's repair costs.[2] That ruling is correct and excludes all such evidence or argument at trial. The Belt Line objects only to the Magistrate Judge's further conclusion that, with respect to certain additional opinions that challenge specific

---

[1] The Belt Line incorporates its previous Motion, Brief, Reply, and exhibits as if set forth herein. *See* ECF 134, 135, and 155.

[2] As a result of the allision, the Belt Line incurred over $15,922,877 in repair costs. Carver's expert witnesses opined that the costs should be depreciated to $2,972,767, treating the situation as a replacement of the entire Bridge instead of a repair of one section. The Magistrate Judge correctly rejected that theory since it would leave the Belt Line in a substantially worse position than pre-allision. *See* ECF 175, pp. 3-7.

1

costs in the Belt Line's damages claim, Carver complied with Rule 26(a)(2)(B) by disclosing those opinions as "jointly held" in a single co-authored report, without identifying which author holds which opinions, why, and on the basis of what expertise.

Carver's damage report is issued by a firm called R.L. Banks & Associates, Inc. ("RLBA"). *See* **Exhibit A** (also at ECF 135-3). The report states that RLBA "utilized **[1]** a sub-consultant and **[2]** a senior staff member, working collaboratively, to complete this work and, specifically, co-author this Report." *Id*., ¶ 3. The co-authors are James Charles Cunningham and Ward Nicholas Marianos, Jr. Mr. Cunningham is an RLBA employee. *Id*., ¶ 6. Mr. Marianos is not, but rather a self-employed sub-consultant. *Id*., ¶ 4.

Their expertise is also different. Mr. Cunningham works in railroad finance. His expertise is described as "operations, railroad costing and economics, joint facilities, as well as service planning and financial analysis." **Exhibit A**, ¶ 7. Mr. Marionas is a bridge engineer. His expertise is described as "rehabilitation, design and construction and inspection" of bridges. *Id*., ¶ 5.

The RLBA report nonetheless presents all conclusions as "RLBA's opinion," across multiple subject areas, without identifying which author formed which opinions, what facts or data each considered, what methodology each applied, or what expertise was brought to bear.

The Belt Line challenged all opinions in the report, both on depreciation and on the remaining cost items. With respect to the latter, the Belt Line cited not only the insufficiency of the report, but specifically the fact that it was jointly authored with no attribution of work product or opinions. The Magistrate Judge nevertheless concluded it was sufficient under the Rules:

> "Finally, the Court is not persuaded that Rule 26(a)(2)(B) has been violated simply because Carver disclosed the opinions as jointly held by both experts rather than attributing them to each expert individually. Because Carver contends that both experts in fact hold each opinion, disclosing the opinions jointly sufficiently apprises Belt Line under the Rule."

ECF 175, p. 8.

Respectfully, that conclusion is contrary to law. Rule 26(a)(2)(B) requires a report prepared and signed by the witness stating the opinions he will express and the facts or data he considered. Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). While joint reports are not prohibited, courts have consistently held that such reports fail under Rule 26(a)(2)(B) when they do not "reveal the division of labor between the . . . experts" or "how they reached their separate opinions." *MS Amlin Marine NV v. Delta Marine Indus. Inc.*, 348 F.R.D. 658, 677 (W.D. Wash. 2025). The Belt Line is entitled to that information in the disclosure itself and need not "independently investigate and ferret out" what Carver was required to provide. *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006).

## Legal Authority

When a magistrate judge decides a non-dispositive pretrial matter, a party may "serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). The district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ackerson v. Rector & Visitors of the Univ. of Va.*, No. 3:17-cv-00011, 2018 U.S. Dist. LEXIS 105132, at *2 (W.D. Va. June 22, 2018). This objection is timely.

## Argument

Rule 26(a)(2)(B) is built around proper disclosure of what each expert will say at trial and why. The RLBA damages report, however, speaks in a single voice and presents conclusions only as "RLBA's opinion," while disclosing no division of labor and no attribution of opinions, facts considered, or methodology to either co-author. The Magistrate Judge's conclusion that Carver's joint disclosure "sufficiently apprises" the Belt Line of who will say what and why at trial effectively treats the two experts as interchangeable. Rule 26 does not permit that approach.

**I.    The Magistrate Judge's ruling is contrary to law because the co-authored RLBA Report does not attribute opinions to a particular witness.**

Rule 26(a)(2)(B) demands witness-specific disclosure. That requirement matters most where, as here, the proponent offers a single co-authored report from two different people who are not even similarly employed (Mr. Cunningham is an RLBA employee and Mr. Marianos is a self-employed sub-consultant). *See* **Exhibit A**, ¶¶ 4, 6. The report does not identify which author formed which opinions, what facts or data each considered, or what reasoning each applied. Instead, it spans distinct subject areas and states conclusions in a single voice, variously invoking "economic," "engineering," and "railroad operations" certainty. And because Carver proposes to offer the report's remaining damages-reduction opinions through either Mr. Marianos or Mr. Cunningham (or both), the absence of attribution is consequential, not merely formal. It prevents the Belt Line from evaluating, opinion by opinion, whether the testifying witness is the person who actually formed the opinion and whether that opinion is grounded in that witness's qualifications, methodology, and supporting data. That is precisely what Rule 26(a)(2)(B) requires and what the co-authored report does not supply.

    **a.    Rule 26(a)(2)(B) requires witness-specific disclosure of opinions.**

Rule 26(a)(2)(B) requires a retained expert's report to include "a complete statement of all opinions the witness will express and the basis and reasons for them," and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii). Courts apply that requirement to ensure disclosures are "detailed and complete," so the opposing party can prepare for cross-examination and rebuttal without surprise. *Sharpe v. United States*, 230 F.R.D. 452, 458 (E.D. Va. 2005). The Fourth Circuit likewise holds that a party is "plainly entitled" to the Rule 26 information and has no duty to supply it by investigation that the disclosure should have made unnecessary. *Carr*, 453 F.3d at 605.

4

While Rule 26 does not render co-authored expert reports per se impermissible, courts have consistently held that joint reports fail when they do not "reveal the division of labor between the . . . experts" or "how they reached their separate opinions." *MS Amlin Marine NV*, 348 F.R.D. at 677; *see also Homesite Ins. Co. v. Norcold, Inc.*, 2025 U.S. Dist. LEXIS 1671, at *6–7 (D. Nev. 2025); *Late v. United States*, 2016 U.S. Dist. LEXIS 188179, at *2 (M.D. Pa. 2016); *Adams v. United States*, 2011 U.S. Dist. LEXIS 63775, at *12–13 (D. Idaho 2011); *Univ. of Fla. Research Found., Inc. v. Motorola Mobility LLC*, 2013 U.S. Dist. LEXIS 201302, at *26 (S.D. Fla. 2013).

As explained below, Carver's disclosure does not meet those standards. Carver disclosed a single co-authored report that does not identify which author offers which opinions, which author considered which facts or data, and which author applied which methodology. This omission is a defect, not a stylistic choice, and it forces the guesswork *Carr* rejects. *See Carr*, 453 F.3d at 605; *see also Schmitt-Doss v. Am. Regent, Inc.*, 2014 U.S. Dist. LEXIS 107505 (W.D. Va. 2014).

### b. Carver's report fails to satisfy Rule 26(a)(2)(B).

The portions of Carver's report that remain after ECF 175 relate only to ¶¶ 63-67, purporting to challenge specific costs in the Belt Line's damages claim. In particular, beginning at ¶ 63, the R.L. Banks experts claim that the Belt Line (1) failed to account for an alleged $41,897 credit for scrap steel when assessing repair costs, and (2) applied inappropriate labor charges in calculating costs. *See* **Exhibit A**, ¶¶ 63-77.  Neither opinion is properly disclosed, and the RLBA report contains no indication of which expert holds which opinion or on what basis of expertise.

*Scrap Steel Credit*

The scrap steel opinion is particularly flawed. The difficulty of challenging it, especially without attribution, is that it is not based on any expertise. It is based on assumptions, both as to value and quantity. "RLBA" (whichever expert that is) first assumes the scrap value itself: "RLBA assumes, for the purposes of calculating a scrap steel value, that the damaged steel being replaced

5

had the same/similar scrap value to that of the replacement steel installed." **Exhibit A**, ¶ 65. RLBA then also assumes the quantity: "*Some* of that steel was *likely* scrap while *some* of it *may have been* useable for other purposes." *Id.*, ¶ 67 (emphasis added).

As a consequence of these dual assumptions, the whole opinion is simply incorrect. Most obviously, the Belt Line's credit for scrap steel was only $1,467, not $41,897. *See* 135-5 (Belt Line Invoice 5524004-014), p. 2. Even worse for RLBA, the credit was actually applied. *Id.* As the Belt Line's expert witness, Kevin M. Lugo, P.E., explained in rebuttal, the RLBA experts ignored lead abatement and disposal: "[T]he scrap steel net value after lead abatement and handling was approximately $2,000. PCL confirmed that it credited that amount to [the Belt Line]." ECF 135-6 (Lugo Rebuttal Report), p. 2. The invoice from PCL confirms as much:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ACCESS TRESSTLE | $ 17,717.40 | $ 17,717.40 | $ 0.01 | $ 0.01 | $ 0.02 | $ | - |
| PERMANENT MATERIALS | $ 1,172,827.89 | $ 1,237,861.73 | $ - | $ - | $ - | $ | 65,033.84 |
| CREDIT FOR STEEL SCRAP | $ - | $ (1,467.04) | $ - | $ - | $ - | $ | (1,467.04) |
| SUBTRADE | $ 4,065,614.21 | $ 4,132,020.69 | $ - | $ - | $ - | $ | 66,406.48 |
| STS | $ 507,373.97 | $ 642,389.29 | $ - | $ - | $ - | $ | 135,015.32 |
| FOG | $ - | $ - | $ - | $ - | $ - | $ | - |
| TRAVEL EXPENSE | $ 403,923.75 | $ 392,791.26 | $ - | $ - | $ - | $ | (11,132.49) |
| MATERIAL MARKUP 15% | $ 312,618.85 | $ 340,736.29 | $ - | $ - | $ - | $ | 28,117.44 |

ECF 135-5, p. 2.

The point here, of course, is that the Belt Line does not even know which expert made the error. In other words, the opinion is defective both as a matter of fact (because it is based on flawed assumptions) and as a matter of law (because Carver fails to disclose who holds it and why).

*Labor Charges*

The "labor charges" opinion is similarly deficient. *See* **Exhibit A**, ¶¶ 20, 70. As a matter of law, "[t]he cost of repairs performed internally by [an] injured party, ***including overhead***, are recoverable in a negligence action." *Freeport Sulphur Co. v. The S/S Hermosa*, 526 F.2d 300, 302 (5th Cir. 1976) (emphasis added); *see also Baltimore & O. R. Co. v. Commercial Transport, Inc.*, 273 F.2d 447, 449 (7th Cir. 1960) ("The reasonable cost of the repairs made by plaintiff by its own

6

employees is not limited to the dollar amount actually paid to the workman and material suppliers. Such a limitation would ignore the facts of business life.").

RLBA nonetheless identifies three categories of labor charges that the experts say the Belt Line misapplied: (1) additive rates for employee overhead, (2) yardmaster wages, and (3) train and engine employee pay. **Exhibit A**, ¶¶ 68-77. But which expert holds which of these opinions, why, and on what basis of expertise is undisclosed. *Id*.

With respect to additive rates, the expert(s) again *assume* that such costs "are incurred by the Belt Line whether the [allision] occurred or not and are not appropriate in the context of a damages claim." **Exhibit A**, ¶ 70. Why they say this is unknown. Evidence shows that the costs relate to work coded specifically to this project for employees that would not necessarily have worked otherwise. *See* ECF 135-7 (Cannon Moss Dep.) at 179:17-181:20; ECF 135-6 (Lugo Rebuttal Report), p. 3. The work was self-performed by the Belt Line to avoid the time and higher cost of procuring a contractor.[3] And the additive rates are the same rates used by the Belt Line with the Commonwealth of Virginia and approved for other railroads, including the entire Norfolk Southern system. *Id*.

As to yardmaster pay, the expert(s) concede that "[p]erhaps some of a yardmaster's time would be spent coordinating with NS and CSX under the temporary arrangement to move trains

---

[3] For context, the Belt Line accomplished the primary repair work through highly qualified engineers at Hardesty & Hanover and railroad bridge contractors at PCL Civil Constructors. It was able to access existing contracts between those companies and Norfolk Southern, with pre-negotiated non-emergency rates. This alone saved a fortune versus emergency pricing. It also mitigated economic losses by avoiding a lengthy procurement. The Belt Line also performed a small portion of the repair work with its own forces, like construction of an access road to the site. For these costs, the Belt Line charged time plus an overhead rate depending on the trades involved. The additive overhead rates are standardized and regularly used on transportation projects. *See* ECF 135-7 (Cannon Moss Dep.) at 179:17-181:20; ECF 135-6 (Lugo Rebuttal Report), p. 3.

around the disabled [Bridge.]" **Exhibit A**, ¶ 75. Yet they go on to deduct the yardmaster's pay in its entirety anyway, without explanation or justification. *Id*. Which of them did this is undisclosed.

Finally, in discussing train and engine employee pay, the expert(s) claim that $4,774 of the charges were the result of "management decisions that should not be included in damages claims." **Exhibit A**, ¶ 74. However, the charges to which the expert(s) refer, such as "No 1st meal," "No 2nd Meal," and "Vacation," stem from decisions driven by union contracts, which the experts never analyzed. *See* ECF 135-7 (Cannon Moss Dep.) at 187:18-189:6. Again, which of them holds this unfounded opinion and on what basis of expertise is unknown.

For all these reasons, the remaining cost opinions after ECF 175 cannot be evaluated in the manner Rule 26 requires because the report never identifies which expert formed each opinion, what facts or data each considered, what expertise was brought to bear, or the basis and reasoning each applied. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)–(ii); *Sharpe v. United States*, 230 F.R.D. 452; *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006). And the defect is not harmless under Rule 37(c)(1). The prejudice is that the report's lack of attribution impairs Belt Line's ability to raise focused admissibility challenges and to prepare cross-examination directed to the witness who will actually offer each opinion at trial. *See* Fed. R. Evid. 702–703; Fed. R. Civ. P. 37(c)(1).

## II. Fourth Circuit authority confirms strict enforcement of Rule 26(a)(2)(B) and supports exclusion under Rule 37(c)(1).

The Fourth Circuit has held that parties are entitled to Rule 26(a)(2)(B) disclosures and are not required to "ferret out" what the proponent must disclose. *Carr*, 453 F.3d at 605. district courts have discretion to enforce those obligations through Rule 37(c)(1). *Saudi*, 427 F.3d at 278. Under Rule 37(c)(1), the default consequence of failing to provide Rule 26(a) information is exclusion unless the failure is substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). Here, Carver's disclosure is neither complete nor harmless because the report does not attribute the opinions.

8

## Conclusion

For the foregoing reasons, the Belt Line respectfully requests that the Court (1) uphold all portions of the Magistrate Judge's Order related to Carver's inability to argue or present evidence of depreciation; (2) sustain this objection and modify the portion of the Order challenged herein to hold that Carver's co-authored RLBA report does not comply with Rule 26(a)(2)(B); and (3) exclude Messrs. Cunningham and Marianos entirely from offering any opinions at trial.

Dated: February 20, 2026

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY

By: */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Andrea' N. Dunlap, VSB No. 98030
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
adunlap@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt Line Railroad Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of February 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

      James Morrissey
      4723 Baywood Drive
      Lynnhaven, FL 32444

      By:    */s/ James L. Chapman, IV*
      James L. Chapman, IV, VSB No. 21983
      CRENSHAW, WARE & MARTIN, P.L.C.
      150 W. Main Street, Suite 1923
      Norfolk, Virginia 23510
      Telephone: (757) 623-3000
      Facsimile: (757) 623-5735
      jchapman@cwm-law.com
      *Counsel for Norfolk and Portsmouth Belt Line Railroad Company*