IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No: 2:24-cv-00490-MDS-LRL |

**CARVER'S RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE LEONARD'S FEBRUARY 6, 2026 ORDER EXCLUDING EXPERT OPINION NO. 4 AND EVIDENCE FROM SAM STEPHENSON, J.D.**

Petitioner, Coeymans Marine Towing LLC d/b/a Carver Marine Towing ("Carver"), by counsel, pursuant to Federal Rule of Civil Procedure 72(a) and E.D. Va. Loc. Civ. R. 72, respectfully objects to Magistrate Judge Leonard's Order dated February 6, 2026, which excluded expert opinion and evidence from Sam Stephenson, J.D. at Trial (ECF No. 174), as follows:

**INTRODUCTION**

Carver's objection to the Magistrate Judge's Order centers around two (2) issues.

First, the failure to weigh the totality of the evidence that the experiential expert, Sam Stephenson – Senior State Harbor Pilot, First Class Federal Pilot, retired Commander of the United States Naval Reserve, United States Coast Guard Licensed Master Mariner, Master of Science in Marine Management and Lawyer – ("Captain Stephenson") reviewed and considered to render his opinions.

Second, the basis that because only one part of the totality of evidence the expert considered and referenced in his report was found statutorily inadmissible,[1] then his complete opinion No. 4 (*infra*) suffered the same fate.

Respectfully, Magistrate Judge Leonard's Order is clearly erroneous and contrary to the law and should be vacated or set aside, and this Court should admit opinion No. 4 of Captain Stephenson at trial for the following reasons:

**FACTUAL AND PROCEDURAL BACKGROUND**

This is an admiralty limitation of liability action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug MACKENZIE ROSE (the "Vessel") allided with the Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line")'s Main Line Bridge. Carver, as the owner and operator of the Vessel, filed for limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30505 *et seq*.

At the time of the incident, the tug was operated by Captain James Morrissey, a Coast Guard licensed Master, who was serving as the Mate ("Mate Morrisey"). All other four (4) crew members, including Captain Christopher Miller, who is now deceased, were below deck. Thus, Mate Morrissey was the sole crew member in the pilothouse and the only witness to the event. His initial story that the vessel's steering system malfunctioned, was eventually changed to conceding that it was his own error in failing to properly disengage the autopilot when he switched to hand steering. He also failed to put the engines full astern prior to striking the bridge. This is evidenced

---

[1] Carver is respectfully objecting to Magistrate Judge Leonard's February 6, 2026 Order Precluding the USCG-2692 Forms (ECF No. 169) pursuant to Rule 72(2) of the Fed. R. Civ. P. and E.D. Va. Loc. Civ. R. 72 under separate filing. For sake of completeness and to avoid waiving the issue, the arguments in respect of same are partially duplicated here as reference to USCG CG-2692 Forms are part of the Order excluding the opinion of Captain Stephenson (ECF No. 174). However, out of respect for the Court such duplication has been limited to the maximum extent.

in certain relevant pieces of documents that were contemporaneously recorded and are part of Carver's records. Evidence includes, inter alia, the digital logbook and vessel management system HelmConnect, SMS Text Messages after the incident, and Carver's records produced to the United States Coast Guard ("USCG") in the format of forms CG-2692.

Captain Stephenson, "[w]ithin the bounds of reasonable operational maritime certainty" opined:

1. The Mackenzie Rose was properly manned, the crew was licensed by the US Coast Guard, and in compliance with work/rest requirements of six hours on/six hours off.

2. The watch officer acting as look-out was appropriate under the prevailing conditions.

3. Autopilot is not prohibited for use while transiting a waterway with bridges.

4. The evidence clearly establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false. ("Opinion No. 4")

5. Mate Morrissey failed to engage the switch from Auto to NFU when he thought he did. This failure by Mate Morrissey and his lack of situational awareness was the sole cause of the allision.

(ECF No. 124-2 at 35) (emphasis added).

On September 23, 2025, Belt Line filed its *Second Motion in Limine* ("Belt Line's Second MIL") to exclude expert opinion and evidence of Sam Stephenson, J.D. (ECF No. 123-124). Particularly, Belt Line's Second MIL sought to exclude Captain Stephenson's opinion No. 4 due to it (i) being an inadmissible opinion on credibility, which is for the Jury of Finder of Fact; and (ii) because it relied upon, read from or quoted statutorily inadmissible evidence. Part of the evidence Captain Stephenson relied upon was Carver's record produced to the USCG in the CG-2692 Form; form which itself was part of Belt Line's First MIL. (ECF No. 114-115; *see also* n.1

above). Carver filed its memorandum in opposition to Belt Line's Second MIL (ECF No. 147) and Belt Line filed its reply (ECF No. 151). Magistrate Judge Leonard issued an order dated February 6, 2026, concluding "[b]ecause Stephenson's fourth opinion necessarily depends on both an impermissible credibility determination and materials he is barred from considering, it is neither reliable nor helpful to the trier of fact and must be excluded under Rule 702." (ECF No. 174) As such, Magistrate Judge Leonard granted Belt Line's Second Motion *in Limine* to exclude opinion No. 4 of Captain Stephenson at Trial.

## LEGAL STANDARD

The District Judge must consider timely objections to a Magistrate Judge on non-dispositive matters and modify or set aside any part of the order that is clearly erroneous or is contrary to the law. 28 U.S.C. § 636(b)(1)(A); *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 756 (E.D. Va. 2014). "A court's finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted). 'Clearly erroneous' and 'contrary to law' are not synonymous. *HSBC Bank USA, Nat. Ass'n v. Resh,* No. 3:12–CV–00668, 2014 WL 317820, at *7 (S.D.W.Va. Jan. 28, 2014). For questions of law 'there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a] de novo standard.' (quoting *Robinson v. Quicken Loans Inc.,* No. 3:12–cv–0981, 2013 WL 1704839, at *3 (S.D.W.Va. Apr. 19, 2013))." *Id*.

"In the context of Rule 72(a), this 'contrary to law' standard is equivalent to *de novo* review. [*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).] (holding that review of a question of law 'is plenary under the 'contrary to law' branch of the Rule 72(a) standard' and

that therefore, '[f]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and ... [a] de novo standard" (citations omitted)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (holding that while "[t]he district court is bound by the clearly erroneous rule in findings of facts[,] the phrase 'contrary to law' indicates plenary review as to matters of law"); *Bruce*, 21 F. Supp. 3d at 594; *HSBC Bank USA, Nat'l Ass'n*, 2014 WL 317820, at *7; 12 Charles Allen Wright, et al., Federal Practice and Procedure § 3069 (2d ed. 2017) (noting that "[r]egarding legal issues, the language 'contrary to law' appears to invite plenary review"). *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017).

A legal conclusion is contrary to law "when the magistrate fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ambrose-Frazier v. Herzing Inc.*, No. 15-1324, 2016 WL 890406, at *2 (E.D. La. 3/9/2016).

Carver respectfully alleges Magistrate Leonard's February 6, 2026 Order excluding the expert opinion and evidence from Captain Stephenson is clearly erroneous and contrary to law. This Court should grant Carver's Rule 72(a) Objections to and admit Captain Stephenson opinion No. 4 without conditions.

## ARGUMENT

### I. Captain Stephenson Did Not Rely On The Coast Guard's "Investigation" Or "Witness Transcripts" But Carver's Records and Deposition Transcripts.

Magistrate Judge Leonard's February 6, 2026 Order states in forming his opinions Captain Stephenson relied on Coast Guard investigation—including CG-2692 Forms or witness interview transcripts—which pursuant to for 46 U.S.C. § 6308 is inadmissible, and as such cannot be used as a basis for expert opinions in this case. (ECF No. 174 at 8). The Magistrate Judge does include a footnote in respect of said ruling to state "By its ruling, the Court does not hold that Stephenson

may not offer opinions directly based on the facts. For instance, although Stephenson may not opine that Mate Morrissey's initial statement was "patently false," he may be permitted to opine whether the facts support the conclusion that the tug veered "hard over," so long as that opinion is not based on Coast Guard investigative materials. (*Id*. at n. 6)

There are several issues with this part of the Order that need to be addressed both factual and legal pursuant to the standard for review under Rule 72(a) objections, as follows:

### A. Factual Issues Presented in the Order

Carver understands and agrees with the Magistrate Judge that in the instance his February 6, 2026 Order excluding Captain Stephenson's Opinion No. 4 is sustained, Captain Stephenson is indeed able to offer opinions directly on the facts and evidence. However, the Magistrate's example in the quoted footnote denotes the errors in the Order, as Captain Stephenson is proffering the opposite: the conclusion that the tug did *not* go "hard over" and that the allision was solely due to the navigational error of Mate Morrisey as evidenced in his review, consideration and experience of the evidence. (*see e.g.,* ECF No. 124-2 at 29-31)

### B. CG-26 Forms are outside the scope of 46 U.S.C. § 6308

Despite the fact that Carver's CG-2692 forms are on a USCG format – which is presumably used for standardization and organization purposes by the USCG to *initiate* its investigation and produce its report – the forms are indeed Carver's own records produced by Carver *to* the USCG, and are not Coast Guard reports.

Courts are divided as to whether section 6308(a) should be interpreted narrowly or broadly. Magistrate Judge Leonard by Order at ECF No. 169 takes the broad position and refers to that Order in passing to exclude Captain Stephenson's Opinion No. 4 by stating "[m]oreover, the Court has already ruled, pursuant to 46 U.S.C. § 6308 and the related motion in limine, that no portion

of the Coast Guard's investigation—including CG-2692 Forms or witness interview transcripts—may be relied upon or used as a basis for expert opinions in this case." (ECF No. 174 at 8) This is clearly erroneous and contrary to the law.

      **a. Contrary to Law Standard**

A legal conclusion is contrary to law "when the magistrate fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ambrose-Frazier v. Herzing Inc.*, No. 15-1324, 2016 WL 890406, at *2 (E.D. La. 3/9/2016).

Carver, consistent with the undisturbed admiralty cases, agrees that the USCG's *report* and *investigation materials*, i.e., the work of the USCG cannot be used in civil litigation.

The Magistrate's broad stance (see ECF No. 169 at 6), is based on the analysis in *In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liab.*, 444 F. Supp. 2d 347, 363 (D. Md. 2006), which in a footnote, discusses the Coast Guard's *report* to ultimately find it inadmissible. Particularly, the *Eternity* Court discusses the *report* and in the same breath recognizes and cites law to the contrary stating the statute only seeks to exclude "conclusory items" as follows:

> First, the statute expressly states that "no part of a report" is admissible. Although the statute specifies that findings of fact, opinions, and conclusions are inadmissible, that list is not exclusive. *See Falconer v. Penn Maritime, Inc.*, 397 F.Supp.2d 68, 70 (D.Me.2005) (noting that "the language of the statute is clear and must control" and that "the list of specifically excluded contents is 'illustrative and not conclusive,' " and finding that the statute renders all contents of a Coast Guard report, including notes and Coast Guard photos, inadmissible (internal citations omitted)); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, 2004 WL 859199, at *1 (E.D.La. Apr.20, 2004) ("Certainly, the Coast Guard report or any portion is inadmissible as a general rule." (emphasis added)); **but see In re Danos & Curole Marine Contractors, Inc., 278 F.Supp.2d 783, 785 (E.D.La.2003) (concluding that statute seeks to exclude only "conclusory items").** Whether or not the transcript mentions the findings of fact,

>opinions, or conclusions reached by the Coast Guard, it is inadmissible. Second, **during the interview of Graham, the Coast Guard investigator shared with Graham (i) things that he had noticed during his own inspection of the cranes, and (ii) some of his thoughts regarding the cause of the accident.** (See generally Docket No. 112, Ex. J.) The transcript, therefore, contains facts and opinions, which the statute explicitly seeks to exclude.    (Emphasis added).

The Eternity Court was not analyzing the admissibility of CG-2692 forms. That case is distinguishable here. *Eternity* correctly excluded actual investigations, thoughts, photographs, and conclusory items by the USCG's investigator.

The case on point here is *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1244 (S.D. Fla. 2012), which correctly distinguishes the case law relied upon by Belt Line and cited in the Magistrate at ECF 169. *Guest* centers on the particular issue: "[t]he issue boils down to this: what is the scope of 46 U.S.C. § 6308? And, more specifically, whether that statute allows this Defendant to withhold the documents or other materials that *it produced to the Coast Guard* in furtherance of the Coast Guard's investigation." (emphasis original) *Guest* held that documents or other materials that Defendant produced to the Coast Guard for its investigation were not within the scope of § 6308(a), as that section does not extend to the litigant's own documents. *Id.*

### b. Clearly Erroneous Standard

A court's finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted).

The Magistrate Judge as part of his analysis not only includes CG-2692 Forms, addressed above, but also witness interview transcripts. "The Court finds that Stephenson's challenged opinion (Opinion #4) is inadmissible. In forming his opinion, Stephenson both improperly assesses

Mate Morrissey's credibility and impermissibly relies on Coast Guard investigative materials, including the CG-2692 Forms and witness transcripts." (ECF No. 174 at 7) However, the only witness interview Captain Stephenson relied upon, as noted in his report at pp. 9-11 (ECF 124-2) were deposition transcripts of the crewmembers and witness interviews of Carver's employees Baldassare and Moore.

Stephenson's report was issued on June 8, 2025. (ECF No. 124) The United States Coast Guard joint investigation interviews with the National Transportation Safety Board ("NTSB") did not release their interviews to the crew, in response to Carver's FOIA request, until at least September 26, 2025. (*See* NTSB Docket including "public release date" marked Exhibit "A") As such, Stephenson could have not relied on United States Coast Guard witness interview transcripts.

## II.     Captain Stephenson's Opinion No. 4 Is Based on Extensive Evidence

For his report, and to form his opinions, including Opinion No. 4, Captain Stephenson reviewed and considered over seventy-five (75) evidentiary items including *inter alia*, documents, videos, pictures, Carver's records, Vessel's records, drawings, deposition transcripts, etc. (*see* ECF no. 124-2 at 9-11)

While Carver agrees that, as a matter of law, credibility determinations are reserved for the fact finder; an experiential expert, as is the case here, "basing testimony upon [ ] personal experience, [must] employ[ ] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, (1999)

"While a district court's task in examining the reliability of experiential expert testimony is therefore somewhat more opaque, the district court must nonetheless require an experiential witness to 'explain how [his] experience leads to the conclusion reached, why [his] experience is

a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) (citation and quotation omitted).

Furthermore, under Rule 702 Fed. R. Evid. "**A witness who is qualified as an expert by** knowledge, skill, **experience**, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. (emphasis added)

Courts have gone as far as holding that experts with extensive experience are qualified to give expert testimony based on deciphering language and testify to the *true* meaning of conversations. *See Wilson*, 484 F.3d at 275 (discussing how law enforcement officers with extensive drug experience are routinely allowed by courts of appeals to "decipher" the codes the drug dealers use and testify to the true meaning of the conversations, given the attempts of drug dealers to disguise the content of their discussions.)

Here, while, again Captain Stephenson characterization of Mate Morrisey's original statement as "false" is permissible as a matter of law; it is also correct that based on his extensive experience and review of over seventy (70) pieces of evidence – even excluding any piece of evidence that refers to the USCG investigation – Captain Stephenson could infer based on his experience and the findings on the evidence that Mate Morrisey's initial statement could not be

relied upon. Captain Stephenson's Opinion No. 4 is reliably sustained on sufficient evidence and on his interpretation of the cause of the allision. In reaching his opinion Captain Stephenson reliably inferred his findings on the evidence and in contrast to Mate Morrisey's initial statement Therefore, all things considered, Captain Stephenson's Opinion No. 4 is based on reliable principles and methods and reliably applied to the facts of the case. As such, Captain Stephenson's Opinion No. 4 should be admitted.

Finally, as stated in *Wilson* (citing Fed. R. Evid. 702 advisory committee notes) "So long as the principles and methods are reliable *and applied reliably* to the facts of the case, this type of testimony should be admitted." *Wilson*, 484 F.3d at 276

Respectfully, the Magistrate Judge's analysis is clearly erroneous and contrary to law for the above reasons.

## CONCLUSION

For the foregoing reasons, Carver respectfully objects to the Magistrate Judge Order dated February 6, 2026 granting Belt Line's Second Motion *in Limine* (ECF 174) and, respectfully requests that the District Judge vacate the order, rule that Captain Stephenson's Opinion No. 4 is admissible without conditions, or, alternatively, vacate the order and reserve ruling on the issue until after the close of evidence.

Respectfully submitted,

Dated: February 20, 2026                                **CLYDE & CO US LLP**

By: /s/ *Matthew J. Obiala*
Matthew J. Obiala (VSB No, 100626)
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Tel: 312-635-7000
Email: matt.obiala@clydeco.us;

James H. Rodgers\*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman\*
Dawn L. Johnson
Siobhan M. Murphy\*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
       dawn.johnson@clydeco.us
       Siobhan.murphy@clydeco.us

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2026, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
 mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

*/s/ Matthew J. Obiala*