**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty**

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No: 2:24-cv-00490-MDS-LRL |

**CARVER'S RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE LEONARD'S
FEBRUARY 6, 2026 ORDER PRECLUDING USCG-2692 FORMS**

Petitioner, Coeymans Marine Towing LLC d/b/a Carver Marine Towing ("Carver"), by counsel, pursuant to Federal Rule of Civil Procedure 72(a) and E.D. Va. Loc. Civ. R. 72, respectfully objects to Magistrate Judge Leonard's Order dated February 6, 2026, which precluded Coast Guard CG-2692 Forms at Trial (ECF No. 169), as follows:

**INTRODUCTION**

The central issue here is whether 46 U.S.C. § 6308(a) should be broadly or narrowly interpreted to include statements that are *not* part of the United States Coast Guard's work.

Respectfully, Magistrate Judge Leonard's interpretation of § 6308(a), partially relying on the Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line")'s broad assertions, which purposefully seek to broaden the scope of the statute by including not only reference to the CG-2692 forms but to United States Coast Guard's "Investigative Materials," is contrary to the law.

Section 6308 lists the information that is barred in legal proceedings. Relevant and at issue here is section 6308(a), which provides:

(a) Notwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence

> or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a). Except for a broad interpretation, nowhere in the statute is there reference to the type of information that was provided by Carver, and as such Carver's own records/business records of the company.

Form CG-2692 in its Disclosure Statement contemplates the possibility of reporting failures by credentials mariners, i.e., the very issue Carver respectfully alleges here: Mate Morrisey's correction of his initial statement to note the allision occurred due to his navigational error.

Carver is not attempting to introduce Coast Guard "investigative materials." The USCG's findings of fact, opinions, recommendations, deliberations and/or conclusions are not offered as evidence by Carver. In fact, to date, Carver is not privy to same. Carver is only offering as evidence CG-2692 Forms which do not form part of the USCG's report but are its own records. As such, the difference between Carver's CG-2692 forms and, for example, allision-contemporaneous emails or texts messages produced during discovery, is the format. The former is on a United States Coast Guard ("USCG") form, which form is used as notice for, and organization of, the USCG to initiate its investigation and produce its report.

Finally, given that this is a bench trial. There is no prejudice to the parties if the forms are admitted into evidence.

This Court should grant Carver's Rule 72(a) Objections to Magistrate Leonard's February 6, 2026 Order and admit Carver-produced forms CG-2692 at trial for the following reasons:

**FACTUAL AND PROCEDURAL BACKGROUND**

This is an admiralty limitation of liability action arising from an allision that occurred on June 15, 2024, when a barge being pushed by the tug MACKENZIE ROSE (the "Vessel") allided

with the Belt Line's Main Line Bridge. Carver, as the owner and operator of the Vessel filed for limitation of liability under the Limitation of Liability Act, 46 U.S.C. §§ 30505 *et seq*.

At the time of the incident, the tug was operated by Captain James Morrissey, a Coast Guard licensed Master, who was serving as the Mate ("Mate Morrisey"). All other four (4) crew members, including Captain Christopher Miller, who is now deceased, were below deck. Thus, Mate Morrissey was the sole crew member in the pilothouse and the only witness to the event. His initial story that the vessel's steering system malfunctioned, was eventually changed to conceding that it was his own error in failing to properly disengage the autopilot when he switched to hand steering. He also failed to put the engines full astern prior to striking the bridge. This is evidenced in Carver's CG-2692 forms subject of Belt Line's First Motion *in Limine* ("Belt Line First MIL") wherein Belt Line sought to preclude any evidence of or reference to *Coast Gurd investigative materials*, specifically Coast Guard marine casualty report forms. (ECF Nos. 114-115)

Carver filed memorandum in opposition to Belt Line's First MIL (ECF No. 139) and Belt Line filed its reply (ECF No. 141). Magistrate Judge Leonard issued order dated February 6, 2026, concluding "that no portion of the Coast Guard's investigation of the allision—including the CG-2692 Forms and witness interview transcripts—may be introduced as evidenced, referenced or relied upon by expert opinions in this case." (ECF No. 169) As such, Magistrate Judge Leonard granted Belt Line's First Motion *in Limine* to preclude Coast Guard Investigative Materials and CG-2692 Forms at Trial.

## LEGAL STANDARD

The District Judge must consider timely objections to a Magistrate Judge on non-dispositive matters and modify or set aside any part of the order that is clearly erroneous or is contrary to the law. 28 U.S.C. § 636(b)(1)(A); *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d

752, 756 (E.D. Va. 2014). "A court's finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bruce v. Hartford*, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotation marks omitted). "'Clearly erroneous' and 'contrary to law' are not synonymous. *HSBC Bank USA, Nat. Ass'n v. Resh,* No. 3:12–CV–00668, 2014 WL 317820, at *7 (S.D.W.Va. Jan. 28, 2014). For questions of law 'there is no practical difference between review under Rule 72(a)'s contrary to law standard and [a] de novo standard.' (quoting *Robinson v. Quicken Loans Inc.,* No. 3:12–cv–0981, 2013 WL 1704839, at *3 (S.D.W.Va. Apr. 19, 2013))." *Id*.

"In the context of Rule 72(a), this 'contrary to law' standard is equivalent to *de novo* review. [*PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).] (holding that review of a question of law 'is plenary under the 'contrary to law' branch of the Rule 72(a) standard' and that therefore, '[f]or questions of law, there is no practical difference between review under Rule 72(a)'s 'contrary to law' standard and ... [a] de novo standard" (citations omitted)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (holding that while "[t]he district court is bound by the clearly erroneous rule in findings of facts[,] the phrase 'contrary to law' indicates plenary review as to matters of law"); *Bruce*, 21 F. Supp. 3d at 594; *HSBC Bank USA, Nat'l Ass'n*, 2014 WL 317820, at *7; 12 Charles Allen Wright, et al., Federal Practice and Procedure § 3069 (2d ed. 2017) (noting that "[r]egarding legal issues, the language 'contrary to law' appears to invite plenary review"). *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2017 WL 2210520, at *2 (W.D. Va. May 19, 2017).

A legal conclusion is contrary to law "when the magistrate fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ambrose-Frazier v. Herzing Inc.*, No. 15-1324, 2016 WL 890406, at *2 (E.D. La. 3/9/2016).

Carver respectfully alleges Magistrate Leonard's February 6, 2026 Order is contrary to the law. This Court should grant Carver's Rule 72(a) Objections to Magistrate Leonard's February 6, 2026 Order and admit Carver-produced forms CG-2692 at trial.

## ARGUMENT

I.  **Carver Does Not Seek To Introduce Coast Guard "Investigative Materials" Or Is Relying On "Materials Generated During Such Investigations" But Its Own Records.**

Magistrate Judge Leonard's February 6, 2026 Order acknowledges Courts are divided as to whether section 6308(a) should be interpreted narrowly or broadly, and adopts a broad interpretation of section 6308(a) stating he believes it is consistent with the purpose of the statute. Further, Judge Leonard states "[t]he Code of Federal Regulations emphasizes that the statute is designed to encourage a full, accurate investigation, and that the prospect of civil liability attaching would impede the search for truth in the investigative process" and cites to 46 C.F.R. § 4.07-1(b) "The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting safety of life and property at sea, and are not intended to fix civil or criminal responsibility." As such, Magistrate Judge Leonard considers that reliance on these materials "generated during such investigations in civil litigations would encourage self-serving characterization of events at the investigative stage." (ECF No. 169, at 6)

However, this interpretation is contrary to the law. Carver's CG-2692 forms are outside of the scope of section 6308(a). Despite the fact that Carver's CG-2692 forms are on a USCG format – which is presumably used for standardization and organization purposes by the USCG to *initiate*

its investigation and produce its report – the forms are indeed Carver's own records produced by Carver *to* the USCG, and are not Coast Guard reports.

Magistrate Judge Leonard's analysis of the cases that discuss the broad vs. narrow interpretation of section 6308(a) focuses on the USCG's *report* and *investigation materials*. Carver, consistent with the undisturbed admiralty cases, agrees that the USCG's *report* and *investigation materials*, i.e., the work of the USCG, cannot be used in civil litigation.

However, in analyzing the Magistrate's broad stance, one must query: where is the line drawn for such broad interpretation? Expanding the concept of USCG's *report* and *investigation materials* to Carver's own records just because these are on a USCG format would equate to, for example, the Court precluding Belt Line from offering into evidence the "2024-06-17 Voicemail from USCG Lt. Palomba" (*see* Exhibit B, 5 to Final Pre Trial Order, ECF No. 178 at 26), or any reference to "CG," "coast guard" or "interview statement to CG" in the text messages (see *Id*. at 21, J53) because these could be interpreted under a broad view as to refer to the so-called "investigation materials." Under that broad and extensive reading, must this Court, therefore, sustain any objection at trial that refers to USCG? That is not the spirit of the statute.

The above is precisely the reason why *Guest v. Carnival Corp.*, 917 F. Supp. 2d 1242, 1244 (S.D. Fla. 2012) is on point and distinguishes the case law relied upon by Belt Line and cited in the Order. *Guest* centers on the particular issue: "[t]he issue boils down to this: what is the scope of 46 U.S.C. § 6308? And, more specifically, whether that statute allows this Defendant to withhold the documents or other materials that *it produced to the Coast Guard* in furtherance of the Coast Guard's investigation. (emphasis original) *Guest* held that documents or other materials that Defendant produced to the Coast Guard for its investigation were not within the scope of § 6308(a), as that section does not extend to the litigant's own documents. *Id.*

The cases alleged by Belt Line and relied upon by the Magistrate Judge do not address the central issue above. For example, *In re Complaint of Cozy Cove Marine, Inc.* affirms the point that Carver's own business record is not a "report of marine casualty" under § 6308. In *Cozy Cove*, the Court addressed an unopposed motion *in limine* to "exclude a Coast Guard accident report of the incident" because it had "reason to believe that at least one of the estates intends to rely on the Report to support its case." *In re Cozy Cove Marina, Inc.*, 521 F. Supp. 2d 504, 507 (E.D.N.C. 2007). In granting the unopposed motion, the Court noted that statutory language explicitly precludes using the "report of marine casualty" authored by the Coast Guard which was precisely the Report one party may have intended to offer into evidence. That is not the situation before this Court. Carver is not attempting to offer the "report of marine casualty investigation" and, indeed, the Coast Guard has not even finalized such Report for the incident at issue.

The same is the case with *In re Eternity Shipping, Ltd., Eurocarriers, S.A. for Exoneration from or Limitation of Liab.*, 444 F. Supp. 2d 347, 363 (D. Md. 2006), relied upon by the Magistrate, which in a footnote, discusses the Coast Guard's *report* to ultimately find it inadmissible. Particularly, the *Eternity* Court discusses the *report* and in the same breath recognizes and cites law to the contrary stating the statute only seeks to exclude "conclusory items" as follows:

> First, the statute expressly states that "no part of a report" is admissible. Although the statute specifies that findings of fact, opinions, and conclusions are inadmissible, that list is not exclusive. *See Falconer v. Penn Maritime, Inc.*, 397 F.Supp.2d 68, 70 (D.Me.2005) (noting that "the language of the statute is clear and must control" and that "the list of specifically excluded contents is 'illustrative and not conclusive,'" and finding that the statute renders all contents of a Coast Guard report, including notes and Coast Guard photos, inadmissible (internal citations omitted)); *Baker Hughes Oilfield Operations, Inc. v. Seabulk Tankers, Inc.*, 2004 WL 859199, at *1 (E.D.La. Apr.20, 2004) ("Certainly, the Coast Guard report or any portion is inadmissible as a general rule." (emphasis added)); **but see In re Danos & Curole Marine Contractors, Inc., 278 F.Supp.2d 783, 785 (E.D.La.2003) (concluding that statute**

> **seeks to exclude only "conclusory items").** Whether or not the transcript mentions the findings of fact, opinions, or conclusions reached by the Coast Guard, it is inadmissible. Second, **during the interview of Graham, the Coast Guard investigator shared with Graham (i) things that he had noticed during his own inspection of the cranes, and (ii) some of his thoughts regarding the cause of the accident.** (See generally Docket No. 112, Ex. J.) The transcript, therefore, contains facts and opinions, which the statute explicitly seeks to exclude.   (Emphasis added).

The Eternity Court was not analyzing the admissibility of CG-2692 forms. That case is distinguishable here. *Eternity* correctly excluded actual investigations, thoughts, photographs, and conclusory items by the USCG's investigator. *Guest,* specifically analyzing the litigant's own records, controls here and as such the February 6, 2026 Order is contrary to the law, and this Court should grant Carver's Rule 72(a) objection.

## II.     The Privacy Act Notice On The CG-2692 Forms Cannot Expand The Statute.

The Privacy Act Notice on page 3 of CG-2692 is, at the most, partially citing the statute. However, there are two issues against this broad reading of the Privacy Act Notice. First, as discussed above, the broad interpretation of the privacy notice expands the statute to non-Coast Guard investigative materials, like Carver's own records.

Second, regulatory forms cannot expand or otherwise rewrite statutes. While the Privacy Act Notice does state "information collected is protected from use in civil litigation per 46 U.S.C § 6308," such statement cannot be considered a categorical exclusion since a reading of the statute provides for certain relevant exceptions where even members of the Coast Guard can indeed be called as expert or fact witnesses and for the application of the Federal Rules of Civil Procedure (*see e.g.,* 46 U.S.C § 6308(b)).

The February 6, 2026 Order (ECF No. 169 should be vacated, or a ruling reserved until post-trial on a full evidentiary record.

### III. There Is No Prejudice From Admitting The CG-2692 Forms

Belt Line's assertion that precluding the CG-2692 Forms is necessary to avoid prejudice on the factfinder is misguided. This is a bench trial and there is no risk of prejudice to any of the parties for the Court to be presented with Carver's records – again, even if such records are contained in a USCG form – because the Court is uniquely capable and equipped of separating admissible factual material from any inadmissible conclusions or opinions, which eliminates the risk of undue prejudice.

Even assuming, *in arguendo*, that the CG-2692 Forms (presented for the sole purpose of underlining Mate Morrisey's recanting his initial statement to correct the record on his navigational error), could implicate section 6308's limits on the Coast Guard's investigative findings, which Carver denies, the statute does not bar the underlying facts, nor does it prevent the Court as the trier of fact from giving the CG-2692 Forms the weight they are legally entitled to and presented for.

Consequently, admission of the CG-2692 Forms presents no danger of misleading or bias to the Court because it can filter the facts from any material it decides not to credit.

### CONCLUSION

For the foregoing reasons, Carver respectfully objects to the Magistrate Judge Order dated February 6, 2026 granting Belt Line's First Motion *in Limine* (ECF 169) and, respectfully requests that the District Judge vacate the order, rule that CG-2692 Forms are admissible, or, alternatively, vacate the order and reserve ruling on the issue until after the close of evidence.

                                            Respectfully submitted,

Dated: February 20, 2026                           **CLYDE & CO US LLP**

By: /s/ *Matthew J. Obiala*
Matthew J. Obiala (VSB No, 100626)
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Tel: 312-635-7000
Email: matt.obiala@clydeco.us;

James H. Rodgers*
Clyde & Co US LLP
2 Grand Central Tower
140 E 45th Steet, Suite 26A
New York, NY 10017
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
         dawn.johnson@clydeco.us
         Siobhan.murphy@clydeco.us

## CERTIFICATE OF SERVICE

       I hereby certify that on February 20, 2026, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB #93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
 mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

                                             */s/ Matthew J. Obiala*