IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/V Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No: 2:24-cv-00490-MDS-LRL |

**CARVER'S RESPONSE TO THE BELTLINE'S RULE 72(a) OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER GRANTING PETITIONER'S MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF JOHN S. POULSON**

Petitioner Coeymans Marine Towing, LLC dba Carver Marine Towing ("Carver"), by counsel, respectfully submits this Response in Opposition to the Rule 72 Objection filed by Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line") (ECF 187), and states as follows:

**INTRODUCTION**

The Belt Line's Rule 72 Objection asks this Court to overturn the Magistrate Judge's well-reasoned Order excluding the testimony of John S. Poulson. The Magistrate Judge correctly concluded that Mr. Poulson's valuation methodology was unreliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because he failed to utilize actual sales prices—the governing legal standard for vessel fair market valuation in admiralty—despite their alleged availability.

Belt Line's objections lack merit and are disingenuous. The Magistrate Judge's finding that actual sales price information was available to Mr. Poulson is supported by the record, specifically Mr. Poulson's own deposition testimony. Belt Line's assertion that "no publicly available sales

prices of vessels comparable to the MT MACKENZIE ROSE" exist is contradicted by Mr. Poulson's sworn testimony acknowledging the existence of such resources, which he chose not to consult. The Belt Line now concedes, as Meyerrose opined, that this is a case involving a "one off" or "unique" vessel, and that another method of valuation should be used. But, problematically, Poulson did not take that position in his own opinion, and adoption of Mr. Meyerrose's position now does not cure the defects in his ow opinion.

Given that, and for the reasons set forth below, the Magistrate Judge's Order excluding Poulson's opinion is neither clearly erroneous nor contrary to law and should be affirmed in its entirety.

## ARGUMENT

### I. THE MAGISTRATE JUDGE CORRECTLY FOUND THAT MR. POULSON'S COMPARABLE SALES METHODOLOGY WAS UNRELIABLE BECAUSE HE FAILED TO USE ACTUAL SALES PRICES DESPITE THEIR ALLEGED AVAILABILITY.

**A. Mr. Poulson's Own Deposition Testimony Establishes That Actual Sales Price Information Was Available.**

The Magistrate Judge's finding that actual sales price information was available to Mr. Poulson is firmly supported by the record—specifically, Mr. Poulson's own sworn deposition testimony. When questioned about whether he knew the final sale prices for the vessels he listed in Figure 1 of his report, the following exchange occurred:

> Q. Is it fair to say on Figure 1 you don't actually know what the sale price was for any of those, is that fair to say, the final sale price that it actually sold for?
> A. Yes, that's fair to say. In the final analysis of transaction, that's an unknown.
> Q. Well, there's publications you can go to, right, to see what the final sale prices were on certain tugs or vessels?
> A. I've not gone there.
> Q. But are there publications where you can research and see what final sale prices are?

2

> A. There may be, but I'm not aware of them -- well, let me correct that. There are some, yes. There are some, yes. There is a website company I was frequently in touch with, Compass Maritime, who did publish actual sales. But again, that's to the best of their knowledge. The final details of a transaction are privy really to the buyer and the seller.

ECF 97, Exhibit 3 at 44:11–45:6 (emphasis added); ECF 187-1 at Page 44, Lines 11-25 through Page 45, Lines 1-6.

Mr. Poulson's testimony is unequivocal: Mr. Poulson acknowledged the existence of at least one resource—Compass Maritime—that published actual sales prices, a company with which he was "frequently in touch." Despite this knowledge and familiarity, he made no effort whatsoever to consult this or any other resource for actual sales data relevant to valuing the MT MACKENZIE ROSE. His response, "I've not gone there," demonstrates a deliberate choice not to seek out the very information that admiralty law requires for reliable vessel valuation.

The Magistrate Judge properly relied on this testimony in finding that "actual sales price was available to Poulson on a source which he admitted he was familiar with but did not seek out." ECF 171 at 7. This factual finding is directly supported by the record and is not clearly erroneous. The Belt Line's attempt for the first time to adopt an argument made by Carver's expert on valuation, Jason Meyerrose is both not relevant, and any attempt to raise it now has been waived.

### B. Belt Line's Objection Misstates the Record and Mr. Poulson's Testimony

The Belt Line argues that "[c]ontrary to this statement, Mr. Poulson never acknowledged that there are publicly available sales prices of vessels comparable to the MT MACKENZIE ROSE." ECF 187 at 3. This assertion is directly contradicted by the plain language of Mr. Poulson's testimony quoted above.

The Belt Line attempts to minimize Mr. Poulson's admission by noting that "the details of whatever type of sales data may have been provided in the past by Compass Marine were privy only to the buyer and seller." ECF 187 at 4. This argument fails for several reasons:

3

First, Mr. Poulson's testimony clearly establishes that Compass Maritime "did publish actual sales," not merely asking prices. The fact that transaction details are ultimately private between buyer and seller does not negate the existence of published sales information—it is precisely this published information that experts in the field reasonably rely upon for comparable sales analysis.

Second, the Belt Line's footnote observation that "Compass Maritime is a ship broker and does not offer any such service on its website" as of February 19, 2026 (ECF 187 at 4 n.2) is irrelevant. The relevant time period is when Mr. Poulson conducted his valuation in 2024-2025 and when he was deposed in August 2025. Mr. Poulson testified he "was frequently in touch with" Compass Maritime and that they "did publish actual sales"—past tense, indicating a historical relationship and service. Whether the company currently offers such services on its website today has no bearing on whether such information was available to Mr. Poulson at the relevant time.

Third, the testimony establishes that Mr. Poulson made no effort whatsoever to access sales price information. He testified: "I've not gone there." This was not a case where an expert diligently searched for comparable sales data and found none available. Rather, Mr. Poulson acknowledged that actual sales information existed but chose not to seek it out.

## II. BELT LINE FAILS TO DEMONSTRATE THAT THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS OR CONTRARY TO LAW

The Belt Line's Alternative Methodology Argument Fails Because It Does Not Cure the Fundamental Unreliability of Mr. Poulson's Comparable Sales Valuation. Specifically, the Belt Line argues that even if Mr. Poulson's comparable sales methodology is flawed, his other methodologies—replacement cost and income approach—provide independent reliable bases for his opinions. ECF 187 at 6-7. This argument fails for several reasons.

First, Mr. Poulson's expert report makes clear that his comparable sales approach was his **primary** methodology, yielding his central valuation figure of $4.0 million. ECF 187-2 at 11, ¶ 6.8. His replacement cost and income approaches were used as **confirmatory** methodologies to "support" the comparable sales value. *Id.* at ¶¶ 6.9-6.10. When the primary methodology is unreliable, confirmatory methodologies built upon it cannot rescue the opinion.

Second, the Magistrate Judge correctly noted that alternative methodologies are only appropriate "where the comparable sales methodology cannot reliably be used due to insufficient market data." ECF 171 at 6. Here, Mr. Poulson testified that he had access to market data—actual sales prices—but chose not to use it. The issue is not insufficient data; the issue is an expert's unreasonable failure to utilize available data.

Third, Federal Rule of Evidence 702 requires that expert testimony be based on "sufficient facts or data" and be "the product of reliable principles and methods." Fed. R. Evid. 702(b)-(c). When an expert's foundational methodology (comparable sales) is flawed due to his failure to use available data, his entire opinion is called into question. *See Daubert*, 509 U.S. at 592-93 (reliability determined by assessing whether the reasoning or methodology underlying the testimony is valid).

The Belt Line cites *United States Fire Ins. Co. v. Allied Towing Corp.*, 966 F.2d 820, 826 (4th Cir. 1992), for the proposition that courts may use various methodologies including replacement cost and income approaches. ECF 187 at 6-7. But *Allied Towing* does not support Belt Line's position. That case holds that alternative methodologies may be used when comparable sales data is not available. Here, the Magistrate Judge found—based on Mr. Poulson's own testimony—that comparable sales data **was** available. *Allied Towing* therefore supports the Magistrate Judge's decision, not Belt Line's objection.

## III. THE MAGISTRATE JUDGE PROPERLY EXERCISED HIS GATEKEEPING FUNCTION UNDER DAUBERT

The Supreme Court has emphasized that the trial court's gatekeeping function under *Daubert* is "a flexible inquiry" but one that is "indispensable." *Kumho Tire*, 526 U.S. at 150; *see also Sardis*, 10 F.4th at 283-84 (emphasizing that "in cases where expert testimony is challenged on relevance or reliability grounds, the district court's gatekeeping function is indispensable and cannot be overstated").

The Magistrate Judge fulfilled this gatekeeping role by carefully examining Mr. Poulson's methodology and determining that it did not satisfy the reliability requirements of Rule 702. His analysis was thorough and correct:

1. He identified the **governing legal standard** to be applied on the facts presented by Mr. Poulson: fair market value based on actual sales prices. ECF 171 at 6.

2. He examined the **expert's actual methodology**: reliance exclusively on asking prices. *Id.*

3. He reviewed the **deposition testimony** establishing that actual sales data was available but not consulted. *Id.* at 7.

4. He concluded that the expert's failure to use available actual sales data "departs from the governing legal standard" and "undermines the reliability of his opinions." *Id.*

The Magistrate Judge's analysis reflects the kind of careful gatekeeping that *Daubert* and Rule 702 require. The Magistrate Judge did not usurp the jury's role or substitute his judgment for that of the expert—he fulfilled his obligation to ensure that only reliable expert testimony is admitted.

Belt Line argues that any alleged flaws should go to weight rather than admissibility. ECF 187 at 6. But *Daubert* makes clear that the court's gatekeeping role is to exclude unreliable testimony before it reaches the jury. 509 U.S. at 597. When an expert's foundational methodology

departs from governing legal standards and ignores available relevant data, exclusion is appropriate.

## CONCLUSION

The Magistrate Judge's Order excluding Mr. Poulson's testimony was correct and should be affirmed. Mr. Poulson's own deposition testimony established that actual sales price information was available but that he chose not to seek it out. His reliance exclusively on asking prices—while ignoring available actual sales data—departs from the governing legal standard for vessel valuation and renders his opinions unreliable under Federal Rule of Evidence 702 and *Daubert*.

For the foregoing reasons, Carver respectfully requests that this Court deny Belt Line's Rule 72 Objection and affirm the Magistrate Judge's Order (ECF 171) in its entirety.

Respectfully submitted,

Dated: March 2, 2026            Respectfully submitted,

**CLYDE & CO US LLP**

/s/ *Matthew J. Obiala*
Matthew J. Obiala (VSB No. 100626)
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
T: (312) 635-7000
E: Matt.Obiala@clydeco.us

Michael J. Roman*
Dawn L. Johnson
Siobhan M. Murphy*
Clyde & Co US LLP
30 South Wacker Drive, Suite 2600
Chicago, IL 60606
Phone: (312) 635-7000
Email: michael.roman@clydeco.us
dawn.johnson@clydeco.us
Siobhan.murphy@clydeco.us
*pro hac vice

James H. Rodgers*
Clyde & Co US LLP
45 Lexington Avenue, 16th Floor
New York, NY 10174
Phone: (212) 702-6771
Email: james.rodgers@clydeco.us

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, a true and correct copy of the foregoing document was filed using the Court's CM/ECF system, which will serve all counsel of record by electronic mail as follows:

Mark C. Nanavati, Esq. (VSB No.: 38709)
G. Christopher Jones, Jr., Esq. (VSB No.: 82260)
SINNOT, NUCKOLS & LOGAN, P.C.
13811 Village Mill Drive
Midlothian, Virginia 23114
(804) 893-3866 (Nanavati)
(804) 893-3862 (Jones)
(804) 378-2610 (Facsimile)
mnanavati@snllaw.com
cjones@snllaw.com
*Counsel for Evanston Insurance Company a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

Zachary M. Jett, Esq. (VSB No.: 93285)
BUTLER WEIHMULLER KATZ, et al
11525 North Community House Road
 Suite 300
Charlotte, North Carolina 28277
(704) 543-2321 (Telephone)
(704) 543-2324 (Facsimile)
zjett@butler.legal
*Counsel for Evanston Insurance Company, a/s/o Norfolk and Portsmouth Belt Line Railroad Company*

James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
 mpensyl@cwm-law.com
*Attorneys for Norfolk and Portsmouth Belt Line Railroad Company*

                                */s/ Matthew J. Obiala*

10