FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S OPPOSITION TO CARVER'S RULE 72 OBJECTION TO THE MAGISTRATE JUDGE'S ORDER (ECF 175) PRECLUDING EFFORTS TO DEPRECIATE THE BELT LINE'S REPAIR COSTS**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, for its Opposition to the Rule 72 Objection filed by Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") (ECF 185) to the Magistrate Judge's Order at ECF 175, states as follows:

**Introduction**

In opinions that the Magistrate Judge correctly excluded, Carver's dual experts, W. N. Marianos and Charlie Cunningham, opine that the Belt Line's $15,922,877 in damages should be depreciated to $2,972,767.[1] To achieve this massive deduction, they treat the situation analytically as a replacement of the entire Bridge, not a repair to one section. Decades of case law and public policy contradict that approach, as it would leave the Belt Line in a substantially worse position than before the allision ever happened. The Magistrate Judge correctly excluded such efforts, and nothing in Carver's Objection offers a reason to alter or overrule that holding.

---

[1] The Belt Line filed a Limited Rule 72 Objection (ECF 188) to the Magistrate Judge's ruling with respect to certain non-depreciation opinions by Messrs. Marianos and Cunningham on grounds that their backgrounds and expertise are entirely different, yet their combined report fails to distinguish who holds what opinions and on what basis as required by Rule 26(a)(2)(B). The same reasoning applies to their "joint" opinion on depreciation.

1

The rule in admiralty when assessing damages after an allision is to make the injured party whole. *See Hewlett v. Barge Btie*, 418 F.2d 654, 657 (4th Cir. 1969). To reduce recoverable repair costs in a situation where the injured party did not materially benefit from the repairs would leave the injured party in a worse position than prior to the allision. *See Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973). Thus, where repairs have not materially improved an injured party's position, the injured party is entitled to recover the full cost of the repairs. *See Oregon State Highway Com. v. Tug Go-Getter*, 468 F.2d 1270, 1274 (9th Cir. 1972).

There is no plausible argument that the Belt Line is in a better condition now than it was before the allision. All testimony shows that the repairs to the Bridge were performed on integral parts of primarily one span and did not improve the Bridge's value or useful life. As explained in the Belt Line's Motion in Limine (ECF 134 & 135), the lead engineer on the repair project testified that, if anything, the Bridge is in a *worse* condition now because it could not be perfectly realigned. *See* ECF 135 at 9-10. Carver's experts ignore the case law, offer no analysis of integral components or actual betterment, and invent a "suggested service life" to conclude that the Bridge was near collapse at the time of the allision, contrary to reality and the requirements of Rule 702.

For all these reasons, the Magistrate Judge correctly held that the Belt Line's repair costs cannot be depreciated and that any related testimony is inadmissible.[2]

## **Standard of Review**

Where a Magistrate Judge issues an order under Rule 72(a), a party may serve and file with the clerk of court an objection to the order within 14 days of being served with a copy. *See* Fed. R. Civ. P. 72(a). The United States District Judge shall "modify or set aside any part of the order that

---

[2] While the Magistrate Judge's analysis in ECF 175 is sufficient to overcome the flaws in Carver's Objection, the Belt Line incorporates its Motion in Limine and Memorandum regarding depreciation as if fully set forth herein. *See* ECF 134 & 135.

is clearly erroneous or is contrary to law." *Id*. A finding is "clearly erroneous" only "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Subpoena for Documents Issued to Peninsula Pathology Assocs.*, 2023 U.S. Dist. LEXIS 171595 at *2 (E.D. Va. 2023). "A ruling is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Id*. at 2 (internal citations omitted).

## Argument

**I.      The Magistrate Judge's Order is not dispositive of Carver's claim or defense.**

As a threshold matter, Carver argues that, because "[t]he practical effect of the [Magistrate Judge's] Order is to remove from the case an entire defense theory[,]" the Order is dispositive and should be reviewed *de novo* under Rule 72(b) instead of Rule 72(a). ECF 185 at 3. To the contrary, the fact that a Magistrate Judge's Order substantially affects a party's ability to present its case does not, in itself, make an Order dispositive. *See Jesselson v. Outlet Assoc. of Williamsburg, Ltd. Partnership*, 764 F. Supp. 1223, 1228 (E.D. Va. 1991). In *Jesselson*, for example, this Court held that a ruling on a Motion in Limine that sought exclusion of certain evidence was not dispositive of a plaintiff's case. *Id*. As the Court explained:

> It is true that, as in this case, the exclusion of certain evidence can substantially effect a party's ability to present its case. ***The 'dispositive' nature of plaintiffs' case is simply a function of the case itself. It only appears dispositive because plaintiffs do not have any additional admissible evidence to present***. [P]laintiffs have based their case on evidence that the Magistrate Judge found inadmissible and now, according to their own statements, have no evidence by which to prove their case and cannot expect to prevail. ***This does not mean, however, that Plaintiffs are barred from continuing with the action***.

*Id.* (emphasis added).

Carver's defenses are no different. Carver does not contend (although it could have) that it has no further defenses to the Belt Line's damages claim. Instead, Carver hopes to obtain *de*

3

*novo* review here, arguing that the Magistrate Judge's ruling is dispositive, while simultaneously retaining other potential defenses that necessarily make the ruling non-dispositive. Like in *Jesselson*, the Magistrate Judge's Order bars specific evidence that this Court has properly deemed inadmissible; it does not end Carver's case. *See* ECF 175. As shown below, however, the holding is correct regardless of whether Rule 72(a) or (b) applies.

**II.     The Magistrate Judge's Order correctly follows the law.**

Carver argues that the Order is contrary to law because the Magistrate Judge misapplied the standard in *B.P Exploration & Oil, Inc. v. Moran Mid-Atlantic Corp. See* ECF 185, pp. 4-5; *see also* 147 F. Supp. 2d 333 (Dist. N.J. 2001). There, the court held that, where repairs are made to an integral part of a structure and do not enhance the structure's overall value, the proper measure of damages is cost of repairs. *Id.* at 341. Carver argues that, while the Magistrate Judge considered whether the repairs to the Bridge would extend its useful life, he failed to consider whether they enhanced the Bridge's value. *See* ECF 185 at 5. This is plainly incorrect.

The Magistrate Judge's Order considers both the Bridge's useful life and value, finding that neither consideration permits depreciation here because the repairs were confined to primarily Span 4 (the span that Carver hit), which "cannot be treated as a stand-alone property whose repair enhanced the [entire] bridge's value." ECF 175 at 5. As the Magistrate Judge explained:

> The Court does not find persuasive the argument that depreciation should apply. Here, the damage caused by the allision was confined to Span 4, which, although a discrete segment, is an integral part of the bridge and cannot be treated as stand-alone property whose repair enhanced the bridge's value. The bridge has no value if Span 4 remains unrepaired, as it is unusable. The repair of that span was therefore necessary to restore the bridge to its pre-allision condition rather than to improve or upgrade it.

*Id.* (emphasis added).

This holding is entirely consistent with *B.P. Exploration*. It is also consistent with holdings from other courts across the country. *See, e.g., J.W. Paxson Co. v. Bd. of Chosen Freeholders*, 201 F. 656, 664 (3d Cir. 1912); *Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973); *Oregon State Highway Com.*, 468 F.2d at 1274; *BP Exploration & Oil, Inc.*, 147 F. Supp. 2d at 341.

In *J.W. Paxson Co. v. Board of Chosen Freeholders*, for example, the Third Circuit held that, where a drawbridge owner was forced to incur the cost of a new, potentially more valuable bridge after its bridge was struck by a negligent tug, the owner was entitled to recover its full replacement costs. 201 F. 656, 664 (3d Cir. 1912). The court found that, because the old bridge had sufficed for the purposes of the owner, and the owner did not need a new bridge, "the [owner] was damaged by being compelled to procure a new structure in place of the old one, for the contract price of which it was obliged to pay." *Id.* at 663. The court concluded that it was immaterial whether the new bridge was potentially more valuable than the old. *Id.*

Similarly, in *Petition of M/V Elaine Jones*, the Fifth Circuit held that, where a bridge had a remaining useful life of an indefinite number of years, repair costs following an allision were not to be reduced for depreciation. 480 F.2d at 27. The court reasoned that, because "the repairs neither enhanced the value nor extended the life of [the bridge], reduction of recoverable repair costs by depreciation previously taken would leave [the injured party] in a significantly worse economic position than before the accident." *Id.* Thus, only the full repair cost would sufficiently make the injured party whole. *Id*.

And in *Oregon State Highway Commission v. Tug Go-Getter*, the Ninth Circuit likewise held that, where the bow of a barge struck the pier of a bridge, replacement of the pier could not be depreciated because it was integral to the bridge. The court found that:

> [I]t is of no significance that the pier could be separately repaired or even replaced (so could a single wall of a building). The repair or replacement adds nothing of

5

substance to the over-all value of the structure of which it is an integral part and *the life expectancy of the entire structure has not been extended*.

468 F.2d at 1274; *see also Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 506 (5th Cir. 1994) (finding that, where pipeline replaced after an allision was a small part of a much larger pipeline system, there should be no reduction for depreciation). As such, the court concluded that the bridge owner was entitled to recover its full repair costs.

The Magistrate Judge's Order properly follows and applies this law, and Carver's Objection should be overruled.

**III.    Even if the Court were to apply a *de novo* standard of review, the Belt Line's repair costs still cannot be depreciated.**

Even if *de novo* review applied, which it does not, the Magistrate Judge is still correct. The rule in admiralty when assessing damages after an allision is to make the injured party whole. *See Hewlett v. Barge Birtie*, 418 F.2d 654, 657 (4th Cir. 1969). To reduce recoverable repair costs in a situation where the injured party did not materially benefit from the repairs would leave the injured party in a worse position than prior to the allision. *See Petition of M/V Elaine Jones*, 480 F.2d 11, 27 (5th Cir. 1973).

Carver argues that its depreciation defense "turns on fact-bound predicates," but the Magistrate Judge already considered them. For example, newer grade standard steel was used only because it was far *less expensive* than ordering old grades of steel that would need to be custom created because they are not in production anymore. *See* ECF 135 at 8-9. This is an issue of the Belt Line's contractors properly mitigating damages, not a basis for depreciation. *Id*. The Belt Line's Motion in Limine cited the testimony on this point, which Carver has never contested.

Carver also cannot dispute that repairs to the Bridge were made to integral components of primarily one section. *See* ECF 135 at 4-10. Howard Swanson, the Chief Engineer of Rail and

Transit at Hardesty & Hanover, the firm responsible for the repair design, testified that the repairs to the Bridge were integral to its structure:

```
13 Q. ... And those drawings coupled
14 with Exhibit 3, the emergency inspection
15 report, showed the components that would be
16 repaired or replaced as part of your design?
17 A. Yes, sir.
18 Q. To your knowledge were any of those
19 components that were part of your repair design
20 supposed to be imminently replaced anyway?
21 A. None of them to our knowledge would
22 have been imminently replaced.
23      Q.   And were all of the components for
24  the repair in your design drawings integral to
25  the bridge structure?
1       A.   Yes, except for that motor brake that
2  we've talked about, the M drawings, that was
3  not put on.
4       Q.   Correct.  To your knowledge the motor
5  brake has not been replaced?
6       A.   Right.
```

ECF 135-1.[3] This is the only fact testimony on point, and Carver does not offer other evidence. Of the entire Bridge structure, Span 4 is just one of eight spans:



For the reasons in all the cases cited above, repair of a single section does not increase the value or life expectancy of an entire bridge. *See supra*. As the court explained in *B.P. Exploration*, "[i]f the remaining segments of each pipeline give way, it will be of no consequence that one segment of the line was replaced more recently." 47 F. Supp. 2d at 341. The court continued,

---

[3]   The motor break that "was not put on" is not part of the Belt Line's damages claim.

7

"[W]hen the entire pipeline is eventually replaced, it is unlikely that these pieces of pipes would be left for replacement even further in the future and, if that were the course of action, any savings would be *de minimis*." *Id*. The court therefore declined to reduce the damages for depreciation, just like the Magistrate Judge correctly did here.

Because the repairs to the Bridge were made to integral components of only one section and did not improve the Bridge's value or useful life, the Belt Line's repair costs cannot be depreciated. Any other outcome would leave the Belt Line considerably worse off than before the allision through no fault of its own.

## Conclusion

WHEREFORE, the Belt Line respectfully requests that this Court overrule Carver's Objection to the Magistrate Judge's Order at ECF 175 and grant the Belt Line all other just relief.

Dated: March 2, 2026

NORFOLK AND PORTSMOUTH BELT
LINE RAILROAD COMPANY

By: */s/ James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
W. Ryan Snow, VSB No. 47423
Mackenzie R. Pensyl, VSB No. 100012
CRENSHAW, WARE & MARTIN, P.L.C.
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com
wrsnow@cwm-law.com
mpensyl@cwm-law.com
*Counsel for Norfolk and Portsmouth Belt
Line Railroad Company*

## CERTIFICATE OF SERVICE

      I hereby certify that on this 2nd day of March 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

      James Morrissey
      4723 Baywood Drive
      Lynnhaven, FL 32444

      By: */s/ James L. Chapman, IV*
      James L. Chapman, IV, VSB No. 21983
      CRENSHAW, WARE & MARTIN, P.L.C.
      150 W. Main Street, Suite 1923
      Norfolk, Virginia 23510
      Telephone: (757) 623-3000
      Facsimile: (757) 623-5735
      jchapman@cwm-law.com
      *Counsel for Norfolk and Portsmouth Belt Line Railroad Company*