IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

| | |
|---|---|
| In the Matter of COEYMANS MARINE TOWING, LLC D/B/A CARVER MARINE TOWING as Owner and Operator of M/T Mackenzie Rose, (IMO No. 8968765), *et al*. | Civil Action No. 2:24-cv-00490-MSD-LRL |

**NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY'S OPPOSITION TO CARVER'S RULE 72 OBJECTION TO TWO RULINGS IN THE FINAL PRETRIAL ORDER (ECF 178)**

Norfolk and Portsmouth Belt Line Railroad Company ("Belt Line"), by counsel, for its Opposition to the Rule 72 Objections (ECF 192 & 193) filed by Coeymans Marine Towing, LLC d/b/a Carver Marine Towing ("Carver") to two rulings in the Final Pretrial Order (ECF 178), states as follows:

**Introduction**

Carver objects to two rulings on exhibits by the Magistrate Judge. The first excludes a proposed Carver exhibit. *See* ECF 178 at 35 (unspecified VDRPT documents). The second overrules Carver's objection to a joint exhibit. *See* ECF 178 at 49 (Belt Line's damages spreadsheet). Neither is clearly erroneous or contrary to law.

In ECF 192, Carver objects to the Magistrate Judge's ruling sustaining the Belt Line's objection to Carver's proposed Exhibit 115. Exhibit 115 identified "Documents received in response to subpoena issued to Virginia Department of Rail & Public Transportation," with no bates numbers because Carver had not produced any documents. The Magistrate Judge sustained the Belt Line's objection because the documents (i) were not disclosed, (ii) lacked specificity, and (iii) even as generically described, would be inadmissible under the collateral source rule.

| 115 | Documents received in response to subpoena issued to Virginia Department of Rail & Public Transportation | DPRT FOIA 0001- et seq | This disclosure is unclear; the Belt Line has not received such documents. | Sustained<br>Collateral source rule<br>Relevance<br>Never disclosed |

*See* ECF 178 at 35.

In ECF 193, Carver objects to the Magistrate Judge's ruling overruling Carver's objection to the Belt Line's damages spreadsheet at Joint Exhibit 73. Joint Exhibit 73 is an Excel spreadsheet that summarizes the Belt Line's damages with supporting tabs. *See* pdf copy at **Exhibit A**. It was originally listed as both Belt Line Exhibit 105 and Carver Exhibit 110. The Magistrate Judge overruled Carver's objection because (i) Carver identified the same exhibit, and (ii) the exhibit is admissible both as direct evidence of damages and as a summary under FRE 1006.

| 105 | 2025-09-03 Damages Spreadsheet with Tabs | NPBL008221 Excel Spreadsheet with Tabs | (1) Foundation FRE 901<br>(2) Hearsay<br>(3) Relevancy 401/402<br>(4) Untimely FRCP 37 / 26 | J73 | Overruled |

| 110 | Belt Line's Costs Spreadsheet | | No objection provided this refers to the most updated version of the cost spreadsheet in the Belt Line's exhibit list. |

*See* ECF 178 at 49 (top; Magistrate Judge's ruling) and 45 (bottom; Carver's Exhibit List).

## Standard of Review

Where a Magistrate Judge issues an order under Rule 72(a), a party may serve and file objections within fourteen (14) days after being served. Fed. R. Civ. P. 72(a). The District Judge may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. A finding is "clearly erroneous" only when, despite supporting evidence, the reviewing court is left with the "definite and firm conviction that a mistake has been committed." *In re Subpoena for Documents Issued to Peninsula Pathology Assocs.*, 2023 U.S. Dist. LEXIS 171595, at *2 (E.D. Va. 2023) (citations omitted). A ruling is "contrary to law" when it fails to apply, or misapplies, relevant statutes, case law, or procedural rules. *Id.* Carver meets neither standard.

2

**Argument**

**I.    The Magistrate Judge correctly excluded Carver's undisclosed VDRPT documents.**

On December 19, 2025, nearly 5 months after the discovery cutoff and without copying the Belt Line, Carver submitted a Freedom of Information Act request to VDRPT (identified in Carver's exhibit list as a "subpoena") seeking information related to grant money awarded to the Belt Line over several years. The Belt Line first learned of Carver's intent to use the documents when Carver included a reference to them at Exhibit 115 in its Rule 26(a)(3) pretrial disclosures on January 27, 2026. Carver did not produce the documents that day or even by the Final Pretrial Conference on February 12, 2026.[1] The Belt Line objected. *See* ECF 178 at 35.

Carver apparently listed the documents to show that the Belt Line was forced to repurpose some of its grant money for this repair project. At the Final Pretrial Conference, Carver argued that it should be entitled to a "credit" for whatever grant money the Belt Line had to use.[2] As the Magistrate Judge noted, this is a classic collateral source argument that on its face makes the evidence inadmissible. *See, e.g.,* ECF 194 at 6-7 (Summ. Judgmt. Op. explaining collateral source rule); *Rayfield v. Lawrence*, 253 F.2d 209, 213 (4th Cir. 1958) ("It is well settled in most jurisdictions including Virginia where this accident occurred, that an injured person may recover in full from a wrongdoer regardless of any compensation he may receive from a collateral source."); *Yost v. Am. Overseas Marine Corp.*, 798 F. Supp. 313, 319 (E.D. Va. 1992) ("[U]nder the collateral source rule a payment from a source independent of, or unrelated to, the tortfeasor

---

[1]    On February 26, 2026, two weeks after the Final Pretrial Conference, Carver produced the VDRPT documents by Dropbox. They contain 7,334 pages and 404 native documents including images and spreadsheets. *See* **Exhibit B** (transmittal email and native file properties).

[2]    As a practical matter, Carver's argument ignores that the grant money the Belt Line had to repurpose for this emergency repair was then unavailable for other purposes.

3

does not reduce his liability to the injured party even if the result is to afford the injured party double compensation.").

The Magistrate Judge also noted that the documents had never been disclosed to the Belt Line or the Court as required by the Scheduling Order. *See* ECF 32 at 3 ("With the exception of rebuttal or impeachment, any information required by Rule 26(a)(3) not timely disclosed, delivered, and incorporated in the proposed final pretrial order shall result in the exclusion of the witnesses, depositions, and exhibits which are the subject of such default."). The Magistrate Judge therefore sustained the Belt Line's objection to Carver's proposed Exhibit 115.

On February 26, 2026, Carver filed its Rule 72(a) objection to the Magistrate Judge's ruling on two grounds: (1) that the VDRPT documents are relevant to the date on which prejudgment interest should run, and (2) that the Belt Line is not prejudiced because most of the documents are its own. *See* ECF 192. Importantly, Carver does not contest the collateral source rule or deny that it failed to disclose the documents until a week ago. *Id*. Neither objection was raised with the Magistrate Judge and neither has any merit.

The first is legally incorrect. Use of grant money does not impact prejudgment interest. The collateral source rule prevents consideration of grant money for any purpose that would affect or diminish the Belt Line's damages. *See supra*. As well, in admiralty cases, the date money was spent for repairs has no bearing on when prejudgment interest begins to run: "prejudgment interest on repair costs runs from the date of the accident even though the owner does not pay these costs until some later date." *Ryan Walsh Stevedoring Co. v. James Marine Servs., Inc.*, 792 F.2d 489, 493 (5th Cir. 1986); *see also Norfolk & Portsmouth Belt Line R.R. Co. v. M/V Marlin*, 2009 U.S. Dist. LEXIS 104327 at *43 (E.D. Va. 2009) ("prejudgment interest is typically awarded from the date of the loss," regardless of when costs were incurred) (quoting *Indep. Bulk Transp., Inc. v.*

4

*Vessel Morania Abaco*, 676 F.2d 23, 25 (2d Cir. 1982)); *Wilkerson v. Ingalls Shipbuilding, Inc.*, 125 F.3d 904, 907 (5th Cir. 1997) ("[A]dmiralty courts generally have awarded prejudgment interest accruing from the time the damage was incurred."); *Complaint of M/V Vulcan*, 553 F.2d 489, 490 (5th Cir. 1977) ("[I]n admiralty cases the award of prejudgment interest from the date of loss is the rule rather than the exception."); *City of Chi. v. M/V Morgan*, 248 F. Supp. 2d 759, 779 (N.D. Ill. 2003) ("Prejudgment interest on a monetary award for an admiralty tort is calculated from the allision date to the judgment date."); *Ark. River Co. v. United States*, 947 F. Supp. 941, 953 (N.D. Miss. 1996) ("[P]rejudgment interest accru[es] from the date of the allision.").

Carver's second argument is equally flawed. Even if some or all the documents came from the Belt Line's own grant applications, this does not indicate that they were somehow discoverable in this case or that the Belt Line should have anticipated Carver's exhibit. Nor does the origin of the documents explain Carver's failure to disclose them or identify them with specificity in its Rule 26(a)(3) disclosure as required by the Scheduling Order. *See* ECF 32 at 3.

A final point that falls squarely within the Magistrate Judge's ruling, which Carver ignores, is that burdening the Court and opposing counsel on the eve of trial with the production of over 7,000 pages and 400 documents is unworkable. Given the limited time left before trial and the many required preparations, counsel for the Belt Line has not reviewed the documents Carver just produced. They create an unnecessary distraction in the orderly handling of this litigation as prescribed in the Court's Scheduling Order. It was precisely for this reason and the collateral source rule that the Magistrate Judge correctly held them inadmissible.

**II.  The Magistrate Judge correctly overruled Carver's objection to the Belt Line's damages spreadsheet.**

The Magistrate Judge also correctly overruled Carver's objection to the Belt Line's damages spreadsheet. *See* ECF 178 at 49. Carver raises two belated objections now: (1) that two

5

of the invoices in the spreadsheet were purportedly untimely, and (2) that certain "additive rates" for the Belt Line's self-performed work are improper. As above, neither was raised at the Final Pretrial Conference. The first is simply wrong. The second is a repackaging of the same erroneous arguments made by Carver's experts, not a basis for excluding the exhibit. *See, e.g.*, ECF 188 at 6-7 (Belt Line's limited objection to exclude dual opinions for violation of Rule 26(a)(2)(B)).

As Carver correctly notes, the purpose of the spreadsheet is twofold. First, it contains a summary page showing topline costs from various sources (vendors, contractors, etc.) with a total sum of $15,922,877. This is admissible under FRE 1006. Second, it includes tabs to support direct costs incurred by the Belt Line for self-performed work (like construction of an access road and rerouting trains), with hours worked from electronic records coded specifically to the bridge repair project for specific employees, specific hourly rates, and specific additive overhead rates by trade or materials. This is admissible as direct evidence of the Belt Line's damages.

The Magistrate Judge overruled Carver's objection at the outset because Carver listed the spreadsheet as its own exhibit. *See* ECF 178 at 45 (Carver Exhibit 110); *see also* ECF 178 at 45 (overruling all objections to joint exhibits). This alone should end the objection here. Yet Carver also *does not contest* that the spreadsheet is admissible. *See* ECF 193 at 2-3. Carver contests only particular line items in the spreadsheet, seeking to exclude them now instead of addressing them through cross-examination at trial. *Id*. No basis exists to do so.

The two invoices that Carver challenges were received by the Belt Line from PCL Civil Constructors (#5524004-014 for $274,285.60), the construction company that repaired the bridge, and Wesco (#193469 for $3,488.00), an electrical vendor. Both are related to the project and, as above, Carver *does not dispute this*. Carver's only objection is that they came after the close of discovery, but Carver never sought relief as a result, even with the continued trial date. Consistent

6

with Rule 26(e), the Belt Line forwarded invoices as it received them and updated the spreadsheet accordingly. *See* Fed. R. Civ. P. 26(e) (duty to supplement). This is not nefarious or sanctionable conduct; it is merely the product of a case proceeding in litigation while repairs are ongoing.

The additive rates to which Carver objects are likewise proper. They reflect overhead costs that would otherwise be lost if not included. They are standardized at established rates and, as Carver concedes, have been used with VDRPT in Virginia and throughout the Norfolk Southern system as approved by the Georgia Department of Transportation. *See* ECF 193 at 3 (Carver Obj. attaching Moss Dep. 180:1-185:25). The amounts are recoverable as a matter of law, so there is no basis to exclude them from the exhibit. *See Freeport Sulphur Co. v. The S/S Hermosa*, 526 F.2d 300, 302 (5th Cir. 1976) ("The cost of repairs performed internally by [an] injured party, *including overhead*, are recoverable in a negligence action."); *Baltimore & O. R. Co. v. Comm. Transport, Inc.*, 273 F.2d 447, 449 (7th Cir. 1960) ("The reasonable cost of the repairs made by plaintiff by its own employees is not limited to the dollar amount actually paid to the workman and material suppliers. Such a limitation would ignore the facts of business life.").

Carver is incorrect that the costs would have been incurred anyway. *See* ECF 193 at 5 (arguing that that the "Belt Line did not hire any extra crews to reroute trains but, rather, its crews simply worked more hours rerouting trains during the repair work."). The costs relate to work and time coded specifically to this project for employees that would not necessarily have worked otherwise. *See* Moss Dep. 179:17-181:20 (**Exhibit C**); Kevin Lugo, P.E., Rebuttal Report, p. 3 (**Exhibit D**). If such costs could not be recovered, injured parties would be incentivized to outsource every aspect of a repair, even if some items could be achieved at considerable savings with internal forces. *See Freeport*, 526 F.2d at 302; *Baltimore & O. R. Co.*, 273 F.2d at 449.

7

For all these reasons, the Magistrate correctly overruled Carver's objection to Joint Exhibit 73 (Belt Exhibit 105 and Carver Exhibit 110), and Carver fails to show any error.

## Conclusion

WHEREFORE, the Belt Line respectfully requests that this Court overrule Carver's Objections (ECF 192 &193) and grant the Belt Line all other just relief.

Dated: March 6, 2026                              NORFOLK AND PORTSMOUTH BELT
                                                  LINE RAILROAD COMPANY


                                                  By: /s/ W. Ryan Snow
                                                  James L. Chapman, IV, VSB No. 21983
                                                  W. Ryan Snow, VSB No. 47423
                                                  Mackenzie R. Pensyl, VSB No. 100012
                                                  CRENSHAW, WARE & MARTIN, P.L.C.
                                                  150 W. Main Street, Suite 1923
                                                  Norfolk, Virginia 23510
                                                  Telephone: (757) 623-3000
                                                  Facsimile: (757) 623-5735
                                                  jchapman@cwm-law.com
                                                  wrsnow@cwm-law.com
                                                  mpensyl@cwm-law.com
                                                  *Counsel for Norfolk and Portsmouth Belt
                                                  Line Railroad Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 6th day of March 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all registered counsel of record, and mailed to:

      James Morrissey
      4723 Baywood Drive
      Lynnhaven, FL 32444

      By: */s/ W. Ryan Snow*
      W. Ryan Snow, VSB No. 47423
      CRENSHAW, WARE & MARTIN, P.L.C.
      150 W. Main Street, Suite 1923
      Norfolk, Virginia 23510
      Telephone: (757) 623-3000
      Facsimile: (757) 623-5735
      jchapman@cwm-law.com
      *Counsel for Norfolk and Portsmouth Belt Line Railroad Company*