UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In the Matter of COEYMANS
MARINE TOWING, LLC, d/b/a
CARVER MARINE TOWING AS OWNER                    Civil No. 2:24cv490
AND OPERATOR OF M/T MACKENZIE
ROSE (IMO No. 8968765), etc.

## OPINION AND ORDER

This matter is before the Court upon the objections of Claimant Norfolk and Portsmouth Belt Line Railroad Company ("the Belt Line") and Petitioner Coeymans Marine Towing, LLC, d/b/a Carver Marine Towing ("Carver") to various pretrial rulings by the Magistrate Judge. See Fed. R. Civ. P. 72(a).

The Belt Line objects to the Magistrate Judge's orders excluding (A) testimony and opinions of the Belt Line's expert witness on vessel valuation, John S. Poulson, ECF Nos. 171, 187, and declining to exclude (B) opinions that Carver disclosed as jointly held by certain of its experts, ECF Nos. 175, 188.

Meanwhile, Carver objects to the Magistrate Judge's orders excluding (A) the testimony and opinions of Carver's expert witness on vessel valuation, Jason R. Meyerrose, ECF Nos. 172, 186; (B) evidence of depreciation of damages, ECF Nos. 175, 185; (C) materials related to the U.S. Coast Guard's marine casualty investigation, ECF Nos. 169, 190; and (D) one of the opinions of Carver's marine operations expert, Sam Stephenson, ECF Nos. 174,

189.[1]  The Belt Line and Carver each filed responses in opposition to the other's objections.  ECF Nos. 195, 198-202.

Because the parties' contentions are adequately presented in their filings, a hearing is unnecessary.  Fed. R. Civ. P. 78; Local Civ. R. 7(J).  For the following reasons, the Belt Line's objections, ECF Nos. 187-88, are **OVERRULED**; Carver's objections at ECF Nos. 186 and 189 are **OVERRULED**; Carver's objection at ECF No. 185 is **OVERRULED in part** and **SUSTAINED in part**; and Carver's objection at ECF No. 190 is **SUSTAINED**.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a), parties may seek a district judge's review of a Magistrate Judge's written order deciding "a pretrial matter not dispositive of a party's claim or defense" by filing timely and specific objections thereto. Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A); Elijah v. Dunbar, 66 F.4th 454, 459-60 (4th Cir. 2023).  The district judge must "modify or set aside any part of the [Magistrate Judge's] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

A Magistrate Judge's "finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on

---

[1] Carver has also objected to the Magistrate Judge's rulings excluding evidence of a grant the Belt Line received and declining to exclude one of the Belt Line's exhibits purporting to summarize its damages.  ECF Nos. 178, 192-93.  The Court will address these objections separately.

the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). Under this standard, "altering . . . non-dispositive orders" is often "extremely difficult to justify." CertusView Techs., LLC v. S & N Locating Servs., LLC, 107 F. Supp. 3d 500, 504 (E.D. Va. 2015) (citation modified).

With respect to "questions of law," however, "there is no practical difference between review under Rule 72(a)'s contrary to law standard and a de novo standard." Id. (quoting Bruce v. Hartford, 21 F. Supp. 3d 590, 594 (E.D. Va. 2014)). "A magistrate judge's order is contrary to law when the order 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" SageWater, LLC v. Hossfeld, No. 1:23cv770, 2024 WL 4520646, at *1 (E.D. Va. Oct. 17, 2024) (citation omitted).

## II. ANALYSIS

### A. Damages

This Court first addresses two objections to the Magistrate Judge's Order, ECF No. 175, resolving issues related to damages.

#### 1. Depreciation

Carver objects, ECF No. 185, to the Magistrate Judge's ruling precluding Carver's efforts to reduce the Belt Line's damages using evidence of depreciation, including expert testimony incorporating depreciation. ECF No. 175. Carver asks this Court to "rule that

3

depreciation applies to the claimed damages, or, alternatively, vacate the order and reserve ruling on the issue until after the close of evidence." ECF No. 185, at 5; see also ECF No. 148, at 14 (arguing, in opposition to the Belt Line's motion to preclude depreciation, that "depreciation, [the] value of the Bridge, and recovery of damages" are "fact[-]intensive inquiries to be decided by the Court on a full evidentiary record").

In this Court's view, "sitting in admiralty as a court of equity," the rule regarding depreciation explained and adopted in BP Expl. & Oil, Inc. v. Moran Mid-Atl. Corp., 147 F. Supp. 2d 333, 341 (D.N.J. 2001), ought likewise to apply in the instant case. Notably, as the Magistrate Judge observed, ECF No. 175, at 7, this rule coheres with that applied in Norfolk & Portsmouth Belt Line R. Co. v. M/V MARLIN, No. 2:08cv134, 2009 WL 3363983, at *9 (E.D. Va. Oct. 9, 2009). Accordingly, in the case of an allision "where the destruction does not result in a total loss, actual or constructive," "the damage is to an integral part of the [whole] facility," and "the repairs will not enhance the value of the [whole] facility, there is to be no depreciation for the individual pieces." BP Expl., 147 F. Supp. 2d at 341. Only "[t]o the extent that the damage is to a non-integral or separate part of the facility" should depreciation apply. Id.; see also Hewlett v. Barge Bertie, 418 F.2d 654, 657 (4th Cir. 1969) ("If she is not a complete loss . . . then the reasonable cost of recovery,

4

including repairs and an allowance for deprivation of use, is the measure."); Oregon v. Tug Go-Getter, 468 F.2d 1270, 1274 (9th Cir. 1972) (rejecting depreciation where "[t]he repair or replacement adds nothing of substance to the over-all value of the structure of which it is an integral part and the life expectancy of the entire structure has not been extended"); J W Paxson Co. v. Bd. of Chosen Freeholders of Cumberland Cnty., 201 F. 656, 663 (3d Cir. 1912) ("The plaintiff did not need a new span. The old one was sufficient, and the county was damaged by being compelled to incur the cost of a new one.").

In applying this rule, the Magistrate Judge first observed that the damaged portion of the bridge, Span 4, "although a discrete segment, is an integral part of the bridge and cannot be treated as stand-alone property." ECF No. 175, at 7; cf. BP Expl., 147 F. Supp. 2d at 341 (finding that "pipelines at the dock facility [we]re an integral part" thereof because the facility "could not function without" them); Oregon v. Tug Go-Getter, 468 F.2d at 1274 (similar). The Magistrate Judge also found that Span 4's repair neither "enhanced the bridge's value" nor "extended the useful life of the entire bridge."[2] ECF No. 175, at 7.

---

[2] Carver attempts to distinguish two inquiries: enhanced value versus extended life. ECF No. 185, at 5. Even assuming that, in the case of a bridge, these inquiries are conceptually distinct, it is not apparent how Carver contends this bridge's value was enhanced by the repairs undertaken here other than by the potential extension of its useful life. Cf. Freeport Sulphur Co. v. S/S Hermosa, 526 F.2d 300, 307 (5th Cir. 1976) ("The extended useful life of the dock may well increase the dock's present value.").

The weight of authority tends to support the Magistrate Judge's view that, "because the rest of the bridge is just as old and worn as it ever was," id., the repair of a single, integral component cannot justify depreciation. BP Expl., 147 F. Supp. 2d at 341 ("[W]hen the entire pipeline is eventually replaced, it is unlikely that these pieces of pipes would be left for replacement even further in the future and, if that were the course of action, any savings would be de minimis."); Cargill, Inc. v. Kopalnia Rydultowy Motor Vessel, 304 F. App'x 278, 280-81 (5th Cir. 2008) ("If . . . the repaired section will not be replaced independently and/or retained when the rest of the wharf is rebuilt[, ]and the repairs do not extend the useful life of the entire wharf, repair costs will not be depreciated." (citing Brunet v. United Gas Pipeline Co., 15 F.3d 500, 505-06 (5th Cir. 1994))); Oregon v. Tug Go-Getter, 468 F.2d at 1274 ("Under these circumstances it is of no significance that the pier could be separately repaired or even replaced. (So could a single wall of a building.)").

That said, the resolution of the depreciation question depends on factual predicates. See, e.g., Hewlett, 418 F.2d at 657 ("When, as here, the tortfeasors assert that the value is less than the cost of repairs, they have the burden to establish that fact."). Without deciding whether or not the record before the Magistrate Judge was itself sufficient to support his findings, this Court will **SUSTAIN in part** Carver's objection, ECF No. 185,

to the Magistrate Judge's Order, ECF No. 175, **VACATE** that Order to the extent it precluded evidence or argument concerning depreciation, and reserve further ruling on the issue.  See United States v. Wood, 741 F.3d 417, 425 (4th Cir. 2013) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it." (quoting In re Salem, 465 F.3d 767, 777 (7th Cir. 2006))).

### 2. Carver's Joint Expert Report

The Belt Line objects, ECF No. 188, to the Magistrate Judge's ruling that Carver did not violate Rule 26(a)(2)(B) by disclosing certain expert opinions "as jointly held by [two] experts rather than attributing them to each expert individually."  ECF No. 175, at 8.  At issue is Carver's damages report, co-authored by Ward Nicholas Marianos, Jr., and James Charles Cunningham, respectively "a sub-consultant and a senior staff member" of R.L. Banks & Associates, the "railroad consulting firm" hired to prepare the report.  See ECF No. 188-1, at 4.

The Belt Line itself concedes that "joint reports are not prohibited" categorically.  ECF No. 188, at 3.  Indeed, where two experts are "both prepared to testify to all the opinions in the report," there is "no reason why it would be inherently impermissible for them to file a joint report."  Dale K. Barker

_Co., P.C. v. Valley Plaza_, 541 F. App'x 810, 816 (10th Cir. 2013) (Gorsuch, J.).

Difficulties might arise where, "for example, it isn't clear whether both experts adhere to all of the opinions in the report and they do not delineate which opinions belong to which expert." _MS Amlin Marine NV v. Delta Marine Indus. Inc._, 348 F.R.D. 658, 677 (W.D. Wash. 2025) (quoting _Dale K. Barker Co._, 541 Fed. App'x at 816); _Franchitti v. Cognizant Tech. Sols. Corp._, No. 21cv2174, 2025 WL 2123655, at *3 (S.D.N.Y. July 29, 2025) (similar).  It is along such lines that the Belt Line challenges the report at issue, noting that the two individual co-authors claim expertise in different subject matters, ECF No. 188, at 2 ("Mr. Cunningham works in railroad finance. . . . Mr. Marionas is a bridge engineer."), and that the report leaves the Belt Line without knowledge of "which expert made the error[s]" the Belt Line identifies in the report's opinions and analysis, _id._ at 6.

The Magistrate Judge's rejection of this argument was not clearly erroneous or contrary to law.  The report in question explicitly notes that the opinions expressed therein are "collective" unless otherwise stated.  ECF No. 188-1, at 6.  Thus, the report makes clear that "both experts adhere to all of the opinions" it sets forth.  _MS Amlin Marine NV_, 348 F.R.D. at 677 (citation omitted).  Accordingly, the Court agrees with the Magistrate Judge that Rule 26(a)(2)(B) does not require exclusion

8

of these experts.[3]  The Belt Line's objection, ECF No. 188, is **OVERRULED**.

## B. Valuation Experts

The Court now turns to the parties' objections to rulings by the Magistrate Judge, <u>see</u> ECF Nos. 171-72, excluding their respective vessel valuation experts pursuant to Federal Rule of Evidence 702.

The proponent of each expert witness bears the burden of demonstrating, by a preponderance of the evidence, that the admissibility requirements of Federal Rule of Evidence 702 are satisfied with respect to that expert.  <u>Cooper v. Smith & Nephew, Inc.</u>, 259 F.3d 194, 199 (4th Cir. 2001) (citing <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 592 n.10 (1993)).  Those requirements are fourfold; it must be "more likely than not that"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

---

[3] Of course, the Belt Line remains free to employ the "traditional and appropriate means of attacking shaky but admissible evidence," including "[v]igorous cross-examination" and the "presentation of contrary evidence." <u>Franchitti</u>, 2025 WL 2123655, at *2 (quoting <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 596 (1993)).

### 1. The Belt Line's Valuation Expert, John S. Poulson

The Belt Line objects, ECF No. 187, to the Magistrate Judge's order excluding the valuation opinions of its expert John S. Poulson, which the Magistrate Judge deemed unreliable, ECF No. 171, at 7. The Magistrate Judge primarily based this finding on Mr. Poulson's failure "to properly apply the governing fair market value standard."[4] ECF No. 171, at 6.

Mr. Poulson claimed to have estimated the vessel's value here using "the comparable sales, replacement cost and income approaches." ECF No. 97-2, at 12. In pursuing the "comparable sales" approach, he "research[ed] comparable tugs" recently "offered for sale." ECF No. 97-2, at 10-11 (emphasis added). That is, Mr. Poulson relied on sellers' offering prices, not "contemporaneous sales" prices agreed between buyers and sellers. See F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 724 (4th Cir. 2011) (emphasis added).

During his deposition, when asked about his failure to consider "the final sale prices . . . on certain tugs or vessels," Mr. Poulson admitted that publications exist which do indeed "publish actual sales," at least "to the best of their knowledge."

---

[4] Maritime law prioritizes market price as the measure of a vessel's value. Standard Oil Co. of New Jersey v. S. Pac. Co., 268 U.S. 146, 156-58 (1925) ("The worth of a thing is the price it will bring." (citation omitted)). Other evidence of value is considered only where value is not "established by contemporaneous sales of like property in the way of ordinary business." F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 724 (4th Cir. 2011) (quoting Std. Oil Co., 268 U.S. at 155).

ECF No. 187, at 3-4.  He went so far as to identify one "website company" by name with which he "was frequently in touch" and which he believed did, at least at one time, "publish actual sales." Id. at 3.  Nevertheless, Mr. Poulson explained that he simply had "not gone there."  Id.

As the Magistrate Judge noted, "[t]he fact that actual sales price information was available to Poulson from a source he was familiar with compounds the unreliability of his methodology." ECF No. 171, at 7.  Though the Belt Line suggests that Mr. Poulson's belief was mistaken and emphasizes Mr. Poulson's subsequent and apparently contradictory assertion that "final details of a transaction are privy really to the buyer and the seller," ECF No. 187, at 3-4, Mr. Poulson's admitted failure even to explore the possibility of accessing and analyzing such data itself calls into question the reliability of his proposed testimony.

In defending Mr. Poulson's approach, and this omission in particular, the Belt Line now claims to agree with Carver that "[w]here the comparable sales are limited, such as here where the tug is a 'one off built vessel' rendering it unique in the market . . . it is appropriate to consider other types of evidence."  ECF No. 187, at 1-2 (quoting ECF No. 156, at 9).  It is true that "[w]here there are insufficient sales to establish a market other evidence such as replacement cost, depreciation,

expert opinion and the amount of insurance can also be considered to determine" a vessel's value.  King Fisher Marine Serv., Inc. v. NP Sunbonnet, 724 F.2d 1181, 1185 (5th Cir. 1984).  However, Mr. Poulson's proffered testimony explicitly purported to rely on data related to "comparable tugs" and "tugs of similar configuration."  ECF No. 97-2, at 10-11 (emphasis added).  Mr. Poulson also appears to have relied on data related to ostensibly similar vessels for his alternative replacement cost and generated income approaches.  Id. at 11 (citing "known tug construction costs" and "[t]ypical utilization of a tug of the MACKENZIE ROSE's specification").  Thus, the Belt Line's current position that the tug is "unique" further undermines the reliability of Mr. Poulson's methodologies by suggesting the falsity of one of their basic premises.  Cf. Rice v. SalonCentric Inc., No. 18cv1980, 2020 WL 42760, at *5 (D. Md. Jan. 3, 2020) ("Although an expert's inconsistencies can be addressed on cross-examination, courts will exclude testimony when these inconsistencies directly illustrate the unreliability of the underlying method.").

In light of the foregoing, the Magistrate Judge's conclusion that the Belt Line failed to carry its burden of proof that the admissibility requirements of Rule 702 are satisfied was neither clearly erroneous nor contrary to law.  The Belt Line's objection, ECF No. 187, is accordingly **OVERRULED**.

### 2. Carver's Valuation Expert, Jason Meyerrose

Carver objects, ECF No. 186, to the Magistrate Judge's order excluding the valuation opinions of its expert Jason R. Meyerrose, which the Magistrate Judge deemed unreliable, ECF No. 172, at 8. In reaching this conclusion, the Magistrate Judge underscored the "internal[] inconsisten[cy]" of Mr. Meyerrose's opinions while also noting that those opinions "lack[] a discernible methodology." ECF No. 172, at 8; see also SalonCentric, 2020 WL 42760 at *5 (explaining that an expert's inconsistencies may demonstrate unreliability and warrant exclusion).

As the Magistrate Judge observed, Mr. Meyerrose initially claimed to rest his valuation opinion on the prevailing fair-market-value approach. While his initial report sheds little if any light on the methodology he employed to determine the "estimated current value" of the vessel, ECF No. 138-1, at 9, he explained in a contemporaneous affidavit that he "compared [the tug] to the fair market value for vessels of similar size and characteristics, in order to determine the fair market value," ECF No. 3-1, at 7. But later, in his effort to rebut Mr. Poulson's valuation opinion, Mr. Meyerrose denied the feasibility of applying the fair-market-value approach to the tug at issue here, asserting that "there is no other vessel comparable to the one off built 'MACKENZIE ROSE.'" ECF No. 138-2, at 4.

Given these deficiencies and inconsistencies, Carver has failed to carry its burden to prove the reliability of Mr. Meyerrose's opinions and testimony. See Cooper, 259 F.3d at 199. Thus, the Magistrate Judge's Order excluding Mr. Meyerrose's opinions and testimony, ECF No. 172, is neither clearly erroneous nor contrary to law.   Carver's objection, ECF No. 186, is **OVERRULED**.

### C. Coast Guard Investigative Materials

Next, the Court considers Carver's objection, ECF No. 190, to the Magistrate Judge's ruling excluding any "portion of the Coast Guard's investigation of the allision," to include "CG-2692 Forms" completed by Carver's employees and "witness interview transcripts," ECF No. 169, at 6.

"Federal law obliges those whose vessels are involved in any allision with a bridge . . . to report the matter immediately to the Coast Guard."  8 Benedict on Admiralty § 9.04 (2026); see 46 U.S.C. § 6101(a); 46 C.F.R. § 4.05-1(a)(1).  "[I]n addition to the immediate notice," federal regulation also requires the "owner, agent, master, operator, or person in charge" to "file a written report" using the Coast Guard's "Form CG-2692."  46 C.F.R. § 4.05-10(a).  In issuing such regulations, the Coast Guard has explained that

> [t]hese reporting requirements permit the Coast Guard to initiate the investigation of marine casualties as required by 46 U.S.C. 6301, in order to determine the

14

causes of casualties and whether existing safety standards are adequate, or whether new laws or regulations need to be developed. Receipt of a marine casualty report is often the only way in which the Coast Guard becomes aware of a marine casualty. It is therefore a necessary first step that provides the Coast Guard with the opportunity <u>to determine the extent to which a casualty will be investigated</u>.

83 Fed. Reg. 11889, 11900 (Mar. 19, 2018) (emphasis added).

Where the Coast Guard pursues a marine casualty investigation, Congress has provided that,

> [n]otwithstanding any other provision of law, no part of a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions, shall be admissible as evidence or subject to discovery in any civil or administrative proceedings, other than an administrative proceeding initiated by the United States.

46 U.S.C. § 6308(a); <u>see also</u> H.R. Rep. No. 104-854, at 109-10 (1996) (Conf. Rep.) (noting that, prior to this provision's enactment, there was "no statutory prohibition on the use" in civil litigation "of opinions, recommendations, deliberations, and conclusions contained in marine casualty investigation reports").

It appears that "the Fourth Circuit has not discussed the admissibility of marine investigation reports" governed by this statute. <u>Gogel v. Maroulis</u>, 689 F. Supp. 3d 73, 79 (D. Md. 2023). As the Magistrate Judge duly noted, ECF No. 169, at 6, the courts that have done so have not reached a firm consensus regarding the statute's proper scope and application beyond the Coast Guard's marine casualty report itself. The Belt Line posits a broad view,

arguing that the effect of the statute is that "'no portion' of the marine casualty investigation is admissible or usable in the case." ECF No. 202, at 5. The text of the provision, however, is notably narrower than the Belt Line's framing. "By its plain terms, the statute extends only to the 'report of a marine casualty investigation conducted under section 6301 of this title . . . including findings of fact, opinions, recommendations, deliberations, or conclusions.'" Newill v. Campbell Transp. Co., No. 2:12cv1344, 2015 WL 222438, at *3 (W.D. Pa. Jan. 14, 2015) (quoting 46 U.S.C. § 6308(a)).

It is clear enough from the text of the statute that "Congress has expressly precluded the use of Coast Guard accident reports in private civil litigation." In re Cozy Cove Marina, Inc., 521 F. Supp. 2d 504, 507 (E.D.N.C. 2007) (emphasis added) (excluding "a Coast Guard accident report"). Here, however, no party seeks to offer the "actual report," Newill, 2015 WL 222438, at *3, which apparently has not yet been completed in this case, see ECF No. 190, at 2. At issue instead are materials preliminary to such a report.

As noted, the Court may admit "no part of a report of a marine casualty investigation . . . including findings of fact, opinions, recommendations, deliberations, or conclusions." 46 U.S.C. § 6308(a). The "list" Congress here provided "is illustrative and not exclusive." In re Complaint of Danos & Curole Marine

16

Contractors, Inc., 278 F. Supp. 2d 783, 785 (E.D. La. 2003); see Samantar v. Yousuf, 560 U.S. 305, 317 (2010) ("[T]he word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."). "But even if the list . . . is merely illustrative, it still suggests that" the "part[s] of a report," 46 U.S.C. § 6308(a), that the statute renders inadmissible are those which embody, suggest, or reflect the Coast Guard's views, as all of the items listed do.  Samantar, 560 U.S. at 317 ("[A] word may be known by the company it keeps." (citation omitted)). The text of the statute thus aligns with its intended purposes: "prevent[ing] Coast Guard findings of liability from being used to impose liability in civil contexts," Holzhauer v. Golden Gate Bridge Highway & Transp. Dist., 745 F. App'x 265, 268 (9th Cir. 2018), and mitigating "the risk of embroiling the Coast Guard in [private] litigation," Newill, 2015 WL 222438, at *3.

    Such reasoning has led courts to apply § 6308(a) only to materials that "are the type of conclusory items which the statute seeks to exclude."  Danos, 278 F. Supp. 2d at 785 (refusing to admit the Coast Guard's "written report" but admitting photographs taken by Coast Guard personnel because such photographs "do not provide findings of fact, opinions, recommendations, deliberations, nor conclusions"); Newill, 2015 WL 222438, at *3 (holding that § 6308(a) would not bar photographs "taken as part of the Coast Guard's preliminary investigation" because, "unlike

17

the items listed in the statute," such photographs "do not contain any findings, conclusions or the like" and were not "the type of materials the statute was designed to address"); see Holzhauer, 745 F. App'x at 268 (affirming "[a]dmission of [a] one-page interview summary for purposes of impeachment . . . because the summary d[id] not contain conclusory comments or judgments on liability and was not used directly to 'fix civil or criminal responsibility'" (citation omitted)).

    With these principles in mind, the Court considers whether the statute bars the admissibility of a party's own statements made on the Coast Guard's Form CG-2692 template.[5]  It is first notable that the regulation requiring a marine casualty to be reported using Form CG-2692, 46 C.F.R. § 4.05-10, is promulgated pursuant to 46 U.S.C. § 6101 (authorizing "regulations on the marine casualties to be reported and the manner of reporting"). In contrast, the statutory bar extends by its terms only to "part[s] of a report of a marine casualty investigation conducted under [46 U.S.C.] section 6301." 46 U.S.C. § 6308(a); see § 6301 (authorizing "regulations for the immediate investigation of marine casualties"); LeRoy Lambert, The Use of Coast Guard Casualty

---

[5] As the Magistrate Judge noted, ECF No. 169, at 9, the version of Form CG-2692 used by Carver's employees in this case stated that "information collected [on the form] is protected from use in civil litigation per 46 U.S.C. § 6308." ECF No. 115-2, at 3.  However, an apparently more recent version of the form omits this statement.  See U.S. Coast Guard, Report of Marine Casualty, Commercial Diving Casualty, or OCS-Related Casualty, https://media.defense.gov/2022/Mar/15/2002956240/-1/-1/0/CG_2692.pdf.

Investigation Reports in Civil Litigation, 34 J. Mar. L. & Com. 75, 80 (2003) ("Section 6308 prohibits the use of investigative reports 'conducted under section 6301 of this title.' Accordingly, § 6308 does not prohibit the admission into evidence or discovery of reports made on Form CG-2692 by a person involved in the incident.'").

Even ignoring this threshold consideration, the applicability of the statute to Form CG-2692 is doubtful. Form CG-2692 is a template prepared by the Coast Guard prior to any particular marine casualty's occurrence. The incident-specific details found thereon are the submitting party's own statements. And rather than forming part of the Coast Guard's investigation (let alone part of a report of such an investigation), a vessel's submission of Form CG-2692 allows the Coast Guard "to determine the extent to which a casualty will be investigated." 83 Fed. Reg. 11889, 11900 (Mar. 19, 2018).

Accordingly, several courts have declined to apply § 6308(a) to Form CG-2692 or analogous materials. See Guest v. Carnival Corp., 917 F. Supp. 2d 1242, 1244-46 (S.D. Fla. 2012) (declining to interpret the statute to extend to documents that a party "generated and provided . . . to the Coast Guard at its request and for its investigation"); Matter of Osage Marine Servs., Inc., No. 4:21cv347, 2025 WL 2522421, at *1 (E.D. Mo. Sept. 2, 2025) ("Statements made to the Coast Guard, including the complete Form

2692, and photographs of the incident are not per se inadmissible under the statute."); Goodwin v. Cockrell, No. 4:13cv199, 2014 WL 6630105, at *2 (E.D.N.C. Nov. 21, 2014) (concluding that "a written statement and diagram . . . prepared and later submitted to the [Coast Guard] as part of its investigation . . . do not constitute a 'part of a report of a marine casualty investigation'" (citation omitted)). This Court shares the view that § 6308(a) does not render a party-completed Form CG-2692 inadmissible.

Transcripts of investigative interviews or hearings conducted by the Coast Guard warrant separate analysis.[6] Such interviews or hearings are conducted pursuant to the investigatory powers of the Coast Guard's officers, as opposed to the reporting obligations of the vessel owner or operator. See 46 C.F.R. § 4.07; cf. Falconer v. Penn Mar., Inc., 397 F. Supp. 2d 68, 70 (D. Me. 2005) (applying the statute to bar "Coast Guard photographs taken pursuant to its investigatory authority" and "attached to a Coast Guard investigatory report" (emphasis added)). That said, it does not necessarily follow that such transcripts are covered by the

---

[6] The interview transcripts at issue here reflect the involvement of both the Coast Guard and the National Transportation Safety Board ("NTSB"). See, e.g., ECF No. 139-1, at 2-5. This does not alter the Court's analysis, both because the Coast Guard's involvement would seem sufficient to trigger § 6308(a)'s potential application and because the admissibility of NTSB investigation reports is subject to an analogous statutory restriction. See, e.g., Cox Operating, LLC v. ATINA M/V, 683 F. Supp. 3d 557, 560 (E.D. La. 2023) (quoting 46 U.S.C. § 6308(a) and noting that "49 U.S.C. § 1154(b) similarly provides[ that] '[n]o part of a report of the [NTSB], related to an accident or an investigation of an accident, may be admitted'").

statute, the text of which clearly limits its scope to "part[s] of a report of a marine casualty investigation," rather than all parts of the investigation that precedes such a report.[7]  46 U.S.C. § 6308(a) (emphasis added); see Report, Black's Law Dictionary (12th ed. 2024) ("A formal oral or written presentation of the results of an investigation . . . often with a recommendation for action." (emphasis added)).

Nevertheless, some courts have doubted the admissibility of such transcripts, with at least one court suggesting that a transcribed interview might reveal "things that [an investigator] had noticed" or suggest "some of [an investigator's] thoughts regarding the cause" of a given incident.  In re Eternity Shipping, Ltd., 444 F. Supp. 2d 347, 363 n.56 (D. Md. 2006) (excluding "the transcript of [an] interview with the Coast Guard" both because it was "an exhibit to the report" and because it "contain[ed] facts and opinions" of the Coast Guard); see also In re Am. Milling Co., 270 F. Supp. 2d 1068, 1074 (E.D. Mo. 2003) (excluding "a transcript of the Coast Guard investigatory hearing" that was "produced in

---

[7] Another textual clue may be found in Section 6308(b).  United States v. Atl. Rsch. Corp., 551 U.S. 128, 135 (2007) ("Statutes must 'be read as a whole.'" (citation omitted)).  There, Congress provided for Coast Guard personnel "to testify . . . on solely factual matters . . . if the information is not available elsewhere or is not obtainable by other means." 46 U.S.C. § 6308(b).  The Court doubts that Congress would permit "solely factual matters" (as distinct from "findings of fact" derived from the Coast Guard's own mental impressions) to be introduced via Coast Guard testimony but not by the transcribed testimony of persons involved merely because the latter was generated in connection with the Coast Guard's investigation.

the course of a Coast Guard casualty investigation"); <u>Cox Operating, LLC v. ATINA M/V</u>, 683 F. Supp. 3d 557, 561 (E.D. La. 2023) ("§ 6308(a) . . . prevent[s] the use of transcripts of interviews taken by the USCG in the course of an investigation in a civil trial."); <u>Gabarick v. Laurin Mar. (Am.), Inc.</u>, 406 F. App'x 883, 889 n.4 (5th Cir. 2010) (noting that "it is unclear whether the testimony" given during "hearings held by the Coast Guard while it was investigating [a] collision . . . is even admissible in a civil case").

On the other hand, in <u>Holzhauer</u>, the Ninth Circuit took the view that an "interview summary" contained neither "the Coast Guard's findings of fact or conclusions" nor its "conclusory comments or judgments on liability" but instead simply "document[ed] what [the interviewee] said when asked questions about the incident." 745 F. App'x at 268. "[A]lthough this is a close call," <u>Newill</u>, 2015 WL 222438, at *3, the Court is persuaded by the reasoning in <u>Holzhauer</u>, 745 F. App'x at 268. "[E]ven if the statute could be read to cover th[e] [preliminary] level of the Coast Guard's investigation" during which the interviews at issue were conducted, the transcribed statements of the interviewees themselves "do not contain any findings, conclusions or the like" and thus are not categorically inadmissible under § 6308(a). <u>Newill</u>, 2015 WL 222438, at *3.

In sum, this Court construes the statute at issue not to render categorically inadmissible a party's own statements set forth on Form CG-2692 or documented in transcripts of Coast Guard investigative interviews.[8]  Carver's objection to the Magistrate Judge's ruling, ECF No. 190, is **SUSTAINED** in accordance with that conclusion, without prejudice to any other evidentiary objection that may be made at trial with respect to any use of such materials.

### D. Carver's Marine Operations Expert, Captain Sam Stephenson

Finally, the Court turns to Carver's objection, ECF No. 189, to the Magistrate Judge's Order excluding one of the opinions of Carver's marine operations expert, Captain Sam Stephenson, ECF No. 174.  At issue is the fourth opinion of Captain Stephenson that "[t]he evidence clearly establishes that Mate Morrissey's initial statement the autopilot malfunctioned was false."  ECF No. 124-2, at 18.  The Magistrate Judge ruled that this opinion must be excluded because it "necessarily depends on both an impermissible credibility determination and materials he is barred from considering."  ECF No. 174, at 8.

As the Magistrate Judge held, id., an expert witness is not entitled to "give an opinion on the credibility of a witness," the "determination of credibility" being reserved "strictly" to the

---

[8] The Magistrate Judge rightly noted that, where § 6308 applies, it "bars admission even where a hearsay exception might apply."  ECF No. 169, at 9. Conversely, evidence that is otherwise inadmissible hearsay is not salvaged merely because § 6308 does not apply.

factfinder.  United States v. Cecil, 836 F.2d 1431, 1441 (4th Cir. 1988); see Maryland Cas. Co. v. Baldwin, 357 F.2d 338, 339 (4th Cir. 1966) ("Credibility is for the trial court, which sat without a jury.").  Carver, while "agree[ing] that, as a matter of law, credibility determinations are reserved for the fact finder," seems to suggest that Captain Stephenson is nonetheless qualified to opine on Mate Morrissey's credibility in a manner akin to "law enforcement officers . . . 'decipher[ing]'" coded language used by "drug dealers."  ECF No. 189, at 9-10 (quoting United States v. Wilson, 484 F.3d 267, 275 (4th Cir. 2007)).  The analogy is inapposite, because Carver never claims that Captain Stephenson is using any specialized knowledge of maritime-industry language to parse any hidden meaning behind Mate Morrissey's statements.  See id. at 11 (arguing that "Opinion No. 4 is reliably sustained on sufficient evidence and on [Captain Stephenson's] interpretation of the cause of the allision" itself).  The Magistrate Judge rightly precluded any testimony by Captain Stephenson regarding the credibility of Mate Morrissey's statements.

The Magistrate Judge also excluded Captain Stephenson's fourth opinion because it relied on Coast Guard investigative materials that the Magistrate Judge considered per se inadmissible.  ECF No. 174, at 8.  As explained above, this Court takes a different view of the relevant statute, based on which "CG-2692 Forms" are not per se inadmissible.  However, Captain

Stephenson's engagement with one of these forms in the context of his fourth opinion appears to be, exclusively, an exercise in crediting the relevant statement on the form (in addition to other statements in an incident report and a text message) over Mate Morrissey's statement to the contrary:

> [T]he USCG 2692 form submitted on 06/25/24 states 'The OOW had failed to properly switch to hand steering.' . . . Thus, the fact that Mate Morrissey failed to properly disengage the autopilot is supported by . . . the USCG 2692 form.

ECF No. 124-2, at 30-31. In expressing this fourth opinion, then, Captain Stephenson functions "as little more than a conduit or transmitter" of the statements of others, "rather than as a true expert whose considered opinion sheds light on some specialized factual situation." United States v. Johnson, 587 F.3d 625, 635 (4th Cir. 2009). This exercise does not "help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Civ. P. 702(a). On the contrary, the factfinder is perfectly capable of weighing competing statements and making credibility determinations "without help from an expert." United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995).

To the extent Captain Stephenson is prepared, based on other "facts and materials," ECF No. 124-2, at 32, "to opine whether the facts support the conclusion that the tug veered 'hard over,'" the Magistrate Judge's Order explicitly does not preclude him from

doing so.  ECF No. 174, at 8 n.6.  In his Order, the Magistrate Judge included the following note:

> By its ruling, the Court does not hold that Stephenson may not offer opinions directly based on the facts.  For instance, although Stephenson may not opine that Mate Morrissey's initial statement was "patently false," he may be permitted to opine whether the facts support the conclusion that the tug veered "hard over," so long as that opinion is not based on Coast Guard investigative materials.

Id.  In objecting, Carver argues that this footnote "denotes the errors in the [Magistrate Judge's] Order, as Captain Stephenson is proffering the opposite: the conclusion that the tug did not go 'hard over.'"  ECF No. 189, at 6.  However, the Magistrate Judge clearly stated that Captain Stephenson "may be permitted to opine whether the facts support the conclusion that the tug veered 'hard over.'"  ECF No. 174, at 8 n.6 (emphasis added).  That is, Captain Stephenson may be permitted to opine that the facts do support that conclusion, or that they do not, according to his opinion "directly based on the facts."  Id.  The Magistrate Judge's own ruling thus obviates much of Carver's objection thereto.  That objection, ECF No. 189, is OVERRULED.

### III. CONCLUSION

For the reasons set forth above, the Belt Line's objections, ECF Nos. 187-88, are OVERRULED; Carver's objections at ECF Nos. 186 and 189 are OVERRULED; Carver's objection at ECF No. 185 is

**OVERRULED in part** and **SUSTAINED in part**; and Carver's objection at

ECF No. 190 is **SUSTAINED**.

The Clerk is **REQUESTED** to send a copy of this Opinion and

Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March 9 , 2026

27